Michael L. Braunstein, Esq.
**THE BRAUNSTEIN LAW FIRM, PLLC**
3 Eberling Drive
New City, New York 10956
Telephone:     (845) 642-5062
E-mail: mbraunstein@braunsteinfirm.com

David C. Silver, Esq. (*pro hac vice forthcoming*)
Jason S. Miller, Esq. (*pro hac vice forthcoming*)
**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:     (954) 516-6000
E-mail: DSilver@SilverMillerLaw.com
E-mail: JMiller@SilverMillerLaw.com

***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Civil Action No. _____

CHRISTINE GRABLIS, individually;
and on behalf of All Others Similarly Situated;

     Plaintiff,

v.

ONECOIN LTD., a foreign corporation;
RUJA IGNATOVA, an individual; KONSTANTIN IGNATOV, an individual;
SEBASTIAN GREENWOOD, an individual; and MARK SCOTT, an individual;

     Defendants.

_____/

# <u>CLASS ACTION COMPLAINT</u>

## <u>JURY TRIAL DEMANDED</u>

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

NATURE OF THE ACTION ........................................................................................2

JURISDICTION AND VENUE ...................................................................................5

PARTIES AND RELEVANT NON-PARTIES ...........................................................6

    I.      PLAINTIFF.........................................................................................6

    II.     DEFENDANTS ..................................................................................6

          A.     ONECOIN LTD...................................................................6

          B.     RUJA IGNATOVA ..............................................................7

          C.     KONSTANTIN IGNATOV...................................................8

          D.     SEBASTIAN GREENWOOD.................................................9

          E.     MARK SCOTT...................................................................10

          F.     OTHER LIABLE PERSONS/ENTITIES.................................10

PLAINTIFF'S CLASS ACTION ALLEGATIONS....................................................10

SUBSTANTIVE ALLEGATIONS .............................................................................12

    I.      BACKGROUND ON BLOCKCHAIN TECHNOLOGY AND INITIAL COIN OFFERINGS................................................................12

          A.     BLOCKCHAINS ................................................................12

          B.     INITIAL COIN OFFERINGS ...............................................13

    II.     BACKGROUND ON ONECOIN LTD...............................................14

          A.     ONECOIN LTD.'S FORMATION AND CREATION OF ONECOIN CURRENCY...............................................................14

          B.     RUJA'S DISAPPEARANCE AND KONSTANTIN'S RISE TO AUTHORITY ...................................................................21

          C.     ONECOIN PROMOTIONS IN THE UNITED STATES .........22

    III.    THE ONECOIN INVESTMENTS WERE PONZI SCHEMES AND SECURITIES................................................................................26

          A.     THE ONECOIN DEFENDANTS OPERATED A PONZI SCHEME......26

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

B.      ONECOIN TRADER PACKAGES/MEMBERSHIPS AND ONECOINS
        WERE INVESTMENT CONTRACT SECURITIES ..............................27

C.      THE ONECOIN CORPORATE DEFENDANTS WERE "SELLERS"
        UNDER THE FEDERAL SECURITIES LAWS .....................................29

IV.     DEFENDANTS LAUNDERED THEIR ILL-GOTTEN INVESTMENT FUNDS
        ...........................................................................................................30

V.      DEFENDANTS LED CLASS MEMBERS TO INCUR SUBSTANTIAL
        LOSSES ...........................................................................................31

VI.     NECESSITY FOR JUDICIAL INTERVENTION .................................................32

COUNT I - VIOLATION OF SECTION 12(a) OF THE SECURITIES ACT ............................34

COUNT II - VIOLATION OF SECTION 15(a) OF THE SECURITIES ACT ...........................35

COUNT III - VIOLATION OF SECTION 15(a) OF THE SECURITIES ACT ..........................36

COUNT IV - VIOLATION OF SECTION 15(a) OF THE SECURITIES ACT ..........................36

COUNT V - BREACH OF CONTRACT ........................................................................37

COUNT VI - UNJUST ENRICHMENT .........................................................................38

COUNT VII - FRAUDULENT INDUCEMENT ...............................................................39

COUNT VIII - FRAUDULENT MISREPRESENTATION ..................................................40

COUNT IX - NEGLIGENT MISREPRESENTATION ......................................................42

COUNT X - CONVERSION ......................................................................................43

COUNT XI - CIVIL CONSPIRACY ............................................................................44

PRAYER FOR RELIEF ...........................................................................................51

DEMAND FOR TRIAL BY JURY ...............................................................................51

## INTRODUCTION

**[They] created a multi-billion-dollar "cryptocurrency" company based completely on lies and deceit.  They promised big returns and minimal risk, but ... this business was a pyramid scheme based on smoke and mirrors more than zeroes and ones.  Investors were victimized while the defendants got rich.**

That is how Manhattan U.S. Attorney Geoffrey S. Berman described the organizers and promoters of OneCoin: a purported cryptocurrency that never really existed, on a blockchain that never really existed, born from mining farms that never really existed, yet fraudulently sold to investors throughout the world through a densely-packed multi-level-marketing system that ultimately amassed a reported Four Billion Dollars ($4,000,000,000.00) in revenues.  In this "zeros and ones" binary tale, the "ones" who reaped incredible (yet ill-gotten) financial gains are the creators and marketers of OneCoin, while the folks left grasping onto "zeros" are the thousands upon thousands of investors duped into purchasing falsely promoted, unregistered securities that leave even the most ardent cryptocurrency believers crying foul.

Lest anyone be further fooled into thinking that OneCoin was ever anything other than an outright, these words written by OneCoin founder RUJA IGNATOVA and shared with her co-founder at the origin of the OneCoin scheme reveal not only why she was dubbed the "CryptoQueen" and referred to by many in the OneCoin family as "Her Royal Highness," but also why she fancied for herself another infamous moniker:

> *It might not be [something] really clean or that I normally work on or even can be proud of (except with you in private when we make the money) – but ... I am especially good in this very borderline cases [sic], where the things become gray – and you as the magic sales machine – and me as someone who really can work with numbers, legal and back you up in a good and professional way.*
>
> *We could really make it big – like MLM meets "B[*]tch of Wall Street."* 😉

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Plaintiff CHRISTINE GRABLIS, an individual ("Plaintiff"), individually and on behalf of all other persons similarly situated as defined herein, by and through undersigned counsel, allege in this Class Action Complaint for violations of the of Sections 12 and 15 of the Securities Act of 1933 (the "Securities Act"), breach/rescission of contract, unjust enrichment, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, conversion, and civil conspiracy the following, based upon personal knowledge with respect to her own acts, and upon facts obtained through an investigation conducted by her counsel, which included, *inter alia*: (a) documents and solicitation materials released by Defendants (defined below), in connection with the OneCoin trader packages/memberships and OneCoins; (b) public statements made by the ONECOIN CORPORATE Defendants (defined below) concerning ONECOIN LTD. and the OneCoin trader packages/memberships and OneCoins; and (c) media publications concerning ONECOIN LTD., the OneCoin trader packages/memberships, and OneCoins.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.  Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.      This is a class action on behalf of a class of investors consisting of all individuals and entities who transferred to ONECOIN LTD. any fiat currency or cryptocurrency to invest in a purported digital cryptocurrency called "OneCoin" and who suffered financial injury as a result thereof.  Upon information and belief, the financial harm caused by ONECOIN LTD.'s fraudulent investment program exceeds Four Billion Dollars ($4,000,000,000.00).

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

2.      This action alleges violation of Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1), 77o(a), of the Securities Act, breach/rescission of contract,[1] unjust enrichment, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, conversion, and civil conspiracy against ONECOIN LTD.; RUJA IGNATOVA, an individual; KONSTANTIN IGNATOV, an individual; SEBASTIAN GREENWOOD, an individual (ONECOIN LTD., RUJA IGNATOVA, KONSTANTIN IGNATOV, and SEBASTIAN GREENWOOD are collectively referred to herein as "the ONECOIN CORPORATE Defendants"); and MARK SCOTT, an individual.

3.      Despite being cloaked in technological sophistication and jargon, Defendants operated a century-old fraud that was simple at its core — victims would invest in OneCoin trader packages/memberships after they were driven to ONECOIN LTD. by promoters; and ONECOIN LTD. would then pay existing investors with new money from new investors, who were in turn expected and incentivized to get more new investors to produce more new money for ONECOIN LTD.

4.      In reality, ONECOIN LTD. was nothing more than a pyramid/Ponzi scheme.

5.      As stated by FBI Assistant Director-in-Charge William Sweeney, Jr.:

> OneCoin was a cryptocurrency existing only in the minds of its creators and their co-conspirators. Unlike authentic cryptocurrencies, which maintain records of their investors' transaction history, OneCoin had no real value. It offered investors no method of tracing their money, and it could not be used to purchase anything. In fact, the only ones who stood to benefit from its existence were its founders and co-conspirators.

6.      The registration requirements contained within the Securities Act are designed to protect investors by ensuring they are provided adequate information upon which to base their investment decisions. The two basic objectives of registration are: (i) to require that investors

---

[1] Plaintiff's breach/rescission of contract claim is only alleged against Defendant ONECOIN LTD.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

receive necessary financial and other significant information concerning securities being offered for public sale; and (ii) to prohibit deceit, misrepresentations, and other fraud in the sale of securities.  Absent registration and the protections of the federal securities laws, issuers of securities could seek to market their investment opportunities without disclosing information that might make a potential investor think twice before investing (*e.g.*, conflicts of interest or major setbacks to core product lines) or peddle their securities using unbounded exaggerations regarding the progress of their products, business plan, business strategies, or even fabricate the existence of relationships with vendors or other business partners.

7.      Accordingly, Plaintiff brings this action for violations of Sections 12 and 15 of the Securities Act, breach/rescission of contract, unjust enrichment, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, conversion, and civil conspiracy against Defendants for their offer and sale of investment contract securities in violation of the federal securities laws' registration requirements and participation in effectuating the fraudulent Ponzi/pyramid schemes.

8.      The ONECOIN CORPORATE Defendants' promotional materials appeared in press releases, ONECOIN LTD.'s website, online chat rooms or forums located on websites such as Reddit.com ("Reddit"), white papers, postings on social media websites such as Twitter and Facebook, promotional videos posted on YouTube, and/or other materials relating to ONECOIN LTD. and OneCoin, which were disseminated widely to the investing public.

9.      Due to the varied and innumerable ways in which investors can be, and are likely to be, manipulated and harmed absent any of the protections under the federal securities laws, Sections 5 and 12(a)(1) of the Securities Act provide for strict liability against any person who offers or sells an unregistered security.  As detailed herein, offering for purchase OneCoin trader

- 4 -

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

packages/memberships has at all times constituted an offer and sale of unregistered securities; and thus, the ONECOIN CORPORATE Defendants are strictly liable under Section 12(a)(1) of the Securities Act.

10.     Similarly, Defendants' unlawful, immoral, and fraudulent conduct has caused, and is continuing to cause, significant financial harm to Plaintiff and the Class (defined below).

11.     Absent judicial intervention, Plaintiff and the Class are unlikely to ever recover their investments.  Accordingly, judicial intervention is required and requested to rectify the existing and future harm facing Plaintiff and the Class — harm that is likely to be irreparable.

12.     Investors in OneCoin trader packages/memberships have little to show for their investments other than broken promises and mounting financial burdens.

13.     For these reasons, Plaintiff on behalf of herself, and all similarly situated individuals and entities that invested in OneCoin, seeks compensatory, exemplary, punitive, injunctive, and rescissory relief, providing rescission and repayment of all investments into ONECOIN LTD., and securing and conserving such funds until repayment

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 22 of the Securities Act [15 U.S.C. § 77v] because Plaintiff alleges violations of Sections 12(a)(1) and 15(a) of the Securities Act [15 U.S.C. §§ 77l(a)(1) and 77o(a)].

15.     The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

16.     Venue is proper in this District under Section 22 of the Securities Act, 15 U.S.C. § 77v, as well as under 28 U.S.C. § 1391, because: (a) the conduct at issue took place and had an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## PARTIES AND RELEVANT NON-PARTIES

### I.     Plaintiff

17.     Plaintiff GRABLIS is an individual domiciled in Murfreesboro, Tennessee and is *sui juris*.  Beginning on or about August 10, 2015, Plaintiff GRABLIS funded her ONECOIN LTD. membership by investing $15,800.00.  From August 2015 through August 2016, Plaintiff GRABLIS invested a sum total of approximately $103,500.00 in OneCoin trader packages/memberships and/or OneCoin.  As of the date of this filing, Plaintiff GRABALIS' out-of-pocket investment loss at ONECOIN LTD. totals approximately $130,000.00.

18.     Plaintiff actively researched ONECOIN LTD. and OneCoin prior to making her purchases of OneCoin trader packages/memberships and throughout the periods in which she invested in ONECOIN LTD.  Accordingly, Plaintiff was personally, and successfully, solicited by the ONECOIN CORPORATE Defendants in connection with their public representations and active solicitations to purchase OneCoin trader packages/memberships and OneCoins.

### II.     Defendants

#### A.     OneCoin Ltd.

19.     ONECOIN LTD., founded in or about April 2014, is a foreign corporation based in Sophia, Bulgaria, and markets a purported digital cryptocurrency called "OneCoin" through a global multi-level marketing ("MLM") network of OneCoin members.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

20.    ONECOIN LTD. operates using several corporate entities and d/b/a names, including OnePayments Ltd., OneNetwork Services Ltd., OneAcademy, and OneLife. Upon information and belief, those entities were all created for the same fraudulent purpose, were each operated by the same core of principals, and stand as "alter egos" of one another. As used herein, those entities and d/b/a names shall collectively be referred to as ONECOIN LTD.

21.    ONECOIN LTD. launched its OneCoin currency in or about September 2014 under the OneLife Network company after being registered in Dubai and Belize. Initially, ONECOIN LTD. branded itself as a company selling packages of educational material with cryptocurrency tokens as a membership reward.

22.    OneCoin members receive commissions for recruiting others to purchase cryptocurrency packages. This multi-level marketing structure appears to have influenced rapid growth of the OneCoin member network. Between the fourth quarter of 2014 and the third quarter of 2016 alone, OneCoin Ltd. generated €3.353 billion in sales revenue and earned "profits" of €2.232 billion.

**B.    Ruja Ignatova**

23.    RUJA IGNATOVA ("RUJA") is an individual believed to be domiciled in Bulgaria and is *sui juris*.

24.    RUJA, known by many as the "CryptoQueen," founded ONECOIN LTD. in or about early-2014.

25.    RUJA was integral to all aspects of ONECOIN LTD.'s operations, including its structure, marketing, overall business strategies, and its offer and sale in the United States -- including in this District -- of investments in ONECOIN LTD.

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

26.     To promote ONECOIN LTD., RUJA organized glamorous parties, funded international company events in Dubai, Macao, Singapore, and the UK; and, according to some sources, even invited Tom Jones to perform at her birthday party in London.

27.     In the year following the creation of ONECOIN LTD. and OneCoin, RUJA and her peers bought millions of dollars' worth of real estate across the world.

28.     Despite being a central figure to all aspects of ONECOIN LTD., RUJA -- since in or about October 2017 -- has made no appearances at any public ONECOIN LTD. events and has made no public statement regarding her whereabouts.  Her disappearance appears to have been purposefully aimed at avoiding being apprehended by law enforcement officials and bearing the burden of her wrongful acts; as she had in the past maintained a persistent online presence, using video portals such as YouTube, social media websites, and ONECOIN LTD.'s own website.

**C.      Konstantin Ignatov**

29.     KONSTANTIN IGNATOV is an individual believed to be domiciled in Bulgaria and is *sui juris*.

30.     KONSTANTIN IGNATOV is the younger brother of RUJA IGNATOVA, OneCoin's founder and leader until her disappearance from public view in or about October 2017. Upon information and belief based on publicly-available materials, KONSTANTIN IGNATOV, starting in late-2017, assumed high-level positions at OneCoin, rising to the top leadership position in mid-2018.  Before ascending to OneCoin leadership in late-2017, KONSTANTIN IGNATOV served as RUJA's personal assistant and, according to some, her bodyguard.

31.     Since December 2017, KONSTANTIN IGNATOV has functioned as a high-level executive, promoter, and spokesperson for the OneCoin organization, appearing at OneCoin-OneLife events worldwide, including in Thailand, Singapore, Colombia, Argentina, Brazil,

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Paraguay, Bulgaria, France, Spain, and the United States.  In this role, IGNATOV has made fraudulent representations to investors -- including those in this District -- about OneCoin's structure, value, usability, and future public offerings.

32.     On or about March 6, 2019, KONSTANTIN IGNATOV was arrested at Los Angeles International Airport and transferred by law enforcement authorities to a federal prison in New York, where he is believed to be housed and awaiting trial in this District on criminal charges related to his involvement with ONECOIN LTD.

**D.     Sebastian Greenwood**

33.     Defendant GREENWOOD is an individual believed to be domiciled in Sweden and is *sui juris.*  GREENWOOD is a co-founder of ONECOIN LTD., has been described as the "public face of OneCoin," served as an affiliate/recruiter for OneCoin, and solicited hundreds if not thousands of OneCoin investors in the United States -- including those in this District -- and abroad through social media sites and public appearances.

34.     Defendant GREENWOOD, along with Defendant RUJA, had previously created BigCoin in early-2014, the predecessor of OneCoin.

35.     Upon information and belief, Defendant GREENWOOD's expertise lied in the area of marketing; and he was integral in devising the multi-level marketing structure of ONECOIN LTD.'s operation as well as organizing its worldwide army of recruiters/promoters and preparing the sales materials they used to lure investors to deposit funds with ONECOIN LTD.

36.     Defendant GREENWOOD was arrested by the Federal Bureau of Investigation and the Crime Suppression Division in Thailand in November 2018 and later extradited to the United States, where he is awaiting trial on criminal charges related to his involvement with ONECOIN LTD.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

### E.      Mark Scott

37.      Defendant SCOTT is an individual believed to be domiciled in Coral Gables, Florida and is *sui juris.*  SCOTT is an attorney who was a Partner at the international law firm Locke Lord.  Using his law license and legal knowledge, SCOTT formed foreign hedge funds through which he and his fellow Defendants laundered the proceeds of the OneCoin cryptocurrency scheme.

38.      More specifically, SCOTT assisted RUJA and others in laundering more than $400 million through a series of purported investment funds holding bank accounts at financial institutions in the Cayman Islands and the Republic of Ireland, among other locations.

39.      Defendant SCOTT was arrested in September 2018 by law enforcement authorities and, upon information and belief, was released from a federal prison in New York on bond and is presently under supervised house arrest with curfew restrictions while he is awaiting trial in this District on criminal charges related to his involvement with ONECOIN LTD.

### F.      Other Liable Persons/Entities

40.      In addition to those persons and entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiff and the Class (defined below), but respecting whom Plaintiff currently lacks specific facts to permit her to name such person or persons as a party defendant.  By not naming such persons or entities at this time, Plaintiff is not waiving her right to amend this pleading to add such parties, should the facts warrant adding such parties.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.      Plaintiff brings this action individually and as a class action on behalf of all individuals and entities who transferred to ONECOIN LTD. any fiat currency or cryptocurrency to invest in OneCoin trader packages/memberships and who suffered financial injury as a result

- 10 -

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

thereof (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the individual Defendants.

42.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

43.     While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in this Class.  All members of the Class may be identified by records maintained by Defendants and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

44.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following: (i) whether the ONECOIN CORPORATE Defendants offered and sold unregistered securities in violation of the federal securities laws; (ii) whether ONECOIN LTD. breached its contracts with Plaintiff and the Class; (iii) whether the ONECOIN Defendants fraudulently solicited investments from Plaintiff and the Class; (v) whether Defendants have been unjustly enriched by the unlawful conduct alleged herein; (vi) whether Plaintiff and the Class will suffer irreparable harm if such unlawful activities are not remedied; and (vii) whether Plaintiff and the Class are entitled to compensatory, exemplary, punitive, injunctive, or rescissory relief as a result of Defendants' wrongful conduct alleged herein, and the measure of such damages.

45.     Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class.  Additionally, Plaintiff and the other

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

members of the Class have all sustained harm in a substantially identical manner as a result of Defendants' wrongful conduct as alleged herein.

46.     Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

47.     Separate actions prosecuted by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

48.     Plaintiff anticipates that there will be no difficulty in managing this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

50.     Accordingly, Plaintiff seeks compensatory, exemplary, punitive, rescissory, injunctive and other equitable relief on behalf of herself and the Class to prevent the irreparable injury they will continue to suffer absent judicial intervention.

## SUBSTANTIVE ALLEGATIONS

## I.     Background on Blockchain Technology and Initial Coin Offerings

### A.     Blockchains

51.     A "blockchain" is essentially a digitized, decentralized, public ledger that cryptographically records, preserves, and presents information.  The general idea is that each "block" contains information, such as details on transactions that are made.  After a "block" is created (with cryptography to verify its contents), the information inside of it cannot be changed. The "block" then becomes part of the "blockchain," and an encrypted version of the information

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

contained therein becomes publicly available along with all the previous "blocks" in the chain. After this process is complete, another block is created with additional information, and so on.

52.     To date, most "blockchains" are used to record transactions involving virtual currencies, *e.g.*, bitcoin (BTC) and Ether (ETH).  However, a "blockchain" could be used to record all types of information.  For example, a blockchain could be used for deed recordation/transfers or even transfers of stock certificates.

### B.     Initial Coin Offerings

53.     From the outset of the project, ONECOIN LTD.'s management claimed it was going to list its OneCoins on a public exchange in Asia by preparing an Initial Public Offering ("IPO").  Users were presented with the opportunity to invest in OFCs, virtual shares in the post-IPO company.  The strategy was later changed to a never-ending Initial Coin Offering ("ICO").

54.     An ICO is a capital raising event in which an entity offers investors a unique "coin" or "token" in exchange for consideration -- most commonly in the form of established virtual currencies (typically BTC and ETH) or fiat currency.  These tokens are issued on a blockchain and are oftentimes listed on online platforms, called virtual currency exchanges, where they are tradable for virtual or fiat currencies.

55.     To participate in an ICO, investors are typically required to transfer virtual currencies to the issuer's address, online wallet, or other account.  During an ICO, or after its completion, the issuer will typically distribute its unique "tokens" to the participants' unique address on the blockchain.  Similar to stockholders in an IPO, holders of these tokens are then entitled to certain rights related to a venture underlying the ICO, such as profits, shares of assets, use of certain services provided by the issuer, and/or voting rights.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

II.      **Background on OneCoin Ltd.**

    A.      **OneCoin Ltd.'s Formation and Creation of OneCoin Currency**

    56.      ONECOIN LTD. was founded in or about April 2014 and promoted that investments in its ecosystem served a variety of altruistic purposes including education, charity, and community, *to wit*:



    57.      **Contrary to those representations, investments in ONECOIN LTD. did none of those things.**

    58.      ONECOIN LTD. promoted various different "trader packages" priced at, for example, €110 and €118,100 euros, including "Starter" packages and "Tycoon Trader," "Premium Trader," "Infinity Trader," and "Ultimate Trader" packages.  Purchase of a trader package provides access to "educational materials" and "tokens."

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com



59. The "educational materials," as it turned out, consisted mostly of information copied from Wikipedia and other free informational sources.

60. Moreover, an investor who purchased the educational materials and "tokens" did not directly receive OneCoins; rather, the investor had to submit his/her "tokens" for mining of OneCoins.[2]



---

[2] In the context of a legitimate cryptocurrency, "mining" refers to the process of adding carefully reviewed transaction records to the cryptocurrency's ledger of past transactions, *i.e.,* the "blockchain." The primary purpose of mining is to allow the cryptocurrency's nodes to reach a secure, tamper-resistant consensus. Mining is also the mechanism used to introduce cryptocurrency "coins" into the system. "Miners" are paid any transaction fees as well as a subsidy of newly created coins. This both serves the purpose of disseminating new coins in a decentralized manner, as well as motivating miners to provide security for the system.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

61.    According to ONECOIN LTD.'s promotional materials, "tokens" are used to secure positions in ONECOIN's "mining pools," depicted in promotional materials as computer hardware used to "mine" OneCoins.



62.    Promotional materials also have claimed that ONECOIN LTD. "ensures" these mining resources, that two mining servers are located in Bulgaria, and that a third mining server is located in Hong Kong.

63.    Consistent with other cryptocurrencies such as bitcoin, ONECOIN LTD.'s promotional materials claim that the mining difficulty of OneCoin increases over time, as additional computer resources, and thus more tokens, are needed to mine a single OneCoin -- thus also increasing the value of each OneCoin.

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com



64.     Once a OneCoin member "mines" OneCoins using his or her tokens, the resulting OneCoins are deposited into the member's account and may be accessed by logging in through a website operated by ONECOIN LTD.

65.     **There were, however, no mining farms; and no mining of OneCoins ever occurred.  The company simply created new OneCoins at will without adhering to any of the actual principles of blockchain technology.**

66.     In fact, from its inception, ONECOIN LTD.'s goal was to deceive its investors with false representations of "mining" that were never intended to occur, as these e-mail exchanged between RUJA and GREENWOOD reveal:

> *[RUJA]: Get members to think that they are mining their OneCoin via crunching (exchanging) tokens for OneCoin.*
>
> *This storey [sic] is good as ppl will then not go super crazy and just try to sell tokens all the time.*
>
> *        *        *
>
> *[GREENWOOD]: The concept of converting tokens into OneCoin is an important phase for validity and truth behind the OneCoin.*

> *The so called 'mining' of coins is a concept that is very familiar in*
> *the industry and a story we can sell to the members.*
>
> \*             \*             \*
>
> *[RUJA]: We are not mining actually – but telling people sh[\*]t.*

67.     ONECOIN LTD. has further claimed that the value of OneCoin is based on market

supply and demand.  In or about June 2016, in a OneCoin promotional video posted on YouTube,

RUJA stated:

> We discussed several times how the value of cryptocurrency comes.
> Cryptocurrency is not backed up.  It is an asset where demand and
> supply drive the price.  Now, one of the drivers of the coin is, of
> course, the brand.  Brand, of course, is how many people know about
> OneCoin?  How many people use OneCoin?  How spread are we
> worldwide?

68.     An official press release issued by ONECOIN LTD. on or about October 1, 2016,

announcing a so-called OneCoin "split," stated in part: "Cryptocurrency value is driven by supply

and demand - and demand is driven by brand and usability.  By doubling the coins, we will be able

to bring the coin to more people and places and strengthen the brand."  Another press release,

issued by ONECOIN LTD. on or about December 2, 2016, stated in part: "The value of each

cryptocurrency depends on its usability, supply and demand.  With over 2.7 million users, OneCoin

has one of the biggest user bases."

69.     The purported value of a OneCoin steadily grew from €0.50 ($0.56 USD) to

approximately €29.95 ($33.60 USD) per coin, as of in or about January 2019.

70.     ONECOIN LTD. has claimed to have a private "blockchain" -- a digital ledger

identifying OneCoins and recording historical transactions.  ONECOIN LTD.'s private blockchain

may be contrasted with bitcoin's blockchain, which is decentralized and public.

71.     At a promotional event in Dubai on or about May 15, 2015, RUJA represented that

the OneCoin blockchain was audited, stating, in part:

- 18 -

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

> We all know it is a very bad world outside. So many people making promises. So many people lying. So many people doing things and not delivering. So, what we did in the last months is we hired an auditor to audit our blockchain. And, ah, I am very proud to say that the result of the first audit is here.

RUJA then introduced the alleged auditor of the OneCoin blockchain. The auditor subsequently provided an opinion that "all transactions are included in the blockchain (no coins are mined outside the blockchain)."

72.      **Contrary to those allegations, though, ONECOIN LTD. had no such blockchain. Instead, ONECOIN LTD. simply used a basic computer SQL script to generate coins.**

73.      As GREENWOOD himself confessed in an e-mail he sent to RUJA:

> *[GREENWOOD]: How can this be investigated and found out?*
>
> *Can any member (trying to be clever) find out that we actually are not investing in machines to mine but it is merely a piece of software doing this for us?*

74.      **Moreover, ONECOIN LTD. principals themselves pre-determined what the value of OneCoins would be, without regard to "market supply and demand."**

75.      Again, e-mails exchanged in 2015 between RUJA and GREENWOOD reveal the truth behind ONECOIN LTD.'s lies:

> *[RUJA]: Goals:*
>
> *6. Trading coin, stable exchange, always close on a high price end of day open day with high price, build confidence – better manipulation so they (investors) are happy.*
>
> *      *      *
>
> *[RUJA]: We can manipulate the exchange by simulating some volatility and intraday pricing [sic].*

76.      As noted above, ONECOIN LTD. operates a multi-level marketing structure through which individuals are compensated for recruiting new members who purchase OneCoin trader packages.

- 19 -

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

77.     OneCoin members receive a commission of between 10% and 25% of the value of the trader packages purchased by individuals they recruit to OneCoin.  However, only 60% of commissions paid to members are withdrawable in cash; the remaining 40% are deposited in a "trading account" which may only be used to purchase either OneCoins or more tokens.

78.     ONECOIN LTD.'s multi-level marketing structure appears to have influenced rapid growth in the number of OneCoin members.  ONECOIN LTD. has claimed to have **over three million members worldwide**.  These OneCoin members include individuals living and/or working within the Southern District of New York who have purchased OneCoin trader packages, at least one of whom sent an interstate wire payment to make such a purchase.

79.     Throughout the years, there were many ways to profit from OneCoin, as per ONECOIN LTD.'s official announcements and company events.  Some of them included the OneCoin asset platform called xCoinx, which was meant to be used as an exchange where users could buy and sell their coins for assets and eventually cash out.

80.     The xCoinx platform was abandoned in 2017 and was followed by a purported merchant platform called "Dealshaker," which ONECOIN LTD. asserted could be used by members to buy and sell real-life assets using OneCoins.

81.     As represented by ONECOIN LTD., OneCoin members visiting Dealshaker may use OneCoins, generally in combination with fiat currency, to purchase goods and services on the Dealshaker platform.

82.     According to a Dealshaker webinar video, posted on YouTube in or about November 2018, a Dealshaker representative announced the unveiling of a "new Dealshaker" and stated, among other things, that: (i) Dealshaker merchants would be allowed to accept as little as 10% of payment for goods and services in OneCoin (and thus, as much as 90% in fiat currency),

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

as opposed to the previous minimum of 50%; and (ii) buyers on the new Dealshaker may use PayPal to transmit fiat currency for purchases from Dealshaker merchants.

83.    The Dealshaker platform, much like the rest of ONECOIN LTD.'s operation, was merely another tool used by ONECOIN LTD. to reap fiat currency from unsuspecting investors.

84.    Despite having been banned in numerous countries, ONECOIN LTD. continues to operate to this day; and as described further below, is now under the management of KONSTANTIN IGNATOV.

**B.    Ruja's Disappearance and Konstantin's Rise to Authority**

85.    As noted above, KONSTANTIN IGNATOV is the brother of ONECOIN LTD. founder and "CryptoQueen" RUJA IGNATOVA.

86.    In a publicly-available video published on YouTube on or about December 17, 2016, KONSTANTIN IGNATOV is introduced as the "Head of Administration of OneLife."

87.    Upon RUJA's disappearance from public view in or about late-2017, KONSTANTIN IGNATOV took on a larger, high-level role managing ONECOIN LTD's affairs.

88.    Since December 2017, KONSTANTIN IGNATOV has appeared at OneCoin-OneLife events worldwide, including in Thailand, Singapore, Colombia, Argentina, Brazil, Paraguay, Bulgaria, France, Spain, and the United States.  During this time, he has functioned as a high-level executive and spokesperson for the OneCoin organization.

89.    Based on social media platform postings, KONSTANTIN IGNATOV appears to be using a Facebook account under the profile name "Konsti Keks" and an Instagram account under the profile name "Konstantin.Ignatov_". The Konsti Keks Facebook account and the Konstantin.Ignatov_ Instagram account contain photographs of IGNATOV and references to OneCoin-OneLife events.

90.     During his appearances at OneCoin-OneLife events, and in publicly-posted online videos connected to those events, KONSTANTIN IGNATOV presents himself as the leader of and spokesperson for OneCoin and a proxy for his sister, RUJA.

91.     In those public appearances, KONSTANTIN IGNATOV has routinely and repeatedly made misrepresentations to investors about OneCoin's structure, value, usability, and future public offering.

**C.     OneCoin Promotions in the United States**

92.     Upon information and belief, ONECOIN LTD. began soliciting investors in the United States in or about July 2015 with an "official launch party" in cities all across the country:



93.     In connection with ONECOIN LTD.'s operations, the company operated a referral program pursuant to which "affiliates"/promoters would earn additional income for referring additional investors to invest in ONECOIN LTD.  The referral program was a run-of-the-mill pyramid scheme.

94.     Upon information and belief, the following individuals are/were among the top ONECOIN LTD. "affiliates"/promoters in the United States:

(a)     Tom McMurrain

(b)     Denis Murdock
(c)     Sal Leto
(d)     Bob Byrum
(e)     Carl Wilt
(f)     Greg Knox
(g)     Margie Scott
(h)     Maurice Katz
(i)     Steve Gotberg
(j)     Kevin Foster
(k)     Sarah McGee
(l)     Glenn Smith
(m)     Ken Labine – Canada – recruits in USA
(n)     Sheri Hilliard-Pearce
(o)     Jason Richard Mangan
(p)     Charlotte Mangan
(q)     Joseph W. Piper
(r)     Jodi Tressler Greene
(s)     Keith Bliss
(t)     Stan Harris
(u)     Mike DiGaetano
(v)     Michael & Latasha DeArmond
(w)     Jeff Shofner
(x)     John Reilly
(y)     Ray Lopez
(z)     Willie Tubbs
(aa)    Mary Spicer
(bb)    Kaytee Godiva
(cc)    Brent Patrick
(dd)    Beverly Washington
(ee)    Sandy Davis
(ff)    Tory Bailey
(gg)    Mark Halbig
(hh)    Erik Enriquez
(ii)    Jack Palis
(jj)    Patricia Ann
(kk)    Jeff Litzenberger
(ll)    Barbara Lloyd
(mm)    Lucille Bolton Shannon
(nn)    Alan C. Delaney
(oo)    Andy McCormack
(pp)    Joseph A Mitchell
(qq)    Rick Harris
(rr)    Katherine Clement
(ss)    Erick Brent
(tt)    Ellis Vernon
(uu)    Dean Hackney

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

(vv) Tom Cao
(ww) Robert Townsend
(xx) Crystal Marie Spath
(yy) Belinda Aquino
(zz) Susan Bayerle
(aaa) Jennifer Vloggity-Korol
(bbb) Wayne Bailey
(ccc) Shanna McCarty
(ddd) Robin 'Robertson' Keith
(eee) Steve Stucke
(fff) John Reilly
(ggg) Richard Marks

95. Plaintiff GRABLIS herself met on multiple occasions with Sal Leto, Bob Byrum, Carl Wilt, Greg Knox, and Margie Scott, who each acted as representatives of ONECOIN LTD. in brokering the purchase/sale to Plaintiff GRABLIS of the OneCoin trader packages/memberships in which she invested.

96. Among the ways ONECOIN LTD. promoted its investments, the "affiliates"/promoters used social media channels such as YouTube, Facebook, and Twitter to raise awareness and interest in investing in ONECOIN LTD.

97. In addition, ONECOIN LTD. hosted numerous promotional and organizational events in the United States to further expand the reach of the investment program.

98. For example, on or about February 27, 2019, KONSTANTIN IGNATOV arrived at San Francisco International Airport ("SFO") on an international flight from Istanbul, Turkey. While being detained at the airport by law enforcement officials, it was determined that KONSTANTIN IGNATOV was in the United States to attend a OneCoin event in Las Vegas, Nevada.

99. According to law enforcement officials who investigated KONSTANTIN IGNATOV's cellphone and laptop computer, KONSTANTIN IGNATOV -- in the lead-up to his trip to the United States -- had discussed with a OneCoin affiliate promoter the logistics of his trip.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

100.     Specifically, the OneCoin promoter wrote to KONSTANTIN IGNATOV:

> [I]n Las Vegas, 14:00 - 18:00h .. at least 20+ top selected leaders
> ([from many] cities in USA) there for the meeting/DS training and
> love to have you with us 30-60 minutes.  Will be inside our Bellagio
> Hotel-Suite or Pen[t]house. .   If you can meet any time between
> 17:00-20:00h on either 4 or 5 of March, I will arrange another
> group.

IGNATOV responded, "*Yes let's do this!*"

101.     In that same exchange, the OneCoin promoter wrote to KONSTANTIN IGNATOV:

> *Send you again the proposed meeting schedule for next 02 days.*
> *Also, do not need mention dr. Ruja.*

Upon information and belief, the reference to "Dr. Ruja" was a reference to RUJA IGNATOVA.

102.     In the days immediately following KONSTANTIN IGNATOV's arrival in San Francisco, California, several social media messages were posted suggesting that his trip to the United States was for the purpose of conducting ONECOIN LTD. business, including the following:

(a)   On or about March 5, 2019, KONSTANTIN IGNATOV posted a photo of himself in front of a sign that appears to be in Las Vegas on his Instagram account page ("Ignatov' s Instagram Account").  In a comment on that Instagram post, KONSTANTIN IGNATOV wrote: "[I] am here for work reasons not holiday";

(b)   Between on or about March 1, 2019, and March 3, 2019, three videos were posted on YouTube that all appear to be from a OneCoin promotional/networking event that took place in Las Vegas, Nevada (the "OneCoin Event");

(c)   One YouTube video is titled "Meeting in Las Vegas with Mr. Konstantin."  The description of the video details a meeting in Las Vegas with KONSTANTIN IGNATOV, three OneCoin affiliates, and key American-based OneLife Network leaders consisting of Black, Blue, and Diamond members discussing future possible Dealshaker development in the United States;

(d)   Another YouTube video shows a series of photographs captured during the OneCoin Event in Las Vegas, Nevada, including:

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

1. An image of KONSTANTIN IGNATOV wearing a blue shirt with the name "OneCoin" written on the front of the shirt;

2. Several photographs of KONSTANTIN IGNATOV with U.S.-based OneCoin affiliates; and

3. An image of a whiteboard titled "OneLife Network/Dealshaker" and which includes, among other things, a schedule listing OneCoin/OneLife Network events.

(e) A third YouTube video showing a series of photographs captured during the OneCoin Event in Las Vegas, Nevada, including a photo of KONSTANTIN IGNATOV holding up two framed portraits: one of himself, and one of RUJA; and

(f) A Facebook post dated March 5, 2019 in which the Facebook user wrote: "During a meeting that just took place in Las Vegas, one of the first questions was, when can people monetize their coins (cash out). Konstantin said immediately '[I]f you are here to cash out, leave this room now; because you don't understand what this project is about.'"

103.   On March 6, 2019, as KONSTANTIN IGNATOV was seeking to exit the United States, he was arrested by the U.S. Federal Bureau of Investigation at Los Angeles International Airport, taken into custody, and charged by the U.S. Attorney's Office for the Southern District of New York with wire fraud, securities fraud, and money laundering offenses for his management of, and involvement with, ONECOIN LTD.

## III.   The OneCoin Investments Were Ponzi Schemes and Securities

### A.   The OneCoin Defendants Operated a Ponzi Scheme

104.   Contrary to the allegations of fantastic investment returns through the power of ONECOIN LTD.'s mining processes and the "market demand" for OneCoins, the ONECOIN CORPORATE Defendants were actually operating a Ponzi scheme.

105.   Any investment returns provided to ONECOIN LTD. investors were not legitimately generated; rather, ONECOIN LTD. simply used new ONECOIN LTD. investors' money to pay the promised returns on outstanding ONECOIN LTD. investors' investments.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

106.    In addition, ONECOIN LTD. used new ONECOIN LTD. investors' funds to pay the ONECOIN LTD. directors and affiliates -- including, but not limited to, Defendants RUJA, KONSTANTIN IGNATOV, and GREENWOOD -- salary and commissions for their role in bringing additional victims into the scheme.

107.    The reality is, ONECOIN LTD. was not offering a revolutionary technology, but was instead selling a new take on a century-old scam.   Specifically, ONECOIN LTD. used cryptocurrency to coat its Ponzi/pyramid scheme with the thinnest veneer of legitimacy.   Despite such efforts, it is abundantly clear that the ONECOIN CORPORATE Defendants were conducting and/or supporting a Ponzi/pyramid scheme.   Indeed, the ONECOIN LTD. investment program exhibits numerous characteristics of such schemes, including:

(a) providing exorbitant returns on an investment that had no income other than new investor money;

(b) artificially increasing the value of its cryptocurrency by having new investors in the Ponzi scheme purchase trading packages/memberships to invest;

(c) self-ascribing value to the Ponzi scheme investments rather than having those investment values dictated by actual market demand; and

(d) expanding the amount of people in this Ponzi scheme by implementing a Pyramid scheme that paid a commission several levels deep for recruits.

**B.    OneCoin Trader Packages/Memberships and OneCoins were Investment Contract Securities**

108.    This Action alleges claims under Sections 12(a)(1) and 15(a) of the Securities Act [15 U.S.C. §§ 77l(a)(1) and 77o(a)], and are based solely on allegations of strict liability.

109.    OneCoin trader packages/memberships and OneCoins were not registered with the Securities and Exchange Commission ("SEC"); and thus, the ONECOIN CORPORATE Defendants engaged in the offer and sale of unregistered securities.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

110.    Under the Securities Act, a "security" is defined as including any "note," "investment contract," or "instrument commonly known as a 'security.'" *See* 15 U.S.C. §§ 77b(a)(1). Here, the OneCoins and the OneCoin trader packages/memberships each constitute an investment contract.  In *SEC v. W.J. Howey Co.*, the United States Supreme Court established a three-part test to determine whether an offering, contract, transaction, or scheme constitutes an investment contract.[3]  Under the test articulated in *Howey*, a contract, transaction, or scheme is an "investment contract" if it involves: (i) the investment of money; (ii) in a common enterprise; (iii) with the expectation of profits to come solely from the efforts of others.

111.    When determining whether a security has been offered and sold, the focus must be on the economic realities underlying the transaction.  Here, the economic realities are that Plaintiff and the Class invested funds in trader packages/memberships to obtain OneCoins -- which they expected would lead to "financial freedom" and "guaranteed" lucrative returns.  Investors in the ONECOIN LTD. trader packages/memberships used cryptocurrency or fiat currency to purchase the trader packages/memberships required to obtain their OneCoins.  Accordingly, Plaintiff's and the Class' investment of cryptocurrency or fiat currency constitutes an investment of money for the purposes of determining whether an investment involved a security.

112.    Plaintiff and the Class were investing in a common enterprise with the ONECOIN CORPORATE Defendants, as the cryptocurrency and fiat currency were pooled under the control of Defendant ONECOIN LTD., and the success of the investments -- and thus potential profits stemming from the future valuation of the OneCoins -- was entirely reliant on the ONECOIN

---

[3]    *See SEC v. W.J. Howey, Co.*, 328 U.S. 293 (1946); *see also Intern. Bhd. of Teamsters v. Daniel*, 421 U.S. 837, 852 (1979) (noting that the *Howey* test is not the only test for determining a security, but has been held to embody "all the attributes that run through all of the Court's decisions defining a security").

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

CORPORATE Defendants' actions, primarily ONECOIN LTD.'s alleged implementation of its mining processes, which ONECOIN LTD. claimed would produce returns sufficient to cover interest payments to the OneCoin membership holders and investors.

113.    In short, it is indisputable that the ONECOIN CORPORATE Defendants were selling investment contracts and that any success from ONECOIN LTD.'s implementation of its supposed mining pools – enabling payment of the interests and bonuses that were to be distributed – as well as any future potential increases to the value of the OneCoins were entirely dependent on the ONECOIN CORPORATE Defendants' actions.

C.    **The OneCoin Corporate Defendants Were "Sellers" Under the Federal Securities Laws**

114.    Liability for selling unregistered securities extends to "the person who successfully solicits the purchase [of an unregistered security], motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 643 (1988).

115.    As noted above, Plaintiff and the Class were actively involved in researching ONECOIN LTD. and the OneCoin trader packages/memberships prior to investing with ONECOIN LTD.  Such research included reviewing virtual currency online forums, reading ONECOIN LTD.'s publications, and viewing its promotional videos.  Accordingly, each of the solicitations outlined below were successful in soliciting Plaintiff and the Class to invest with ONECOIN LTD.

116.    Each of the ONECOIN CORPORATE Defendants are considered "sellers," as each successfully solicited investments in OneCoin trader packages/memberships and/or OneCoins for their own or ONECOIN LTD.'s financial benefit.

117.    It is indisputable that the ONECOIN CORPORATE Defendants participated in the offer and sale of trader packages/memberships required to obtain OneCoins.  More specifically,

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

ONECOIN LTD. -- as the direct issuer of OneCoins and the creator, and host, of the trader packages/memberships required to obtain those OneCoins -- directly offered and sold such investment contract securities.   Defendants RUJA, KONSTANTIN IGNATOV, and GREENWOOD -- as directors and principals of ONECOIN LTD. -- controlled its actions and are thus equally deemed "sellers."

118.   Based on the foregoing, each of the ONECOIN CORPORATE Defendants were "sellers" of unregistered securities (in the form of OneCoins and the trader packages/memberships required to obtain those OneCoins) under the federal securities laws.

## IV.   **Defendants Laundered Their Ill-Gotten Investment Funds**

119.   While defrauding investors out of their investment funds, the ONECOIN CORPORATE Defendants, along with Defendant SCOTT, actively laundered ONECOIN LTD.'s ill-gotten investor treasury.

120.   Defendants acted together through an intricate web of shell companies to launder ONECOIN LTD. investor funds and to conceal and disguise the nature, location, source, ownership, and control of the proceeds they had obtained through their illegal activities.

121.   For example, SCOTT created the following entities, among others, to funnel investor funds that were supposed to have been used for "mining" the purported OneCoins:

(a) MSS International Consultants, a British Virgin Islands entity,[4]

(b) 133 Sunset Lane Acquisition Limited,

(c) MSSI 31 Dale Avenue Property Group LLC,

(d) DRP Holdings, Ltd.,

(e) MSS Marine Group, Ltd.,

---

[4] "MSS" are the initials of Mark S. Scott.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

(f) EGD Investment, Ltd.,

(g) Mumbelli Group Holding (Cayman), Ltd., and

(h) HFT Holding Limited

122.    One of those entities (133 Sunset Lane Acquisition Limited) was used to purchase a $2.85 million Massachusetts mansion in which SCOTT and his wife lived.

123.    Another of the entities (MSSI 31 Dale Avenue Property Group LLC) was used to purchase a $3.7 million mansion in Hyannis Port, Massachusetts.

124.    According to public records, SCOTT worked with the ONECOIN CORPORATE Defendants to launder more than $400 million through a series of purported investment funds holding bank accounts at financial institutions in the Cayman Islands and the Republic of Ireland, among other locations.

125.    Upon information and belief, several hundred million more dollars -- if not billions of dollars -- have likewise been laundered by Defendants.

## V.    Defendants Led Class Members to Incur Substantial Losses

126.    While the SEC has yet to involve itself – at least publicly – in the present matter, many regulators around the world have displayed no such hesitancy.

127.    By late-2017, it was apparent that ONECOIN LTD.'s investment program was a Ponzi scheme.

128.    Regulatory and law enforcement authorities in China, the United Kingdom, Ireland, Canada, Italy, Germany, India, the Ukraine, Bulgaria, Austria, Belgium, Thailand, Vietnam, Samoa, and Uganda have either barred ONECOIN LTD. from offering its investments in their territories or have issued warnings to its residents that ONECOIN LTD. is a fraudulent investment scam to be avoided.

129.    Moreover, as noted above, RUJA, KONSTANTIN IGNATOV, and SCOTT have each been indicted by grand juries in this District; and all three individuals are awaiting trial on charges related to their involvement with ONECOIN LTD.  Defendant GREENWOOD has also been arrested and extradited to the United States, though the status of criminal prosecution against him is presently unknown.

130.    As a result of Defendants' fraudulent and misleading activities -- as well as their violation of multiple securities laws -- Plaintiff and the Class have suffered damages believed to be greater than $4 billion.

**VI.    Necessity for Judicial Intervention**

131.    In 2013, the SEC issued an investor alert on "Ponzi Schemes Using Virtual Currencies," warning investors to be wary of investment opportunities offering "high investment returns with little or no risk" and explaining that "Ponzi schemes typically involve investments that have not been registered with the SEC or with state securities regulators."  Here, the ONECOIN CORPORATE Defendants have conducted and propagated precisely such a scheme.

132.    On July 25, 2017, the SEC issued a report on "the DAO," which offered tokens for sale online, in which the SEC advised those using "distributed ledger or blockchain-enabled means for capital raising to take appropriate steps to ensure compliance" with the federal securities laws, and stated that "[a]ll securities offered and sold in the United States must be registered with the Commission . . ." or qualify for an exemption from registration.  On the same day, the SEC issued an investor bulletin urging caution when investing in ICOs and urging investors to be mindful that promoters and initial sellers that lead buyers of tokens to expect a return on their investment or participate in shared returns provided by the project may be offering a security for sale.

133.    Virtual currencies are a relatively new phenomenon, and numerous individuals and entities -- by engaging in unlawful conduct with near impunity -- are taking advantage of the time

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

it takes for regulatory agencies to address new investment developments, as the ONECOIN CORPORATE Defendants have here by raising billions of dollars with promises of profits to be made from investing in OneCoin trader packages/memberships and/or OneCoins.

134.    It is clear from recent events that the rampant disregard of state and federal securities laws and consequently, abuse of investors, taking place in connection with ONECOIN LTD.'s unlawful and fraudulent conduct has been noted by state and federal regulatory agencies.

135.    While OneCoin trader packages/memberships and/or OneCoins plainly constitute investment contract securities, at no time was a registration statement ever filed or in effect with the SEC for the securities being offered.  As such, the unlawful, unregistered offering of securities by the ONECOIN CORPORATE Defendants to Plaintiff and the Class violated Sections 5, 12(a)(1) and 15(a) of the Securities Act; and the private right of action provided by Section 12(a)(1) of the Securities Act, created for just this type of situation, provides strict liability for the ONECOIN CORPORATE Defendants' sale of such unregistered securities.

136.    Plaintiff has duly performed all of her duties and obligations, and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or else have been excused or waived.

137.    To enforce their rights and those of the Class, Plaintiff has retained undersigned counsel and is obligated to pay counsel a reasonable fee for its services, for which Defendants are liable as a result of their bad faith and otherwise.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## COUNT I - VIOLATION OF SECTION 12(a) OF THE SECURITIES ACT
### [AGAINST THE ONECOIN CORPORATE DEFENDANTS]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

138.   Section 12(a)(1) grants Plaintiff a private right of action against any person who offers or sells a security in violation of Section 5, and states that such person,

> Shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

139.   From April 2014 through and including the present, in connection with the offer and sale of OneCoin trader packages/memberships and/or OneCoins, the ONECOIN CORPORATE Defendants unlawfully made use of means or instruments of transportation or communication in interstate commerce or of the mails for the purposes of offering, selling, or delivering unregistered securities in direct violation of the Securities Act.

140.   The offer and sale of OneCoins and solicitation of investments in the OneCoin trader packages/memberships constituted the offer and sale of unregistered securities under controlling federal law.   OneCoin trader packages/memberships and/or OneCoins exhibit the following particular hallmarks of a security under the *Howey* test: (a) to receive any OneCoins (and invest in the OneCoin trader packages/memberships), an investment of money, in the form of fiat currency and/or cryptocurrency was required; (b) the investment of money was made into the common enterprise that is Defendant ONECOIN LTD. and its ability to provide returns using its "mining pools" or otherwise; and (c) the success of the investment opportunities and any potential returns thereon were entirely reliant on the ONECOIN CORPORATE Defendants' ability to continuously provide such returns to investors.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

141.    Each of the individual ONECOIN CORPORATE Defendants constitute "seller[s]" under the Securities Act and are thus equally liable for selling unregistered securities in connection with ONECOIN LTD.

142.    The ONECOIN CORPORATE Defendants created and maintained ONECOIN LTD. and profited handsomely from investments in the OneCoin trader packages/memberships and/or OneCoins.

143.    As such, the ONECOIN CORPORATE Defendants have participated in the offer and sale of unregistered securities in violation of the Securities Act, and are liable to Plaintiff and the Class for rescission and/or compensatory damages.

## COUNT II - VIOLATION OF SECTION 15(a) OF THE SECURITIES ACT
### [AGAINST DEFENDANT RUJA IGNATOVA]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

144.    Due to her ownership in and/or control over ONECOIN LTD.'s organization, Defendant RUJA acted as controlling person of ONECOIN LTD. within the meaning of Section 15(a) of the Securities Act as alleged herein.

145.    By virtue of her top-level executive and controlling person positions as a behind the scenes owner/developer and/or based on her awareness of Defendant ONECOIN LTD.'s operations, Defendant RUJA had the power to influence and control and did influence and control, directly or indirectly, the decision making relating to the OneCoin trader packages/memberships and/or OneCoins, including the decision to engage in the sale of unregistered securities in furtherance thereof.

146.    Defendant RUJA is a culpable participant in the fraudulent scheme described herein and caused ONECOIN LTD. to engage in the acts and omissions described herein.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

147.    Accordingly, Defendant RUJA is liable to Plaintiff and the Class as a control person of Defendant ONECOIN LTD. under Section 15(a) of the Securities Act.

## COUNT III - VIOLATION OF SECTION 15(a) OF THE SECURITIES ACT
### [AGAINST DEFENDANT KONSTANTIN IGNATOV]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

148.    Due to his ownership in and/or control over ONECOIN LTD.'s organization, Defendant KONSTANTIN IGNATOV acted as controlling person of ONECOIN LTD. within the meaning of Section 15(a) of the Securities Act as alleged herein.

149.    By virtue of his top-level executive and controlling person positions as a behind the scenes owner/developer and/or based on his awareness of Defendant ONECOIN LTD.'s operations, Defendant KONSTANTIN IGNATOV had the power to influence and control and did influence and control, directly or indirectly, the decision making relating to the OneCoin trader packages/memberships and/or OneCoins, including the decision to engage in the sale of unregistered securities in furtherance thereof.

150.    Defendant KONSTANTIN IGNATOV is a culpable participant in the fraudulent scheme described herein and caused ONECOIN LTD. to engage in the acts and omissions described herein.

151.    Accordingly, Defendant KONSTANTIN IGNATOV is liable to Plaintiff and the Class as a control person of Defendant ONECOIN LTD. under Section 15(a) of the Securities Act.

## COUNT IV - VIOLATION OF SECTION 15(a) OF THE SECURITIES ACT
### [AGAINST DEFENDANT SEBASTIAN GREENWOOD]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

152.    Due to his ownership in and/or control over ONECOIN LTD.'s organization, Defendant GREENWOOD acted as controlling person of ONECOIN LTD. within the meaning of Section 15(a) of the Securities Act as alleged herein.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

153.     By virtue of his top-level executive and controlling person positions as a behind the scenes owner/developer and/or based on his awareness of Defendant ONECOIN LTD.'s operations, Defendant GREENWOOD had the power to influence and control and did influence and control, directly or indirectly, the decision making relating to the OneCoin trader packages/memberships and/or OneCoins, including the decision to engage in the sale of unregistered securities in furtherance thereof.

154.     Defendant GREENWOOD is a culpable participant in the fraudulent scheme described herein and caused ONECOIN LTD. to engage in the acts and omissions described herein.

155.     Accordingly, Defendant GREENWOOD is liable to Plaintiff and the Class as a control person of Defendant ONECOIN LTD. under Section 15(a) of the Securities Act.

## COUNT V - BREACH OF CONTRACT
### [AGAINST DEFENDANT ONECOIN LTD.]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

156.     The terms of the OneCoin trader packages/memberships constitute a contract between: (1) Plaintiff and the Class Members, and (2) ONECOIN LTD.

157.     The contract was entered into by and between ONECOIN LTD. and each Class Member between April 2014 and May 6, 2019.

158.     The terms of the OneCoin trader packages/memberships called for an investment of fiat currency or cryptocurrency by Plaintiff and the Class Members.

159.     The funds paid by Plaintiff and the Class Members pursuant to the OneCoin trader packages/memberships were pooled by ONECOIN LTD. in an effort by ONECOIN LTD. to secure a profit for itself and the investors.  As a result, the investors, including Plaintiff and the Class, shared in the risks and benefits of the investment.

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

160.    Plaintiff and the Class Members relied on, and are dependent upon, the expertise and efforts of ONECOIN LTD. for their investment returns.

161.    The terms of the OneCoin trader packages/memberships constitute an investment contract and are therefore subject to federal and state securities laws, including the registration requirements promulgated thereunder.

162.    ONECOIN LTD. breached its contracts with Plaintiff and the Class by failing to provide any actual mining efforts, cryptocurrency, and returns on the initial investments pursuant to the terms of the OneCoin trader packages/memberships.  Rather than adhere to the express, unequivocal terms of the contracts, ONECOIN LTD. converted Plaintiff's and the Class' investments into near worthless OneCoin trader packages/memberships and/or OneCoins.

163.    Moreover, no registration statement was filed or in effect with any federal or state regulatory body, and no exemption from registration exists with respect to the OneCoin trader packages/memberships.

164.    By virtue of the foregoing, ONECOIN LTD. is liable to Plaintiff and the Class for damages resulting from ONECOIN LTD.'s breaches of contract.

165.    To the extent that Plaintiff has received from ONECOIN LTD. any benefits through the contract -- though none are known to them at this time -- Plaintiff hereby offers to restore to ONECOIN LTD. those benefits, once they are identified and can be quantified.

## COUNT VI - UNJUST ENRICHMENT
### [AGAINST THE ONECOIN CORPORATE DEFENDANTS]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

166.    The ONECOIN CORPORATE Defendants have reaped the benefits of operating and/or personally benefiting from inducing Plaintiff and the Class to invest in fraudulent

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Ponzi/pyramid schemes (OneCoin trader packages/memberships and/or OneCoins), thereby causing actual harm to thousands of investors.

167.    It would be unconscionable and against the fundamental principles of justice, equity, and good conscience for the ONECOIN CORPORATE Defendants to retain the substantial monetary benefits they have received as a result of their misconduct.

168.    To remedy the ONECOIN CORPORATE Defendants' unjust enrichment, the Court should order the ONECOIN CORPORATE Defendants to immediately return Plaintiff's and the Class' investments and disgorge any amounts received by the ONECOIN CORPORATE Defendants as a result of their misconduct alleged herein.

## COUNT VII - FRAUDULENT INDUCEMENT
### [AGAINST THE ONECOIN CORPORATE DEFENDANTS]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

169.    The ONECOIN CORPORATE Defendants, by acts of both omission and commission, made to Plaintiff and the Class Members false statements of material facts about the services Plaintiff and the Class Members would receive from ONECOIN LTD. upon investing in the OneCoin trader packages/memberships and/or OneCoins.

170.    Specifically, the ONECOIN CORPORATE Defendants' representations to Plaintiff and the Class Members that, among other things:

(a)    OneCoins were actual cryptocurrencies;

(b)    ONECOIN LTD. utilized mining equipment that would provide OneCoin trader package owners/memberships valuable mined OneCoins that helped its investors generate far-greater-than-average returns on their investments;

(c)    The value of OneCoin trader packages/memberships and/or OneCoins were based on market demand, not an arbitrarily-ascribed value internally determined by ONECOIN LTD. itself;

(d)    Investment returns were legitimately generated and were not simply a reallocation of new ONECOIN LTD. investors' money used to pay the

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

promised returns on outstanding ONECOIN LTD. investors' investments in classic Ponzi scheme fashion;

(e)     The OneCoin trader packages/memberships complied with all applicable securities laws; and

(f)     The ONECOIN LTD. affiliates who were paid commissions for their sale of OneCoin trader packages/memberships and/or OneCoins were properly registered to procure those sales

were false, and the ONECOIN CORPORATE Defendants knew at the time the statements were made that the statements were false.

171.     The ONECOIN CORPORATE Defendants intended that Plaintiff and the Class Members would be induced into action by relying upon the statements of fact made to them by and on behalf of the ONECOIN CORPORATE Defendants.

172.     In considering whether to invest in OneCoin trader packages/memberships and/or OneCoins and entrust to ONECOIN LTD. their valuable assets; Plaintiff and the Class Members reasonably and justifiably relied on the statements of fact made to them by and on behalf of the ONECOIN CORPORATE Defendants.

173.     As a direct and proximate result of Plaintiff's and the Class Members' reliance on the statements made to them by the ONECOIN CORPORATE Defendants, Plaintiff and the Class Members have suffered damage.

## COUNT VIII - FRAUDULENT MISREPRESENTATION
### [AGAINST THE ONECOIN CORPORATE DEFENDANTS]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

174.     The ONECOIN CORPORATE Defendants, by acts of both omission and commission, made to Plaintiff and the Class Members false statements of material facts about the services Plaintiff and the Class Members would receive from ONECOIN LTD. upon opening

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

ONECOIN LTD. memberships and investing in the OneCoin trader packages/memberships and/or OneCoins.

175.    Specifically, the ONECOIN CORPORATE Defendants' representations to Plaintiff and the Class Members that, among other things:

(a)    OneCoins were actual cryptocurrencies;

(b)    ONECOIN LTD. utilized mining equipment that would provide OneCoin trader package owners/memberships valuable mined OneCoins that helped its investors generate far-greater-than-average returns on their investments;

(c)    The value of OneCoin trader packages/memberships and/or OneCoins were based on market demand, not an arbitrarily-ascribed value internally determined by ONECOIN LTD. itself;

(d)    Investment returns were legitimately generated and were not simply a reallocation of new ONECOIN LTD. investors' money used to pay the promised returns on outstanding ONECOIN LTD. investors' investments in classic Ponzi scheme fashion;

(e)    The OneCoin trader packages/memberships complied with all applicable securities laws; and

(f)    The ONECOIN LTD. affiliates who were paid commissions for their sale of OneCoin trader packages/memberships and/or OneCoins were properly registered to procure those sales

were false, and the ONECOIN CORPORATE Defendants knew at the time the statements were made that the statements were false.

176.    The ONECOIN CORPORATE Defendants' misrepresentations were made with reckless disregard for the truth.

177.    The ONECOIN CORPORATE Defendants intended that Plaintiff and the Class Members would be induced into action by relying upon the statements of fact made to them by and on behalf of the ONECOIN CORPORATE Defendants.

178.    In considering whether to invest in OneCoin trader packages/memberships and/or OneCoins and entrust to ONECOIN LTD. their valuable assets; Plaintiff and the Class Members

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

reasonably and justifiably relied on the statements of fact made to them by and on behalf of the ONECOIN CORPORATE Defendants.

179.    As a direct and proximate result of Plaintiff's and the Class Members' reliance on the statements made to them by the ONECOIN CORPORATE Defendants, Plaintiff and the Class Members have suffered damage.

## COUNT IX - NEGLIGENT MISREPRESENTATION
### [AGAINST THE ONECOIN CORPORATE DEFENDANTS]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

180.    The ONECOIN CORPORATE Defendants, by acts of both omission and commission, made to Plaintiff and the Class Members false statements of material facts about the services Plaintiff and the Class Members would receive from ONECOIN LTD. upon opening a ONECOIN LTD. membership and investing in the OneCoin trader packages/memberships and/or OneCoins in exchange for the fees they were compelled to pay to maintain membership accounts at ONECOIN LTD.

181.    Specifically, the ONECOIN CORPORATE Defendants' representations to Plaintiff and the Class Members that, among other things:

(a)    OneCoins were actual cryptocurrencies;

(b)    ONECOIN LTD. utilized mining equipment that would provide OneCoin trader package owners/memberships valuable mined OneCoins that helped its investors generate far-greater-than-average returns on their investments;

(c)    The value of OneCoin trader packages/memberships and/or OneCoins were based on market demand, not an arbitrarily-ascribed value internally determined by ONECOIN LTD. itself;

(d)    Investment returns were legitimately generated and were not simply a reallocation of new ONECOIN LTD. investors' money used to pay the promised returns on outstanding ONECOIN LTD. investors' investments in classic Ponzi scheme fashion;

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

(e)     The OneCoin trader packages/memberships complied with all applicable securities laws; and

(f)     The ONECOIN LTD. affiliates who were paid commissions for their sale of OneCoin trader packages/memberships and/or OneCoins were properly registered to procure those sales

were false, and the ONECOIN CORPORATE Defendants knew at the time the statements were made that the statements were false.

182.     The ONECOIN CORPORATE Defendants had no reasonable grounds upon which to believe the statements were true when made to Plaintiff and the Class Members.

183.     The ONECOIN CORPORATE Defendants intended that Plaintiff and the Class Members would be induced into action by relying upon the statements of fact made to them by and on behalf of the ONECOIN CORPORATE Defendants.

184.     In considering whether to invest in OneCoin trader packages/memberships and/or OneCoins and entrust to ONECOIN LTD. their valuable assets; Plaintiff and the Class Members reasonably and justifiably relied on the statements of fact made to them by and on behalf of the ONECOIN CORPORATE Defendants.

185.     As a direct and proximate result of Plaintiff's and the Class Members' reliance on the statements made to them by the ONECOIN CORPORATE Defendants, Plaintiff and the Class Members have suffered damage.

## COUNT X - CONVERSION
### [AGAINST THE ONECOIN CORPORATE DEFENDANTS]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 – 137 above, and further alleges:

186.     Plaintiff transferred funds and assets to ONECOIN LTD. for investment to obtain OneCoin trader packages/memberships and/or OneCoins.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

187.    ONECOIN LTD. has kept Plaintiff's and the Class Members' funds and assets after Plaintiff and the Class Members requested their return, despite ONECOIN LTD.'s lack of any ownership interest in the assets.

188.    By refusing to return to Plaintiff and the Class Members their assets, ONECOIN LTD. intended to interfere with, and indeed has interfered with, Plaintiff's and the Class Members' ownership and interest in those holdings and has deprived Plaintiff and the Class Members of their property, permanently or temporarily.

189.    Upon information and belief, ONECOIN LTD. has utilized Plaintiff's and the Class Members' funds and assets to cover ONECOIN LTD.'s own business expenses and to enrich its directors, shareholders, and affiliates, including Defendants RUJA, KONSTANTIN IGNATOV, and GREENWOOD.

190.    As a result of ONECOIN LTD.'s conversion of Plaintiff's and the Class Members' funds and assets to its own corporate uses and the personal use of its directors, shareholders, and affiliates; Plaintiff and the Class Members have suffered damage.

## COUNT XI - CIVIL CONSPIRACY
### [AGAINST ALL DEFENDANTS]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1–137 above, and further alleges:

191.    Defendants have conspired with one another, willfully and knowingly, to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.  As such, Defendants did willfully and knowingly combine, conspire, confederate, and agree together and with each other to commit, *inter alia*, securities fraud, wire fraud, and money laundering.

192.    More specifically, Defendants conspired with one another to perpetrate an unlawful act upon Plaintiff and the Class Members or to perpetrate a lawful act by unlawful means, *to wit*:

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

they made multiple misrepresentations of fact to Plaintiff and the Class Members in an effort to extract from Plaintiff and the Class Members funds, assets, and cryptocurrency to fund ONECOIN LTD.'s own business expenses and to enrich its directors, shareholders, and affiliates, not to fund the purportedly legitimate purpose to which Plaintiff and the Class Members were told by Defendants that their investment assets were being applied – all of which put Defendants' own pecuniary interest ahead of Plaintiff's and the Class Members' welfare and economic safety.

193.    Defendants solicited and/or accepted from Plaintiff and the Class Members large sums of funds, assets, and cryptocurrency while withholding from Plaintiff and the Class Members certain material facts.

194.    Each of the Defendants agreed to the illicit purpose for garnering investment monies from Plaintiff and the Class Members so that ONECOIN LTD.'s directors, shareholders, and affiliates could enjoy lavish lifestyles with Plaintiff's and the Class Members' funds, assets, and cryptocurrency.

195.    Defendants were each aware of, and consented to, the misrepresentations detailed above and knew that the efforts to garner funds, assets, and cryptocurrency from Plaintiff and the Class Members was all part of a fraud aimed solely at enriching ONECOIN LTD.'s directors, shareholders, and affiliates without any intent to remunerate Plaintiff and the Class Members in any legitimate way purported by ONECOIN LTD.

196.    In furtherance of their conspiracy, Defendants made to Plaintiff and the Class Members, or agreed to have someone make on their behalf, the false statements of fact detailed above and purposefully withheld from Plaintiff and the Class Members certain material facts detailed above in a concerted effort to obtain Plaintiff's and the Class Members' funds, assets, and cryptocurrency.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

197.    To fulfill its role in the conspiracy, ONECOIN LTD. operated its website, disseminated an army of promoters and equipped them with false information about the OneCoin trader packages/memberships and/or OneCoins, and pretended to be operating a legitimate, legally-compliant investment platform.

198.    To fulfill her role in the conspiracy, Defendant RUJA:

(a)     willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, *to wit*: RUJA, and others working on her behalf, made and caused to be made false statements and misrepresentations soliciting individuals throughout the world, including in the Southern District of New York, to invest in "OneCoin," a purported cryptocurrency, and thereby caused individuals in the United States and elsewhere to purchase OneCoin packages -- resulting in the receipt of over $1 billion of investor funds into OneCoin-related bank accounts.

(b)     willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, *to wit*: RUJA, and others working on her behalf, made and caused to be made false statements and misrepresentations soliciting individuals throughout the world, including in the Southern District of New York, to invest in "OneCoin," a purported cryptocurrency, and instructed individuals to transmit investment funds to OneCoin depository accounts in order to purchase OneCoin packages, thereby causing individuals to send interstate and international wires representing their OneCoin investments, and resulting in the receipt of over $1 billion of investor funds into OneCoin-related bank accounts

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

(c)      knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity -- conducted and attempted to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, *to wit*: approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as "OneCoin," knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity; and

(d)      transported, transmitted, and transferred, and attempted to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States -- knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, *to wit*: approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as "OneCoin."

199.      To fulfill his role in the conspiracy, Defendant IGNATOV:

(a)      willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, *to wit*: IGNATOV, and others working on her behalf, made and caused to be made false statements and misrepresentations soliciting individuals throughout the world, including in the Southern District of New York, to invest in "OneCoin," a purported cryptocurrency, and thereby caused individuals in the United States and elsewhere to purchase OneCoin packages -- resulting in the receipt of over $1 billion of investor funds into OneCoin-related bank accounts.

(b)      willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, *to wit*: IGNATOV, and others working on her behalf, made and caused to be made false statements and misrepresentations soliciting individuals throughout the world, including in the Southern District of New York, to invest in "OneCoin," a purported cryptocurrency, and instructed individuals to transmit investment funds to OneCoin depository accounts in order to purchase OneCoin packages, thereby causing individuals to send interstate and international wires representing their OneCoin investments, and resulting in the receipt of over $1 billion of investor funds into OneCoin-related bank accounts

(c)     knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity -- conducted and attempted to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, *to wit*: approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as "OneCoin," knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity; and

(d)     transported, transmitted, and transferred, and attempted to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States -- knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, *to wit*: approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as "OneCoin."

200.    To fulfill his role in the conspiracy, Defendant GREENWOOD:

(a)     willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances by:

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

(a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, *to wit*: GREENWOOD, and others working on her behalf, made and caused to be made false statements and misrepresentations soliciting individuals throughout the world, including in the Southern District of New York, to invest in "OneCoin," a purported cryptocurrency, and thereby caused individuals in the United States and elsewhere to purchase OneCoin packages -- resulting in the receipt of over $1 billion of investor funds into OneCoin-related bank accounts.

(b)     willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, *to wit*: GREENWOOD, and others working on her behalf, made and caused to be made false statements and misrepresentations soliciting individuals throughout the world, including in the Southern District of New York, to invest in "OneCoin," a purported cryptocurrency, and instructed individuals to transmit investment funds to OneCoin depository accounts in order to purchase OneCoin packages, thereby causing individuals to send interstate and international wires representing their OneCoin investments, and resulting in the receipt of over $1 billion of investor funds into OneCoin-related bank accounts

(c)     knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity -- conducted and attempted to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, *to wit*: approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as "OneCoin," knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity; and

(d)     transported, transmitted, and transferred, and attempted to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States -- knowing that the monetary instrument and funds

- 49 -

involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, *to wit*: approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as "OneCoin."

201.   To fulfill his role in the conspiracy, Defendant SCOTT:

(a)   knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity -- conducted and attempted to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, *to wit*: approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as OneCoin, knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity;

(b)   transported, transmitted, and transferred, and attempted to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States -- knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, *to wit*: approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as "OneCoin."

202.   ONECOIN LTD. conducted no legitimate business -- something of which each of the Defendants were aware and which they accepted as part of the scheme to defraud ONECOIN LTD. investors and accountholders, including Plaintiff and the Class Members.

203.   As a direct and proximate result of Defendants' conspiracy, Plaintiff and the Class Members have suffered damage.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, CHRISTINE GRABLIS, individually and on behalf of all others similarly situated, respectfully prays for relief as follows:

(a) Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and her counsel as Class counsel;

(b) Declaring that the ONECOIN CORPORATE Defendants offered and sold unregistered securities in violation of the federal securities laws;

(c) Declaring the ONECOIN CORPORATE Defendants are liable to Plaintiff and the Class under Sections 12(a)(1) and/or 15(a) of the Securities Act;

(d) Declaring that Defendants are liable to Plaintiff and the Class due to their breach of contract, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, conversion, and civil conspiracy;

(e) Preliminarily enjoining Defendants from making further transfers or dissipations of the investments raised from the offer and sale of OneCoins and in connection with the OneCoin trader packages/memberships, or using such funds in any further purchases or transactions;

(f) Requiring an accounting of the remaining funds and assets raised from Plaintiff and the Class in connection with the offer and sale of OneCoins and the OneCoin trader packages/memberships;

(g) Imposing a constructive trust over the funds and assets rightfully belonging to Plaintiff and the Class;

(h) Ordering rescission of the investments made by Plaintiff and the Class relating to the offer and sale of OneCoins and the OneCoin trader packages/memberships and/or compensatory damages;

(i) Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

(j) Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Respectfully submitted,

**THE BRAUNSTEIN LAW FIRM, PLLC**

By:  /s/ *MICHAEL L. BRAUNSTEIN*
     Michael L. Braunstein, Esq.
     3 Eberling Drive
     New City, New York 10956
     Telephone:  (845) 642-5062
     E-mail: mbraunstein@braunsteinfirm.com

- and -

**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:      (954) 516-6000
DAVID C. SILVER (*pro hac vice forthcoming*)
E-mail: DSilver@SilverMillerLaw.com
JASON S. MILLER (*pro hac vice forthcoming*)
E-mail: JMiller@SilverMillerLaw.com

*Counsel for Plaintiff and Putative Class*

Dated:  May 7, 2019

SILVER MILLER
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com