**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

DONALD BERDEAUX and CHRISTINE
GRABLIS, Individually and on Behalf of All
Others Similarly Situated,

                        Plaintiffs,

           -against-

ONECOIN LTD.; RUJA IGNATOVA,
KONSTANTIN IGNATOV; SEBASTIAN
GREENWOOD; MARK SCOTT; IRINA
ANDREEVA DILINSKA; DAVID PIKE;
and NICOLE J. HUESMANN,

                        Defendants.

---

Case No.: 1:19-cv-04074-VEC

Hon. Valerie E. Caproni

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR
LEAVE TO EFFECT ALTERNATIVE SERVICE ON DEFENDANTS ONECOIN LTD.,
RUJA IGNATOVA, SEBASTIAN GREENWOOD, AND IRINA ANDREEVA DILINSKA**

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ..................................................................................1

RELEVANT PROCEDURAL HISTORY ................................................................4

ARGUMENT ...........................................................................................................5

I.      STANDARDS OF LAW ...................................................................5

      A.      Alternative Service Pursuant to Rule 4(f)(3) ..............................5

      B.      Alternative Service Pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5)..6

      C.      Alternative Service Must Comport With Constitutional Due Process........7

II.      PLAINTIFFS HAVE MADE DILIGENT EFFORTS TO DETERMINE THE UNSERVED DEFENDANTS' CURRENT ADDRESSES ...................................7

      A.      Defendant OneCoin's Current Headquarters is Located at the UAE Address ...................................................................................9

      B.      Until November 30, 2019, the OneCoin Website Was Fully Functional; and the Websites for OneCoin's Related Entities Remain Accessible............10

      C.      Plaintiffs Are Unable to Determine The Locations of the Unserved Individual Defendants ...............................................................12

III.      ALTERNATIVE SERVICE IS APPROPRIATE UNDER THE CIRCUMSTANCES ........................................................................14

      A.      Plaintiffs' Proposed Methods of Alternative Service Are Not Prohibited By International Agreement And Thus Are Appropriate Under Rule 4(f)(3).15

            1.      Service by International Registered Mail ......................................16

             2.      Service by Electronic Mail and Social Media...............................16

      B.      Alternative Service Upon Defendant Greenwood Pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. 308(5) is Appropriate to Ensure Service is Properly Accomplished Irrespective of Greenwood's Present Location.................18

      C.      Plaintiffs' Proposed Methods of Service Are Reasonably Calculated to Provide the Unserved Defendants with Notice of this Action and Afford them an Opportunity to Present their Objections to the Charges Against Them .......................................................................................20

CONCLUSION.........................................................................................................24

## Table of Authorities

**Page(s)**

**Cases**

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*,
　No. 14-CV-1112 (VSB), 2018 U.S. Dist. LEXIS 169603 (S.D.N.Y. Sep. 30,
　2018) ............................................................................................................................. 8

*Advanced Aerofoil Techs., AG v. Todaro*, No. 11-cv-9505 (ALC), 2012 U.S. Dist.
　LEXIS 12383, at *3 (S.D.N.Y. Jan 31, 2012) .......................................................... 5

*Contimortgage Corp. v. Isler*,
　48 AD3d 732 (2d Dept 2005) .................................................................................... 19

*D.R.I., Inc. v. Dennis*,
　No. 03-cv-10026 (PKL), 2004 U.S. Dist. LEXIS 22541 (S.D.N.Y. June 2,
　2004) ................................................................................................................. 6, 18, 19, 20

*Dama S.P.A. v. Does*,
　No. 15-CV-4528 (VM), 2015 WL 10846737 (S.D.N.Y. June 15, 2015) ................... 16

*DLJ Mortg. Capital, Inc. v. Molyaev*,
　2015 NY Slip Op 31425(U), 2015 N.Y. Misc. LEXIS 2806 (Sup. Ct. July 20,
　2015) ......................................................................................................................... 7, 19

*Ferrarese v. Shaw*,
　164 F. Supp. 3d 361 (E.D.N.Y. 2016) ....................................................................... 18

*In GLG Life Tech Corp. Sec. Litig.*,
　287 F.R.D. 262 (S.D.N.Y. 2012) ................................................................................ 5

*KPN B.V. v. Corcyra D.O.O.*,
　2009 U.S. Dist. LEXIS 20906 (S.D.N.Y. Mar. 16, 2009) ........................................ 24

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
　265 F.R.D. 106 (S.D.N.Y. 2010) ....................................................................... 3, 5, 17

*Markoff v. South Nassau Community Hosp.*,
　91 A.D.2d 1064 (App. Div. 2d Dep't 1983) ............................................................... 7

*McCluskey v. Belford High Sch.*,
　No. 09-cv-14345 (LPZ), 2010 WL 2696599 (E.D. Mich. June 24, 2010) ................. 22

*Microsoft Corp. v. Doe*,
　No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122 (E.D.N.Y. Nov.
　8, 2012) ...................................................................................................................... 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
　339 U.S. 306 (1950) ............................................................................................. 7, 20

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*,
　66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014) ................................................................. 21

*Payne v. McGettigan's Mgmt. Servs. LLC*,
No. 19cv1517 (DLC), 2019 U.S. Dist. LEXIS 200872 (S.D.N.Y. Nov. 19,
2019) .......................................................................................................................... 20

*Philip Morris USA Inc. v. Veles Ltd.*,
No. 06 CV 2988(GBD), 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12,
2007) .......................................................................................................................... 8, 22

*Popular Enters., LLC v. Webcom Media Grp., Inc.*,
225 F.R.D. 560 (E.D. Tenn. 2004) .......................................................................... 17

*Prediction Co. LLC v. Rajgarhia*,
No. 09-cv-07459 (SAS), 2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) ................ 16

*Rio Properties, Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ................................................................................. 6

*RSM Prod. Corp. v. Fridman*,
No. 06-cv-11512 (DLC), 2007 WL 1515068 (S.D.N.Y. May 24, 2007) ............... 17

*SEC v. HGI, Inc.*,
No. 99-3866 (DLC), 1999 WL 1021087 (S.D.N.Y. Nov. 8, 1999) ........................ 19

*SEC v. Nnebe*,
No. 01-cv-5247 (KMW), 2003 U.S. Dist. LEXIS 2443 (S.D.N.Y. Feb. 19,
2003) .......................................................................................................................... 6, 7, 18

*Snyder v. Energy Inc.*,
857 N.Y.S.2d 442 (Civ. Ct. 2008) ........................................................................... 18

*St. Francis Assisi v. Kuwait Fin. House*,
No. 3:16-cv-3240 (LB), 2016 U.S. Dist. LEXIS 136152 (N.D. Cal. Sep. 30,
2016) .......................................................................................................................... 23

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
312 F.R.D. 329 (S.D.N.Y. 2015) ............................................................................. 21, 22

*UBS Fin. Servs. v. Berger*,
No. 13-cv-03770 (LB), 2014 U.S. Dist. LEXIS 193761 (N.D. Cal. Apr. 24,
2014) .......................................................................................................................... 22

*United States v. Lebanese Canadian Bank SAL*,
285 F.R.D. 262 (S.D.N.Y. 2012) ............................................................................. 3, 5, 17

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
2018 U.S. Dist. LEXIS 163356 (S.D.N.Y. Sep. 21, 2018) ..................................... 23

*Zhang v. Baidu.Com Inc.*,
293 F.R.D. 508 (S.D.N.Y. 2013) ............................................................................. 5, 6

## Rules

FED. R. CIV. P. 4(e)(1) ........................................................................................... *passim*

Fed. R. Civ. P. 4(f)(3) ........................................................................................................... *passim*

Fᴇᴅ. R. Cɪᴠ. P. 4(h)(2) ........................................................................................................... 5

N.Y. C.P.L.R. § 308(1) ..................................................................................................... 6, 19

N.Y. C.P.L.R. § 308(2) ..................................................................................................... 6, 19

N.Y. C.P.L.R. § 308(4) ..................................................................................................... 6, 19

N.Y. C.P.L.R. § 308(5) ....................................................................................................... *passim*

## **<u>Other Authorities</u>**

The Convention on the Service Abroad of Judicial and Extrajudicial Documents
    in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No.
    6638.................................................................................................................................... 16

Lead Plaintiff Donald Berdeaux ("Berdeaux") and Plaintiff Christine Grablis ("Grablis" and together with Berdeaux, "Plaintiffs") respectfully submit this memorandum of law in support of their renewed motion pursuant to Fed. R. Civ. P. Rule 4(f)(3), for an order granting Plaintiffs leave to effectuate service of the First Amended Complaint [ECF No. 40] ("FAC") and Summons in this matter ("Service Documents") upon defendants OneCoin Ltd. (Dubai) ("OneCoin"), Ruja Ignatova ("Ignatova"), Sebastian Greenwood ("Greenwood"), and Irina Andreeva Dilinska ("Dilinska" and together with Ignatova and Greenwood, the "Unserved Individual Defendants") (collectively, the "Unserved Defendants") via International Registered Mail, e-mail, and electronic messages via, *inter alia*, OneCoin, Ignatova and Greenwood's respective social media accounts on LinkedIn and/or Facebook.[1]

## SUMMARY OF ARGUMENT

On October 1, 2019, Plaintiffs filed their initial motion for leave to effect alternative service on the Unserved Defendants [ECF No. 59] ("First Motion").  On November 1, 2019, the Court denied the First Motion without prejudice, finding that Plaintiffs had not: (i) shown that they have taken reasonable steps to attempt to serve the Unserved Defendants; (ii) submitted documentation establishing that the United Arab Emirates ("UAE") physical address at which Plaintiffs seek to effect service is OneCoin's principal office; (iii) established that the onecoin.eu e-mail domain is still functional given that the OneCoin website located at "www.onecoin.eu" (the "OneCoin Website") appears to be non-functional; and (iv) shown that alternative service as to Defendant Greenwood under Rule 4(f)(3) is appropriate as the service thereunder is reserved for defendants

---

[1] As detailed herein, because it is unknown whether Defendant Greenwood is currently located within the United States or in a foreign jurisdiction, Plaintiffs' request leave to effect alternative service as to Defendant Greenwood under both Rule 4(f)(3) as well as Rule 4(e)(1) [Fed. R. Civ. P. 4(e)(1)] and N.Y. C.P.L.R. § 308(5).

located in a foreign jurisdiction and Plaintiffs have alleged that Greenwood was extradited to the United States in November 2018.  [ECF No. 66] ("Alternative Service Order").

The Court's Alternative Service Order suggested that "Plaintiffs address these concerns in any renewed application for alternative service."  *Id*. at 3.  Per the Court's recommendation, each of these concerns are addressed herein.  Specifically, Plaintiffs: (i) submit the Declaration of John A. Carriel in Support of Plaintiffs' Renewed Motion ("Carriel Declaration" or "Carriel Decl.") describing Plaintiffs' due diligence; (ii) support their assertion that OneCoin's current base of operations is located at Unit 3102, 31st Floor, Platinum Towers - Cluster I, Jumeirah Lakes Towers Dubai, United Arab Emirates (the "UAE Address") by reference to OneCoin's public representations including, *inter alia*, photographs of the OneCoin office located at the UAE Address published on the OneCoin Website; (iii) provide evidence that, until November 30, 2019, the OneCoin Website was still operational and only appeared to be non-functional due to OneCoin geoblocking internet protocol ("IP") addresses originating from within the United States;[2] and (iv) explain that Defendant Greenwood's current physical location is presently unknown and thus, to ensure that service is properly accomplished, propose alternative service as to Greenwood under Rule 4(f)(3) in the event he is not located within the United States as well as under Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5) in the event he is located within the United States.

---

[2] As discussed herein, given that the OneCoin Website went offline on November 30, 2019, and there is no guarantee that the website will be put online again, Plaintiffs also request leave to serve the Unserved Defendants via e-mail addresses hosted on the domains of OneCoin's related entities—which, as of December 1, 2019, are still live—including, https://www.onelife.eu (the "OneLife Website") and https://www.oneworldfoundation.eu (the "OneWorld Website"). Additionally, Plaintiffs request leave to accomplish service via electronic messages to multiple OneCoin social media accounts, the contact form located on the OneLife Website, and the contact form located on https://www.oneacademy.eu/en/about#contactForm (the "OneAcademy Website").

As discussed in Plaintiffs' First Motion, the UAE is not a signatory to an international agreement on service of process with the United States.  Therefore, Plaintiffs' proposed methods of effectuating service of process upon the Unserved Defendants are not prohibited by an international agreement; and thus, leave to effectuate alternative service under Rule 4(f)(3) is "'committed to the sound discretion of the district court.'"  *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)).

Accordingly, so as not to delay the prosecution of the instant action ("Action"), Plaintiffs respectfully request that the Court permit alternative service upon the Unserved Defendants by:

> (i)      mailing the Service Documents (via First Class International Registered Mail through the U.S. Postal Service) to OneCoin's UAE Address;

> (ii)      e-mailing the Service Documents to: (a) press@onecoin.eu, office@onecoin.eu, press@onelife.eu, info@onelife.eu, and office@oneworldfoundation.eu, (b) ruja@onecoin.eu, (c) sebgreenwood@gmail.com and sgreenwood@loopium.com, and (d) irina@onecoin.eu; and

> (iii)      sending electronic messages: (a) through the contact forms located on the OneLife Website and the OneAcademy Website, (b) to various OneCoin-related Facebook accounts, and (c) to Ignatova and Greenwood's respective social media accounts on LinkedIn and Facebook.

Additionally, given that Greenwood's location is presently unknown and there are indications that he may be currently located within the United States, Plaintiffs also seek leave, in an abundance of caution, to effect alternative service as to Greenwood under Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5).  Specifically, in the event that Greenwood is in custody within the United States, Plaintiffs respectfully request that the Court, pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5), permit alternative service upon Defendant Greenwood by mailing the Service Documents to the prosecution team in the U.S. Attorney's Office for the Southern District of New York that is

prosecuting the parallel criminal proceedings against defendants Mark S. Scott ("Scott"), Konstantin Ignatov ("Ignatov"), Ignatova, and David Pike ("Pike") in the Criminal Actions.[3]

## RELEVANT PROCEDURAL HISTORY

The Action arises out of Defendants' participation in a Ponzi/Pyramid multi-level marketing fraudulent scheme.  The primary goal of the scheme was to enrich Defendants at the direct expense of Plaintiffs and the proposed class.  On May 7, 2019, Grablis commenced the instant Action, on behalf of herself and other similarly situated victims, against Defendants OneCoin, Ignatova, Ignatov, Greenwood, and Scott.  On June 4, 2019, Defendant Scott was served with a summons and copy of the initial Complaint.  [ECF No. 15].  On July 3, 2019, Defendant Ignatov was served with a summons and copy of the initial Complaint.  [ECF No. 36].

On July 24, 2019, the Court appointed Berdeaux as Lead Plaintiff pursuant to the Private Litigation Securities Reform Act and ordered Berdeaux to file an Amended Complaint no later than August 2, 2019.  [ECF No. 39].  On August 2, 2019, Plaintiffs filed the FAC. [ECF No. 40]. The FAC alleges claims against three newly-named defendants: Dilinska, Nicole J. Huesmann ("Huesmann"), and Pike.

On August 23, 2019, the Court issued an order staying all proceedings in this Action until all Defendants have been served.  [ECF No. 46].  On September 9, 2019, Defendants Pike and Huesmann were each served with summonses and copies of the FAC.  [ECF Nos. 56–57].

On October 1, 2019, Plaintiffs filed their First Motion requesting leave to effect alternative service upon the Unserved Defendants.  [ECF No. 60].  On November 1, 2019, the Court denied the First Motion in its Alternative Service Order.  [ECF No. 66].

---

[3] The term "Criminal Actions" refers to jointly to *United States v. Scott, et al*., 1:17-cr-630 (ER) (S.D.N.Y.) ("Scott Criminal Action") and *United States v. Pike*, 1:19-mj-08240 (S.D.N.Y.) ("Pike Criminal Action").

## ARGUMENT

### I.    STANDARDS OF LAW

#### A.  Alternative Service Pursuant to Rule 4(f)(3)

Rule 4(f)(3) of the Federal Rules of Civil Procedure provides that "an individual . . . may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders."   FED. R. CIV. P. 4(f)(3).   Similarly, Rule 4(h)(2) permits service of a corporation "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."   FED. R. CIV. P. 4(h)(2); *Madu*, 265 F.R.D. at 115.

"[N]othing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012)  (citation omitted).   Service under Rule 4(f)(3) is "'neither a last resort nor extraordinary relief. It is merely one means among several which enable service of process on international defendant.'"   *Lebanese Canadian Bank SAL*, 285 F.R.D. at 265–66 (quoting *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-cv-9505 (ALC), 2012 U.S. Dist. LEXIS 12383, at *3 (S.D.N.Y. Jan 31, 2012)).   To the contrary, "[c]ourts have long held that there is 'no hierarchy among the subsections in Rule 4(f).'"   *Zhang v. Baidu.Com Inc.*, 293 F.R.D. 508, 511 (S.D.N.Y. 2013) (citation omitted).   Indeed, "'court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2) . . ..'"   *Id*. at 511 (citation omitted)

In short, where a defendant is not located within the United States, alternative service under Rule 4(f)(3) is permissible so long as it is "'(1) directed by the court; and (2) not prohibited by

international agreement. No other limitations are evident from the text . . . .'" *Id*. at 511 (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–15 (9th Cir. 2002)).

**B.      Alternative Service Pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5)**

Rule 4(e)(1) "provides that service of process upon an individual located within a judicial district of the United States may be effected 'pursuant to the law of the state in which the district court is located, or in which service is effected.'" *SEC v. Nnebe*, No. 01-cv-5247 (KMW), 2003 U.S. Dist. LEXIS 2443, at *7 (S.D.N.Y. Feb. 19, 2003) (quoting FED. R. CIV. P. 4(e)(1)).  New York C.P.L.R. § 308(5) "permits a plaintiff to serve the summons and complaint 'in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.'" *D.R.I., Inc. v. Dennis*, No. 03-cv-10026 (PKL), 2004 U.S. Dist. LEXIS 22541, at *2 (S.D.N.Y. June 2, 2004) (quoting N.Y. C.P.L.R. § 308(5)).

Sections one, two, and four of N.Y. C.P.L.R. § 308 authorizes service of process upon a natural person by either: (i) personal service of the summons within the state [N.Y. C.P.L.R. § 308(1)]; (ii) delivering the summons "within the state to a person of a suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and by "either mailing the summons to the individual's "last known residence or by mailing the summons by first class mail" to the individual's "actual place of business" [N.Y. C.P.L.R. § 308(2)]; or (iii) affixing the summons to the individual's actual place of business, dwelling place, or usual place of abode within the state, and mailing the summons to the individual's last known resident or "actual place of business" [N.Y. C.P.L.R. § 308(4)].

"The meaning of 'impracticable' depends on the facts and circumstances of a particular case." *D.R.I., Inc.*, 2004 U.S. Dist. LEXIS 22541, at *2 (citation omitted).  "Although CPLR § 308(5) does not require a showing of due diligence or of actual prior attempts to serve a party

under the other provisions of the statute, [] a plaintiff seeking to effect alternative service must make some showing that the other prescribed methods of service could not be made." *Nnebe*, 2003 U.S. Dist. LEXIS 2443, at *7 (internal citations and quotation marks omitted); *Markoff v. South Nassau Community Hosp.*, 91 A.D.2d 1064, 1065 (App. Div. 2d Dep't 1983) (same).

### C.     Alternative Service Must Comport With Constitutional Due Process

Regardless of whether alternative service is authorized pursuant to Rule 4(f)(3) or Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5), the proposed methods of service must comport with the constitutional requirement of due process, and be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also DLJ Mortg. Capital, Inc. v. Molyaev*, 2015 NY Slip Op 31425(U), 2015 N.Y. Misc. LEXIS 2806, at *2 (Sup. Ct. July 20, 2015) (same).

Plaintiffs' proposed methods of alternative service under Rule 4(f)(3) as well as Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5) meet all of these legal requirements.

## II.     PLAINTIFFS HAVE MADE DILIGENT EFFORTS TO DETERMINE THE UNSERVED DEFENDANTS' CURRENT ADDRESSES

The Court's Alternative Service Order found that "Plaintiffs have not established a factual basis for their assertion that they have taken reasonable steps to find and serve the Unserved Defendants." [ECF No. 66 at 2]. Plaintiffs submit the Carriel Declaration herewith to establish that Plaintiffs have made persistent, diligent and varied efforts to identify the Unserved Defendants' current addresses which Plaintiffs could use to effectuate service of process by traditional means under Rule 4. Specifically, as detailed in the Carriel Declaration, Plaintiffs' counsel has spent an extensive amount of time and resources in attempting to ascertain the Unserved Defendants' current locations by, *inter alia*: (1) reviewing all relevant materials in

Plaintiffs' possession; (2) reviewing court filings in the parallel Criminal Actions; (3) reviewing countless posts on internet forums, many of which required translation into English; (4) reviewing countless media reports concerning OneCoin, its founders, and the parallel Criminal Actions; (5) conducting hours of boolean searches, in English, Bulgarian, Russian, and Arabic, on multiple online search engines, including Google, Bing, DuckDuckGo, and Yandex, to obtain any and all publicly available information relating to OneCoin's current operations and the Unserved Individual Defendants' current locations; (6) utilizing virtual private networks to bypass OneCoin's geo-blocking of IP addresses originating within the United States; (7) combing through years of archived and cached internet forums and webpages; and (8) using online tools in an attempt to obtain general geolocation data from the Unserved Defendants and OneCoin's related entities' domain names, IP addresses, and e-mail addresses.  Carriel Decl. ¶ 3.

The foregoing investigative efforts establish that Plaintiffs have exercised reasonable diligence in attempting to discovery current physical addresses to accomplish service upon the Unserved Defendants.  *See, e.g.*, *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 U.S. Dist. LEXIS 169603, at *9 (S.D.N.Y. Sep. 30, 2018) ("Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so.") (citing *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988(GBD), 2007 U.S. Dist. LEXIS 19780, at *3–4 (S.D.N.Y. Mar. 12, 2007)); *Microsoft Corp. v. Doe*, No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122, at *3–4, 8 (E.D.N.Y. Nov. 8, 2012) (finding "email and internet-based service of process" appropriate where "after months of investigation," plaintiffs had "only been able to ascertain that Defendants most likely reside[d] in the Russian Federation, Ukraine and/or Romania").

While Plaintiffs have been unable to locate more exact information as to the Unserved Individual Defendants' current physical locations, the foregoing investigative efforts have yielded the following information.

### A.     Defendant OneCoin's Current Headquarters is Located at the UAE Address

Until it was taken offline on November 30, 2019, the OneCoin Website contained several representations that OneCoin is currently based and operated out of Dubai and that its "Head Office" is located at the UAE Address.  For example, the OneCoin Website's "terms and conditions," stated that "ONECOIN LIMITED is a company duly registered and existing under the laws of Dubai";[4] and the OneCoin Website contained several photographs of OneCoin's office located at the UAE Address under the heading "Head Office: Dubai."[5] Similarly, numerous affiliate marketers promoting OneCoin list its head office as being located in Dubai at the UAE Address.[6]

Furthermore, in connection with prosecuting the Criminal Actions, the government has also noted OneCoin's substantial presence in the UAE.  For example, in arguing that Defendant Ignatov—Defendant Ignatova's brother—should be detained pending trial, the government argued that "OneCoin Ltd. also has significant ties to Dubai, United Arab Emirates ('UAE')—another country which will not extradite to the United States—including a physical office and accounts at

---

[4] *See* Carriel Decl. ¶ 4, Ex. 1 (copy of terms located at https://www.onecoin.eu/en/terms-and-conditions as of November 26, 2019).

[5] *Id*. ¶ 5, Ex. 2 (copy of webpage located at https://www.onecoin.eu/en/media-galleries as of November 26, 2019).

[6]                 *See,*                 *e.g.*,                 https://onecoinsign.com/about_onelife/requisites; https://newcryptoera.blogspot.com/p/one-onecoin-office-in-sofia-bulgaria.html.

financial institutions there, providing another location to which the defendant could easily flee prosecution." *See* Scott Criminal Action, ECF 90 at 7.

In addition to OneCoin's representations on the OneCoin Website demonstrating that the company's principal operations are located at the UAE Address, OneCoin also shares the UAE Address with Coins United DMCC ("Coins United").[7]   Coins United is one of OneCoin's numerous related entities used to further the fraudulent OneCoin scheme.   Specifically, Coins United is the entity created by Defendant Dilinska and Ignatova to issue so-called "aurum coins."[8] Stated otherwise, OneCoin and Coins United share the same UAE Address because they are both part of the same fraudulent scheme.   Indeed, even the business card of Coins United's "Administrative Officer"—Velizara Ivanova—lists her e-mail address as "velizara@onecoin.eu." and address as the UAE Address.  *See* Carriel Decl. ¶ 6, Ex. 3.

Based on the foregoing, Plaintiffs submit that there are adequate indications that OneCoin's current headquarters is located at the UAE Address and therefore, mail service upon OneCoin and its executives through the UAE Address is appropriate.

### B. Until November 30, 2019, the OneCoin Website Was Fully Functional; and the Websites for OneCoin's Related Entities Remain Accessible

The Court's Alternative Service Order found that Plaintiffs had not shown that the onecoin.eu e-mail addresses Plaintiffs propose to use for service are in fact functional, which the

---

[7] *See* https://www.yellowpages.ae/l-df-01-03-00053111-coins-united-dmcc.html.

[8]   *See*   https://www.facebook.com/1314119185315711/posts/coins-united-dmcc31st-floor-platinum-tower-cluster-1jumeirah-lakes-towersdubai-l/1347573528636943/; https://www.facebook.com/onecoin.hope/posts/contact-address-for-onelife-office-onecoinonecoin-physical-addressesonecoin-offi/362618360917845/;                                   and https://behindmlm.com/companies/onecoin/onecoins-bungled-us-trademark-application/.

Court stated "is especially concerning because OneCoin's website, which matches the onecoin.eu email domains, appears to be non-functional."  [ECF No. 66 at 3].

Prior to November 30, 2019, the OneCoin Website only appeared to be non-functional to users that attempted to access the website from an IP address originating within the United States.[9] Due to this geo-blocking, the OneCoin Website only ***appeared*** to be non-functional if accessing the site using an IP address originating within the United States.  *Id*.  However, until November 30, 2019, the website remained fully accessible through the use of VPN routing access to the OneCoin website through an IP address originating within, for example, Europe.[10]  The most recent capture of the OneCoin Website archived through the Internet Archive Wayback Machine on web.archive.org is from January 17, 2019.[11]

While the OneCoin Website was taken offline on November 30, 2019, the website's DNS records indicate that OneCoin continues to own the domain name.[12]  Given that OneCoin still owns the OneCoin Website's domain and the website may go live again, Plaintiffs continue to request leave to effect service via e-mail to various e-mail addresses hosted on the OneCoin

---

[9]  *See* Carriel Decl.  ¶ 7, Ex. 4 (capture of results from the tool available on https://www.uptrends.com/tools/uptime showing that, as of November 26, 2019, the domain "www.onecoin.eu" remained accessible from IP addresses originating from numerous countries, including, France, Belgium, Germany, United Kingdom, South Korea, India, and Japan but the OneCoin Website remained inaccessible from IP addresses originating within the United States, including those from New York, Los Angeles, Tampa, Seattle, Honolulu, and San Diego).

[10]  *Id*. ¶ 8, Ex. 5 (screenshot showing access to the onecoin.eu website on November 26, 2019, through the use of VPN routing access to the website through a server in Europe).

[11]  *See* https://web.archive.org/web/20190117105418/https://www.onecoin.eu/en.  The fact that the OneCoin Website was archived on that date indicates that the OneCoin Website's geo blocking of IP addresses originating in the United States was not adopted until after January 17, 2019.

[12]  *See OneCoin Website Down, DNS Record Under Investigation*, BehindMLM (Dec. 1, 2019), *available at* https://behindmlm.com/companies/onecoin/onecoin-website-down-dns-record-under-investigation/.

Website's domain.  Because it is possible that the OneCoin Website will not go live again, Plaintiffs also request leave to effect service via: (i) e-mail to addresses hosted on the OneLife Website and the OneWorld Website—websites for two of OneCoin's related entities;[13] (ii) the contact forms located on the OneLife Website and the OneAcademy Website; and (iii) various OneCoin-related social media accounts.

### C.     Plaintiffs Are Unable to Determine The Locations of the Unserved Individual Defendants

With respect to Defendants Ignatova and Dilinska, it is Plaintiffs' understanding that both individuals are fugitives from justice.[14]  Indeed, there is even a British Broadcasting Corporation podcast entitled "The Missing Cryptoqueen" which recounts investigative efforts to locate Defendant Ignatova.[15]  Both Ignatova and Dilinska are, or until recently were, high-level executives employed by Defendant OneCoin and are believed to be located in Europe; however, their exact whereabouts remain unknown.

---

[13] As of the date of this Renewed Motion, both websites remain accessible.  *See* Carriel Decl., ¶9, Ex. 6 (capture of results from the tool available on https://www.uptrends.com/tools/uptime showing that, as of December 1, 2019, the domain "www.onelife.eu" remained accessible from IP addresses originating in all tested locations, including those from within the United States); *id*. ¶10, Ex. 7 (capture of results from the tool available on https://www.uptrends.com/tools/uptime showing that, as of December 1, 2019, the domain "www.oneworldfoundation.eu" remained accessible from IP addresses originating in numerous locations, including those from within the United States).

[14] *See., e.g.*, Rory Cellan-Jone, *Mystery of the Missing Cryptoqueen Ruja Ignatova*, BBC (Sept. 26, 2019), *available at* https://www.bbc.com/news/technology-49826161; *Konstantin's Testimony Drops One OneCoin Bombshell After Another*, BehindMLM (Nov. 8, 2019), *available at* https://behindmlm.com/companies/onecoin/konstantins-testimony-drops-one-onecoin-bombshell-after-another/; https://www.bbc.com/news/stories-50435014.

[15] The final episode of "The Missing Cryptoqueen" aired on November 5, 2019.  *See Cryptoqueen: How this Woman Scammed the World, then Vanished*, BBC (Nov. 24, 2019), *available at* https://www.bbc.com/news/stories-50435014.

While several media outlets have reported that Defendant Greenwood was arrested in Thailand and extradited to the United States in November 2018,[16] the Department of Justice ("DOJ") has not released any public information confirming that Greenwood has been taken into U.S. custody.[17]  Simply put, there has been no public information released concerning his location, purported extradition to the United States, or potential criminal charges against him since his initial arrest in Thailand was reported in November 2018.   In light of the DOJ's complete silence regarding Defendant Greenwood, Plaintiffs have been unable to determine whether Greenwood is located within the United States or a foreign jurisdiction.

If Defendant Greenwood is located within the United States, given his reported arrest and extradition, Greenwood would likely be within the government's custody.  On the other hand, if Greenwood is not located within the United States, because OneCoin is headquartered in the UAE and Greenwood is a citizen of Sweden, Plaintiffs submit he would be located in either Europe or the UAE.  In either event, despite Plaintiffs' reasonable efforts to locate Greenwood, his current physical location remains unknown to Plaintiffs.  Based on the foregoing, and to ensure service is properly accomplished regardless of whether Greenwood is located within the United States or a

---

[16] *Cops Take New Tack as Crime Goes Global*, Bangkok Post (Nov. 5, 2018), *available at* https://www.bangkokpost.com/thailand/general/1570022/cops-take-new-tack-as-crime-goes-global ("The CSD [Thailand's Crime Suppression Division] also worked with the US Federal Bureau of Investigation (FBI) to apprehend Sebastian Greenwood who was wanted on a US international arrest warrant and an Interpol red notice for operating a digital currency pyramid scheme."); *see also* s *See, e.g.*, Peter J. Brown, *OneCoin 'Ponzi' at Last Heading to US Courts*, Asia Times (Feb. 22, 2019), *available at* https://www.asiatimes.com/2019/02/article/onecoin-ponzi-at-last-heading-to-us-courts/).

[17] *See, e.g.*, *Mark Scott OneCoin Case in Limine Motions Reveal Desperation*, BehindMLM (Oct. 22, 2018), *available at* https://behindmlm.com/companies/onecoin/mark-scott-onecoin-case-in-limine-motions-reveal-desperation/ ("Greenwood is believed to have been extradited to the US. Since then he's disappeared into an information black hole" which could indicate that "he's cooperating with the DOJ.").

foreign jurisdiction, Plaintiffs' Renewed Motion requests leave to effect alternative service as to Greenwood under Rule 4(f)(3) as well as Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5).

## III.    ALTERNATIVE SERVICE IS APPROPRIATE UNDER THE CIRCUMSTANCES

Plaintiffs seek an Order authorizing the following proposed methods of service pursuant to Rule 4(f)(3) and, with respect to Defendant Greenwood, under Rule 4(e)( 1) and N.Y. C.P.L.R. § 308(5), which are reasonably designed to afford the Unserved Defendants with notice of this Action and afford them an opportunity to present their answer and defenses to this Action:

1.    Mailing the Service Documents via First Class International Registered Mail through the U.S. Postal Service to:

- OneCoin Ltd.
  Unit 3102, 31st Floor,
  Platinum Towers - Cluster I, Jumeirah Lakes Towers
  Dubai, UAE

- Ruja Ignatova
  c/o OneCoin Ltd.
  Unit 3102, 31st Floor,
  Platinum Towers - Cluster I, Jumeirah Lakes Towers
  Dubai, UAE

- Sebastian Greenwood
  c/o OneCoin Ltd.
  Unit 3102, 31st Floor,
  Platinum Towers - Cluster I, Jumeirah Lakes Towers
  Dubai, UAE

- Irina Dilinska
  c/o OneCoin Ltd.
  Unit 3102, 31st Floor,
  Platinum Towers - Cluster I, Jumeirah Lakes Towers
  Dubai, UAE

2.    E-mailing the Service Documents, return receipt requested to:

- Each of the Unserved Defendants at:
  o   press@onecoin.eu;
  o   office@onecoin.eu;

- 14 -

- o   press@onelife.eu;
- o   info@onelife.eu; and
- o   office@oneworldfoundation.eu;

- Ruja Ignatova at:
  - o   ruja@onecoin.eu;

- Sebastian Greenwood at:
  - o   sebgreenwood@gmail.com; and
  - o   sgreenwood@loopium.com; and

- Irina Dilinska at:
  - o   irina@onecoin.eu.

3.      Transmission of the Service Documents through the Internet to:

- OneCoin through:
  - o   https://www.facebook.com/onecoincompany/;
  - o   https://www.facebook.com/OneCoin-708913922526031/
  - o   https://www.facebook.com/OneLifeOfficial/; and
  - o   https://www.facebook.com/oneworldfoundation.eu; and
  - o   the contact forms located on:
    - ▪   https://www.onelife.eu/en/contacts; and
    - ▪   https://www.oneacademy.eu/en/about#contactForm;

- Ruja Ignatova through:
  - o   https://www.facebook.com/onecoincompany/;
  - o   https://www.facebook.com/DrRujaIgnatova.onecoin/; and
  - o   https://bg.linkedin.com/in/ruja-ignatova-83929a161; and

- Sebastian Greenwood through:
  - o   https://www.linkedin.com/in/thesebastiangreenwood; and
  - o   https://www.facebook.com/sebastiangreenwood.onecoin/.[18]

**A.      Plaintiffs' Proposed Methods of Alternative Service Are Not Prohibited By International Agreement And Thus Are Appropriate Under Rule 4(f)(3)**

---

[18] In addition to the foregoing, given that Defendant Greenwood may be in custody within the United States, Plaintiffs respectfully request that the Court, pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5), permit alternative service upon Defendant Greenwood via mailing the Service Documents to the prosecution team in the parallel Criminal Actions and requesting that the Service Documents be forwarded to Greenwood.

Plaintiffs' proposed methods of alternative service are not prohibited by international agreement, are reasonably calculated to give the Unserved Defendants notice of the charges against them, and are thus permissible.

### 1. Service by International Registered Mail

Plaintiffs seek leave to mail the Service Documents to the Unserved Defendants by International Registered Mail to Defendant OneCoin's headquarters at the UAE Address. As discussed *supra*, Section II.A., there is sufficient documentation to conclude that OneCoin's current headquarters is located at the UAE Address. The UAE is not a party to the Hague Service Convention. As for the Individual Unserved Defendants, their present addresses are currently unknown, and the Hague Service Convention only applies in cases where the address of a defendant to be served is known. *See* Hague Service Convention, art. I, Nov. 15, 1965, 20 U.S.T. 361 ("This Convention shall not apply where the address of the person to be served with the document is not known"); *see also Prediction Co. LLC v. Rajgarhia*, No. 09-cv-07459 (SAS), 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention … because [defendant's] address is not known to [plaintiff].").

Additionally, Plaintiffs are unaware of any other international agreement which would prohibit Plaintiffs' proposed methods of service by electronic means. Therefore, the Court here may approve the proposed alternative means of service by registered mail, as such is not prohibited by an international agreement and, as described *infra*, comports with due process.

### 2. Service by Electronic Mail and Social Media

Because e-mail appears to be the primary method of communication that the Unserved Defendants have utilized (and, thus, clearly prefer), e-mail is reasonably calculated to apprise these defendants of this Action. *See Dama S.P.A. v. Does*, No. 15-CV-4528 (VM), 2015 WL 10846737, at *2 (S.D.N.Y. June 15, 2015) ("several recent Southern District of New York cases have

- 16 -

authorized e-mail service where a defendant was, as here, alleged to be an online China-based counterfeiting network linked to a functioning e-mail address but which otherwise remained anonymous.") (citations omitted).

Here, there is direct evidence that Ignatova and Dilinska used the e-mail addresses Plaintiffs seek to use in effecting alternative service in carrying out OneCoin's operations.[19]  *See Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (holding that Rule 4(f)(3) clearly authorizes service by e-mail where defendant's address was unknown and e-mails sent using the addresses defendant provided to the domain name registrar did not bounce back).  Similarly, Greenwood has communicated with Ignatova via e-mail concerning the business operations of OneCoin.  *See, e.g.*, FAC ¶ 74 (containing quotations from e-mails Greenwood sent regarding OneCoin).  While the OneCoin Website was taken offline on November 30, 2019, the websites for various OneCoin related entities are still accessible.  *See supra*, Section II.B.  Accordingly, Plaintiffs seek leave to effect service via e-mail addresses hosted on the OneCoin Website, OneLife Website and the OneWorld Website, the contact forms available on the OneLife Website and OneAcademy Website, and through various OneCoin-related social media accounts.

Since Plaintiffs' requested method of service is not prohibited by any international agreement, "[t]he decision of whether to order service of process under Rule 4(f)(3) is 'committed to the sound discretion of the district court.'"  *Lebanese Canadian Bank SAL*, 285 F.R.D. at 266 (quoting *Madu*, 265 F.R.D. at 115); *see also RSM Prod. Corp. v. Fridman*, No. 06-cv-11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) (same).

---

[19]  *See, e.g.*, Scott Criminal Action, ECF No. 91 (e-mail records from October 10, 2016 demonstrating Ignatova's use of the e-mail address ruja@onecoin.eu); *see also* FAC ¶ 129 (discussing Dilinska's use of the "irina@onecoin.eu" e-mail address).

**B.     Alternative Service Upon Defendant Greenwood Pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. 308(5) is Appropriate to Ensure Service is Properly Accomplished Irrespective of Greenwood's Present Location**

As previously discussed, Rule 4(e)(1) authorizes service of process upon an individual located within the United States "'pursuant to the law of the state in which the district court is located, or in which service is effected.'"  *Nnebe*, 2003 U.S. Dist. LEXIS 2443, at *7 (quoting FED. R. CIV. P. 4(e)(1)).   N.Y. C.P.L.R § 308(5) "permits a plaintiff to serve the summons and complaint 'in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.'"  *D.R.I., Inc.*, 2004 U.S. Dist. LEXIS 22541, at *2 (quoting N.Y. C.P.L.R. § 308(5)).

"Courts have found a showing of impracticability, and have authorized alternative service, where the defendant could not be located by means of a diligent search."  *Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 365 (E.D.N.Y. 2016) (citing *Nnebe*, 2003 U.S. Dist. LEXIS 2443, at *7).   "In addition, courts have found service to be impracticable where the defendant could not be located by means of a diligent search."  *Id.*  (collecting cases and finding that the SEC had made a showing of impracticability where defendant could not be located by, *inter alia*, searching "relevant computer databases" and inquiring "with the United States Postal Service").

With respect to service pursuant to subsection one of N.Y. C.P.L.R. § 308, Plaintiffs have demonstrated such would be impracticable because, as discussed *supra*, Section II.C., Plaintiffs have taken reasonable and diligent efforts to investigate and determine Defendant Greenwood's location yet have been unable to determine that location.  *See, e.g.*,  *Snyder v. Energy Inc.*, 857 N.Y.S.2d 442, 446 (Civ. Ct. 2008) ("A plaintiff can demonstrate that service by conventional means is 'impracticable' by making diligent, albeit  unsuccessful, efforts to obtain information regarding a defendant's current residence, business address or place of abode") (citation omitted).

In short, personal service pursuant to N.Y. C.P.L.R. § 308(1) is impracticable because Greenwood's location remains unknown despite Plaintiffs' reasonable efforts.

Similarly, Plaintiffs have demonstrated that attempting service of process upon Greenwood pursuant to subsection two or four of N.Y. C.P.L.R. § 308 would be impracticable because Greenwood does not have an "actual place of business, dwelling place or usual place of abode" within New York.  *See, e.g.*, *D.R.I., Inc.*, 2004 U.S. Dist. LEXIS 22541, at *3–4 (finding that service of process under N.Y. C.P.L.R. sections 308(1), (2), and (3) was "impracticable" where plaintiff had "performed searches for defendant Dennis's address, including a search that revealed information about Dennis on file with the Department of Motor Vehicles" and such "diligent efforts ha[d] proved unsuccessful"); *SEC v. HGI, Inc.*, No. 99-3866 (DLC), 1999 WL 1021087, at *1 (S.D.N.Y. Nov. 8, 1999) (finding proof of impracticability where, despite efforts to locate the defendant by "inquiring with the U.S. Postal Service and by searching computer databases, his whereabouts remain[ed] unknown").  Stated otherwise, service of process under N.Y. C.P.L.R. §§ 308(2) or 308(4) is impracticable because there is no location where Plaintiffs could attempt to either deliver the summons to a "person of suitable age and discretion" or affix the summons to its door.

"Once the impracticability standard is satisfied, due process requires that the method [of service] be 'reasonably calculated, under all the circumstances, to apprise' the defendant of the action."  *DLJ Mortg. Capital, Inc.*, 2015 N.Y. Misc. LEXIS 2806, at *2 (quoting *Contimortgage Corp. v. Isler*, 48 AD3d 732, 734 (2d Dept 2005)).

**C.      Plaintiffs' Proposed Methods of Service Are Reasonably Calculated to Provide the Unserved Defendants with Notice of this Action and Afford them an Opportunity to Present their Objections to the Charges Against Them**

Finally, the Service Documents are likely to reach each of the Unserved Defendants under Plaintiffs' proposed methods of service.  "An order for alternative service must comply with due process requirements, which call for notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'"  *Payne v. McGettigan's Mgmt. Servs. LLC*, No. 19cv1517 (DLC), 2019 U.S. Dist. LEXIS 200872, at \*2–3 (S.D.N.Y. Nov. 19, 2019) (authorizing service via "international certified mail" to defendant's "home and business addresses in Dubai, United Arab Emirate, as well as by email at dmcgettigan@bonningtontower.com") (quoting *Mullane*, 339 U.S. at 314 (1950)).

First, as detailed *supra*, Section II.A., several sources, including OneCoin's own representations on the OneCoin Website, confirm that OneCoin's current "Head Office" is located within Dubai, and more specifically, at the UAE Address.[20]  Accordingly, Plaintiffs' proposed method of effecting service by mailing to OneCoin's headquarters located at the UAE Address appears to be the most likely means to provide the Unserved Defendants with actual hard copies of the relevant documents.  *D.R.I., Inc.*, 2004 U.S. Dist. LEXIS 22541, at \*3 ("Service by certified mail to a defendant's last known address and by publication have been permitted as alternate forms of service reasonably calculated to apprise a defendant of an action.").

---

[20] While OneCoin has historically claimed to operate out of Sofia, Bulgaria, it was widely reported in January 2018 that the company's Sofia offices were raided by Bulgarian law enforcement and its servers located in Bulgaria were shut down.  *See, e.g.*, Lubomir Tassev, *OneCoin Offices Raided in Sofia Servers Shut Down*, Bitcoin.com, *available at* https://news.bitcoin.com/onecoin-offices-raided-in-sofia-servers-shut-down/; *Mark Scott Guilty, OneCoin's Bulgaria Office Cleared Out*, BehindMLM (Nov. 22, 2019), *available at* https://behindmlm.com/companies/onecoin/mark-scott-guilty-onecoins-bulgaria-office-cleared-out/.

Second, service to the e-mail address listed on a defendant's website is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) (declining to authorize service by postal mail in China, but allowing service by e-mail listed on defendant's homepage) (quoting *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014), adhered to on reconsideration, No. 12-CV-5754 LAK, 2015 WL 998455 (S.D.N.Y. Mar. 5, 2015)).

Here, until the OneCoin Website went down on November 30, 2019, it listed the press@onecoin.eu as the proposed method of contacting OneCoin.[21]   Carriel Decl. ¶ 11, Ex. 8 (press release issued by the "OneCoin Press Department" on June 2, 2019 obtained from https://www.onecoin.eu/en/press-releases on November 26, 2019 listing the e-mail for contacting OneCoin as "press@onecoin.eu").   Furthermore, as of the date of this Renewed Motion: (i) the info@onecoin.eu e-mail address is listed as OneCoin's e-mail address on the Australian Securities & Investments Commission's May 28, 2019 advisory warning investors not to deal with OneCoin[22] and is listed as the "Contact Email" on OneCoin's profile on crunchbase.com;[23] (ii) the press@onelife.eu  e-mail address is listed on the OneLife Website;[24] (iii) the info@onelife.eu

---

[21] Notably, on September 25, 2019, the Court in the Scott Criminal Action ordered that notice of an Order to Show Cause be effected upon numerous parties, including Defendant Ignatova, by: "(i) publication by the Government of the Order, and (ii) to the extent such would be consistent with international law, "by email, where the particular Affected Party has a known and operational email address."  Scott Criminal Action, ECF No. 126.

[22]  *See*  https://www.moneysmart.gov.au/scams/companies-you-should-not-deal-with/unlicensed-companies-list/o/onecoin-limited.

[23] *See* https://www.crunchbase.com/organization/onecoin-2.

[24] *See* https://www.onelife.eu/en/contacts.

e-mail address is listed as the "Contact Email" on OneLife's profile on crunchbase.com;[25] and (iv) the office@oneworldfoundation.eu e-mail address is listed on the OneWorld Website.[26]  Based on the foregoing, Plaintiffs' proposed method of e-mail service to these addresses is appropriate.  *See, e.g.*, *Sulzer Mixpac AG*, 312 F.R.D. at 332 (service through e-mail is appropriate because "e-mail address in question is listed prominently on [defendant's] Internet homepage . . . [the defendant] presumably relies at least partially on contact through [its email] to conduct overseas business, and it is reasonable to expect [defendant] to learn of the suit against it through this e-mail address.").[27]

Third, transmission of the relevant documents to the Unserved Defendants through the contact forms on the OneLife Website[28] and the OneAcademy Website[29] and via social media messaging functions is likely to actually notify the Unserved Defendants of this litigation and Plaintiffs' claims, and thus satisfies due process requirements.  *See UBS Fin. Servs. v. Berger*, No. 13-cv-03770 (LB), 2014 U.S. Dist. LEXIS 193761, at *5 (N.D. Cal. Apr. 24, 2014) (recounting

---

[25] *See* https://www.crunchbase.com/organization/one-life.

[26] *See* https://www.oneworldfoundation.eu/en/contact.

[27] *See also Philip Morris*, 2007 U.S. Dist. LECIS 19780, at *9 (authorizing service of process via e-mail on defendants who "conduct business extensively, if not exclusively, through their internet websites and correspond regularly with customers via e-mail"); *McCluskey v. Belford High Sch.*, No. 09-cv-14345 (LPZ), 2010 WL 2696599, at *3–4 (E.D. Mich. June 24, 2010) (concluding that service via e-mail was appropriate where the defendants conducted their business online and relied on an e-mail address to conduct their business).

[28] The OneLife Website contains a "direct email form" for use in contacting their "corporate team."  *See* https://www.onelife.eu/en/contacts.

[29] The OneAcademy Website contains a contact form under the heading "We are Always Available."  *See* https://www.oneacademy.eu/en/about#contactForm.

court's decision to authorize service via defendant's "gmail address and through LinkedIn's 'InMail' feature").[30]

Fourth, as noted, if Defendant Greenwood is located within the United States, given his reported arrest and extradition, Greenwood would undoubtedly be within the government's custody. Accordingly, in the event Greenwood is located within the United States, Plaintiffs' proposed additional method of service via mailing the Service Documents to the prosecution team in the parallel Criminal Actions and requesting that the Service Documents be forwarded to Greenwood is the method most reasonably calculated to notify him of this Action.

Finally, the Unserved Defendants likely already have notice of this Action because Defendant Ignatov, who has appeared in this Action [ECF Nos. 37–38], maintained the top leadership position in OneCoin from mid-2018 until his arrest on or about March 6, 2019 and is Ignatova's brother. *See* FAC ¶¶ 34–36. Furthermore, the instant Action has been heavily reported in the press.[31] This reality should be considered in determining whether due process has been satisfied. *Wash. State Inv. Bd. v. Odebrecht S.A.*, 2018 U.S. Dist. LEXIS 163356, at *10 (S.D.N.Y. Sep. 21, 2018) ("As to due process, 'the basic inquiry as to the range of alternative means of service the Court may order . . . is whether the method is reasonably calculated, under all the

---

[30] *See also St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240 (LB), 2016 U.S. Dist. LEXIS 136152, at *4 (N.D. Cal. Sep. 30, 2016) (discussing decision to grant "service by email, Facebook, and LinkedIn because notice through these accounts was reasonably calculated to notify the defendant of the pendency of the action and was not prohibited by international agreement").

[31] *See, e.g.*, Max Boddy, *Former Investor Sues OneCoin Scheme, Seeks Class Action*, CoinTelegraph (May 8, 2019), *available at* https://cointelegraph.com/news/former-investor-sues-onecoin-scheme-seeks-class-action; Yogita Khatri, *Alleged Multibillion-Dollar Pyramid Scheme OneCoin Sued by Former Investor*, CoinDesk (May 8, 2019), *available at* https://www.coindesk.com/alleged-multibillion-dollar-crypto-pyramid-scheme-onecoin-sued-by-former-investor; Mark Emem, *OneCoin Scam Victim Files New York Lawsuit After $760,000 Loss*, CCN (July 10, 2019), *available at* https://www.ccn.com/onecoin-scam-victim-files-new-york-lawsuit-after-760000-loss/.

circumstances, to give actual notice to the party whose interests are to be affected by the suit or proceeding, and to afford him an adequate opportunity to be heard.'") (*quoting KPN B.V. v. Corcyra D.O.O.*, 2009 U.S. Dist. LEXIS 20906, at *4 (S.D.N.Y. Mar. 16, 2009)).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully moves the Court to permit Plaintiffs to serve, in the manner described in the [Proposed] Order submitted herewith, the Unserved Defendants with the Service Documents via registered mail and electronic means.

Dated: December 3, 2019                                        Respectfully Submitted,

**LEVI & KORSINSKY, LLP**
By:    */s/ William J. Fields*
William J. Fields (5054952)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
E-mail: wfields@zlk.com

**LEVI & KORSINSKY, LLP**
Donald J. Enright (*pro hac vice* forthcoming)
John A. Carriel (*pro hac vice* forthcoming)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
E-mail: denright@zlk.com
E-mail: jcarriel@zlk.com

**SILVER MILLER**
David C. Silver (*pro hac vice* forthcoming)
Jason S. Miller (*pro hac vice* forthcoming)
11780 W. Sample Road
Coral Springs, FL 33065
Tel: (954) 516-6000
E-mail: DSilver@SilverMillerLaw.com
E-Mail: JMiller@SilverMillerLaw.com
*Attorneys for Plaintiffs and Co-Lead Counsel for the Class*