**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

DONALD BERDEAUX and CHRISTINE
GRABLIS, Individually and on Behalf of All
Others Similarly Situated,

                            Plaintiffs,

            v.

ONECOIN LTD.; RUJA IGNATOVA,
KONSTANTIN IGNATOV; SEBASTIAN
GREENWOOD; MARK SCOTT; IRINA
ANDREEVA DILINSKA; DAVID PIKE; and
NICOLE J. HUESMANN,

                       Defendants.

Case No.: 1:19-cv-04074 (VEC)

Hon. Valerie E. Caproni

**ORAL ARGUMENT**
**REQUESTED**

**DEFENDANT MARK SCOTT'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION TO DISMISS**

**MINTZ & GOLD LLP**

Steven G. Mintz
Kevin M. Brown
Timothy J. Quill, Jr.
600 Third Avenue, 25th Floor
New York, NY 10016
(212) 696-4848 (t)
(212) 696-1231 (f)
mintz@mintzandgold.com
brown@mintzandgold.com
quill@mintzandgold.com

*Attorneys for Defendant Mark S. Scott*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL ALLEGATIONS .......................................................................................3

ARGUMENT ...............................................................................................................6

I.     The claims against Mr. Scott should be dismissed under Rule 12(b)(2),
       because the Court lacks personal jurisdiction over Mr. Scott.................................7

       A.     The Court does not have general jurisdiction over Mr. Scott.....................9

       B.     The Court does not have specific jurisdiction over Mr. Scott ..................10

II.    Alternatively, the Named Plaintiffs' claims against Mr. Scott should be
       dismissed under Rule 12(b)(6), because the Named Plaintiffs' allegations
       regarding Mr. Scott do not state claims for relief ...................................13

       A.     The Named Plaintiffs fail to state a claim for aiding and abetting
              fraud, because they have not alleged that Mr. Scott knew OneCoin
              was a Ponzi scheme ...............................................................14

       B.     The Named Plaintiffs fail to state a claim for unjust enrichment ............16

              1.     The claim for unjust enrichment fails because Mr. Scott's
                     alleged gain did not come directly at the Named Plaintiffs'
                     expense..........................................................................16

              2.     The Named Plaintiffs' claim for unjust enrichment duplicates
                     their other claims and should be dismissed...................................20

       C.     The Named Plaintiffs fail to state a claim for civil conspiracy, because
              New York does not recognize an independent tort of civil conspiracy .....21

CONCLUSION..........................................................................................................23

TABLE OF AUTHORITIES

Cases

*Acito v. IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir.1995) ................................................................................................. 15

*Alexander & Alexander of New York, Inc. v. Fritzen*,
   68 N.Y.2d 968 (1986) ..................................................................................................... 21

*Allocco v. City of Coral Gables*,
   221 F. Supp. 2d 1317 (S.D. Fla. 2002) ........................................................................... 22

*Alpha Capital Anstalt v. New Generation Biofuels, Inc.*,
   No. 13-CV-5586 (VEC), 2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014) ........................ 14

*Am. Diversified Ins. Servs., Inc. v. Union Fidelity Life Ins. Co.*,
   439 So.2d 904 (Fla. 2d DCA 1983) ................................................................................ 23

*Am. Honda Motor Co. v. Motorcycle Information Network, Inc.*,
   390 F. Supp. 2d 1170 (M.D. Fla. 2005) .......................................................................... 21

*Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*,
   820 F. Supp. 2d 510 (S.D.N.Y. 2011) ....................................................................... 17, 18

*Art Assure Ltd., LLC v. Artmentum GmbH*,
   No. 14 Civ. 3756 (LGS), 2014 WL 5757545 (S.D.N.Y. Nov. 4, 2014) ............................ 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 13

*Atl. Mut. Ins. Co. v. M/V HUMACAO*,
   169 F. Supp. 2d 211 (S.D.N.Y. 2001) ............................................................................... 9

*Basile v. Walt Disney Parks and Resorts U.S., Inc.*,
   No. 6:10-cv-993-Orl-35DAB, 2011 WL 13298729 (M.D. Fla. June 23, 2011) ............... 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................... 13, 14

*Bensusan Restaurant Corp. v. King*,
   126 F.3d 25 (2d Cir. 1997) ............................................................................................. 12

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) ........................................................................................... 12

*Brown v. Daikin Am. Inc.*,
   756 F.3d 219 (2d Cir. 2014) ........................................................................................... 14

*Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*,
    770 F. Supp. 2d 1261 (S.D. Fla. 2011) ................................................................................ 19

*Charles Schwab Corp. v. Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018) ..................................................................................................... 7

*Churruca v. Miami Jai Alai, Inc.*,
    353 So.2d 547 (Fla. 1977) .............................................................................................. 22, 23

*City of Syracuse v. R.A.C. Holding, Inc.*,
    258 A.D.2d 905, 685 N.Y.S.2d 381 (4th Dep't 1999) ........................................................ 16

*Corsello v. Verizon N.Y.*,
    18 N.Y.3d 777 (2012) .......................................................................................................... 20

*Cortes v. Twenty-First Century Fox Am., Inc.*,
    285 F. Supp. 3d 629 (S.D.N.Y.) ......................................................................................... 22

*Cutler v. Voya Financial, Inc.*,
    No. 18-20723-Civ-WILLIAMS/TORRES, 2018 WL 4410202 (S.D. Fla. Aug. 23, 2018) ...... 19

*David v. American Suzuki Motor Corp.*,
    629 F. Supp. 2d 1309 (S.D. Fla. June 16, 2009) ................................................................ 21

*Delgado-Perez v. City of New York*,
    No. 17-CV-01194 (LTS) (BCM), 2018 WL 6200039 (S.D.N.Y. Nov. 28, 2018) ..................... 9

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
    631 F.3d 42 (2d Cir. 2011) .................................................................................................. 16

*Eidelman v. Sun Prods. Corp.*,
    No. 16-CV-3914 (NSR), 2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) ............................... 20

*Espana Informatica, S.A. v. Top Cargo, Inc.*,
    No. 08-20276-CIV-UNGARO, 2008 WL 11331700 n.4 (S.D. Fla. July 3, 2008) ................. 23

*Fallon v. McKeon*,
    230 A.D.2d 629 (1st Dep't 1996) ........................................................................................ 20

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012) .................................................................................................... 17, 19

*Gill v. Three Dimension Sys., Inc.*,
    87 F. Supp. 2d 1278 (M.D. Fla. 2000) ............................................................................... 8, 9

*Giuliano v. Barch*,
    No. 16-CV-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. March 31, 2017) ................... 9, 10, 12

iii

*GMS Group, Inc. v. Sentinel Trust Co.*,
  No. 97 Civ. 1342 (WK), 1997 WL 414147 (S.D.N.Y. July 23, 1997) ..................................... 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ...................................................................................................... 9

*Guerrero v. Target Corp.*,
  889 F. Supp. 2d 1348 (S.D. Fla. 2012) ........................................................................... 21

*Hager v. Venice Hosp., Inc.*,
  944 F. Supp. 1530 (M.D. Fla. 1996) ............................................................................... 23

*In re Allou Distributors, Inc.*,
  446 B.R. 32 (Bankr. E.D.N.Y. 2011) ............................................................................... 21

*In re Commodity Exch., Inc.*,
  213 F. Supp. 3d 631 (S.D.N.Y. 2016) ............................................................. 13, 16, 17

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
  No. 11 MDL 2262 (NRB), 2019 WL 1331830,
  2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019) ................................................................. 7

*In re SSA Bonds Antitrust Litig.*,
  420 F. Supp. 3d 219 (S.D.N.Y. 2019) ............................................................................ 11

*Jazini v. Nissan Motor Co., Ltd.*,
  148 F.3d 181 (2d Cir. 1998) ............................................................................................ 7

*Johnson v. Priceline.com, Inc.*,
  711 F.3d 271 (2d Cir. 2013) .......................................................................................... 13

*JP Morgan Chase Bank v. Winnick*,
  406 F.Supp.2d 247 (S.D.N.Y. W2005) ........................................................................... 14

*Kaye v. Grossman*,
  202 F.3d 611 (2d Cir. 2000) .......................................................................................... 16

*Kew Gardens Hills Apartment Owners, Inc. v. Horing Welikson & Rosen, P.C.*,
  35 A.D.3d 383 (2d Dep't 2006) ..................................................................................... 22

*Kirch v. Liberty Media Corp.*,
  449 F.3d 338 (2d Cir. 2006) ............................................................................... 15, 21

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12-CV-3419 GBD, 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) ............................ 18

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) .......................................................................................... 14

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
   673 F.3d 50 (2d Cir. 2012) ........................................................................... 8

*Lipson v. Birch,*
   46 F. Supp. 3d 206 (E.D.N.Y. 2014) ........................................................... 9

*Mandarin Trading Ltd. v. Wildenstein,*
   16 N.Y.3d 173 (2011) ................................................................................. 17

*Meridian Trust Company v. Batista,*
   No. 17-23051-Williams, 2018 WL 4760277 (S.D. Fla. Sept. 30, 2018) ................................ 16

*Meyer v. Jinkosolar Holdings Co.,*
   761 F.3d 245 (2d Cir. 2014) ....................................................................... 13

*Munsif v. Barr,*
   797 Fed. App'x 658 (2d Cir. 2020) ............................................................. 15

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,*
   709 F.3d 109 (2d Cir. 2013) ....................................................................... 13

*Nautica Int'l, Inc. v. Intermarine USA, LP.,*
   5 F. Supp. 2d 1333 (S.D. Fla. 1998) .......................................................... 21

*Norex Petroleum Ltd. v. Blavatnik,*
   48 Misc. 3d 1226(A), 2015 N.Y. Slip Op. 51280(U) (Sup. Ct. N.Y. Cty. 2015) .................... 20

*North Fork Partners Investment Holdsing, LLC v. Bracken,*
   No. 20-cv-2444 (LJL), 2020 WL 2521448 (S.D.N.Y. May 18, 2020) .................................... 11

*Oakwood Ins. Co. v. N. Am. Risk Services, Inc.,*
   No. 6:18-cv-437-Orl-31KRS, 2019 WL 175278 (M.D. Fla. Jan. 11, 2019) ............................ 22

*Obeid v. La Mack,*
   No. 14 CV 6498 (LTS) (HBP), 2018 WL 2059653 (S.D.N.Y. May 1, 2018) .................... 20, 21

*Orozco v. Fresh Direct, LLC,*
   No. 15-CV-8226 (VEC), 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016) ................................ 13

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
   609 F.3d 30 (2d Cir. 2010) .................................................................. 7, 8, 9, 12

*Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.,*
   667 So.2d 876 (Fla. 3d DCA 1996) ............................................................. 19

*Raimi v. Furlong,*
   702 So. 2d 1273 (Fla. 3d DCA 1997) .......................................................... 22

*SEC v. Lee*,
   720 F.Supp.2d 305 (S.D.N.Y. 2010) ......................................................................... 14

*Silverman Partners, L.P. v. First Bank*,
   687 F. Supp. 2d 269 (E.D.N.Y. 2010) ....................................................................... 15

*Sperry v. Crompton Corp.*,
   8 N.Y.3d 204 (2007) ................................................................................................. 17

*Spiegel v. Schulmann*,
   604 F.3d 72 (2d Cir. 2010) ......................................................................................... 7

*Sunward Elecs., Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004) .................................................................................. 7, 11

*Thomas v. Ashcroft*,
   470 F.3d 491 (2d Cir. 2006) ....................................................................................... 7

*Touchtone Group, LLC v. Rink*,
   913 F. Supp. 2d 1063 (D. Col. Dec. 21, 2012) .......................................................... 8

*Troma Entm't, Inc. v. Centennial Pictures, Inc.*,
   729 F.3d 215 (2d Cir. 2013) ....................................................................................... 7

*U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ..................................................................................... 13

*Walden v. Fiore*,
   571 U.S. 277 (2014) ................................................................................................. 11

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ....................................................................................... 8

*Walters v. Blankenship*,
   931 So.2d 137 (Fla. 5th DCA 2006) ......................................................................... 22

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000) ....................................................................................... 14

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ................................................................................................. 12

## Statutes

28 U.S.C. § 1367(a) .......................................................................................................... 8

vi

Rules

Fed. R. Civ. P. 9(b) ................................................................................................................ 14, 15

Fed. R. Civ. P. 12(b)(2) ........................................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ passim

Fed. R. Civ. P. 12(e) ................................................................................................................... 23

N.Y. C.P.L.R. § 301 ..................................................................................................................... 9

N.Y. C.P.L.R. § 302 ..................................................................................................................... 9

N.Y. C.P.L.R. § 302(a) .............................................................................................................. 10

This Court cannot assert personal jurisdiction over defendant Mark Scott. He resides in Florida, was served in that state, and the Named Plaintiffs[1] allege no connection whatsoever between Mr. Scott and this forum. Moreover, even if this Court had personal jurisdiction, the Named Plaintiffs fail to state a claim against Mr. Scott. Accordingly, Mark Scott respectfully submits this memorandum of law in support of his motion to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

The Named Plaintiffs allege a complex, cross-border Ponzi scheme—operated out of Bulgaria and the United Arab Emirates—in which an international cabal—helmed by a missing Bulgarian CEO known as the "CryptoQueen" and a Swedish expert in Amway-style multi-level marketing—allegedly duped investors into buying a fictional, bitcoin-like cryptocurrency known as OneCoin. But to resolve the Named Plaintiffs' claims against Mark Scott, the Court need not untangle all the international intrigue and it certainly need not wade into the intricacies of "blockchains," "mining," or "distributed ledgers." Instead, the three pendent, state-law claims against Mr. Scott can be resolved by answering a far more banal question: why are these claims being brought in New York?

Mr. Scott resides in Florida. The Named Plaintiffs served him with process there. The Named Plaintiffs allege that Mr. Scott provided some form of after-the-fact assistance to OneCoin's founder Ruja Ignatova—a/k/a the "CryptoQueen"—by allegedly creating investment vehicles, not in New York, but in Ireland, the British Virgin Islands, and the Cayman Islands. Those hedge funds then allegedly received OneCoin-related funds from bank accounts based out

---

[1]     The Named Plaintiffs are: (i) Donald Berdeaux; and (ii) Christine Grablis. Their operative pleading is the First Amended Class Action Complaint (the "Amended Complaint" in the text and "AC" in citations) (ECF No. 40.).

of places other than New York such as Germany, Bulgaria, and Singapore. In other words, the Named Plaintiffs do not allege that Mr. Scott took any actions in—or directed any action toward—the United States, never mind specifically in New York. As such, this Court lacks personal jurisdiction over Mr. Scott. And the claims against him should be dismissed under Fed. R. Civ. P. 12(b)(2).

Moreover, even if this Court nevertheless asserts jurisdiction over Mark Scott—it should not—the Named Plaintiffs' three claims against Mr. Scott—for aiding and abetting fraud, unjust enrichment, and civil conspiracy—fail, on their face, to state causes of action. First, regarding the Named Plaintiffs' claim for aiding and abetting fraud, putting to the side the spy novel-style details of the alleged OneCoin scam—*e.g.*, the CryptoQueen's mysterious disappearance—Mr. Scott is alleged to be a corporate lawyer who decided to set up his own company to manage hedge funds and then accepted money from a wealthy investor to be invested by the hedge fund. Despite the Named Plaintiffs' liberal use of variations on the phrase "money laundering," Mr. Scott can only have been aiding the alleged underlying Ponzi scheme if he ***knew*** that Ms. Ignatova and her alleged co-conspirators operated a scam. And the Named Plaintiffs do not allege that Mr. Scott knew OneCoin was a fraud. Second, the Named Plaintiffs' claim for unjust enrichment fails: (i) because there is no direct connection between the Named Plaintiffs' alleged loss Mr. Scott's alleged gain; and (ii) because it duplicates other claims in this action. Finally, the Named Plaintiffs' claim for civil conspiracy fails because New York does not recognize an independent tort of conspiracy.

The claims against Mr. Scott do not belong before this Court. But should the Court consider them, those claims are deficient. Whether it is for lack of personal jurisdiction, under

Rule 12(b)(2), or for failure to state a claim, under Rule 12(b)(6), the Named Plaintiffs' claims against Mark Scott should be dismissed.

## FACTUAL ALLEGATIONS

**The OneCoin Scheme Generally**

The Amended Complaint recounts the story of a global Ponzi scheme designed to take advantage of the gap between the public's keen interest in bitcoin-style cryptocurrencies and the average person's lack of understanding of the technologies that make such currencies work. The Amended Complaint alleges that the resulting fake cryptocurrency—OneCoin—duped investors worldwide, who purportedly suffered losses exceeding four billion dollars in the aggregate. (AC ¶¶ 1, 4, 141.)

The Named Plaintiffs allege that in April 2014, Ruja Ignatova a/k/a the CryptoQueen, a resident of Bulgaria, and Sebastian Greenwood, a resident of Sweden, founded OneCoin Ltd. (the "OneCoin Entity"), a Bulgarian company with offices in several foreign countries.[2] (AC ¶ 19.) The Founder Defendants created the OneCoin Entity to market OneCoin: purportedly a cryptocurrency, but one for which there has never been the requisite underlying technology and one that never had a functioning market. (AC ¶¶ 2–5, 64–65, 74–75, 81, 85, 87.) The Amended Complaint alleges that the OneCoin Defendants[3] marketed the illusory OneCoin cryptocurrency using Amway-style multi-level marketing—with investors earning additional units of OneCoin

---

[2]     At the time the Named Plaintiffs filed the Amended Complaint, Ruja Ignatova and Sebastian Greenwood, (together the "Founder Defendants") were both named as defendants. (AC Introduction, ¶¶ 22–32.) The Named Plaintiffs subsequently dropped Mr. Greenwood as a defendant after they were unable to locate him. (See ECF No. 90.)

[3]     The OneCoin Defendants originally consisted of the "Founder Defendants" (Ignatova and Greenwood), together with the OneCoin Entity, Konstantin Ignatov (Ruja Ignatova's brother), and Irina Andreeva Dilinska (head of OneCoin's legal and compliance department). (AC Introduction, ¶¶ 18–39.) The Named Plaintiffs voluntarily dismissed Greenwood and Dilinska to allow this action to proceed. (See ECF No. 90.)

for every new investor they recruited—and as a massive Ponzi scheme—with new investments used to fund older investors redemptions. (AC ¶¶ 2, 21, 66, 119.)

Around September 2014, the OneCoin Entity launched "OneCoin," billing it as a cryptocurrency and selling OneCoin Trader Packages, which consisted of purported financial "educational material" which came with a token to redeem a OneCoin. (AC ¶¶ 20–21.) The Named Plaintiffs allege that OneCoin was an illusion—having none of the hallmarks of real cryptocurrencies, like a publicly available ledger to track transactions, and that there has never been a functioning market for OneCoin. (AC ¶¶ 2–5, 64–65, 74–75, 81, 85, 87.)

The Complaint alleges that around July 2015, the OneCoin Defendants began actively soliciting investors in the United States, expanding the reach of the already multi-national Ponzi scheme. (AC ¶¶ 105–06.) The Named Plaintiffs, Donald Berdeaux and Christine Grablis, claim that they are two of potentially thousands of U.S.-based victims of the OneCoin scheme. (AC ¶ 29.) Berdeaux, a Montana resident, alleges that between August 2015 and May 2016, he invested approximately $756,000.00 in the fraudulent OneCoin Investment Programs. (AC ¶ 14.) Grablis, a Tennessee resident, alleges that from August 2015 through August 2016, she invested approximately $103,500.00 in OneCoin. (AC ¶ 16.)

As in a typical Ponzi scheme, the OneCoin Defendants pooled the Named Plaintiffs' investments with those of other investors, with some of those funds being used to pay redemptions by earlier investors in the OneCoin scheme, and the bulk of the money going to the people running the scheme. (AC ¶¶ 3, 119–20, 190.) The Named Plaintiffs allege that worldwide the OneCoin Entity received more than $4 billion in investments in OneCoin. (AC ¶¶ 138–141.)[4]

---

[4]     Ruja Ignatova disappeared in October 2017 and her whereabouts are still unknown. (AC ¶ 27.) After her disappearance, her brother, Konstantin Ignatov, allegedly took over the OneCoin Entity. (AC ¶¶ 34–35.) He was arrested and transferred to New York to face a

**Mark Scott's Alleged Role**

The Amended Complaint alleges that Mr. Scott—a corporate attorney and resident of Coral Gables Florida—provided assistance to the OneCoin Defendants, allowing the OneCoin scheme to continue. (AC ¶ 40.) The Named Plaintiffs allege that Mr. Scott formed foreign hedge funds that received funds from OneCoin-related bank accounts. (AC ¶¶ 40–46.)

Specifically, according to the Amended Complaint, Mr. Scott met Ruja Ignatova around September 2015. Then, in February 2016, Mr. Scott formed a consulting firm in the British Virgin Islands—MSS International Consultants ("MSSI")[5]—through which he and defendant David Pike registered foreign investment funds. (AC ¶¶ 124, 125.)

The foreign investment funds included three funds registered in the British Virgin Islands, a fund in the Cayman Islands, and at least five funds in the Republic of Ireland. (AC ¶ 125 & n.4.) According to the Amended Complaint, from August 2016 through February 2017, several of these foreign investment funds wired approximately €273 million to separate accounts at an Irish bank. (AC ¶ 126.)

The Amended Complaint further alleges that in April 2016, Mr. Scott engaged an outside company, Apex, to provide administration services for several of the investment funds and that Apex created bank accounts for the investment funds which subsequently received approximately €155 million in wire transfers from OneCoin-related bank accounts in Singapore, Germany, and Bulgaria. (AC ¶¶ 127, 128.)

The Named Plaintiffs allege that, in total, between June 2016 and February 2017, the foreign investment funds set up by Mr. Scott and Apex collectively received approximately €364

---

criminal trial. (AC ¶ 36). Defendant Greenwood was arrested in Thailand and was later extradited to the United States to await criminal charges. (AC ¶ 32.)

[5]     "MSS" are Mark S. Scott's initials. (AC ¶ 125.)

million and $10 million originating from ten different bank accounts, and the funds from eight of

those accounts received investments, either directly or indirectly, from OneCoin investments

made by members of the putative class. (AC ¶ 130.) At one point, Apex asked Mr. Scott to

confirm the origin of wire transfers to certain bank accounts, and he explained that they were

deposits by a company called B and N Consult Ltd. owned by defendant Dilinska. (AC ¶ 128.)

The Amended Complaint further alleges that soon thereafter, Mr. Scott mistakenly forwarded an

e-mail chain to Apex revealing that Dilinska's e-mail address was hosted on the domain

"onecoin.eu," and that when Apex inquired further, Mr. Scott terminated the funds' business

relationship with Apex. (AC ¶ 129.) According to the Amended Complaint, the funds set up by

Mr. Scott received $400 million of the purported class's investments in OneCoin. (AC ¶ 131.)

The Named Plaintiffs further allege that Mr. Scott received at least $15.5 million from OneCoin.

(AC ¶ 131.)

*****

The Named Plaintiffs filed this action on May 7, 2019, purporting to represent a class of

all OneCoin investors. Their operative pleading, the Amended Complaint, sets forth three claims

against Mr. Scott—aiding and abetting fraud (Count IV), unjust enrichment (Count VIII), and

civil conspiracy (Count X). (AC ¶¶ 167–170, 197–200, 207–220.)

**<u>ARGUMENT</u>**

For the reasons set forth below, Mark Scott submits that the claims against him should be

dismissed under Fed. R. Civ. P 12(b)(2) and 12(b)(6).

**I.      The claims against Mr. Scott should be dismissed under Rule 12(b)(2), because the Court lacks personal jurisdiction over Mr. Scott.**

As the plaintiff, the Named Plaintiffs bear "the burden of demonstrating personal

jurisdiction over a person or entity[.]" *Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d

6

215, 217 (2d Cir. 2013) *quoting Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d

Cir. 2010). To satisfy that burden, they must have alleged specific facts to establish a prima facie

case of personal jurisdiction; "conclusory statements without any supporting facts . . . 'lack the

factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*,

No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) *quoting Jazini v.

Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998). Further, it is not enough for the

Named Plaintiffs to allege facts sufficient to establish jurisdiction over one defendant. They must

allege facts for the Court to obtain jurisdiction over each individual defendant for each claim

asserted. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff

must establish the court's jurisdiction with respect to *each* claim asserted.") (emphasis in

original); *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB),

2019 WL 1331830, at *6 (S.D.N.Y. Mar. 25, 2019).

Where claims arise under state law, as the Named Plaintiffs' claims against Mr. Scott do

in this case, courts engage in a two-step personal jurisdiction analysis. First, the plaintiff must

establish a statutory basis for personal jurisdiction under the laws of the forum state. *Charles

Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018); *see Spiegel v. Schulmann*,

604 F.3d 72, 76 (2d Cir. 2010) *citing Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006) ("A

district court's personal jurisdiction is determined by the law of the state in which the court is

located."). Only if the first requirement is satisfied does the court turn to the second step—

determining whether "'the exercise of personal jurisdiction . . . comport[s] with constitutional

due process principles.'" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir.

2016) *quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir.

2012); *see Penguin Grp.*, 609 F.3d at 35.

The Named Plaintiffs' claims against Mr. Scott—aiding and abetting fraud, unjust enrichment, and civil conspiracy—arise under state law. The Court, therefore, looks to the laws of the forum state—New York—to determine whether to exercise personal jurisdiction over Mr. Scott. *See, e.g.*, *GMS Group, Inc. v. Sentinel Trust Co.*, No. 97 Civ. 1342 (WK), 1997 WL 414147, at *3 (S.D.N.Y. July 23, 1997) (noting that non-domiciliary defendants against whom plaintiff asserted Securities Exchange Act claims were subject to national personal jurisdiction whereas New York law governed whether the court could exercise personal jurisdiction over non-domiciliary defendant against whom plaintiff asserted only state law claims); *Touchtone Group, LLC v. Rink*, 913 F. Supp. 2d 1063, 1074 (D. Col. Dec. 21, 2012) (stating that "because [p]laintiff does not bring claims against these defendants under the Securities Exchange Act, [p]laintiff must establish specific or general jurisdiction against them under *International Shoe's* 'minimum contacts' analysis"); *Gill v. Three Dimension Sys., Inc.*, 87 F. Supp. 2d 1278, 1284 (M.D. Fla. 2000) (finding that plaintiff in securities fraud action must establish personal jurisdiction under Florida's long-arm statute over defendants against whom plaintiff asserted only state law claims). Thus, the Named Plaintiffs must allege facts establishing a statutory basis for the Court to exercise personal jurisdiction under New York law.[6]

---

[6] Plaintiffs presumably assert subject matter jurisdiction over the state law claims against Mr. Scott based on supplemental jurisdiction under 28 U.S.C. § 1367(a), premised on federal question jurisdiction over the Securities Exchange Act claims against the OneCoin and Founder Defendants—though this is far from clear, since the Amended Complaint fails to identify a basis for subject matter jurisdiction of the state law claims. (*See* AC ¶ 11.) Regardless of the basis of subject matter jurisdiction here, New York law, as limited by due process principles, determines whether the Court may exercise personal jurisdiction over Mr. Scott. *See Lipson v. Birch*, 46 F. Supp. 3d 206, 216–17 (E.D.N.Y. 2014) *citing Atl. Mut. Ins. Co. v. M/V HUMACAO*, 169 F. Supp. 2d 211, 217 n.2 (S.D.N.Y. 2001) and *Gill v. Three Dimension Sys., Inc.*, 87 F. Supp. 2d 1278, 1284 (M.D. Fla. 2000) ("Whether viewed as invoking diversity of citizenship jurisdiction or supplemental jurisdiction, the New York long-arm statute applies with respect to the [p]laintiff's state law claims.").

In New York, general jurisdiction is governed by N.Y. C.P.L.R. § 301 and specific jurisdiction over out-of-state defendants is governed by the state's long-arm statute, N.Y. C.P.L.R. § 302. *See Penguin Grp.*, 609 F.3d at 35; *Delgado-Perez v. City of New York*, No. 17-CV-01194 (LTS) (BCM), 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018). Here, neither general nor specific personal jurisdiction is satisfied under New York law and the claims against Mr. Scott therefore should be dismissed.

A.      *The Court does not have general jurisdiction over Mr. Scott.*

The Court does not have general personal jurisdiction over Mr. Scott. For a state to exercise general jurisdiction, the defendant's "affiliations with the [s]tate [must be] so continuous and systematic as to render [him] essentially at home in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation and citation omitted). Under N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction in New York if he (1) is domiciled in New York; (2) was served with process in New York; or (3) continuously and systematically does business in New York. *Giuliano v. Barch*, No. 16-CV-0859 (NSR), 2017 WL 1234042, at *4 (S.D.N.Y. March 31, 2017) *citing* N.Y. C.P.L.R. § 301.

As the Named Plaintiffs acknowledge, Mr. Scott is domiciled in Coral Gables, Florida and the Named Plaintiffs effected service there. (AC ¶ 40; ECF No. 15.) The Named Plaintiffs allege no facts suggesting that Mr. Scott has extensive contacts with New York, such that he would be considered "at home" in the state. *See Goodyear Dunlop Tires*, 563 U.S. at 919. Indeed, the Named Plaintiffs barely bothered to mention New York at all in the Amended Complaint. Accordingly, the Court cannot assert general personal jurisdiction over Mr. Scott.

B.      *The Court does not have specific jurisdiction over Mr. Scott.*

The Court does not have specific jurisdiction over Mr. Scott under the New York long-arm statute either. Under N.Y. C.P.L.R. § 302(a), a New York court may exercise specific

personal jurisdiction over a non-resident based on any of the following acts, provided such acts relate to the claim asserted: (1) transacting business within the state or contracting anywhere to supply goods or services in the state; (2) committing a tortious act within the state; (3) committing a tortious act outside of the state and causing injury to a person or property within the state, if the defendant regularly does business or engages in other business and derives substantial revenue from New York or reasonably expects to have consequences in the state; or (4) owning, using or possessing any real property within the state. N.Y. C.P.L.R. § 302(a); *see Giuliano*, 2017 WL 1234042, at \*4.

The Named Plaintiffs, however, fail to allege facts that Mr. Scott engaged in *any* of those acts. There is no allegation that Mr. Scott transacted business in or contracted to supply goods or services in the state; there is no allegation that he took any action within the geographical boundaries of New York; there is no allegation that he regularly engages in business or derives revenue from New York; and there is no allegation that he owns or possesses property in the state. In fact, the Named Plaintiffs do not allege that Mr. Scott's purported involvement in the OneCoin scheme has any connection to New York, whatsoever.

The Amended Complaint alleges that the OneCoin scheme was operated out of Bulgaria and the United Arab Emirates. (AC ¶¶ 18, 22, 33, 77.) Although the Named Plaintiffs allege that the victims of the alleged scheme "include individuals living and/or working within the Southern District of New York," (AC ¶ 91), the Named Plaintiffs themselves are not even residents of New York, but rather reside in Montana and Tennessee. (AC ¶¶ 14, 16.) In any event, the proper question for personal jurisdiction "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Here, Named Plaintiffs' slipshod allegations against

Mr. Scott fail to support their proffered conclusion that his supposed conduct ties him to New York.

As noted previously, the Named Plaintiffs must allege facts for the Court to exercise jurisdiction over Mr. Scott for each claim asserted against him. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Yet, the Named Plaintiffs' only reference to personal jurisdiction in the Amended Complaint are generic, conclusory allegations stating that the Court:

> has personal jurisdiction over each of the Defendants because each either [1] conducts business in and maintains operations in this District, or is an individual who either [2] is present in this District for jurisdictional purposes or [3] has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

(AC ¶ 12.) Boilerplate, conclusory, generalized allegations—lacking any factual content—cannot create jurisdiction. *North Fork Partners Investment Holdsing, LLC v. Bracken*, No. 20-cv-2444 (LJL), 2020 WL 2521448, at *3 (S.D.N.Y. May 18, 2020). Nor is the Named Plaintiffs' reliance on group pleading sufficient to establish personal jurisdiction over an individual defendant. *See In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 233 (S.D.N.Y. 2019).

The Named Plaintiffs reference several geographic locations in their allegations against Mr. Scott: Ireland, the Cayman Islands, the British Virgin Islands, and Switzerland. Specifically, the Named Plaintiffs allege that Mr. Scott (1) formed foreign hedge funds in the Cayman Islands, British Virgin Islands, and Switzerland; (2) registered a consulting agency in the British Virgin Islands; and (3) transferred funds through bank accounts at financial institutions in the Cayman Islands and the Republic of Ireland. (*See* AC ¶¶ 40, 41, 125.) None of these alleged activities subjects Mr. Scott to personal jurisdiction under New York law.

The only allegations in the Amended Complaint that reference Mr. Scott's ties to this District or to New York are: (1) the Named Plaintiffs' allegation that Mr. Scott was indicted in

11

this District; and (2) the Named Plaintiffs' allegation that Mr. Scott was released from a federal prison in New York prior to his criminal trial. (*See* AC ¶¶ 42, 140.) But neither these alleged facts nor any of the others asserted by the Named Plaintiffs in the Amended Complaint, satisfies New York's long-arm statute. Accordingly, there is no statutory basis for specific personal jurisdiction over Mr. Scott and the claims against him should be dismissed.

Because the Court lacks both general and specific jurisdiction over Mr. Scott under New York's personal jurisdiction law, it need not address the issue of whether the exercise of personal jurisdiction over Mr. Scott in this case would violate due process. *See Penguin Grp.*, 609 F.3d at 35 *citing Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) ("[A]nalysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the applicable state statute.") (internal citation omitted); *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (finding where exercise of jurisdiction is proscribed by New York law, the court does not address due process issues); *Giuliano*, 2017 WL 1234042, at *12 ("Since this Court finds that it lacks personal jurisdiction over the moving defendants pursuant to New York's long-arm statute, it will not address the issue of whether the exercise of personal jurisdiction would offend due process.") (citations omitted).[7]

In sum, the Court lacks personal jurisdiction over Mr. Scott and the Amended Complaint should be dismissed under Rule 12(b)(2).

---

[7]     Even if the Court were to engage in the constitutional analysis to determine whether the exercise of personal jurisdiction over Mr. Scott comports with due process, the Court would undoubtedly reach the same conclusion. Because the Amended Complaint fails to allege sufficient "minimum contacts" with New York, Mr. Scott could not "reasonably anticipate being haled into Court" in this forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *accord U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). As such, exercising personal jurisdiction over Mr. Scott in this case would violate due process and be constitutionally impermissible.

**II.      Alternatively, the Named Plaintiffs' claims against Mr. Scott should be dismissed under Rule 12(b)(6), because the Named Plaintiffs' allegations regarding Mr. Scott do not state claims for relief.**

Should the Court decide to assert personal jurisdiction over Mr. Scott, each of the Named Plaintiffs' three claims against Mr. Scott should, nevertheless, be dismissed under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Orozco v. Fresh Direct, LLC*, No. 15-CV-8226 (VEC), 2016 WL 5416510, at *2 (S.D.N.Y. Sept. 27, 2016) *quoting Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). The Court must "'accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.'" *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 649 (S.D.N.Y. 2016) *quoting Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014) (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (alterations omitted)). A complaint must be dismissed if it does not "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id. quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 650 *quoting Twombly*, 550 U.S. at 555. Further, "[courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id. quoting Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555 (other internal quotation marks and citations omitted)).

Here, the Named Plaintiffs have not sufficiently alleged elements of each of their three claims for relief against Mark Scott—regardless of whether the Court applies the substantive law of New York or Florida. The Named Plaintiffs' claim for aiding and abetting fraud fails because they have not alleged that Mr. Scott was aware that OneCoin was a Ponzi scheme. The Named

Plaintiffs' claim for unjust enrichment fails because they have not alleged a direct connection between their alleged loss and Mr. Scott's alleged gain. Moreover, the claim for unjust enrichment merely duplicates other claims in this action. Finally, the Named Plaintiffs' claim for civil conspiracy fails because New York and Florida do not recognize an independent tort of conspiracy.

A.   *The Named Plaintiffs fail to state a claim for aiding and abetting fraud, because they have not alleged that Mr. Scott knew OneCoin was a Ponzi scheme.*

To plead a claim for aiding and abetting fraud under New York law, the Named Plaintiffs must allege "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Alpha Capital Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 (VEC), 2014 WL 6466994, at *19 (S.D.N.Y. Nov. 18, 2014) *quoting JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 252 (S.D.N.Y. 2005). Under New York law "[a]ctual knowledge is required to impose liability on an aider and abettor theory[.]" *Alpha Capital Anstalt*, 2014 WL 6466994, at *19 *citing Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006). The heightened pleading requirement of Fed. R. Civ. P. 9(b) applies to such claims. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91–92 (2d Cir. 2000) (applying Rule 9(b)'s particularity requirement to claim for aiding and abetting fraud); *SEC v. Lee*, 720 F.Supp.2d 305, 321 (S.D.N.Y. 2010) (explaining that Rule 9(b) applies to "all averments of fraud or mistake"). Under Fed. R. Civ. P. 9(b) a party alleging "fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." While Rule 9(b) allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to be] alleged generally[,]" Fed. R. Civ. P. 9(b), "courts 'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[.]'" *Silverman Partners, L.P. v. First Bank*, 687 F. Supp.

14

2d 269, 285 (E.D.N.Y. 2010) *quoting Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995).

Here, the Named Plaintiffs never allege that Mr. Scott knew OneCoin was a fraud.[8] Stripped of its conclusory invocations of "money laundering," the Amended Complaint merely alleges that Mr. Scott used his own name to register a company—using his initials—MSS—as the basis for the company's name: MSS Consultants International Ltd. ("MSSI"). (AC ¶ 125.) Then, Mr. Scott caused MSSI to set up several hedge funds. (*Id.*) And those hedge funds opened bank accounts and received money from other sources. (AC ¶¶ 126–31.) Finally, Mr. Scott received compensation from the hedge funds. (AC ¶¶ 133–36.) Unless Mr. Scott **knew** that money received by the MSSI hedge funds were the proceeds of a fraud, then all the Named Plaintiffs accuse of him of doing is setting up and operating hedge funds without any indicia of subterfuge.

If the Court applies Florida law to the Named Plaintiffs' aiding and abetting claim, because the Named Plaintiffs fail to allege any connection between Mr. Scott and New York, the Court should reach the same conclusion. To state a claim for aiding and abetting under Florida law, like under New York law, the plaintiff must allege "actual knowledge of the underlying wrongdoing." *Meridian Trust Company v. Batista*, No. 17-23051-Williams, 2018 WL 4760277, at *8 (S.D. Fla. Sept. 30, 2018). As the Named Plaintiffs do not allege such knowledge, they

---

[8]    The Named Plaintiffs do assert one conclusory allegation that Mr. Scott knew that "the property involved in certain financial transactions represented the proceeds of some form of unlawful activity." (AC ¶ 218.) Such "legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Munsif v. Barr*, 797 Fed. App'x 658, 659 (2d Cir. 2020) *quoting Kirch v. Liberty Media Corp.*, 449 F.3d 338, 398 (2d Cir. 2006). In any event, the Named Plaintiffs did not incorporate that allegation into their cause of action for aiding and abetting fraud.

have failed to state a claim for aiding and abetting fraud under either New York or Florida law, and their claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

B.    *The Named Plaintiffs fail to state a claim for unjust enrichment.*

The Named Plaintiffs' claim for unjust enrichment should be dismissed: (i) because the Named Plaintiffs do not allege a direct connection between the money they allegedly invested in OneCoin and money received by Mr. Scott—*i.e.*, that Mr. Scott's alleged gain came directly at their alleged expense; and (ii) because New York law prohibits a plaintiff from maintaining an unjust enrichment claim that duplicates, or replaces, a conventional contract or tort claim.

1.    The claim for unjust enrichment fails because Mr. Scott's alleged gain did not come directly at the Named Plaintiffs' expense.

To plead a claim for unjust enrichment under New York law, the Named Plaintiffs must have alleged that "(1) [the] defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 676 (S.D.N.Y. 2016) (Caproni, J.) *quoting Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011). The "essence" of a claim for unjust enrichment "is that one party has received money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) *quoting City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (4th Dep't 1999). Thus, it is not enough for the Named Plaintiffs to make a conclusory allegation tracking the language of the elements of a claim for unjust enrichment by alleging that Mr. Scott's "receipt of [funds] was at the direct expense" of the Named Plaintiffs. (AC ¶ 7.)[9] The Named Plaintiffs must allege facts demonstrating that Mr. Scott received money that specifically belonged to them. *See*

---

[9]    As is discussed in more detail below, the chances that any of the specific Named Plaintiffs' funds can be traced to Mr. Scott are tiny.

*Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 536–38 (S.D.N.Y. 2011). Put another way, a party pleading unjust enrichment must articulate a specific direct benefit the defendant received at the expense of the plaintiff's property. *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 676 (S.D.N.Y. 2016) (Caproni, J.). The relationship or connection between the defendant and plaintiff does not need to rise to the level of privity; but the relationship cannot be "too attenuated to support a claim." *Id. quoting Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215–16 (2007); *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517–18 (2012) (upholding dismissal of claim of unjust enrichment because the relationship between parties was too attenuated); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182–83 (2011) (holding that party cannot plead unjust enrichment when plaintiff did not know that defendant existed).

The Named Plaintiffs fail to allege any facts demonstrating the requisite direct connection between the funds the Named Plaintiffs allegedly invested in OneCoin and any funds Mr. Scott later took as a distribution from MSSI. The Named Plaintiffs do not allege, for example, that Mr. Scott or MSSI directly or indirectly received the specific funds that they personally invested in OneCoin. Moreover, nothing in the Amended Complaint suggests that Mr. Scott knew of the Named Plaintiffs' existence, never mind that the money he supposedly received came from the Named Plaintiffs. The Named Plaintiffs' failure to plead facts demonstrating a direct connection between the Named Plaintiffs and Mr. Scott—standing alone—warrants dismissal of the claim for unjust enrichment.

The Named Plaintiffs cannot address their pleading deficiency by simply re-pleading the claim to include some missing magic words. First, the named Plaintiffs have already included such a conclusory allegation, (AC ¶ 7), and such allegations are insufficient. *Laydon v. Mizuho Bank, Ltd.*, No. 12-CV-3419 GBD, 2014 WL 1280464, at *13 (S.D.N.Y. Mar. 28, 2014)

(granting motion to dismiss claim and noting that "[p]laintiff's conclusory assertions that [defendants] financially benefited from the unlawful manipulation and that these unlawful acts caused [p]laintiff . . . to suffer injury, fail to satisfy [p]laintiff's pleading burden") (internal citations, quotations, and alterations removed). And the facts that the Named Plaintiffs *do* allege demonstrate that they could *never* allege the requisite facts to establish a direct connection with Mr. Scott. The structure of the alleged OneCoin fraud—as described in the Amended Complaint—makes drawing such a direct link impossible. Dismissal, therefore, should be granted with prejudice.

The Named Plaintiffs allege that they delivered their investments not to Mr. Scott, but to OneCoin. (AC ¶¶ 14, 16.) And OneCoin was "an old-fashioned Ponzi scheme[,]" in which investors "had no method of tracing their money[.]" (AC ¶¶ 4–5.) In other words, OneCoin pooled the Named Plaintiffs' investments with those of other investors, with some of those funds being used to pay redemptions by earlier investors. (AC ¶¶ 3, 190.) But once the Named Plaintiffs' funds were pooled with funds from other investors, those funds ceased to be separately identifiable as the Named Plaintiffs' money. And the Named Plaintiffs do not allege that their funds can be traced through OneCoin to Mr. Scott as in *Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 536–38 (S.D.N.Y. 2011). As such, the Named Plaintiffs have not—and cannot—allege facts establishing a nexus between the money they gave to OneCoin and the money Mr. Scott allegedly took out of MSSI.[10] Without such a straight-line

---

[10]     Putting the fungibility of money aside, and accepting the Named Plaintiffs' allegations as true, it is highly unlikely that Mr. Scott ever received any funds at the expense of the Named Plaintiffs. According to the Amended Complaint:

- Less than 10% of the funds invested in OneCoin ever passed through an MSSI hedge fund, (*see* Amended Complaint ¶¶ 1, 131);

- Mr. Scott received less than half a penny (.39%) out of the average dollar

connecting them, the relationship between Mr. Scott and those funds is too attenuated to support

a claim for unjust enrichment. *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517–18 (2012).

To the extent the Court applies Florida law, the Named Plaintiffs still fail to state a claim.

Under Florida law, "[n]o unjust enrichment claim is actionable unless a plaintiff has conferred a

*direct benefit* on the defendant." *Cutler v. Voya Financial, Inc.*, No. 18-20723-Civ-

WILLIAMS/TORRES, 2018 WL 4410202, at *10 (S.D. Fla. Aug. 23, 2018) (emphasis in

original) *citing Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.*, 667

So.2d 876, 879 (Fla. 3d DCA 1996); *see Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*,

770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011) ("A benefit that a defendant gains that does not

come directly from the plaintiff does not give rise to a claim for unjust enrichment."").

Accordingly, the Named Plaintiffs' unjust enrichment claim should be dismissed under Rule

12(b)(6).

> 2.   The Named Plaintiffs' claim for unjust enrichment duplicates their other
> claims and should be dismissed.

The Named Plaintiffs' unjust enrichment claim should also be dismissed because "New

York courts routinely dismiss unjust enrichment claims when they are merely duplicative of

---

     invested in OneCoin, (*see* Amended Complaint ¶¶ 1, 131);

-   When Mr. Berdeaux and Ms. Grablis began investing in OneCoin, Mr. Scott
    had not met OneCoin founder Ruja Ignatova, (Amended Complaint ¶¶ 14, 16,
    124);

-   Mr. Berdeaux had ceased investing in OneCoin by the time money allegedly
    began being deposited with the MSSI hedge funds and Ms. Grablis ceased
    investing shortly after, (Amended Complaint ¶¶ 14, 16, 130); and

-   Both Named Plaintiffs had ceased investing in OneCoin before Mr. Scott
    received compensation from MSSI. (Amended Complaint ¶ 130.)

Thus, even if Mr. Scott received and retained funds that originally came from *some* OneCoin
investors, the probability that he received the Named Plaintiffs' money is *de minimis*.

other causes of action." *Norex Petroleum Ltd. v. Blavatnik*, 48 Misc. 3d 1226(A), 2015 N.Y. Slip

Op. 51280(U), at *32 (Sup. Ct. N.Y. Cty. 2015) *citing Fallon v. McKeon*, 230 A.D.2d 629, 60

(1st Dep't 1996). Unjust enrichment is available "'only in unusual situations when, though the

defendant has not breached a contract nor committed a recognized tort, circumstances create an

equitable obligation running from the defendant to the plaintiff. Typical cases are those in which

the defendant, though guilty of no wrongdoing, has received money to which he or she is not

entitled.' This claim is 'not available where it simply duplicates, or replaces, a conventional

contract or tort claim.'" *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914 (NSR), 2017 WL

4277187, at *6 (S.D.N.Y. Sept. 25, 2017) *quoting Corsello v. Verizon N.Y.*, 18 N.Y.3d 777, 790

(2012).

This action is not the unusual exception where a plaintiff must resort to equity because he

or she has no remedy at law. The Named Plaintiffs' allegations sprawl across ten claims, (*see* AC

¶¶ 145–220), sounding in contract and tort—both directly from some (but, curiously, not all) of

the central figures in the alleged Ponzi scheme—*e.g.*, OneCoin and Ruja Ignatova—and from

individuals whose supposed roles in that alleged scheme cannot be divined from the Amended

Complaint. The Named Plaintiffs' claim for unjust enrichment essentially asks that Mr. Scott

disgorge any funds received from OneCoin. As such, it duplicates many of the Named Plaintiffs'

other causes of action and should be dismissed. *Obeid v. La Mack*, No. 14 CV 6498 (LTS)

(HBP), 2018 WL 2059653, at *29 (S.D.N.Y. May 1, 2018) ("New York courts will dismiss

unjust enrichment claims where the violative conduct alleged is conterminous with a

conventional tort or contract claim, regardless of whether the tort or contract claim is

dismissed.").

The same analysis applies under the substantive law of Florida. Under Florida law, "the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *David v. American Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324 (S.D. Fla. June 16, 2009) *quoting Nautica Int'l, Inc. v. Intermarine USA, LP.*, 5 F. Supp. 2d 1333, 1341-42 (S.D. Fla. 1998); *see Am. Honda Motor Co. v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists."). Because the allegations underlying the claim for unjust enrichment are identical to those supporting the Named Plaintiffs' other claims, the unjust enrichment claim should be dismissed. *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356-57 (S.D. Fla. 2012) (dismissing unjust enrichment claim based on factual predicate common to other claims at law).

C.     *The Named Plaintiffs fail to state a claim for civil conspiracy, because New York does not recognize an independent tort of civil conspiracy.*

Finally, the Named Plaintiffs' claim for civil conspiracy should be dismissed, because "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) *citing Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986). Thus, civil conspiracy claims that merely duplicate a party's other claims—including aiding and abetting claims—should be dismissed. *See In re Allou Distributors, Inc.*, 446 B.R. 32, 60 (Bankr. E.D.N.Y. 2011) (collecting cases and dismissing civil conspiracy claim as duplicative of an aiding and abetting claim arising, in part, from allegations of money laundering); *Kew Gardens Hills Apartment Owners, Inc. v. Horing Welikson & Rosen, P.C.*, 35 A.D.3d 383, 386 (2d Dep't 2006) (holding that civil conspiracy claim should have been dismissed as duplicative of the claim for aiding and abetting).

The Named Plaintiffs predicate their claim for civil conspiracy against Mr. Scott on Mr. Scott's alleged "laundering of approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as OneCoin." (AC ¶ 218.) As such, the Named Plaintiffs' civil conspiracy claim is based on the exact same allegations underlying their claim for aiding and abetting fraud. (*See* AC ¶ 169.) Accordingly, there are no independent acts supporting the Named Plaintiffs' claim for civil conspiracy. *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 640 (S.D.N.Y.), *aff'd sub nom. Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69 (2d Cir. 2018) ("In order to state a claim for conspiracy, therefore, there must be allegations of an independent actionable tort.")

To the extent the Court applies the substantive law of Florida because of the absence of any ties between Mr. Scott and New York, the Court should still find that the Named Plaintiffs fail to state a claim for civil conspiracy. "Florida does not recognize a common law cause of action or an independent tort for 'civil conspiracy.'" *Basile v. Walt Disney Parks and Resorts U.S., Inc.*, No. 6:10-cv-993-Orl-35DAB, 2011 WL 13298729, at *17 (M.D. Fla. June 23, 2011) *quoting Walters v. Blankenship*, 931 So.2d 137, 144 (Fla. 5th DCA 2006); *see Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1360 (S.D. Fla. 2002) *citing Churruca v. Miami Jai Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977) (same). Rather, "[a]n actionable conspiracy . . . requires an independent and actionable underlying tort or wrong." *Oakwood Ins. Co. v. N. Am. Risk Services, Inc.*, No. 6:18-cv-437-Orl-31KRS, 2019 WL 175278, at *3 (M.D. Fla. Jan. 11, 2019) *citing Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Although courts in Florida recognize an exception to this general rule in circumstances where a defendant possesses a "peculiar power of coercion" such as an "economic boycott," that exception is not applicable here. *See, e.g.*, *Espana Informatica, S.A. v. Top Cargo, Inc.*, No. 08-20276-CIV-UNGARO, 2008

WL 11331700, at *4 n.4 (S.D. Fla. July 3, 2008) *quoting Churraca*, 353 So. 2d at 550; *Hager v. Venice Hosp., Inc.*, 944 F. Supp. 1530, 1536 (M.D. Fla. 1996) *citing Am. Diversified Ins. Servs., Inc. v. Union Fidelity Life Ins. Co.*, 439 So.2d 904, 906 (Fla. 2d DCA 1983). Thus, even under Florida law, the Named Plaintiffs fail to state a claim for civil conspiracy. The Named Plaintiffs' claim for civil conspiracy against Mr. Scott, therefore, should be dismissed under Rule 12(b)(6).

In sum, the Named Plaintiffs' claims against Mr. Scott should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[11]

## <u>CONCLUSION</u>

Though the Named Plaintiffs' Amended Complaint paints a vivid picture of cross-border mystery and intrigue, their claims against defendant Mark Scott should be dismissed for more prosaic reasons. This Court lacks personal jurisdiction over Mark Scott—a Floridian who the Named Plaintiffs fail to allege had any contact with New York. And putting the absence of personal jurisdiction to the side—each of the three claims suffers from one or more pleading deficiencies: (i) Mr. Scott cannot have aided and abetted a fraud of which the Named Plaintiffs do not allege he was aware; (ii) Mr. Scott was not unjustly enriched at the Named Plaintiffs' expense because the connection between money he allegedly received and they allegedly lost is too attenuated and their equitable claim is duplicative; and (iii) New York does not recognize an independent tort of civil conspiracy. Accordingly, we respectfully submit that the Named Plaintiffs' claims against Mark Scott should be dismissed.

Dated:   New York, New York
         June 25, 2020

---

[11]     At a bare minimum, the Named Plaintiffs' pleadings are so threadbare that Mr. Scott "cannot reasonably prepare a response," and therefore merit a more definite statement in accordance with Fed. R. Civ. P. 12(e).

Respectfully submitted,

**MINTZ & GOLD LLP**

By: /s/ Kevin M. Brown
        Steven G. Mintz
        Kevin M. Brown
        Timothy J. Quill, Jr.
        600 Third Avenue, 25th Floor
        New York, New York 10016
        (212) 696-4848 (t)
        (212) 696-1231 (f)
        mintz@mintzandgold.com
        brown@mintzandgold.com
        quill@mintzandgold.com

*Attorneys for Defendant Mark S. Scott*