# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DONALD BERDEAUX and CHRISTINE GRABLIS, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

ONECOIN LTD.; RUJA IGNATOVA, SEBASTIAN GREENWOOD; MARK SCOTT; DAVID PIKE; NICOLE J. HUESMANN; GILBERT ARMENTA; and THE BANK OF NEW YORK MELLON

Defendants.

Case No. 1:19-cv-04074-VEC

Hon. Valerie E. Caproni

**ORAL ARGUMENT REQUESTED**

---

## DEFENDANT, NICOLE J. HUESMANN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT AND/OR MOTION FOR MORE DEFINITE STATEMENT

---

**HAMILTON MILLER & BIRTHISEL, LLP**
*Attorneys for Nicole J. Huesmann*

Bradley A. Silverman, Esq.
Florida Bar No. 0105333
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
Facsimile: (305) 379-3690
bsilverman@hamiltonmillerlaw.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................3

ARGUMENT

I.      This Court Lacks Personal Jurisdiction Over Ms. Huesmann ......................................5

      a.    The Legal Standard for a Rule 12(b)(2) Motion ......................................6

      b.    General Jurisdiction Does Not Exist

            i.   There Is No Jurisdiction Under C.P.L.R. § 301 ...........................7

      c.    Specific Jurisdiction Does Not Exist

            i.   New York's Long Arm Statute Does Not Apply .........................8

      d.    The Exercise of Personal Jurisdiction Over Ms. Huesmann Would Violate Due Process ...................................................................14

II.     The Complaint Fails to Comply with Federal Pleading Requirements ......................17

III.    The Complaint Fails to State Claims for Relief Against Ms. Huesmann ...................19

      a.    The Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6) ..............19

      b.    The Complaint Fails to State A Claim for Aiding and Abetting Fraud ................20

      c.    The Complaint Fails to State A Claim for Unjust Enrichment ..............................22

      d.    The Complaint Fails to State A Claim for Civil Conspiracy ...............................23

      e.    Adoption of Arguments of Other Parties ............................................................24

CONCLUSION ..........................................................................................................25

**HAMILTON, MILLER & BIRTHISEL** LLP

150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

Page(s)

*Abacus Fed. Sav. Bank v. Lim,*
    75 A.D.3d 472, 905 N.Y.S.2d 585 (N.Y. App. Div. 2010) ...............................................24

*Adam Mesh Trading Group, LLC v. Bubba Trading Group, LLC,*
    No. 16-cv-2645, 2016 U.S. Dist. LEXIS 82723 (S.D.N.Y. June 17, 2016) .................9, 10

*Allstate Ins. Co. v. Stolarz,*
    81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993) ...........................................19

*Allstate Life Ins. Co. v. Linter Group Ltd.,*
    782 F. Supp. 215 (S.D.N.Y. 1992) ................................................................................12

*Alpha Capital Anstalt v. New Generation Biofuels, Inc.,*
    No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472
    (S.D.N.Y. Nov. 18, 2014) ...........................................................................................20

*Armstrong v. McAlpin,*
    699 F.2d 79 (2d Cir. 1983).......................................................................................18, 20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................20, 22

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999)..........................................................................................15

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    305 F.3d 120 (2d Cir. 2002)............................................................................................6

*Beeney v. InSightec, Inc.,*
    No. 13-Civ-8022, 2014 WL 3610941 (S.D.N.Y. July 7, 2014)..........................................7

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................19, 20

*Benson & Assocs. v. Orthopedic Network,*
    98-Civ-1020, 1998 WL 388531 (S.D.N.Y. July 13, 1998)........................................ 10-11

**HAMILTON, MILLER & BIRTHISEL** LLP

150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

## TABLE OF AUTHORITIES (Cont'd)

Page(s)

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)...........................................................................14

*BHC Interim Funding, LP v. Bracewell & Patterson, LLP*,
    No. 02-Civ-4695, 2003 WL 21467544 (S.D.N.Y. June 25, 2003) .............................11, 16

*Bissonnette v. Podlaski*,
    138 F. Supp. 3d 616 (S.D.N.Y. 2015)................................................................15

*Biz2Credit, Inc. v. Kular*,
    No. 14-Civ-8223, 2015 WL 2445076 (S.D.N.Y. May 21, 2015) ....................................13

*Bristol-Myers Squib Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)...............................................................................14

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016)..........................................................................10

*Comunale v. Gemma*,
    No. 18-Civ-12104, 2020 WL 635554 (S.D.N.Y. Feb. 11, 2020) ....................................10

*Croons v. N.Y. State Office of Mental Health*,
    18 F. Supp. 3d 193 (N.D.N.Y. 2014)..................................................................17

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...............................................................................8, 14

*DiStefano v. Carozzi N. Am. Inc.*,
    286 F.3d 81 (2d Cir. 2001)............................................................................7

*Eastboro Found. Charitable Trust v. Penzer*,
    950 F. Supp. 2d 648 (S.D.N.Y. 2013)............................................................11, 12

*Fikes v. City of Daphne*,
    79 F.3d 1079 (11th Cir. 1996) .......................................................................17

**HAMILTON, MILLER & BIRTHISEL** LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

## TABLE OF AUTHORITIES (Cont'd)

Page(s)

*Gilbert v. Seton Hall Univ.*,
    332 F.3d 105 (2d Cir. 2003) ............................................................................................19

*Gms Grp. v. Sentinel Tr. Co.*,
    No. 97-Civ-1342, 1997 WL 414147 (S.D.N.Y. July 23, 1997)..........................................6

*Goodyear Dunlop Tires Ops., S.A. v. Brown,*
    564 U.S. 915 (2011).............................................................................................................8

*Hulett v. City of Syracuse*,
    253 F. Supp. 3d 462 (N.D.N.Y. 2017)..............................................................................17

*In re Agape Litig. v. Cosmo*,
    773 F. Supp. 2d 298 (E.D.N.Y. 2011) ........................................................................18, 20

*In re Aluminum Warehousing Antitrust Litig.*,
    90 F. Supp. 3d 219, 2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) ......................................13

*In re Platinum & Palladium Antitrust Litig.*,
    No. 14-cv-9391, 2017 WL 1169626 (S.D.N.Y. March 28, 2017)................................7, 13

*In re Roman Catholic Diocese of Albany, New York, Inc.*,
    745 F.3d 30 (2d Cir. 2014)..................................................................................................8

*In re Terrorist Attacks*,
    714 F.3d 659 (2d Cir. 2013)................................................................................................7

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)............................................................................................................6

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011)............................................................................................................5

*JP Morgan Chase Bank v. Winnick*,
    406 F.Supp.2d 247 (S.D.N.Y.2005) .................................................................................20

**HAMILTON, MILLER & BIRTHISEL** LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Case No. 1:19-cv-04074-VEC

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

Page(s)

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ......................................................................................6, 14

*Keith v. Dekalb Cty.*,
    749 F.3d 1034, (11th Cir. 2014) ...........................................................................17

*Kirch v. Liberty Media Corp.*,
    449 F.3d 338 (2d Cir. 2006) .................................................................................21

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) .............................................................................................19

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014) .................................................................................21

*LaChapelle v. Torres*,
    1 F. Supp. 3d 163 (S.D.N.Y. 2014) .....................................................................13

*Lawrence v. Bank of Am., N.A.*,
    455 F. App'x 904 (11th Cir. 2012) .......................................................................20

*Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012).....................................................................................6

*Lipin v. Hunt*,
    538 F. Supp. 2d 590 (S.D.N.Y. 2008)..................................................................11

*Lombardi v. Paige*,
    No. 00-Civ-2605, 2001 WL 303831 (S.D.N.Y. March 28, 2001) ......................15

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011)...........................23

*Megna v. Biocomp Labs. Inc.*,
    166 F. Supp. 3d 493 (S.D.N.Y. 2016)...................................................................7

## <u>TABLE OF AUTHORITIES</u>

Page(s)

*Mercer v. Rampart Hotel Ventures, LLC*,
    No. 19-Civ-3551, 2020 WL 236843 (S.D.N.Y. Jan. 16, 2020) ..........................................7

*MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2017)....................................................................................8

*Munsif v. Barr*,
    797 Fed. App'x 658 (2d Cir. 2020) ...................................................................................21

*Oliver v. N.Y. State Police*,
    No. 1:17-CV-01157 EAW, 2019 U.S. Dist. LEXIS 18488
    (W.D.N.Y. Feb. 5, 2019) ..................................................................................................19

*Pelletier v. Zweifel*,
    921 F.2d 1465 (11th Cir. 1991) .......................................................................................17

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)..................................................................................................6

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014), *aff'd* 858 F.3d 55 (2d. Cir. 2017) ............................8

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)..............................................................................................8, 9

*Rey v. Philip Morris, Inc.*,
    75 So. 3d 378 (Fla. 3d DCA 2011) ...................................................................................24

*Rollo v. Escobedo*,
    No. 16-Civ-6923, 2017 WL 2600107 (S.D.N.Y. June 15, 2017) .................................11, 15

*Roundtree v. Countrywide Home Loans, Inc.*,
    No. 09-Civ-189-J-32TEM, 2009 WL 5215334 (M.D. Fla. Dec. 29, 2009)......................18

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*,
    No. 18-Civ-4921, 2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019).........................................8

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Swindell v. Crowson*,
    712 So. 2d 1162 (Fla. 2d DCA 1998) ..............................................................................23

*Thackurdeen v. Duke Univ.*,
    130 F. Supp. 3d 792 (S.D.N.Y. 2015).................................................................................7

*Troma Entm't, Inc. v. Centennial Pictures Inc.*,
    729 F.3d 215 (2d Cir. 2013)...............................................................................................6

*Tymoshenko v. Firtash*,
    No. 11-CV-2794 (KMW), 2013 U.S. Dist. LEXIS 43543,
    2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ................................................................13

*Walden v. Fiore*,
    571 U.S. 277 (2014)...............................................................................................14, 15

*Walman v. Palestine Liberation Org.*,
    835 F. 3d 317 (2d Cir. 2016)...............................................................................................5

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)............................................................................................................15

### Statutes and Rules

Fed. R. Civ. P. 8(a)(2).................................................................................................17, 19
Fed. R. Civ. P. 9(b) .........................................................................................18, 19, 21, 22
Fed. R. Civ. P. 10(b) ............................................................................................................17
Fed. R. Civ. P. 12(b)(2)....................................................................................................1, 7
Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 19
Fed. R. Civ. P. 12(e) .......................................................................................................1, 19
N.Y. C.P.L.R. § 301.................................................................................................7, 10, 14
N.Y. C.P.L.R. § 302.....................................................................................................10, 11

**HAMILTON, MILLER & BIRTHISEL** LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

## MEMORANDUM OF LAW

Defendant, Nicole J. Huesmann, respectfully moves to dismiss Named Plaintiffs' action[1] with prejudice, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) and/or for a More Definite Statement, pursuant to Fed. R. Civ. P. 12(e).

## PRELIMINARY STATEMENT

This is the Named Plaintiffs' second attempt to sue Ms. Huesmann, a Florida Citizen and Resident with no connection to the State of New York, in this Court. Despite two opportunities, The Complaint, like their First Amended Compliant, is devoid of any facts supporting the assertion of personal jurisdiction over Ms. Huesmann by a New York court. Named Plaintiffs' entire universe of factual allegations concerning Ms. Huesmann are found in only 8 of the now 201 paragraphs of factual allegations in the Complaint. Essentially, as to Ms. Huesmann, Named Plaintiffs allege that another defendant, her former client, Mark Scott, used money he allegedly derived from a complex and allegedly fraudulent cryptocurrency investment program perpetrated by the "OneCoin Defendants", operated from outside the United States, and about which Ms. Huesmann had absolutely no knowledge, to fund the purchase of assets in Massachusetts and Florida, by transferring these funds through accounts allegedly controlled or held by Ms. Huesmann in Florida. None of these transactions, assets or accounts are alleged to have any connection or relationship to the State of New York. Named Plaintiffs also do not allege that Ms. Huesmann knew of the existence of OneCoin, or that she had been involved with, or was aware of Mr. Scott's alleged dealings with OneCoin and the other defendants. Nor to they allege that Ms. Huesmann knew about, or was involved in the alleged Ponzi scheme.

---

[1] The Named Plaintiffs are Donald Berdeaux and Christine Grablis. The operative pleading is the Second Amended Class Action Complaint, filed September 25, 2020 (the "Complaint" in the text and "SAC" in citations) (ECF 125).

HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Ms. Huesmann is a solo practitioner Florida Attorney. Her sole connection with this case is her representation of Mr. Scott in connection with completely separate and unrelated commercial transactions that occurred exclusively outside of New York. Nevertheless, and without any factual basis, Named Plaintiffs attempt to bring state-law claims only against her for aiding and abetting fraud, unjust enrichment and civil conspiracy.

This Court lacks personal jurisdiction over Ms. Huesmann. She is not subject to general jurisdiction in New York, because she is domiciled in Florida. She is also not subject to specific jurisdiction in New York, because Named Plaintiffs' state-law claims do not arise out of any activity engaged in by Ms. Huesmann in New York. Ms. Huesmann also did not purposefully avail herself of the privileges of conducting activities in New York. Notably absent from the Complaint are any allegations that she engaged in any activity within or targeted at New York that arises out of Named Plaintiffs' claims. Therefore, this action should be dismissed with prejudice as to Ms. Huesmann for lack of personal jurisdiction.

Should the court reach the merits, the Complaint is an improper Shotgun Pleading, in violation of Rule 8(a)(2), and lumps the claims against Ms. Huesmann in with claims and allegations involving other defendants, in violation of Rule 10(b). The complaint also violates Rule 9(b), in that it lacks the required specificity to support any fraud related claims against Ms. Huesmann. Accordingly, the Complaint should be dismissed pursuant to Rule 12(e), and Named Plaintiffs should be ordered to submit a more definite statement of claims. Based on the Complaint as filed, Named Plaintiffs have failed to allege plausible claims against Ms. Huesmann for aiding and abetting fraud, unjust enrichment or civil conspiracy, under either Florida or New York law. For the reasons set forth herein, those claims are due to be dismissed, with prejudice.

**HAMILTON, MILLER & BIRTHISEL** LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

## STATEMENT OF FACTS

Ms. Huesmann is attorney licensed to practice law in the state of Florida. (*See* Declaration of Nicole J. Huesmann at ¶ 2)[2] She resides in Coconut Grove, Florida and has lived continuously in Miami-Dade County, Florida since 1981 (*Id*. at ¶ 6). All of her personal items are kept in Florida (*Id*. at ¶ 7). Whenever she travels outside of Florida, she intends to and does in fact return to her home in Florida, which she considers to be her home state (*Id.)* She intends to remain in Florida indefinitely (*Id*.) Ms. Huesmann is a solo practitioner at Nicole J. Huesmann, P.A., a Florida business entity with its principal place of business in Coral Gables, Florida (*Id*. at ¶ 3). She does not practice out of any other law office (*Id*.)

Ms. Huesmann owns her home in Florida (*Id*. at ¶ 5). She has never lived in New York, or applied for or been issued a New York Drivers' License (*Id*. at ¶ 8). She does not own any real or personal property in New York, or own any bank accounts in New York (*Id*. at ¶ 9). She has no intention to move to New York for the foreseeable future. (*Id*. at ¶ 10) Likewise, she was served with process in this suit at her office in Coral Gables, Florida (*Id*. at ¶ 11 and ECF 57).

On August 2, 2019, Named Plaintiffs filed their First Amended Class Action Complaint (ECF 40) adding Ms. Huesmann as a defendant. After Ms. Huesmann moved to dismiss that pleading, Named Plaintiffs filed the instant Complaint on September 25, 2020 (ECF 125). The Complaint includes three state-law claims directed at "The Scott Group", which Named Plaintiffs allege includes Ms. Huesmann – Count IV entitled "Aiding and Abetting Fraud" (*Id.* at p. 54), Count VIII, entitled "Unjust Enrichment" (*Id.* at p. 57) and Count X, entitled "Civil Conspiracy" (*Id.* at p. 59). Named Plaintiffs assert numerous other claims, including federal claims based on

---

[2] Ms. Huesmann's Declaration was previously filed with this Court in support of her motion to dismiss Plaintiff's First Amended Class Action Complaint (*See* ECF 109-2). It is being re-filed in support of this motion and will be referred to herein as "Decl."

alleged violations of the Securities and Exchange Act of 1934, against other Defendants, but have not asserted any federal claims against Ms. Huesmann. *See id*.

Insofar as the claims against Ms. Huesmann are concerned, the Complaint begins with a conclusory allegation that "Scott and his partners - Pike, Huesmann, and Armenta – knowingly laundered criminal proceeds" OneCoin obtained from its allegedly fraudulent investment program (*Id.* at ¶ 6). Named Plaintiffs then identify Ms. Huesmann as "an individual believed to be domiciled in Coral Gables, Florida" and "an attorney that assisted Scott laundering the OneCoin Defendants' fraud proceeds" by "participating in deals structured to launder funds between OC-controlled entities across borders; (ii) repatriating laundered proceeds and facilitating Scott's use of such to invest in real estate; and (iii) facilitating Scott's used of laundered OC fraud proceeds on luxury boats, cars and jewelry." (*Id.* at ¶ 52-53).

However, the Complaint does not allege any activities involving Ms. Huesmann that took place in or that targeted New York. *See id*. Named Plaintiffs' rely exclusively on their allegation that Ms. Huesmann aided Mr. Scott in spending "fraud proceeds" for **Mr. Scott's** personal benefit (*Id.* at ¶ 176). They allege that those funds were used to purchase properties in Massachusetts (*Id.* at ¶¶ 177-178) and attach include a flowchart that they allege shows the flow of money through Ms. Huesmann's law firm's Florida bank accounts (*Id.* at ¶ 174). Named Plaintiffs do not allege (nor does their flow chart demonstrate) that any of the money that they allege passed through Ms. Huesmann's law firm's bank accounts came from, or was directed into, New York. This alleged connection by Ms. Huesmann to her client's purchase of real estate in Massachusetts and other assets in Florida cannot subject her to personal jurisdiction in New York. Despite the allegations in paragraph 6, there are no factual allegations connecting Ms. Huesmann to the alleged laundering of funds "between OC-controlled entities across borders".

HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Named Plaintiffs' bare-bones, and formulaic jurisdictional allegations against Ms. Huesmann do not establish personal jurisdiction in New York (*Id.*¶ 15). First, they are inaccurate. Ms. Huesmann does not practice law in New York, or have an office in New York (Decl. at ¶ 13). She also is not present in New York, which Named Plaintiffs tacitly admit (SAC at ¶ 52). Second, neither Named Plaintiffs' jurisdictional allegations, nor any other allegations in the Complaint, demonstrate that Ms. Huesmann took any action in or directed to New York. And for good reason: None of Ms. Huesmann's alleged actions took place in or were targeted to New York (Decl. at ¶¶ 18-20). To the contrary, all of Ms. Huesmann's actions related to the allegations in this suit took place outside of New York. (*Id.*). She never met with Mr. Scott - who Named Plaintiffs also allege is domiciled in Coral Gables, Florida (SAC at ¶ 44) - in New York. (Decl. at ¶ 20). And as Mr. Scott's attorney, Ms. Huesmann's retainer agreement was executed in Florida (*Id.* at ¶ 17). None of those matters have any relation to New York.

There are no other allegations in the complaint specifically alleging facts related to Ms. Huesmann that would support the claims asserted against her. Ms. Huesmann isn't alleged to have been involved with OneCoin, or to have owned any "OneCoins", or to have ever attended any OneCoin events, and she did not (*Id.* at ¶ 21). Ms. Huesmann is not alleged to be an "investment advisor" or to have been registered as one with the Securities and Exchange Commission, and she is not and did not (*Id.* at ¶ 14). Ms. Huesmann is not alleged to have been aware of OneCoin, only learned of its existence after Mr. Scott was arrested (*Id.* at ¶ 21) and had no knowledge of Mr. Scott's alleged involvement with OneCoin at any stage of her representation of him (*Id.* at ¶ 22).

**HAMILTON, MILLER & BIRTHISEL** LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

## ARGUMENT

**I.    This Court Lacks Personal Jurisdiction Over Ms. Huesmann.**

"Personal jurisdiction is 'a matter of individual liberty' because due process protects the individual's right to be subject only to lawful power." *Walman v. Palestine Liberation Org.*, 835 F. 3d 317, 328 (2d Cir. 2016) (quoting *J. McIntyre Mach.*, *Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011)). Long ago, the Supreme Court explained that a court may only exercise personal jurisdiction over an out-of-state defendant who has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945). This analysis demands that "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984).

This Court's jurisdiction over the claims against Ms. Huesmann is based on diversity, pursuant to 28 U.S.C.A. § 1332, because there are no federal claims asserted against her. *Gms Grp. v. Sentinel Tr. Co.*, No. 97-Civ-1342, 1997 WL 414147 (S.D.N.Y. July 23, 1997) ("The only basis for jurisdiction over defendant Sentinel is diversity because there are no federal claims for violation of the securities laws against it."). Federal courts sitting in diversity first look to see if the forum's long-arm statute is satisfied. *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012). If the plaintiff fails to satisfy the long-arm statute's requirements, then the court need go no further. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) ("[I]t is only once the long-arm statute is deemed satisfied that the court need examine whether due process is likewise comported with."). If the plaintiff satisfies the relevant long-arm statute, then the court must determine whether the exercise of personal jurisdiction comports with constitutional due process principles. *Licci*, 673 F. 3d at 60.

a.   The Legal Standard for a Rule 12(b)(2) Motion:

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). If the Court considers only the pleadings and affidavits/declarations, the plaintiff is required to make a *prima facie* showing of jurisdiction, which must include facts that, if credited by the ultimate trier of fact, would be sufficient to establish personal jurisdiction over the defendant. *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-cv-9391, 2017 WL 1169626 (S.D.N.Y. March 28, 2017). The Court may rely on materials outside the pleading in considering a motion to dismiss for lack of personal jurisdiction. *Id.* (citing *DiStefano v. Carozzi N. Am. Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). "Conclusory allegations do not satisfy a plaintiff's burden." *Mercer v. Rampart Hotel Ventures, LLC*, No. 19-Civ-3551, 2020 WL 236843 (S.D.N.Y. Jan. 16, 2020) (citing *In re Terrorist Attacks*, 714 F.3d 659, 676 (2d Cir. 2013); and *Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 496 (S.D.N.Y. 2016)). Instead, "the prima facie showing must be factually supported." *Beeney v. InSightec, Inc.*, No. 13-Civ-8022, 2014 WL 3610941 (S.D.N.Y. July 7, 2014). For the reasons set forth herein, Named Plaintiffs cannot satisfy the requirements of New York's long-arm statute or the Due Process requirements of the Fourteenth Amendment to the United States Constitution for asserting personal jurisdiction by a New York Court over Ms. Huesmann.

b.   General Jurisdiction Does Not Exist.

i.   There Is No Jurisdiction Under C.P.L.R. § 301.

"In New York, general jurisdiction is governed by N.Y. C.P.L.R. § 301. Section 301 preserves the common law notion that 'a court may exercise general jurisdiction over a

nondomiciliary defendant if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction.'" *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (internal citations omitted). As such, courts analyzing New York's general jurisdiction long-arm statute apply constitutional principles for general jurisdiction. *See id.*

Under constitutional principles, general jurisdiction is determined based on an individual's domicile if the individual has not consented to the court's jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-Civ-4921, 2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019) (finding no general jurisdiction when the plaintiff admitted the defendant was domiciled outside of New York, and did not plead that the defendant consented to jurisdiction or was served in New York). Stated differently, "for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.*; *In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown,* 564 U.S. 915, 924 (2011)). A plaintiff pleading general jurisdiction over an individual should include key indicia of contacts with the forum such as a driver's license, the ownership of property in the forum, maintenance of personal and business checking and credit card accounts, and the filing of tax returns that list the forum as the individual's home address. *See Reich v. Lopez*, 38 F. Supp. 3d 436, 456 (S.D.N.Y. 2014), *aff'd* 858 F.3d 55 (2d. Cir. 2017), (citing *MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*, 38 F. Supp. 3d 436 (S.D.N.Y. 2017)). However, none of the foregoing are sufficient standing alone. *See Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (explaining "[o]wning property in a forum does not alone establish domicile.").

HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Recently, the Second Circuit Court of Appeals upheld a dismissal for lack of general personal jurisdiction when the defendant *had* contacts with New York, but was a citizen of a different forum and spent minimal time there. *Reich*, 858 F.3d at 63. In *Reich*, the plaintiffs alleged that they were victims of an effort to discredit them by persons affiliated with a Venezuelan energy company that was in litigation with one of the plaintiffs' clients. *Id* at 58. Specifically, the plaintiffs brought RICO and state law claims for civil conspiracy and tortious interference, among others. *See id*. The district court found that the defendant was not domiciled in New York. *Id* at 63. On appeal, the Second Circuit also found no general jurisdiction. This was despite the defendant having relationships with New York banks and law firms, and owning an apartment in New York, because the defendant spent fewer than five percent of nights in New York during the thirty-one month period the district court examined. *Id.* The Court concluded that the contacts "do not approach the point at which general jurisdiction over them would comport with due process." *Id*.

Similarly, a court in this District found no general jurisdiction over an out-of-state individual who routinely conducted business in New York. *Adam Mesh Trading Group, LLC v. Bubba Trading Group, LLC*, No. 16-Civ-2645, 2016 U.S. Dist. LEXIS 82723 (S.D.N.Y. June 17, 2016). In *Adam Mesh*, the plaintiff brought suit against a company and an individual, Todd Horowitz, alleging federal claims and state law claims for unjust enrichment and civil conspiracy, among many others. *Id* at *4-5. The plaintiff conceded that Horowitz was an Illinois resident, but argued that he was subject to general jurisdiction in New York because he "visited New York on a monthly basis, maintained an office in the state, sold products and services while in New York, appeared on broadcasts taped in New York, and maintained a website accessible to New Yorkers." *Id* at *9. Despite these established contacts, the court found that it did not have general jurisdiction

over Horowitz because his operations were based in Illinois and the foregoing facts were not sufficient for general jurisdiction. *Id* at *10-11.

Here, Ms. Huesmann is not subject to general jurisdiction in New York under § 301 because she has no contacts with New York. She is not domiciled in New York. Ms. Huesmann lives and works in Florida, which Named Plaintiffs admit. She owns her home in Florida, and all of her personal items are located in Florida. When Ms. Huesmann leaves Florida, she intends to and does in fact return to Florida. Moreover, she does not maintain any bank accounts in New York, does not own any real or personal property in New York, has not consented to jurisdiction in New York and was not served with process in New York. Ms. Huesmann's contacts with New York are substantially less than the defendants in *Reich* and *Adam Mesh* because she does not practice law in New York, does not solicit business in New York and her professional association does not conduct business in New York. Accordingly, this Court should find that this District does not have general jurisdiction over Ms. Huesmann pursuant to § 301.

c.   Specific Jurisdiction Does Not Exist.

i.   New York's Long Arm Statute Does Not Apply.

Named Plaintiffs do not allege any facts pertaining to specific jurisdiction, so naturally, they do not cite the specific section of New York's Long-Arm Statute they might seek to invoke for specific jurisdiction. But even if they did, they cannot meet the requirements of New York's long-arm statute because their claims against Ms. Huesmann do not arise out of her contacts with New York. Specific personal jurisdiction in New York is conferred under N.Y. C.P.L.R. § 302, which provides that "[s]pecific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in the state." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016). New York's long-arm statute allows for specific jurisdiction over non-domiciliaries

"who in person or through an agent . . . transacts business within the state or contracts anywhere to supply goods or services in the state . . ." *Comunale v. Gemma,* No. 18-Civ-12104, 2020 WL 635554 (S.D.N.Y. Feb. 11, 2020). "A non-domiciliary transacts business under C.P.L.R. § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, and thus invokes the benefits and protections of New York's laws." *Benson & Assocs. v. Orthopedic Network*, 98-Civ-1020, 1998 WL 388531 (S.D.N.Y. July 13, 1998). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Rollo v. Escobedo*, No. 16-Civ-6923, 2017 WL 2600107 (S.D.N.Y. June 15, 2017) (internal citations omitted).

Federal courts in this District have consistently refused to exercise specific jurisdiction when a defendant-attorney provides legal services outside of New York. *See e.g. Eastboro Found. Charitable Trust v. Penzer*, 950 F. Supp. 2d 648 (S.D.N.Y. 2013); *See also, Lipin v. Hunt*, 538 F. Supp. 2d 590, 598 (S.D.N.Y. 2008) (finding no specific jurisdiction when "[a]ll of Plaintiff's allegations relating to actions taken by [defendant] in his capacity as a[n] attorney relate to actions taken in connection with proceedings in Maine courts."); *BHC Interim Funding, LP v. Bracewell & Patterson, LLP,* No. 02-Civ-4695, 2003 WL 21467544 (S.D.N.Y. June 25, 2003) ("Plaintiff has neither alleged nor offered evidence that [defendant law firm] has made specific efforts to make itself known in the New York legal market, or to establish a client base here."). In *Eastboro,* the plaintiffs brought a malpractice suit against an attorney who was licensed to practice law in New York for over thirty years, appeared four time in New York courts, represented New York clients, and the plaintiff-client was a New York resident with whom the attorney met in New York in relation to a separate matter. *Eastboro*, 950 F. Supp. 2d at 653. However, the attorney practiced

out of a New Jersey office, had no New York office, had not been before a New York Court for nearly twenty years, and the cause of action was related to an intended real estate transaction in New Jersey. *Id*. The Court rejected the plaintiff's attempt to invoke specific jurisdiction finding "the instant action is based entirely on conduct alleged to have taken place in New Jersey in connection with a New Jersey transaction." *Id* at 660.

Here, Ms. Huesmann is a Florida attorney who practices out of her firm's sole office in Florida. She does not conduct business in New York. She does not practice law in New York. Nor does she advertise or solicit business in New York. None of Named Plaintiffs' allegations pertaining to Ms. Huesmann involve conduct in, related to, or directed to New York. Rather, they allege Ms. Huesmann assisted Mr. Scott with transactions for the purchase of real estate and assets in Massachusetts and Florida. Ms. Huesmann performed that work while in Florida and none of those transactions involved New York. The defendant's contacts with New York in *Eastboro* were far stronger than Ms. Huesmann's. At least in that case the defendant was licensed to practice law and did in fact practice law in New York. Even then, the court declined to exercise personal jurisdiction.

Nor can Named Plaintiffs rely on their conspiracy claim to establish personal jurisdiction over Ms. Huesmann. First, the Complaint lacks any jurisdictional allegations relying upon the Co-Conspirator doctrine as a basis of jurisdiction. Second, even if it did, it does not justify exercising personal jurisdiction over Ms. Huesmann. To establish jurisdiction on a conspiracy theory, Named Plaintiffs must: (1) make a *prima facie* showing of a conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in this jurisdiction. *See Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 221 (S.D.N.Y. 1992). Moreover, as to a

HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

particular defendant's membership in the conspiracy, the Court considers whether "(1) the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators." *Biz2Credit, Inc. v. Kular*, No. 14-Civ-8223, 2015 WL 2445076, (S.D.N.Y. May 21, 2015) (citing *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 170 (S.D.N.Y. 2014)).

As another court in this District recently observed, in rejecting this approach to specific personal jurisdiction:

> "Courts have been increasingly reluctant to extend this theory of jurisdiction beyond the context of New York's long-arm statute." *Laydon*, 2015 U.S. Dist. LEXIS 44007, 2015 WL 1515358, at *3 (citations omitted); *see also In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 2015 WL 892255, at *5 (S.D.N.Y. Mar. 3, 2015) (rejecting the plaintiffs' argument "that Rule 4(k)(2) permits courts to exercise personal jurisdiction over a defendant on the basis of a conspiracy," and holding that "[t]he rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine"); *Tymoshenko v. Firtash*, 11-CV-2794 (KMW), 2013 U.S. Dist. LEXIS 43543, 2013 WL 1234943, at *2-4 (S.D.N.Y. Mar. 27, 2013) (recognizing that conspiracy jurisdiction "has been widely criticized by courts and scholars" and declining to consider co-conspirators' contacts for the purpose of establishing personal jurisdiction over a foreign defendant).

*In re Platinum*, 2017 WL 1169626.

Here, the Complaint fails to allege facts sufficient to establish Ms. Huesmann's participation in a conspiracy to commit a tortious act in New York. First, not only does the Complaint fail to allege any conduct by Ms. Huesmann relating to New York, it also doesn't allege any conduct by any defendant as having been specifically directed at New York. Second, for purposes of establishing personal jurisdiction, Named Plaintiffs would have to allege that the co-

conspirators acted at the best of, on behalf of, or under the control of, Ms. Huesmann. There are no facts alleged from which such a conclusion could plausibly be reached. Accordingly, personal jurisdiction cannot be founded on this basis. Because none of Named Plaintiffs' claims against Ms. Huesmann arise out of her purposeful availment of the privileges of conducting business in New York, this Court should find that specific jurisdiction is improper in this case

> d.   The Exercise of Personal Jurisdiction Over Ms. Huesmann Would Violate Due Process.

The exercise of personal jurisdiction over Ms. Huesmann by this Court also does not comport with the Due Process requirements of the Fourteenth Amendment. Since Named Plaintiffs have not established general jurisdiction pursuant to C.P.L.R. §301, this court need not address whether the exercise of general jurisdiction would be consistent with due process. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). And in any event, it does not. There is no difference in the standards applicable to applying § 301 and the U.S. Constitution's guarantee of due process. The issue of Ms. Huesmann's domicile controls the due process analysis. *Daimler*, 571 U.S. at 137. It is undisputed that Ms. Huesmann is not "at home" in New York, so any exercise of personal jurisdiction over her would violate due process, and preclude a finding of general jurisdiction.

And even if Named Plaintiffs were able to establish a basis for specific jurisdiction under New York's long arm statute, due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). In cases involving specific jurisdiction, the inquiry "whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 284 (quoting *Keeton*, 465 U.S. at 775) (internal quotations

omitted). Specifically, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. The "primary concern" is "the burden on the defendant." *Bristol-Myers Squib Co. v. Superior Court*, 137 S. Ct. 1773, 1776 (2017) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

To constitutionally exercise specific jurisdiction, the relationship between the nonresident defendant, the forum, and the litigation "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, 571 U.S. at 285. A plaintiff seeking to invoke personal jurisdiction over a nonresident defendant must satisfy three requirements: (1) the defendant must either purposefully direct her activities toward the forum or purposefully avail herself of the privileges of conducting activities in the forum; (2) the claims must arise out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Id* at 288.

The Second Circuit and courts in this District have routinely determined that provision of legal services from outside of New York is insufficient to establish specific jurisdiction. *E.g. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787-89 (2d Cir. 1999) (concluding that there was no jurisdiction when non-domiciliary lawyers provided legal advice to a client in the forum state but "*all* of the relevant services" occurred in Puerto Rico and the lawyers never traveled to New York (emphasis added)); *Rollo*, 2017 WL 2600107 (finding no specific jurisdiction over a non-domiciliary attorney when "throughout his engagement, Escobedo performed all legal work in Texas and Scotland. In fact, the entirety of the acts undergirding Rollo's malpractice claim—mediation, negotiation, and signing of the settlement agreement— occurred outside of New York."); *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 624-25 (S.D.N.Y. 2015) (holding that the provision of legal services "from outside New York" did not establish

personal jurisdiction); *Lombardi v. Paige*, No. 00-Civ-2605, 2001 WL 303831 (S.D.N.Y. March 28, 2001) (finding no specific jurisdiction when the non-domiciliary attorney made "sporadic efforts to collect information in furtherance of Plaintiffs' claims [in New York]. Defendant did nothing else. She did not solicit business in New York, she is not licensed in New York and, as Plaintiffs are well aware, she did not file a lawsuit in New York.").

Named Plaintiffs cannot satisfy any of the three requirements for constitutionally sufficient specific jurisdiction. First, Ms. Huesmann did not purposefully direct her activities toward New York or purposefully avail herself of the privileges of conducting activities in New York. Second, as set forth above, the state-law claims against Ms. Huesmann do not arise out of activity conducted with any connection to New York. Ms. Huesmann never traveled to New York for any transaction alleged in the Complaint. She provided legal services to Mr. Scott from her office in Florida. She drafted documents in Florida, sent correspondence from Florida, and provided legal advice from Florida. Her retainer agreement with Mr. Scott was executed in Florida.

Third, the assertion of specific personal jurisdiction does not comport with traditional notions of fair play and substantial justice. "Five factors are relevant to this determination: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *BHC*, 2003 WL 21467544 at * 24 (internal quotations and citations omitted).

The burden and expense on a solo practitioner, Florida attorney having to litigate a multi-party class action lawsuit in Federal Court in New York are many and significant. New York, as the forum state, does not appear to have any interest, much less a strong interest, in adjudicating

this case. Lead Named Plaintiff, Berdeaux, is domiciled in Montana (SAC at ¶ 17). Named

Plaintiff, Grablis is domiciled in Tennessee (*Id.* at ¶ 19). As noted, Ms. Huesmann is domiciled in

Florida, and all, or the majority of the evidence and witnesses related to the allegations pertaining

to her would likely be located in Florida (Exh. 1 at ¶ 25). Any claims against her would likely be

governed by Florida law, as well. The third, fourth and fifth factors are, at best, neutral. Litigating

against Ms. Huesmann in Florida, should Named Plaintiffs decide to pursue their claims in that

forum, will not place an unreasonable burden on the Named Plaintiffs. Accordingly, exercising

specific jurisdiction over Ms. Huesmann would violate her right to due process under the U.S.

Constitution, and the Complaint is due to be dismissed, with prejudice.

## II.     The Complaint Fails to Comply with Federal Pleading Requirements.

Fed. R. Civ. P. 8(a)(2) and Fed. R. Civ. P. 10(b) work together "'to require the pleader to

present his claims discretely and succinctly, so that his adversary can discern what he is claiming

and frame a responsive pleading, the court can determine which facts support which claims and

whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court

can determine that evidence which is relevant and that which is not.'" *Fikes v. City of Daphne*, 79

F.3d 1079, 1082 (11th Cir. 1996) (citation omitted).

The Complaint contains 201 paragraphs of "facts", followed by 11 "Counts", only 3 of

which are directed at Ms. Huesmann. Each "Count" incorporates by reference all preceding

paragraphs and Counts. A complaint that incorporates all of the preceding factual allegations into

each count is a "shotgun pleading" that only serves to "thwart meaningful legal analysis". *Hulett*

*v. City of Syracuse*, 253 F. Supp. 3d 462, 480 (N.D.N.Y. 2017) (*quoting*, *Croons v. N.Y. State*

*Office of Mental Health*, 18 F. Supp. 3d 193 (N.D.N.Y. 2014)). One that incorporates not just the

preceding factual allegations, but also each preceding legal claim/count, is a "quintessential"

shotgun pleading "roundly condemned" by Federal Courts. *Keith v. Dekalb Cty.*, 749 F.3d 1034, 1046, n. 39 (11th Cir. 2014); *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991).

In addition, when a complaint is grounded in fraud, the complaint must comply with Fed. R. Civ. P. 9(b)'s heightened pleading requirement that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Roundtree v. Countrywide Home Loans, Inc.*, No. 3:09-cv-189-J-32TEM, 2009 WL 5215334 (M.D. Fla. Dec. 29, 2009). Rule 9(b)'s particularity requirement for fraud applies equally to a claim for aiding and abetting. *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983) (applying Rule (9)(b) to claim for aiding and abetting fraud); *In re Agape Litig. v. Cosmo*, 773 F. Supp. 2d 298, 307 (E.D.N.Y. 2011).

Here, Named Plaintiffs impermissibly lump Ms. Huesmann in with "The Scott Group", as if they are one. They are not. Moreover, Named Plaintiffs are required to provide specific factual allegations pertaining to Ms. Huesmann, if they intend to attempt to pursue fraud related claims against her. It is entirely impossible to determine from the allegations of the Complaint what underlying fraud Named Plaintiffs contend Ms. Huesmann aided and abetted, as she is only alleged to have been connected to the above noted real property transactions. In a case like this, involving multiple defendants, and numerous claims, some of which are clearly independent and unrelated, Named Plaintiffs should be required to separate their claims against Ms. Huesmann, instead of using generalized allegations, and "lumping" multiple defendants together in groups.

The claims against her also incorporate the paragraphs from all preceding "Counts". That includes the vast majority of the "facts" alleged in the Complaint that relate to claims that are not asserted against Ms. Huesmann and claims against other defendants which could not, under any set of facts, have been brought against Ms. Huesmann (i.e., Counts I and II for violations of Section 10(b) of the Exchange Act). Thus, it is impossible for Ms. Huesmann to know which facts are

being relied upon by the Named Plaintiffs to support the claims being asserted against her, and to properly frame a responsive pleading.

A Rule 12(e) Motion for More Definite State is particularly appropriate in cases involving these types of pleadings. *Oliver v. N.Y. State Police*, No. 1:17-CV-01157 EAW, 2019 U.S. Dist. LEXIS 18488 (W.D.N.Y. Feb. 5, 2019). For all of the foregoing reasons, and to the extent the Complaint is not otherwise dismissed for lack of personal jurisdiction, it should be dismissed pursuant to Rule 12(e), and Named Plaintiff should be ordered to file a Third Amended Complaint, in compliance with Rule 8(a)(2), Rule 9(b) and Rule 10(b).

## III.   The Complaint Fails to State Claims for Relief Against Ms. Huesmann.

The Named Plaintiffs purport to sue Ms. Huesmann for "aiding and abetting fraud", "unjust enrichment" and "civil conspiracy". The complaint does not specify whether those claims are brought under New York law, Florida law or the law of some other jurisdiction.[3]

   a.   The Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6).

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendant fair notice of both the claim and the supporting grounds. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a plaintiff is obligated to provide the "grounds" of his entitlement to relief. This requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements.

---

[3] In this Diversity action, the Court applies New York's choice of law rules to determine which State's law applies to the state law claims against Huesmann. *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003) *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). In New York, the first inquiry in any case presenting a potential choice of law issue is whether there is an actual conflict between the laws of the jurisdictions involved. If there is no actual conflict, then New York law applies. *Allstate Ins. Co. v. Stolarz*, 81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993). In this case, the claims against Huesmann fail under either Florida or New York law.

**HAMILTON, MILLER & BIRTHISEL** LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

*Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.* (citations omitted). Additionally, Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). Rather, the facts set forth in the Amended Complaint must be sufficient to "nudge the [ ] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

 b. The Complaint Fails to State A Claim for Aiding and Abetting Fraud.

 Count IV, purport to assert a claim for "Aiding & Abetting Fraud". Under New York Law, the elements necessary to establish that claim are: "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Alpha Capital Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 (VEC), 2014 U.S. Dist. LEXIS 161472 (S.D.N.Y. Nov. 18, 2014) *quoting JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 252 (S.D.N.Y.2005).[4]

 The "fraud", as set forth in the preceding Count of the Complaint, is the OneCoin Ponzi Scheme (SAC at ¶¶ 219(a) through (f)). Under both New York and Florida law, "actual knowledge" of the fraud is required to impose liability on an alleged aider and abettor. *Alpha Capital* 2014 U.S. Dist. LEXIS 161472 ("[a]ctual knowledge is required to impose liability on an aider and abettor theory"); *Lawrence*, 455 F. App'x at 907 ("To be liable, the bank would have had to have actual knowledge of Diamond's fraudulent activities.").

---

[4] Florida law is in accord. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012) (the elements necessary to establish an "aiding and abetting claim" are: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor.")

**HAMILTON, MILLER & BIRTHISEL** LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

As noted above, Rule 9(b)'s particularity requirement for fraud applies equally to a claim for aiding and abetting. *Armstrong*, 699 F.2d at 92 (applying Rule (9)(b) to claim for aiding and abetting fraud); *In re Agape Litig. v. Cosmo*, 773 F. Supp. 2d at 307. Named Plaintiffs' sparse and conclusory allegations about Ms. Huesmann do not state a plausible claim that she had any knowledge, much less actual knowledge, of OneCoin or OneCoin's alleged fraud. Named Plaintiffs allege that Ms. Huesmann "knowingly laundered criminal proceeds" (SAC at ¶ 6). They allege that she "assisted Scott laundering the OneCoin Defendants' fraud proceeds – using her law license and numerous bank accounts to funnel the fraudulently obtained OneCoin funds under the guise of providing ordinary legal services to Defendant Scott and others with home they coordinated their efforts" (*Id.* at ¶ 54). They also allege that "the Scott Group" as an entity, knew of the existence of a fraud (*Id.* at ¶ 191), and "knowing that the funds they were transferring and concealing were proceeds of a fraudulent scheme, the Scott Group Defendants provided affirmative assistance to the OneCoin Defendants" (*Id.* at ¶ 227). The Named Plaintiffs never specifically allege that Ms. Huesmann, individually, knew of any fraud, or that she provided any direct, affirmative assistance to the OneCoin Defendants. There are no facts supporting her inclusion in their pronouncements about "the Scott Group", whatsoever. Nor do they allege any facts to support their conclusory accusation that she was not providing regular and ordinary legal services to her client, entirely unaware of his alleged involvement with OneCoin and/or the OneCoin fraud. Of course, the Named Plaintiffs do not allege that any of their own funds flowed through any account controlled by Ms. Huesmann, and bare "legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Munsif v. Barr*, 797 Fed. App'x 658, 659 (2d Cir. 2020) *quoting Kirch v. Liberty Media Corp.*, 449 F.3d 338, 398 (2d Cir. 2006).

**HAMILTON, MILLER & BIRTHISEL** LLP

150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Indeed, even having been given the opportunity to amend, the Named Plaintiffs did little more than add the words "knew" or "knowingly" to their already sparse allegations against Ms. Huesmann. The Complaint fails to satisfy Rule 9(b). *See Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) (noting that although Rule 9(b) allows a plaintiff to plead knowledge generally, that is not the equivalent of conclusorily, and that Federal Courts are not required to credit a complaint's conclusory statements without reference to its factual context.") *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

Looking at the actions Ms. Huesmann is alleged to have taken, once separated from those alleged to have been taken solely by others alleged to belong to "the Scott Group", the Complaint merely alleges that she received money from a client to purchase assets for him and his wife, and did, in fact, follow her client's instructions. Unless Ms. Huesmann *knew* that money she received from her client was the proceeds of a fraud, the Named Plaintiffs merely accuse her of following the instructions of a client, without any indicia of subterfuge. The Complaint fails to set forth a plausible claim for aiding and abetting fraud against Ms. Huesmann. Accordingly, this claim should be dismissed.

c. The Complaint Fails to State A Claim for Unjust Enrichment.

Count VIII, purports to assert a claim for "Unjust Enrichment". It alleges, in conclusory fashion, that:

- *"The Scott Group Defendants* have each reaped the benefits of laundering proceeds from OneCoin's fraud on Plaintiffs and the Class and personally benefited at the expend of the Class" (SAC at ⁋ 254) (emphasis added);

- It would be unconscionable and against the fundamental principles of justice, equity, and good conscience for *the Scott Group Defendants* to retain the substantial monetary benefits they have received as a result of their misconduct (*Id.* at ⁋ 257) (emphasis added)

HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

- To remedy *the Scott Group Defendants'* unjust enrichment, the Court should order the each to disgorge any amounts received as a result of their participation in assisting the OneCoin's fraud by laundering OneCoin's fraud proceeds (*Id*. at ¶ 258) (emphasis added).

Under New York law, the elements of a claim for Unjust Enrichment are (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011).[5]

Named Plaintiffs don't allege that Ms. Huesmann obtained or used any funds for her personal benefit. Named Plaintiffs don't allege that Ms. Huesmann retained any funds in any accounts under her name or control that belong to them. Nothing in the Complaint supports even an inference that Ms. Huesmann had anything to gain, much less was enriched by, any of the activities she is alleged to have engaged in by the Named Plaintiffs (which she denies). In fact, Named Plaintiffs expressly allege that the properties Mr. Scott purchased in Massachusetts, were either purchased by him to live in with his wife (not Ms. Huesmann) or "for himself" (SAC at ¶ 177-178). The Complaint fails to set forth a plausible claim for unjust enrichment against Ms. Huesmann. Accordingly, this claim should be dismissed.

d.  The Complaint Fails to State A Claim for Civil Conspiracy.

Count X, purports to assert a claim for "civil conspiracy". The claim purports to lump Ms. Huesmann in with other defendants in an alleged conspiracy to "defraud and obtain money and

---

[5] Florida Law is slightly different. Under Florida law, the elements of a claim for Unjust Enrichment are (1) a benefit conferred upon a defendant by the plaintiff; (2) the defendant's appreciation of the benefit; and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. *Swindell v. Crowson*, 712 So. 2d 1162 (Fla. 2d DCA 1998). However, under either State's law, Named Plaintiffs have failed to allege any facts plausibly giving rise to a claim against Ms. Huesmann for Unjust Enrichment.

property by means of false and fraudulent pretenses, representations, and promises . . ." by agreeing

to commit "securities fraud, wire fraud, and money laundering." (SAC at ¶ 266)

Under New York law, the elements of Civil Conspiracy are demonstration of the primary

tort, plus the following four elements (1) an agreement between two or more parties; (2) an overt

act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of

a plan or purpose; and (4) resulting damage or injury. *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d

472, 905 N.Y.S.2d 585 (N.Y. App. Div. 2010).[6]

Rather than allege specific acts by specific defendants, the majority of the allegations in

Count X refer collectively to "the Defendants". However, a fair and objective reading of the

allegations of this Count, read in context with the rest of the Complaint, make it obvious that the

majority, if not all of the allegations, refer to previous allegations that expressly exclude Ms.

Huesmann. And while the Complaint goes to great lengths to detail the alleged roles of Ruja,

Ignatov, and Greenwood in the purported conspiracy (SAC at ¶¶ 273-274), it again impermissibly

lumps Ms. Huesmann together with Mr. Scott and Mr. Pike for this claim as well (*Id.* at ¶ 275).

Moreover, the two paragraphs alleging the "roles" of Mr. Scott, Mr. Pike and Ms. Huesmann in

the alleged conspiracy are nothing more than formulaic recitations of the required allegations for

conspiracy claims. There are no specific facts alleged in Count X, or anywhere else in the

Complaint, sufficient to raise Named Plaintiffs' claim that Ms. Huesmann agreed to be part of

some far reaching conspiracy beyond the level of the purely fantastical and speculative. Named

---

[6] The elements of a Civil Conspiracy under Florida Law are (1) an agreement between two or more parties, (2) to do an unlawful act or do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (3) damage to plaintiff as a result of the acts done under the conspiracy. *Rey v. Philip Morris, Inc.*, 75 So. 3d 378 (Fla. 3d DCA 2011).

HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131
TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

Plaintiffs have certainly failed to allege a plausible claim for conspiracy against Ms. Huesmann sufficient to withstand dismissal pursuant to Rule 12(b)(6).

e.   Adoption of Arguments of Other Parties.

Ms. Huesmann also adopts the arguments and cases cited in Section II of Defendant, Mark Scott's Motion to Dismiss, to the extent applicable to the claims Named Plaintiffs have attempted to assert against her in this action.

## **CONCLUSION**

This Court lacks personal jurisdiction over Ms. Huesmann. Named Plaintiffs cannot establish either general or specific jurisdiction pursuant to New York's Long Arm Statute, or that the exercise of personal jurisdiction in this case would comport with the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, this case should be dismissed for that reason.

Named Plaintiffs' Second Amended Class Action Complaint violates Rules 8(a)(2), 9(b) and 10(b), and should be dismissed, pursuant to Rule 12(e). Named Plaintiffs also fail to state plausible claims against Ms. Huesmann, as set forth herein, and their claims against her should be dismissed, with prejudice, pursuant to Rule 12(b)(6).

**Dated: December 21, 2020**

Respectfully submitted,

/s/ *Bradley A. Silverman*
Bradley A. Silverman
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
Facsimile: (305) 379-3690
Email: bsilverman@hamiltonmillerlaw.com
*Attorneys for Defendant, Nicole J. Huesmann*