**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD BERDEAUX and CHRISTINE GRABLIS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>ONECOIN LTD.; RUJA IGNATOVA; SEBASTIAN GREENWOOD; MARK SCOTT; DAVID PIKE; NICOLE J. HUESMANN; GILBERT ARMENTA; and THE BANK OF NEW YORK MELLON CORPORATION,<br><br>　　　　　　　　　　Defendants. | Case No.: 1:19-cv-04074 (VEC)<br><br>Hon. Valerie E. Caproni<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT MARK S. SCOTT'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

**MINTZ & GOLD LLP**

Steven G. Mintz
Kevin M. Brown
Timothy J. Quill, Jr.
600 Third Avenue, 25th Floor
New York, NY 10016
(212) 696-4848 (t)
(212) 696-1231 (f)
mintz@mintzandgold.com
brown@mintzandgold.com
quill@mintzandgold.com

*Attorneys for Defendant Mark S. Scott*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

FACTUAL ALLEGATIONS ....................................................................................3

    The OneCoin Scheme Generally ....................................................................3

    Mark Scott's Alleged Role.............................................................................5

ARGUMENT ............................................................................................................7

    I.     The claims against Mr. Scott should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over Mr. Scott..................7

          A.     The Court does not have general jurisdiction over Mr. Scott .....................9

          B.     The Court does not have specific jurisdiction over Mr. Scott .................10

    II.    Alternatively, the Named Plaintiffs' allegations about Mr. Scott do not state claims for relief.............................................................................13

          A.     The Named Plaintiffs fail to state a claim for aiding and abetting fraud, because they have not alleged that Mr. Scott knew OneCoin was a Ponzi scheme ...............................................................................14

          B.     The Named Plaintiffs fail to state a claim for unjust enrichment .............17

               1.     The claim for unjust enrichment fails because Mr. Scott's alleged gain did not come directly at the Named Plaintiffs' expense.................................................................................................17

               2.     The Named Plaintiffs' claim for unjust enrichment duplicates their other claims and should be dismissed....................................21

          C.     The Named Plaintiffs fail to state a claim for civil conspiracy because New York does not recognize an independent tort of civil conspiracy ...............................................................................................22

    CONCLUSION...................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir.1995) ................................................................................. 15

*Alexander & Alexander of New York, Inc. v. Fritzen*,
  68 N.Y.2d 968 (1986) ...................................................................................... 22

*Allocco v. City of Coral Gables*,
  221 F. Supp. 2d 1317 (S.D. Fla. 2002)............................................................. 23

*Alpha Capital Anstalt v. New Generation Biofuels, Inc.*,
  No. 13-CV-5586 (VEC), 2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014) ................................. 14

*Am. Diversified Ins. Servs., Inc. v. Union Fidelity Life Ins. Co.*,
  439 So.2d 904 (Fla. 2d DCA 1983) .................................................................. 24

*Am. Honda Motor Co. v. Motorcycle Information Network, Inc.*,
  390 F. Supp. 2d 1170 (M.D. Fla. 2005) ........................................................... 22

*Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*,
  820 F. Supp. 2d 510 (S.D.N.Y. 2011)........................................................ 17, 19

*Art Assure Ltd., LLC v. Artmentum GmbH*,
  No. 14 Civ. 3756 (LGS), 2014 WL 5757545 (S.D.N.Y. Nov. 4, 2014) ..................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 14, 16

*Atl. Mut. Ins. Co. v. M/V HUMACAO*,
  169 F. Supp. 2d 211 (S.D.N.Y. 2001)................................................................. 9

*Basile v. Walt Disney Parks and Resorts U.S., Inc.*,
  No. 6:10-cv-993-Orl-35DAB, 2011 WL 13298729 (M.D. Fla. June 23, 2011) ........................ 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 13, 14

*Bensusan Rest. Corp. v. King*,
  126 F.3d 25 (2d Cir. 1997) ............................................................................ 13

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007) ......................................................................... 13

*Brown v. Daikin Am. Inc.*,
  756 F.3d 219 (2d Cir. 2014) ................................................................. 14

*Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*,
  770 F. Supp. 2d 1261 (S.D. Fla. 2011) .................................................. 20

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) ...................................................................... 8

*Chen v. Guo Liang Lu*,
  144 A.D.3d 735 (N.Y. App. Div. 2d Dep't 2016) ................................ 9, 10

*Churruca v. Miami Jai Alai, Inc.*,
  353 So.2d 547 (Fla. 1977) .................................................................. 23, 24

*Corsello v. Verizon N.Y.*,
  18 N.Y.3d 777 (2012) ............................................................................ 21

*Cortes v. Twenty-First Century Fox Am., Inc.*,
  285 F. Supp. 3d 629 (S.D.N.Y.) ............................................................ 23

*Cutler v Voya Fin., Inc.*,
  No. 18-20723-Civ-WILLIAMS/ TORRES, 2018 WL 4410202 (S.D. Fla. Aug. 23, 2018) ..... 20

*David v Am. Suzuki Motor Corp.*,
  629 F. Supp. 2d 1309 (S.D Fla. 2009) ................................................... 22

*Delgado-Perez v. City of New York*,
  No. 17-CV-01194 (LTS) (BCM), 2018 WL 6200039 (S.D.N.Y. Nov. 28, 2018) ........................ 9

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
  631 F.3d 42 (2d Cir. 2011) .................................................................... 17

*Eastboro Foundation Charitable Trust v. Penzer*,
  950 F. Supp. 2d 648 (S.D.N.Y. 2013) .................................................... 10

*Eidelman v. Sun Prods. Corp.*,
  No. 16-CV-3914 (NSR), 2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) ................................ 21

*Espana Informatica, S.A. v. Top Cargo, Inc.*,
  No. 08-20276-CIV-UNGARO, 2008 WL 11331700, n.4 (S.D. Fla. July 3, 2008) .................. 23

*Fallon v. McKeon*,
  230 A.D.2d 629 (N.Y. App. Div. 1st Dep't 1996) .................................. 21

*Georgia Malone & Co. v. Rieder*,
  19 N.Y.3d 511 (2012) ....................................................................... 18, 20

iv

*Gill v. Three Dimension Sys., Inc.*,
   87 F. Supp. 2d 1278 (M.D. Fla. 2000) ................................................................ 8, 9

*Giuliano v. Barch*,
   No. 16-CV-0859 (NSR), 2017 WL 1234042 (S.D.N.Y. March 31, 2017) ........................... 9, 11

*GMS Group, Inc. v. Sentinel Trust Co.*,
   No. 97 Civ. 1342 (WK), 1997 WL 414147 (S.D.N.Y. July 23, 1997) ........................................ 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ..................................................................................... 9, 10

*Guerrero v. Target Corp.*,
   889 F. Supp. 2d 1348 (S.D. Fla. 2012)................................................................... 22

*Hager v. Venice Hosp., Inc.*,
   944 F. Supp. 1530 (M.D. Fla. 1996) ..................................................................... 24

*In re Allou Distributors, Inc.*,
   446 B.R. 32 (Bankr. E.D.N.Y. 2011) ..................................................................... 23

*In re Commodity Exch., Inc.*,
   213 F. Supp. 3d 631 (S.D.N.Y. 2016).............................................................. 14, 17

*In re LIBOR-Base Financial Instruments Antitrust Litig.*,
   No. 11 MDL 2262 (NRB), 2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019)................................ 7

*In re SSA Bonds Antitrust Litig.*,
   420 F. Supp. 3d 219 (S.D.N.Y. 2019) .................................................................... 12

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998)................................................................................. 7

*Johnson v. Priceline.com, Inc.*,
   711 F.3d 271 (2d Cir. 2013)................................................................................ 13

*JP Morgan Chase Bank v. Winnick*,
   406 F. Supp. 2d 247 (S.D.N.Y.2005)..................................................................... 14

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)............................................................................... 17

*Keane v. Kamin*,
   94 N.Y.2d 263 (1999) ...................................................................................... 10

*Kew Gardens Hills Apartment Owners, Inc. v. Horing Welikson & Rosen, P.C.*,
  35 A.D.3d 383 (N.Y. App. Div. 2d Dep't 2006) ........................................................ 22

*Kirch v. Liberty Media Corp.*,
  449 F.3d 338 (2d Cir. 2006) ............................................................................. 15, 22

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014) ....................................................................................... 16

*Laydon v. Mizuho Bank, Ltd., No. 12-CV-3419 GBD*,
  No. 12-CV-3419 GBD, 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) .................................. 18

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ............................................................................. 14, 15

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012) ................................................................................ 8, 11

*Lipson v. Birch*,
  46 F. Supp. 3d 206 (E.D.N.Y. 2014) .............................................................................. 9

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) ............................................................................................... 18

*Mangia Media Inc. v. Univ. Pipeline, Inc.*,
  846 F. Supp. 2d 319 (E.D.N.Y. 2012) .......................................................................... 10

*Meridian Trust Co. v. Batista*,
  No. 17-23051-Williams, 2018 WL 4760277 (S.D. Fla. Sept. 30, 2018) ............................. 16

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014) ....................................................................................... 14

*Munsif v. Barr*,
  797 Fed. App'x 658 (2d Cir. 2020) ............................................................................... 15

*N. Fork Partners Inv. Holdings, LLC v. Bracken*,
  No. 20-cv-2444 (LJL), 2020 WL 2521448 (S.D.N.Y. May 18, 2020) .................................. 12

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
  709 F.3d 109 (2d Cir. 2013) ....................................................................................... 14

*Nautica Int'l, Inc. v. Intermarine USA, L.P.*,
  5 F. Supp. 2d 1333 (S.D. Fla. 1998) ............................................................................ 22

*Norex Petroleum Ltd. v. Blavatnik*,
    48 Misc. 3d 1226(A), 22 N.Y.S.3d 138, 2015 N.Y. Slip Op. 51280(U) (Sup. Ct. N.Y. Cty.
    2015) ............................................................................................................................................ 21

*Oakwood Ins. Co. v. N. Am. Risk Services, Inc.*,
    No. 6:18-cv-437-Orl-31KRS, 2019 WL 175278 (M.D. Fla. Jan. 11, 2019) ............................ 23

*Obeid v. La Mack*,
    No. 14 CV 6498 (LTS) (HBP), 2018 WL 2059653 (S.D.N.Y. May 1, 2018) ......................... 21

*Orozco v. Fresh Direct, LLC*,
    No. 15-CV-8226 (VEC), 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016) ................................ 13

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010) ..................................................................................... 7, 8, 9, 13

*Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.*,
    667 So.2d 876 (Fla. 3d DCA 1996) ........................................................................................ 20

*Raimi v. Furlong*,
    702 So. 2d 1273 (Fla. 3d DCA 1997) .................................................................................... 23

*SEC v. Lee*,
    720 F. Supp. 2d 305 (S.D.N.Y. 2010) .................................................................................... 15

*Silverman Partners, L.P. v. First Bank*,
    687 F. Supp. 2d 269 (E.D.N.Y. 2010) .................................................................................... 15

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204 (2007) .............................................................................................................. 18

*Spiegel v. Schulmann*,
    604 F.3d 72 (2d Cir. 2010) ....................................................................................................... 8

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ....................................................................................................... 7

*Thomas v. Ashcroft*,
    470 F.3d 491 (2d Cir. 2006) ..................................................................................................... 8

*Touchtone Group, LLC v. Rink*,
    913 F. Supp. 2d 1063 (D. Colo. Dec. 21, 2012) ...................................................................... 8

*Troma Entm't, Inc. v. Centennial Pictures, Inc.*,
    729 F.3d 215 (2d Cir. 2013) ..................................................................................................... 7

*U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ............................................................................. 13

*U.S.A. v. Scott*,
   No. 1:17-cr-00630-ER (S.D.N.Y.) ECF No. 345-1 ............................................ 19

*Universal Trading & Inv. Co., Inc. v. Tymoshenko*,
   No. 11 Civ. 7877 (PAC), 2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) .................... 11

*Walden v. Fiore*,
   571 U.S. 277 (2014) .......................................................................................... 12

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ................................................................................ 8

*Walters v. Blankenship*,
   931 So.2d 137 (Fla. 5th DCA 2006) ................................................................... 23

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000) ................................................................................ 15

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286, 297 (1980) (1980) ....................................................................... 13

## **Rules**

Fed. R. Civ. P. 9(b) ....................................................................................... 15, 16

Fed. R. Civ. P. 12(b)(2) ..................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ..................................................................................... *passim*

Fed. R. Civ. P. 12(e) ............................................................................................ 24

N.Y. C.P.L.R. § 301 ............................................................................................... 9

N.Y. C.P.L.R. § 302 ..................................................................................... 9, 10, 11

This Court lacks personal jurisdiction over defendant Mark Scott. Mr. Scott has resided in Coral Gables, Florida since 2000. The Named Plaintiffs[1] served Mr. Scott at his home in that state. The Named Plaintiffs fail to allege a sufficient connection between Mr. Scott and this forum. Moreover, the lack of personal jurisdiction notwithstanding, the Named Plaintiffs fail to state a claim against Mr. Scott. Thus, Mark Scott respectfully submits this memorandum of law in support of his motion to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

The claims against Mark Scott do not belong before this Court. But should the Court consider them, those claims fail. In any event, the claims against Mr. Scott should be dismissed.

The Named Plaintiffs allege a complex, cross-border Ponzi scheme operated out of Bulgaria and the United Arab Emirates. The Second Amended Complaint describes an international cabal, helmed by a missing Bulgarian CEO known as the "CryptoQueen" and a Swedish expert in Amway-style, multi-level marketing. Together they allegedly duped investors into purchasing—indirectly—OneCoin, a cryptocurrency that did not exist. But the Court can resolve this motion without wading into the world of cryptocurrency with its "blockchains," "mining," and "distributed ledgers." The Named Plaintiffs' three pendent, state law claims raise a simpler issue: why did the Named Plaintiffs file their claims in New York?

Mr. Scott resides in Florida. The Named Plaintiffs served him there. Nearly all the conduct described in the Second Amended Complaint happened outside New York. The Named Plaintiffs allege that Mr. Scott provided some unspecified after-the-fact assistance to OneCoin's founder Ruja Ignatova—a/k/a the "CryptoQueen"—by allegedly creating investment vehicles,

---

[1]    The Named Plaintiffs are Donald Berdeaux and Christine Grablis. Their operative pleading is the Second Amended Class Action Complaint ("Second Amended Complaint" in the text, "SAC" in citations) (ECF No. 125).

not in New York, but in Ireland, the British Virgin Islands, and the Cayman Islands. Those investment funds then allegedly received OneCoin-related monies from bank accounts based out of places other than New York, such as Germany, Bulgaria, and Singapore. The Named Plaintiffs' sole allegation connecting Mr. Scott to New York is an allegation that a correspondent bank in Manhattan processed one Cayman Island bank transaction allegedly directed by Mr. Scott. That is it. And, even then, the Named Plaintiffs do not allege Mr. Scott *purposefully* directed a transaction to a New York bank—nor that he purposefully directed any action toward New York. Thus, this Court lacks personal jurisdiction over Mr. Scott and the claims against him should be dismissed under Fed. R. Civ. P. 12(b)(2).

Moreover, the lack of personal jurisdiction notwithstanding, the Named Plaintiffs' three state law claims against Mr. Scott—for aiding and abetting fraud, unjust enrichment, and civil conspiracy—fail, on their face, to state causes of action. First, Plaintiffs' claim for aiding and abetting fraud fails because the Named Plaintiffs fail to allege that Mr. Scott knew, or could even have known, about the fraud. Putting to the side the spy novel–style details of the alleged OneCoin scam, such as the CryptoQueen's mysterious disappearance, the Second Amended Complaint describes Mr. Scott as a corporate lawyer who set up his own company to manage investment funds, accepting money from wealthy investors that Mr. Scott's investment funds would invest. Despite the Named Plaintiffs' liberal use of variations on the phrase "money laundering," Mr. Scott cannot have aided the alleged underlying Ponzi scheme unless he ***knew*** that Ms. Ignatova and her alleged co-conspirators derived the money sent to Mr. Scott's investment funds from fraud. But the Named Plaintiffs fail to allege any facts suggesting that Mr. Scott knew, or could have known, about the alleged fraud, relying only on conclusory allegations of Mr. Scott's knowledge. Second, the Named Plaintiffs' claim for unjust enrichment fails: (i)

2

because there is no direct connection between the Named Plaintiffs' alleged loss and Mr. Scott's alleged gain; and (ii) because it duplicates other claims. Finally, the Named Plaintiffs' claim for civil conspiracy fails because New York does not recognize an independent tort of conspiracy.

Whether it is for lack of personal jurisdiction, under Rule 12(b)(2), or for failure to state a claim, under Rule 12(b)(6), the Named Plaintiffs' claims against Mark Scott should be dismissed.

## FACTUAL ALLEGATIONS

**The OneCoin Scheme Generally**

The Second Amended Complaint describes a global Ponzi scheme taking advantage of the gap between public interest in bitcoin-style cryptocurrencies and public understanding of the technologies powering such currencies. The Named Plaintiffs allege that in April 2014, Ruja Ignatova a/k/a the CryptoQueen, a resident of Bulgaria, and Sebastian Greenwood, a resident of Sweden, founded OneCoin Ltd. ("OneCoin Entity"), a Bulgarian company with offices in several foreign countries.[2] (SAC ¶ 23.) The Founder Defendants created the OneCoin Entity to market OneCoin: purportedly a cryptocurrency. (SAC ¶¶ 2–5, 100-101, 110-11, 117, 121, 123.) The Second Amended Complaint alleges that the OneCoin Defendants[3] marketed OneCoin cryptocurrency using Amway-style multi-level marketing—i.e., investors gained access to additional OneCoin for every new investor recruited—and as a massive Ponzi scheme—i.e., new investments funded the redemptions of older investors. (SAC ¶¶ 2, 25, 102, 154.)

---

[2]      The Named Plaintiffs named Ruja Ignatova and Sebastian Greenwood (together, the "Founder Defendants") as defendants in their initial pleadings. (ECF Nos. 1, 40.) The Named Plaintiffs later dropped Mr. Greenwood as a defendant after they were unable to locate him, (*see* ECF No. 90), before adding him back to the action in the Second Amended Complaint. (ECF No. 125.)

[3]      The OneCoin Defendants are the "Founder Defendants" (Ignatova and Greenwood), together with the OneCoin Entity. (ECF No. 125 at Introduction and ¶¶ 21–33.)

Around September 2014, the OneCoin Entity launched "OneCoin," billing it as a cryptocurrency and selling OneCoin Trader Packages, which consisted of purported financial "educational material" which came with a token to receive a OneCoin. (SAC ¶¶ 24–25.) The Named Plaintiffs allege that OneCoin was an illusion—having none of the hallmarks of real cryptocurrencies, like a publicly available ledger to track transactions—and that there has never been a functioning market for OneCoin. (SAC ¶¶ 2–5, 100-101, 110-11, 117, 121, 123.)

Around July 2015, the OneCoin Defendants allegedly began actively soliciting investors in the United States. (SAC ¶¶ 135-36.) The Named Plaintiffs claim that they are two of potentially thousands of U.S.-based victims of the OneCoin scheme. (SAC ¶ 33.) Berdeaux, a Montana resident, alleges that between August 2015 and May 2016, he invested about $756,000.00 in OneCoin. (SAC ¶ 17.) Grablis, a Tennessee resident, alleges that from August 2015 through August 2016, she invested about $103,500.00.[4] (SAC ¶ 19.)

As in a typical Ponzi scheme, the OneCoin Defendants pooled the Named Plaintiffs' investments with those of other investors, with some funds being used to pay redemptions by earlier investors in the OneCoin scheme, and the bulk of the money going to the people running the scheme. (SAC ¶¶ 3, 154-55, 247.) The Named Plaintiffs allege that the OneCoin Entity collected more than $4 billion in investments worldwide.[5] (SAC ¶¶ 193-196.)

---

[4]     It is worth noting that the Named Plaintiffs have not bothered to sue the individuals who actually sold Plaintiffs the OneCoin Trader Packages.

[5]     Ruja Ignatova disappeared in October 2017 and her whereabouts are still unknown. (SAC ¶ 31.) After her disappearance, her brother, Konstantin Ignatov, allegedly took over the OneCoin Entity. (SAC ¶¶ 65-66.) In late 2017, law enforcement officials arrested Mr. Ignatov in Los Angeles, later transferring him to New York where, in September 2019, he pleaded guilty to various charges and is now cooperating with law enforcement. (SAC ¶¶ 67-68.) Named Plaintiffs voluntarily dismissed Ignatov from this action earlier this year, purportedly in exchange for his cooperation against, among others, Mark Scott. (SAC ¶ 69; *see* ECF No. 118.) In 2018, Thai officials cooperating with the FBI arrested defendant Greenwood in Thailand, extraditing Mr. Greenwood to the United States to await criminal charges. (SAC ¶ 42.)

**Mark Scott's Alleged Role**

The Second Amended Complaint alleges that Mr. Scott—a corporate attorney and resident of Coral Gables Florida—provided some sort of assistance to the OneCoin Defendants. (SAC ¶ 44; Declaration of Mark S. Scott, dated December 17, 2020 ("Scott Decl.") ¶ 3.) Mr. Scott allegedly was introduced to Ruja Ignatova in September 2015. The Named Plaintiffs do not allege that that meeting took place in New York, nor do they allege that Mr. Scott ever had any OneCoin-related meetings in New York. Then, in February 2016, Mr. Scott formed a fund management firm in the British Virgin Islands—MSS International Consultants ("MSSI")[6]—through which he and defendant David Pike registered foreign investment funds. (SAC ¶¶ 162-64.) Those foreign investment funds included funds registered in the British Virgin Islands and a fund in the Cayman Islands. (SAC ¶ 164 & n.4.) According to the Second Amended Complaint, from August 2016 through February 2017, several of these foreign investment funds wired around €273 million to separate accounts owned by the investment funds at an Irish bank. (SAC ¶ 165.) Named Plaintiffs do not allege that any of that conduct took place in New York.

In April 2016, Mr. Scott engaged an outside company, Apex, to provide administration services for several of his investment funds. Apex created bank accounts for the investment funds, which then received about €155 million in wire transfers from OneCoin-related bank accounts located not in New York, but in Singapore, Germany, and Bulgaria. (SAC ¶¶ 166-67.)

The Named Plaintiffs allege that between June 2016 and February 2017, the foreign investment funds set up by Mr. Scott and Apex collectively received about €364 million and $10 million. That money allegedly originated from ten different bank accounts, and the funds from eight of those accounts received investments, either directly or indirectly, from OneCoin

---

[6]    "MSS" are Mark S. Scott's initials. (SAC ¶ 164.)

investments made by members of the putative class. (SAC ¶ 169.) Again, the Named Plaintiffs do not link any of those accounts to New York. At one point, Apex asked Mr. Scott to confirm the origin of wire transfers to certain bank accounts, and he explained that they were deposits by a company called B and N Consult Ltd. owned by former defendant Dilinska. (SAC ¶ 167.)

The Second Amended Complaint also alleges that soon after, Mr. Scott mistakenly forwarded an email chain to Apex revealing that Ms. Dilinska's email originated from the domain onecoin.eu, and that when Apex asked about Ms. Dilinska, Mr. Scott terminated the funds' business relationship with Apex. (SAC ¶ 168.) According to the Second Amended Complaint, the investment vehicles set up by Mr. Scott received $400 million of the purported class's investments in OneCoin. (SAC ¶¶ 172, 179.) The Named Plaintiffs also allege that Mr. Scott received millions of dollars from OneCoin. (SAC ¶ 171, 177-78, 192.) But the Named Plaintiffs do not link any of that conduct to New York.

The lone association that Named Plaintiffs allege supposedly connecting Mr. Scott's investment funds to New York is a single transaction the Named Plaintiffs allege that Mr. Scott directed—not through a bank in New York, but through a bank in the Cayman Islands: DMS Bank. The Named Plaintiffs allege that Mr. Scott participated in a 2016 loan transaction where funds passed through a correspondent bank headquartered in New York, but which has global operations and foreign clients, including DMS Bank. (SAC ¶ 184–86.) But the Named Plaintiffs do not allege that Mr. Scott purposefully structured the transaction that way. Instead, they merely allege that a portion of the transaction passed through a correspondent bank and that Mr. Scott may have been aware of that fact because he sent himself an email with DMS Bank's wire details for *incoming* wire transfers. (*Id.*)

\* \* \* \* \*

The Named Plaintiffs sued in May 2019, purporting to represent a class of all OneCoin investors. Their operative pleading, the Second Amended Complaint, sets forth three claims against Mr. Scott—aiding and abetting fraud (Count IV), unjust enrichment (Count VIII), and civil conspiracy (Count X). (SAC ¶¶ 223-27, 254-58, 265-77.)

## ARGUMENT

For the reasons below, the claims against Mark Scott should be dismissed under Rules 12(b)(2) and 12(b)(6).

**I.      The claims against Mr. Scott should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over Mr. Scott.**

The Named Plaintiffs bear "the burden of demonstrating personal jurisdiction over a person or entity[.]" *Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) *quoting Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). To satisfy that burden, they must have alleged specific facts to establish a prima facie case of personal jurisdiction; "conclusory statements without any supporting facts . . . 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) *quoting Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998). It is not enough for the Named Plaintiffs to allege facts sufficient to establish jurisdiction over one defendant. They must allege facts for the Court to obtain jurisdiction over each individual defendant for each claim asserted. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted.") (emphasis in original); *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2019 WL 1331830, at *6 (S.D.N.Y. Mar. 25, 2019).

When, as here, claims arise under state law, courts engage in a two-step personal jurisdiction analysis. First, the plaintiff must establish a statutory basis for personal jurisdiction under the laws of the forum state. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018); *see Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) *citing Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located."). Only if the first requirement is satisfied does the court turn to the second step—determining whether "'the exercise of personal jurisdiction . . . comport[s] with constitutional due process principles.'" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) *quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012); *see Penguin Grp.*, 609 F.3d at 35.

The Court, therefore, must first look to New York law to determine whether to exercise personal jurisdiction over Mr. Scott. *See, e.g.*, *GMS Group, Inc. v. Sentinel Trust Co.*, No. 97 Civ. 1342 (WK), 1997 WL 414147, at *3 (S.D.N.Y. July 23, 1997) (noting that New York law governed whether the court could exercise personal jurisdiction over non-domiciliary defendant against whom plaintiff asserted only state law claims); *Touchtone Group, LLC v. Rink*, 913 F. Supp. 2d 1063, 1074 (D. Colo. Dec. 21, 2012) (stating that "because [p]laintiff does not bring claims against these defendants under the Securities Exchange Act, [p]laintiff must establish specific or general jurisdiction against them under *International Shoe's* 'minimum contacts' analysis"); *Gill v. Three Dimension Sys., Inc.*, 87 F. Supp. 2d 1278, 1284 (M.D. Fla. 2000) (finding that plaintiff in securities fraud action must establish personal jurisdiction under Florida's long-arm statute over defendants against whom plaintiff asserted only state law claims).[7]

---

[7]     New York law, as limited by due process principles, determines whether the

In New York, N.Y. C.P.L.R. § 301 addresses general jurisdiction and the state's long-arm statute, N.Y. C.P.L.R. § 302, addresses specific jurisdiction over out-of-state defendants. *See Penguin Grp.*, 609 F.3d at 35; *Delgado-Perez v. City of New York*, No. 17-CV-01194 (LTS) (BCM), 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018). Here, neither specific nor general jurisdiction is satisfied and the claims against Mr. Scott therefore should be dismissed.

      A.    *The Court does not have general jurisdiction over Mr. Scott.*

The Court does not have general personal jurisdiction over Mr. Scott. For a state to exercise general jurisdiction, the defendant's "affiliations with the [s]tate [must be] so continuous and systematic as to render [him] essentially at home in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation and citation omitted). Under N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction in New York if he (1) is domiciled in New York; (2) was served with process in New York; or (3) continuously and systematically does business in New York. *Giuliano v. Barch*, No. 16-CV-0859 (NSR), 2017 WL 1234042, at *4 (S.D.N.Y. March 31, 2017) *citing* N.Y. C.P.L.R. § 301. The Named Plaintiffs fail to allege facts satisfying any of these jurisdictional bases.

 Mr. Scott is not domiciled in New York. New York law determines a defendant's domicile for personal jurisdiction purposes "at the time the plaintiff commenced the action," and when a defendant "is not domiciled in New York at the time the action is commenced, New York courts lack personal jurisdiction over the defendant on that basis." *Chen v. Guo Liang Lu*, 144

---

Court may exercise personal jurisdiction over Mr. Scott. *See Lipson v. Birch*, 46 F. Supp. 3d 206, 216–17 (E.D.N.Y. 2014) *citing Atl. Mut. Ins. Co. v. M/V HUMACAO*, 169 F. Supp. 2d 211, 217 n.2 (S.D.N.Y. 2001) and *Gill v. Three Dimension Sys., Inc.*, 87 F. Supp. 2d 1278, 1284 (M.D. Fla. 2000) ("Whether viewed as invoking diversity of citizenship jurisdiction or supplemental jurisdiction, the New York long-arm statute applies with respect to the [p]laintiff's state law claims.").

A.D.3d 735, 737 (N.Y. App. Div. 2d Dep't 2016) *citing Keane v. Kamin*, 94 N.Y.2d 263, 266 (1999). As explained in the accompanying Declaration of Mark S. Scott, Mr. Scott is, and has been, domiciled in Coral Gables, Florida since 2000. (Scott Decl. ¶ 3.) The Named Plaintiffs tacitly acknowledge as much. (*See* SAC ¶ 44.)

The second basis for jurisdiction is not satisfied either because the Named Plaintiffs effected service on Mr. Scott in Florida. (ECF No. 15.)

Finally, the Named Plaintiffs fail to allege facts suggesting that Mr. Scott has extensive contacts with New York that would make him "at home" in the state. *See Goodyear Dunlop Tires*, 563 U.S. at 919. Indeed, the Named Plaintiffs' only alleged fact connecting Mr. Scott to New York for purposes of general jurisdiction is the allegation that he holds a license to practice law in this State (SAC ¶¶ 46, 48), but an attorney's license to practice law in a state is insufficient to subject him to general personal jurisdiction. *See, e.g.*, *Eastboro Foundation Charitable Trust v. Penzer*, 950 F. Supp. 2d 648, 655-56 (S.D.N.Y. 2013) (acknowledging the absence of case law "construing an attorney's license to practice law as an automatic consent to general personal jurisdiction" and noting that "courts have rejected that argument on a number of occasions") (citations omitted); *Mangia Media Inc. v. Univ. Pipeline, Inc.*, 846 F. Supp. 2d 319, 323 (E.D.N.Y. 2012) ("Plaintiff cites no authority for the broad exercise of general jurisdiction over each and every member of the Bar in this State."). Thus, the Court cannot assert general personal jurisdiction over Mr. Scott.

B.    *The Court does not have specific jurisdiction over Mr. Scott.*

The Court also lacks specific jurisdiction over Mr. Scott. Under N.Y. C.P.L.R. § 302(a), a New York court may exercise specific jurisdiction over a non-resident based on the following, provided such acts relate to the claim asserted: (1) transacting business within the state or contracting anywhere to supply goods or services in the state; (2) committing a tortious act

within the state; (3) committing a tortious act outside the state and causing injury to a person or property within the state, if the defendant regularly does business or engages in other business and derives substantial revenue from New York or reasonably expects to have consequences in the state; or (4) owning, using or possessing any real property within the state. N.Y. C.P.L.R. § 302(a); *see Giuliano*, 2017 WL 1234042, at *4.

The Named Plaintiffs fail to allege facts sufficient to establish that Mr. Scott engaged in *any* of those acts. Indeed, the Named Plaintiffs' sole substantive allegation against Mr. Scott vis-á-vis New York is merely that—at some point—he learned, or should have learned, that a *single transaction* he directed a Cayman Islands Bank to execute was processed through a correspondent bank in Manhattan. (SAC ¶ 185.) That allegation does not suggest that Mr. Scott *purposefully* used the New York-based correspondent bank. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (noting that, under New York law, "the use of a correspondent bank account, standing alone, may be considered a 'transaction of business' under the long-arm statute *if the defendant's use of the correspondent account was purposeful*") (emphasis added); *Universal Trading & Inv. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877 (PAC), 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) (dismissing for lack of personal jurisdiction because allegation that individual defendant directed several financial transactions that passed through a correspondent bank account in New York did not satisfy long-arm statute).

Aside from the fleeting reference to a single transaction through a New York-based correspondent bank, the Named Plaintiffs do not allege that Mr. Scott's purported involvement in the OneCoin scheme had any connection to New York.[8]

---

[8] The Named Plaintiffs also allege that Mr. Scott was indicted in this District and that he was released from a federal prison in New York before his criminal trial. (See SAC ¶¶ 47,

The Second Amended Complaint alleges that the OneCoin scheme operated out of Bulgaria and the United Arab Emirates. (SAC ¶¶ 21-23, 26, 113.) Although the Named Plaintiffs allege that the victims of the alleged scheme "include individuals living and/or working within the Southern District of New York" (SAC ¶ 127), the Named Plaintiffs are not even New York residents, but reside in Montana and Tennessee. (SAC ¶¶ 17, 19.) In any event, the proper question for personal jurisdiction "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). The Named Plaintiffs' slipshod allegations against Mr. Scott fail to support their conclusion that his alleged conduct ties him to New York.

The Named Plaintiffs' only references to personal jurisdiction in the Second Amended Complaint are generic, conclusory allegations stating that the Court:

> has personal jurisdiction over each of the Defendants because each either [1] conducts business in and maintains operations in this District, or is an individual who either [2] is present in this District for jurisdictional purposes or [3] has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

(SAC ¶ 15.) Boilerplate, conclusory, generalized allegations—lacking any factual content—cannot create jurisdiction. *N. Fork Partners Inv. Holdings, LLC v. Bracken*, No. 20-cv-2444 (LJL), 2020 WL 2521448, at *3 (S.D.N.Y. May 18, 2020). Nor is the Named Plaintiffs' reliance on group pleading sufficient to establish personal jurisdiction over an individual defendant. *See In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 233 (S.D.N.Y. 2019).

The Named Plaintiffs reference several geographic locations in their allegations against Mr. Scott: Ireland, the Cayman Islands, the British Virgin Islands, and Switzerland. The Named

---

195.) Neither fact, nor any of the others asserted by the Named Plaintiffs in the Second Amended Complaint, satisfies New York's long-arm statute.

Plaintiffs allege that Mr. Scott (1) formed foreign investment funds in the Cayman Islands and British Virgin Islands; (2) registered another entity in the British Virgin Islands; and (3) transferred funds through bank accounts at financial institutions in the Cayman Islands and the Republic of Ireland. (*See* SAC ¶¶ 44, 45, 164.) None of these alleged actions subjects Mr. Scott to personal jurisdiction under New York law. There is thus no statutory basis for specific personal jurisdiction over Mr. Scott.[9]

In sum, the Court lacks personal jurisdiction over Mr. Scott and the Second Amended Complaint should be dismissed under Rule 12(b)(2).

## II.    Alternatively, the Named Plaintiffs' allegations about Mr. Scott do not state claims for relief.

Should the Court decide to assert personal jurisdiction over Mr. Scott, each of the Named Plaintiffs' claims against Mr. Scott should still be dismissed under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Orozco v. Fresh Direct, LLC*, No. 15-CV-8226 (VEC), 2016 WL 5416510, at *2 (S.D.N.Y. Sept. 27, 2016) *quoting Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp.*

---

[9]      Because the Court lacks both general and specific jurisdiction over Mr. Scott under New York's personal jurisdiction law, it need not address the issue of whether the exercise of personal jurisdiction over Mr. Scott would violate due process. *See Penguin Grp.*, 609 F.3d at 35 *citing Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) ("[A]nalysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the applicable state statute.") (internal citation omitted); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (finding where exercise of jurisdiction is proscribed by New York law, the court does not address due process issues). Even if the Court were to engage in the constitutional analysis, the Court would reach the same conclusion. Because the Second Amended Complaint fails to allege sufficient "minimum contacts" with New York, Mr. Scott could not "reasonably anticipate being haled into Court" in this forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *accord U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). Thus, exercising personal jurisdiction over Mr. Scott would violate due process and be constitutionally impermissible.

*v. Twombly*, 550 U.S. 544, 555–56 (2007)). The Court should "'accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.'" *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 649 (S.D.N.Y. 2016) *quoting Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014) (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013) (alterations omitted)). A complaint must be dismissed if it does not "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id. quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 650 *quoting Twombly*, 550 U.S. at 555. Further, "[courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id. quoting Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555 (other internal quotation marks and citations omitted)).

Here, the Named Plaintiffs have not sufficiently alleged elements of each of their claims for relief against Mr. Scott, no matter if the Court applies the substantive law of New York or Florida.

A.   *The Named Plaintiffs fail to state a claim for aiding and abetting fraud, because they have not alleged that Mr. Scott knew OneCoin was a Ponzi scheme.*

To plead a claim for aiding and abetting fraud under New York law, the Named Plaintiffs must allege "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Alpha Capital Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 (VEC), 2014 WL 6466994, at *19 (S.D.N.Y. Nov. 18, 2014) *quoting JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 (S.D.N.Y.2005). Under New York law "[a]ctual knowledge is required to impose liability on an aider and abettor theory[.]" *Alpha Capital Anstalt*, 2014 WL 6466994, at *19 *citing Lerner v.*

*Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006). The heightened pleading requirement of Fed. R. Civ. P. 9(b) applies to such claims. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91–92 (2d Cir. 2000) (applying Rule 9(b)'s particularity requirement to claim for aiding and abetting fraud); *SEC v. Lee*, 720 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (explaining that Rule 9(b) applies to "all averments of fraud or mistake"). Under Fed. R. Civ. P. 9(b), a party alleging "fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." While Rule 9(b) allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to be] alleged generally[,]" Fed. R. Civ. P. 9(b), "courts 'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[.]'" *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 285 (E.D.N.Y. 2010) *quoting Acito v. IMCERA Group, Inc*., 47 F.3d 47, 52 (2d Cir.1995).

Here, the Named Plaintiffs allege only in conclusory fashion that Mr. Scott knew OneCoin was a fraud. They allege that Mr. Scott "knowingly laundered criminal proceeds" (SAC ¶¶ 6, 45), "knowingly directed . . . money laundering efforts" (¶ 175), knew about the fraud (¶ 191), and "knowing that the funds they were transferring and concealing were proceeds of a fraudulent scheme, the Scott Group Defendants provided affirmative assistance to the OneCoin Defendants" (SAC ¶ 227). But the Named Plaintiffs fail to allege specific facts supporting those pronouncements. Such "legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Munsif v. Barr*, 797 Fed. App'x 658, 659 (2d Cir. 2020) *quoting Kirch v. Liberty Media Corp.*, 449 F.3d 338, 398 (2d Cir. 2006).

Indeed, even granted the opportunity to amend their complaint a second time—after purportedly obtaining helpful information from Ignatov in exchange for dismissing him from the

action—the Named Plaintiffs have done little more than add the words "knew" or "knowingly"

to their already sparse allegations. Simply asserting that Mr. Scott "knew" that the investment

fund's bank accounts received proceeds from an alleged fraud does not satisfy Rule 9(b). *See*

*Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) (noting that although Rule 9(b) allows a plaintiff

to plead knowledge "generally," "'generally' is not the equivalent of conclusorily") *quoting*

*Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

　　Stripped of its conclusory invocations of "money laundering," the Second Amended

Complaint merely alleges that Mr. Scott used his name to register a company—using his initials

as the basis for the company's name: MSS Consultants International Ltd. ("MSSI"). (SAC ¶

164.) Then, Mr. Scott caused MSSI to set up several investment funds. (*Id.*) And those

investment funds opened bank accounts and received money from other sources. (SAC ¶¶ 165–

70.) Finally, Mr. Scott received compensation from the investment funds. (SAC ¶¶ 176–79.)

Unless Mr. Scott ***knew*** that money received by the MSSI investment funds were the proceeds of

a fraud, the Named Plaintiffs merely accuse him of setting up and operating investment funds

with no indicia of subterfuge.

　　If the Court applies Florida law to the Named Plaintiffs' aiding and abetting claim,

because the Named Plaintiffs fail to allege a sufficient connection between Mr. Scott and New

York, the Court should reach the same conclusion. To state a claim for aiding and abetting under

Florida law, like under New York law, the plaintiff must allege "actual knowledge of the

underlying wrongdoing." *Meridian Trust Co. v. Batista*, No. 17-23051-Williams, 2018 WL

4760277, at *8 (S.D. Fla. Sept. 30, 2018). As the Named Plaintiffs do not allege such knowledge,

they have failed to state a claim for aiding and abetting fraud under either New York or Florida

law, and their claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

     B.     *The Named Plaintiffs fail to state a claim for unjust enrichment.*

The Named Plaintiffs' claim for unjust enrichment should be dismissed: (i) because the Named Plaintiffs do not allege a direct connection between the money they allegedly invested in OneCoin and money received by Mr. Scott—i.e., that Mr. Scott's alleged gain came directly at their alleged expense; and (ii) because New York law prohibits a plaintiff from maintaining an unjust enrichment claim that duplicates, or replaces, a conventional contract or tort claim.

     1.     The claim for unjust enrichment fails because Mr. Scott's alleged <u>gain did not come directly at the Named Plaintiffs' expense</u>.

To plead a claim for unjust enrichment under New York law, the Named Plaintiffs must have alleged that "(1) [the] defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 676 (S.D.N.Y. 2016) (Caproni, J.) *quoting Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011). The "essence" of a claim for unjust enrichment "is that one party has received money or a benefit at the expense of another." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted). Thus, it is not enough for the Named Plaintiffs to make a conclusory allegation tracking the language of the elements of a claim for unjust enrichment by alleging that Mr. Scott's "receipt of [funds] was at the direct expense" of the Named Plaintiffs. (SAC ¶ 8.) The Named Plaintiffs must allege facts showing that Mr. Scott received money that *specifically* belonged to them. *See Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 536–38 (S.D.N.Y. 2011). Put another way, a party pleading unjust enrichment must articulate a specific direct benefit the defendant received at the expense of the plaintiff's property. *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 676 (S.D.N.Y. 2016) (Caproni, J.). The relationship or connection between the defendant and plaintiff need not rise to the level of

privity, but it cannot be "too attenuated to support a claim." *Id. quoting Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215–16 (2007); *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517–18 (2012) (upholding dismissal of unjust enrichment claim because the relationship between parties was too attenuated); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182-83 (2011) (holding that party cannot plead unjust enrichment when plaintiff did not know that defendant existed).

The Named Plaintiffs fail to allege any facts showing the requisite direct connection between the funds the Named Plaintiffs allegedly invested in OneCoin and any funds Mr. Scott later took as a distribution from MSSI. The Named Plaintiffs do not allege, for example, that Mr. Scott or MSSI directly or indirectly received the specific funds that they personally invested in OneCoin. Moreover, nothing in the Second Amended Complaint suggests that Mr. Scott knew of the Named Plaintiffs' existence, never mind that the money he supposedly received came from the Named Plaintiffs. The Named Plaintiffs' failure to plead facts showing a direct connection between the Named Plaintiffs and Mr. Scott—standing alone—warrants dismissal of the claim for unjust enrichment.

Like their aiding and abetting cause of action, the Named Plaintiffs' attempt to correct the deficient pleading of their unjust enrichment claim by filing a Second Amended Complaint repeating the same generic assertions must fail because conclusory allegations alone cannot state such a claim. *Laydon v. Mizuho Bank, Ltd.*, No. 12-CV-3419 GBD, 2014 WL 1280464, at *13 (S.D.N.Y. Mar. 28, 2014) (granting motion to dismiss claim and noting that "[p]laintiff's conclusory assertions that [defendants] financially benefited from the unlawful manipulation and that these unlawful acts caused [p]laintiff . . . to suffer injury, fail to satisfy [p]laintiff's pleading burden") (internal citations, quotations, and alterations removed). The facts the Named Plaintiffs

*do* allege show that they could *never* allege the requisite facts to establish a direct connection

with Mr. Scott. The structure of the alleged OneCoin fraud—as described in the Second

Amended Complaint—makes drawing such a direct link impossible. Indeed, the Named

Plaintiffs' complicated flow chart, purporting to show the movement of funds (SAC ¶ 174),

reflects the impossibility of directly linking the Named Plaintiffs' money and Mr. Scott.

OneCoin co-mingled the Named Plaintiffs' money with that of other investors. The

Named Plaintiffs allege that they delivered their investments not to Mr. Scott, but to OneCoin.

(SAC ¶¶ 17, 19.) And OneCoin was "an old-fashioned Ponzi scheme[,]" in which investors "had

no method of tracing their money[.]" (SAC ¶¶ 4-5.) In other words, OneCoin pooled the Named

Plaintiffs' investments with those of other investors, with some of those funds being used to pay

redemptions by earlier investors. (SAC ¶¶ 3, 247.) But once OneCoin pooled the Named

Plaintiffs' funds with those from other investors, the Named Plaintiffs' funds stopped being

separately identifiable as the Named Plaintiffs' money. And the Named Plaintiffs do not allege

that they can trace their funds through OneCoin to Mr. Scott as in *Amusement Indus., Inc. v.*

*Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 536–38 (S.D.N.Y. 2011). Indeed, the Named

Plaintiffs concede that the group they identify as the Scott Group Defendants may have received

only a *part* of the funds ultimately invested by the Named Plaintiffs *and the Class*. (*See* SAC ¶

256.) Moreover, a tracing analysis conducted by Mr. Scott's forensic accountant, a former IRS

Special Agent and money laundering specialist who operated extensively in the Eastern and

Southern Districts of New York, in Mr. Scott's criminal trial concluded that none of the money

that funded Mr. Scott's investment vehicles originated from *any* U.S. OneCoin investor. *U.S.A.*

*v. Scott*, No. 1:17-cr-00630-ER (S.D.N.Y.) ECF No. 345-1, ¶¶ 37–41. Thus, the Named Plaintiffs

have not—and cannot—allege facts establishing a nexus between the money they gave to

19

OneCoin and the money Mr. Scott allegedly took out of MSSI.[10] Without such a straight line connecting them, the relationship between Mr. Scott and those funds is too attenuated to support a claim for unjust enrichment. *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517–18 (2012).

Even if the Court applies Florida law, the Named Plaintiffs still fail to state a claim. Under Florida law, "[n]o unjust enrichment claim is actionable unless a plaintiff has conferred a *direct benefit* on the defendant." *Cutler v Voya Fin., Inc.*, No. 18-20723-Civ-WILLIAMS/ TORRES, 2018 WL 4410202, at *10 (S.D. Fla. Aug. 23, 2018) (emphasis in original) *citing Peoples Nat. Bank of Commerce v. First Union Nat. Bank of Fla., N.A.*, 667 So.2d 876, 879 (Fla. 3d DCA 1996); *see Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011) ("A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment."). Thus, the unjust enrichment claim should be dismissed under Rule 12(b)(6).

---

[10]     Putting the fungibility of money aside, and accepting the Named Plaintiffs' allegations as true, it is implausible that Mr. Scott ever received any funds at the expense of the Named Plaintiffs.

According to the Second Amended Complaint:

- Less than 10% of the funds invested in OneCoin ever passed through an MSSI investment fund, (*see* Second Amended Complaint ¶¶ 1, 172);

- When Mr. Berdeaux and Ms. Grablis began investing in OneCoin, Mr. Scott had not met OneCoin founder Ruja Ignatova, (Second Amended Complaint ¶¶ 17, 19, 162);

- Mr. Berdeaux had ceased investing in OneCoin by the time money allegedly began being deposited with the MSSI investment funds and Ms. Grablis ceased investing shortly after, (Second Amended Complaint ¶¶ 17, 19, 169); and

- Both Named Plaintiffs had ceased investing in OneCoin before Mr. Scott received compensation from MSSI. (Second Amended Complaint ¶ 169.)

Thus, even if Mr. Scott received and retained funds that originally came from ***some*** OneCoin investors, the probability that he received the Named Plaintiffs' money is *de minimis*.

      2.      The Named Plaintiffs' claim for unjust enrichment duplicates their other <u>claims and should be dismissed</u>.

The unjust enrichment claim should also be dismissed because "New York courts routinely dismiss unjust enrichment claims when they are merely duplicative of other causes of action." *Norex Petroleum Ltd. v. Blavatnik*, 48 Misc. 3d 1226(A), 22 N.Y.S.3d 138, 2015 N.Y. Slip Op. 51280(U), at *32 (Sup. Ct. N.Y. Cty. 2015) *citing Fallon v. McKeon*, 230 A.D.2d 629, 60 (N.Y. App. Div. 1st Dep't 1996). Unjust enrichment is available

> "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." This claim is "not available where it simply duplicates, or replaces, a conventional contract or tort claim."

*Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914 (NSR), 2017 WL 4277187, at *6 (S.D.N.Y. Sept. 25, 2017) *quoting Corsello v. Verizon N.Y.*, 18 N.Y.3d 777, 790 (2012).

This action is not the unusual exception in which a plaintiff must resort to equity because he or she has no remedy at law. The Named Plaintiffs' allegations sprawl across more than ten claims, (*see* SAC ¶¶ 202–280), sounding in contract and tort, both directly from some (but, curiously, not all) of the central figures in the alleged Ponzi scheme—*e.g.*, OneCoin and Ruja Ignatova—and from other individuals. The Named Plaintiffs' claim for unjust enrichment essentially asks that Mr. Scott disgorge any funds received from OneCoin. Thus, it duplicates many of the Named Plaintiffs' other causes of action and should be dismissed. *Obeid v. La Mack*, No. 14 CV 6498 (LTS) (HBP), 2018 WL 2059653, at *29 (S.D.N.Y. May 1, 2018) ("New York courts will dismiss unjust enrichment claims where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.").

The same analysis applies under the substantive law of Florida. Under Florida law, "the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy." *David v Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324 (S.D Fla. 2009) *quoting Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1341 (S.D. Fla. 1998); *see Am. Honda Motor Co. v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists."). Because the allegations underlying the claim for unjust enrichment are identical to those supporting the Named Plaintiffs' other claims, the unjust enrichment claim should be dismissed. *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356-57 (S.D. Fla. 2012) (dismissing unjust enrichment claim based on factual predicate common to other claims at law).

C.   *The Named Plaintiffs fail to state a claim for civil conspiracy, because New York does not recognize an independent tort of civil conspiracy.*

Finally, the Named Plaintiffs' claim for civil conspiracy should be dismissed, because "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) *citing Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986). Thus, civil conspiracy claims that merely duplicate a party's other claims—including aiding and abetting claims—should be dismissed. *See In re Allou Distributors, Inc.*, 446 B.R. 32, 60 (Bankr. E.D.N.Y. 2011) (collecting cases and dismissing civil conspiracy claim as duplicative of an aiding and abetting claim arising, in part, from allegations of money laundering); *Kew Gardens Hills Apartment Owners, Inc. v. Horing Welikson & Rosen, P.C.*, 35 A.D.3d 383, 386 (N.Y. App. Div. 2d Dep't 2006) (holding that civil conspiracy claim should have been dismissed as duplicative of the claim for aiding and abetting).

The Named Plaintiffs predicate their claim for civil conspiracy against Mr. Scott on Mr. Scott's alleged laundering of "approximately $400 million in proceeds of a pyramid scheme involving a purported cryptocurrency known as OneCoin." (SAC ¶ 275.) Thus, the Named Plaintiffs' civil conspiracy claim stems from exactly the same allegations underlying their claim for aiding and abetting fraud. (*See* SAC ¶ 225.) There are therefore no independent acts supporting the Named Plaintiffs' claim for civil conspiracy. *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 640 (S.D.N.Y.), *aff'd sub nom. Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69 (2d Cir. 2018) ("In order to state a claim for conspiracy, therefore, there must be allegations of an independent actionable tort.")

If the Court applies the substantive law of Florida because of the lack of any ties between Mr. Scott and New York, the Court should still find that the Named Plaintiffs fail to state a claim for civil conspiracy. "Florida does not recognize a common law cause of action or an independent tort for 'civil conspiracy.'" *Basile v. Walt Disney Parks and Resorts U.S., Inc.*, No. 6:10-cv-993-Orl-35DAB, 2011 WL 13298729, at *17 (M.D. Fla. June 23, 2011) *quoting Walters v. Blankenship*, 931 So.2d 137, 144 (Fla. 5th DCA 2006); *see Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1360 (S.D. Fla. 2002) *citing Churruca v. Miami Jai Alai, Inc.*, 353 So.2d 547, 550 (Fla. 1977) (same). Rather, "[a]n actionable conspiracy . . . requires an independent and actionable underlying tort or wrong." *Oakwood Ins. Co. v. N. Am. Risk Services, Inc.*, No. 6:18-cv-437-Orl-31KRS, 2019 WL 175278, at *3 (M.D. Fla. Jan. 11, 2019) *citing Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Although courts in Florida recognize an exception to this general rule when a defendant possesses a "peculiar power of coercion" such as an "economic boycott," that exception does not apply here. *See, e.g., Espana Informatica, S.A. v. Top Cargo, Inc.*, No. 08-20276-CIV-UNGARO, 2008 WL 11331700, at *4 n.4 (S.D. Fla. July 3,

2008) *quoting Churruca*, 353 So. 2d at 550; *Hager v. Venice Hosp., Inc.*, 944 F. Supp. 1530, 1536 (M.D. Fla. 1996) *citing Am. Diversified Ins. Servs., Inc. v. Union Fidelity Life Ins. Co.*, 439 So.2d 904, 906 (Fla. 2d DCA 1983). Thus, even under Florida law, the Named Plaintiffs fail to state a claim for civil conspiracy. The Named Plaintiffs' claim for civil conspiracy against Mr. Scott, therefore, should be dismissed under Rule 12(b)(6).

In sum, the Named Plaintiffs' claims against Mr. Scott should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[11]

## CONCLUSION

The Named Plaintiffs' Second Amended Complaint paints a vivid picture of cross-border mystery and intrigue. But their claims against defendant Mark Scott should be dismissed on more prosaic grounds. This Court lacks personal jurisdiction over Mark Scott—a long-time Floridian who the Named Plaintiffs fail to allege had sufficient contact with New York. And, the absence of personal jurisdiction notwithstanding, each of the Named Plaintiffs' claims suffers from pleading deficiencies: (i) Mr. Scott cannot have aided and abetted a fraud of which the Named Plaintiffs do not allege he was aware; (ii) Mr. Scott was not unjustly enriched at the Named Plaintiffs' expense because the connection between money he allegedly received and they allegedly lost is too attenuated and their equitable claim is duplicative; and (iii) New York does not recognize an independent tort of civil conspiracy. We respectfully submit that the Named Plaintiffs' claims against Mark Scott should be dismissed.

---

[11] At a bare minimum, the Named Plaintiffs' pleadings are so threadbare that Mr. Scott "cannot reasonably prepare a response," and therefore merit a more definite statement in accordance with Fed. Civ. P. 12(e).

Dated:   New York, New York
             December 21, 2020

Respectfully submitted,

**MINTZ & GOLD LLP**

By: /s/ Timothy J. Quill, Jr.
             Steven G. Mintz
             Kevin M. Brown
             Timothy J. Quill, Jr.
             600 Third Avenue, 25th Floor
             New York, New York 10016
             (212) 696-4848 (t)
             (212) 696-1231 (f)
             mintz@mintzandgold.com
             brown@mintzandgold.com
             quill@mintzandgold.com

*Attorneys for Defendant Mark S. Scott*

25