## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DONALD BERDEAUX and CHRISTINE
GRABLIS, individually and on behalf of all
others similarly situated,

Plaintiff,

v.

ONECOIN LTD.; RUJA IGNATOVA,
SEBASTIAN GREENWOOD, GILBERT
ARMENTA, MARK SCOTT, DAVID PIKE,
NICHOLE J. HUESMANN, and BANK OF
NEW YORK MELLON,

Defendants.

C.A. No 1:19-cv-04074-VEC

Hon. Valerie E. Caproni

<u>CLASS ACTION</u>

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT HUESMANN'S, DEFENDANT PIKE'S, AND DEFENDANT SCOTT'S MOTIONS TO DISMISS

Respectfully submitted,

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Adam M. Apton
Zachary B. Ness
1101 30th Street, N.W.
Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 363-7171
E-mail: denright@zlk.com
E-mail: Aapton@zlk.com
Email: zness@zlk.com

**SILVER MILLER**
David C. Silver
Jason S. Miller
11780 W. Sample Road
Coral Springs, FL 33065
Telephone: (954) 516-6000
E-mail:
DSilver@SilverMillerLaw.com
E-mail:
JMiller@SilverMillerLaw.com

**ZELLE LLP**
John A. Carriel
1775 Pennsylvania Ave, NW
Suite 375
Washington, DC 20006
Telephone: (202) 899-4111
Facsimile: (612) 336-9100
E-mail: jcarriel@zelle.com

*Attorneys for Plaintiffs Donald Berdeaux and Christine Grablis
and [Proposed] Co-Lead Counsel for the Class*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT ............................................................................................................................. 3

   I.    STANDARDS OF LAW ................................................................................................ 3

   II.   THIS COURT HAS PERSONAL JURISDICTION OVER THE SCOTT GROUP ......... 5

      A.   Personal Jurisdiction Over the Scott Group Satisfies New York's Long Arm Statute ... 5

      B.   This Court's Exercise of Personal Jurisdiction Over the Scott Group Comports with
         Due Process ............................................................................................................ 11

   III.  THE COMPLAINT SUFFICIENTLY STATES CLAIMS FOR CIVIL CONSPIRACY,
       AIDING AND ABETTING FRAUD, AND UNJUST ENRICHMENT ........................ 12

      A.   Plaintiffs Sufficiently State a Claim For Civil Conspiracy ........................................... 14

      B.   Plaintiffs Sufficiently State a Claim for Aiding and Abetting ...................................... 15

      C.   Plaintiffs Sufficiently State a Claim for Unjust Enrichment ........................................ 17

CONCLUSION ........................................................................................................................ 19

## <u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Accurate Grading Quality Assurance, Inc. v. Khothari*,
   No. 12CV9130-LTS-RLE, 2014 U.S. Dist. LEXIS 139407 (S.D.N.Y. Sep. 30, 2014) ............. 4

*Acito v. IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995) ......................................................................................................... 14

*Andre Emmerich Gallery, Inc. v. Segre*,
   96 Civ. 889 (CSH), 1997 U.S. Dist. LEXIS 16899 (S.D.N.Y. Oct. 27, 1997) ........................ 15

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
   305 F.3d 120 (2d Cir. 2002) ................................................................................................... 4, 8

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................... 5

*Conley v. Gibson*,
   355 U.S. 41 (1957) ..................................................................................................................... 5

*Convergen Energy LLC v. Brooks*,
   No. 20-cv-3746 (LJL), 2020 U.S. Dist. LEXIS 169256 26 (S.D.N.Y. Sep. 16, 2020) ...... 13, 15

*Corp. Campaign, Inc. v. Local 7837, United Paperworkers Int'l Union*,
   265 A.D.2d 274, 274, 697 N.Y.S.2d 37 (App. Div. 1999) ......................................................... 9

*Cromer Fin. Ltd. v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001) ...................................................................................... 16

*Deitrick v. Gypsy Guitar Corp.*,
   2016 U.S. Dist. LEXIS 179481 (S.D.N.Y. Dec. 28, 2016) ...................................................... 10

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
   571 F. Supp. 2d 458 (S.D.N.Y. 2008) ................................................................................... 9, 11

*Globalnet Fin.com, Inc. v. Frank Crystal & Co.*,
   449 F.3d 377 (2d Cir. 2006) ..................................................................................................... 14

*Hecht v. Commerce Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990) ....................................................................................................... 13

*Ikeda v. J. Sisters 57, Inc.*,
   No. 14cv3570 (ER), 2015 U.S. Dist. LEXIS 87783, 2015 WL 4096255 (S.D.N.Y. July 6,
   2015) ......................................................................................................................................... 11

*In re Sumitomo Copper Litig.*,
　120 F. Supp. 2d 328 (S.D.N.Y. 2000) .................................................................. 8, 9, 10, 11

*Ingraham v. Carroll*,
　90 N.Y.2d 592 (1997) ................................................................................................ 12

*Int'l Diamond Imps., Inc. v. Med Art, Inc.*,
　No. 15-CV-4045 (KMW), 2017 U.S. Dist. LEXIS 102257 (S.D.N.Y. June 29, 2017) .... 6, 8, 14

*Kernan v. Kurz-Hastings, Inc.*,
　175 F.3d 236 (2d Cir. 1999) ..................................................................................... 9, 10

*Leon v. Shmukler*,
　992 F. Supp. 2d 179 (E.D.N.Y.2014) ......................................................................... 12

*Lerner v. Fleet Bank, N.A.*,
　459 F.3d 273 (2d Cir. 2006) ...................................................................................... 14

*Lewis v. Madej*,
　No. 15cv2676 (DLC), 2015 U.S. Dist. LEXIS 144384 (S.D.N.Y. Oct. 23, 2015) ................. 11

*Lipson v. Birch*,
　46 F. Supp. 3d 206 (E.D.N.Y. 2014) ............................................................................ 9

*Maersk, Inc. v. Neewra, Inc.*,
　554 F. Supp. 2d 424 (S.D.N.Y. 2008) ....................................................................... 8, 13

*Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*,
　731 F. Supp. 587 (S.D.N.Y.1990) .............................................................................. 12

*Matson v. Bd. of Educ.*,
　631 F.3d 57 (2d Cir. 2011) ......................................................................................... 5

*Mazzaro de Abreu v. Bank of Am. Corp.*,
　525 F. Supp. 2d 381 (S.D.N.Y. 2007) ......................................................................... 16

*Miller Inv. Tr. v. Xiangchi Chen*,
　967 F. Supp. 2d 686 (S.D.N.Y. 2013) ........................................................................ 6, 7

*PDK Labs., Inc. v. Friedlander*,
　103 F.3d 1105 (2d Cir. 1997) ...................................................................................... 4

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
　16 NY.3d 295 (2011) .................................................................................................. 6

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, LLC,
   592 F. Supp. 2d 608 (S.D.N.Y. 2009)........................................................... 8

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
   19 F. Supp. 2d 157 (S.D.N.Y. 1998)............................................................ 18

*Related Cos., L.P. v. Ruthling*,
   No. 17-cv-4175, 2017 U.S. Dist. LEXIS 207857 (S.D.N.Y. Dec. 15, 2017) ........... 4

*Rosner v. Bank of China*,
   No. 06 CV 13562, 2008 U.S. Dist. LEXIS 105984 (S.D.N.Y. Dec. 18, 2008) ........ 13, 16

*SEC v. Sayid*,
   No. 17-cv-2630-JFK, 2018 U.S. Dist. LEXIS 4670 (S.D.N.Y. Jan. 10, 2018) .......... 5

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994)....................................................................... 14

*Silverman v. United Talmudical Acad. Torah Vyirah, Inc.* (*In re Allou Distribs.*),
   446 B.R. 32 (Bankr. E.D.N.Y. 2011).............................................................. 15

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
   450 F.3d 100 (2d Cir. 2006)....................................................................... 8

*Sperry v. Crompton Corp.*,
   2007 NY Slip Op 1425, ¶ 8, 8 N.Y.3d 204 (February 22, 2007)........................... 18

*Spiegel v. Schulmann*,
   604 F.3d 72 (2d Cir. 2010)........................................................................ 4

*Sunward Electronics, Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004)........................................................................ 4

*Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*,
   31 F. App'x 738 (2d Cir. 2002) ................................................................. 12

*Tsirelman v. Daines*,
   794 F.3d 310 (2d Cir. 2015)....................................................................... 5

*United States v. Montreal Trust Co.*,
   358 F.2d 239 (2d Cir. 1966)....................................................................... 12

*Vasquez v. H.K. & Shanghai Banking Corp.*,
   2019 U.S. Dist. LEXIS 90716 (S.D.N.Y. May 29, 2019)..................................... 16

*Whitaker v. Am. Telecasting, Inc.*,
   261 F.3d 196 (2d Cir. 2001)................................................................................................ 4

*Zanotti v. Invention Submission Corp.*,
   No. 18-cv-5893 (NSR), 2020 U.S. Dist. LEXIS 97040 (S.D.N.Y. June 2, 2020)............... 9, 12

**Statutes**

NY CPLR § 302(a)(1-2) .................................................................................................... 6

NY CPLR § 302(a)(3)(ii).................................................................................................. 5

**Rules**

Fᴇᴅ. R. Cɪᴠ. P. 9(b) ....................................................................................................... 5

Plaintiffs Donald Berdeaux and Christine Grablis (together, "Plaintiffs") respectfully submit this memorandum of law in opposition (the "Opposition") to the Motions to Dismiss Plaintiffs' Second Amended Complaint[1] filed by Defendants David Pike ("Pike"), Nicole J. Huesmann ("Huesmann"), and Mark Scott ("Scott," and together with Pike and Huesmann, the "Scott Group"). The Pike Motion to Dismiss is filed at Dkt. Nos. 160 and 161 (the "Pike MTD"), the Huesmann Motion to Dismiss is filed at Dkt. Nos. 152 and 143 (the "Huesmann MTD"), and the Scott Motion to Dismiss is filed at Dkt. Nos. 155 and 156 (the "Scott MTD," and together with the Pike MTD and the Huesmann MTD, the "Motions to Dismiss"). The SAC alleges the Scott Group are liable for Aiding and Abetting Fraud, Unjust Enrichment, and Civil Conspiracy. *See* SAC at ¶¶ 223-227; ¶¶ 254-258; ¶¶ 265-277.

## PRELIMINARY STATEMENT

On December 21, 2020, the Scott Group filed their Motions to Dismiss. Their Motions to Dismiss are substantially similar to one another and argue that Plaintiffs' SAC should be dismissed because: (i) this Court does not have personal jurisdiction over the Scott Group Defendants; and (ii) Plaintiffs' allegations do not state claims for relief for aiding and abetting fraud, for unjust enrichment, or for civil conspiracy. Separately, Defendant Huesmann argues that the SAC does not comply with federal pleading requirements.

As discussed *infra*, each of these arguments fails because, *inter alia*: (i) the Scott Group doubtlessly availed themselves of the Southern District of New York when they engaged in a fraudulent money laundering scheme featuring New York institutions and causing injury in New York; (ii) the SAC clearly outlines the roles of the Scott Group in the OneCoin money laundering

---

[1]     Plaintiffs' Second Amended Complaint (ECF No. 125, the "SAC") is referenced herein as "SAC at ___."

scheme with precision, and thus adequately states a claim for relief for each of the counts levied against them; and (iii) the SAC complies with federal pleading requirements because it contains the facts necessary to meet that burden. Accordingly, the Scott Group's Motions to Dismiss should be denied in full.

## STATEMENT OF FACTS

This is a class action on behalf of a class of investors consisting of all individuals and entities who transferred to the OneCoin Defendants, directly or indirectly, any fiat currency or cryptocurrency to invest in a OneCoin trader/membership package ("OC Trader Package") and/or a purported digital cryptocurrency called "OneCoin" and who suffered financial injury as a result thereof (the "Class"). *See* SAC at ¶ 1. However, these OneCoin investment programs were nothing more than a Ponzi/Pyramid multi-level marketing fraudulent scheme. *Id*. at ¶ 2-5. All told, the financial harm caused by these investment programs likely exceeds four billion dollars ($4,000,000,000.00). *Id*. at ¶ 2.

Defendant Ruja Ignatova and others were able to sustain their massive fraud for years, due in large part to the Scott Group knowingly laundering over $400 million of these criminal OneCoin investment program funds, using their technical knowledge and savviness to do so. *See* SAC at ¶ 6-7. In exchange for their services and the enabling of the OneCoin fraud, the Scott Group was compensated in an amount greater than $60 million. *Id*. at ¶ 8.

Defendant Scott was arrested in September 2018 and criminally tried in the Southern District of New York in 2019. *See* SAC at ¶ 47. On November 21, 2019, Scott was found guilty of conspiring to commit money laundering and conspiring to commit bank fraud. *Id.* The money laundering and bank fraud of which Defendant Scott was found criminally guilty is the same fraud and conspiracy alleged in the civil SAC. *Id.* Specifically, Scott assisted Defendants Ruja Ignatova

and others in knowingly laundering more than $400 million through a series of purported investment funds holding bank accounts at financial institutions in the Cayman Islands, the Republic of Ireland, and other locations. *Id*. at ¶ 45. One of these institutions was Defendant Bank of New York Mellon ("BNY Mellon"), which is headquartered in New York, NY. *Id*. at ¶ 62-63.

Defendant Pike was a key player within the Scott Group, serving alongside Scott as Director of MSS International Consultant (BVI) ("MSSI"). *See* SAC at ¶ 49. MSSI is the company that controlled, directly or indirectly, over a dozen investment funds used to launder hundreds of millions of dollars from the OneCoin scheme's criminal proceeds, including funds derived (at least in part) from investments made by Plaintiffs and the Class. *Id* at ¶ 49-50. Pike was indicted in the Southern District of New York on February 6, 2020 for the actions described within the SAC, including for conspiring to commit bank fraud. *Id*. Defendants Scott and Pike worked together closely enough such that they were named together as co-conspirators in the criminal complaint that detailed their participation in the OneCoin money laundering scheme. *Id*. at ¶ 51.

Finally, Defendant Huesmann is an attorney who assisted the Scott Group in laundering the OneCoin scheme's fraudulent proceeds. *See* SAC at ¶ 52. Huesmann used her law license and numerous bank accounts to funnel the illicit OneCoin funds under the guise of providing ordinary legal services to the Scott Group. *Id*. Specifically, Huesmann participated in deals structured to launder funds between OneCoin-controlled entities across international borders; repatriating and facilitating the use of laundered proceeds and facilitating Scott's use of such to invest in real estate and to purchase luxury boats, cars, and jewelry. *Id*. at ¶ 53.

## ARGUMENT

### I. STANDARDS OF LAW

[R]esolution of a motion to dismiss for lack of personal jurisdiction made in the Southern District of New York requires a two-step analysis. First, the court must

> determine if New York law would confer upon its courts the jurisdiction to reach
> the defendant [such as CPLR § 301 and New York's long-arm statute CPLR § 302].
> If there is a statutory basis for jurisdiction, the court must then determine whether
> New York's extension of jurisdiction in such a case would be permissible under the
> Due Process Clause of the Fourteenth Amendment.

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

"When a motion is brought under Federal Rule of Civil Procedure 12(b)(2) without a

hearing or jurisdictional discovery, the plaintiff has the burden of making a *prima facie* showing

of proper grounds for the court's exercise of personal jurisdiction." *Accurate Grading Quality*

*Assurance, Inc. v. Khothari*, No. 12CV9130-LTS-RLE, 2014 U.S. Dist. LEXIS 139407, at *14

(S.D.N.Y. Sep. 30, 2014) (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.

2001)). "[O]n a motion to dismiss [for personal jurisdiction], the Court will construe the complaint

in the light most favorable to plaintiffs, resolving all doubts in their favor." *Related Cos., L.P. v.*

*Ruthling,* No. 17-cv-4175, 2017 U.S. Dist. LEXIS 207857, at *8 (S.D.N.Y. Dec. 15, 2017) (citing

*Whitake*r, 261 F.3d 196 at 208). "In a federal question case, where the defendant resides outside

the forum state, federal courts apply the forum state's personal jurisdiction rules." *Sunward*

*Electronics, Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citing *PDK Labs., Inc. v.*

*Friedlander*, 103 F.3d 1105,1108 (2d Cir. 1997)). The same is true for diversity-based state-law

claims. *See, e.g., Spiegel v. Schulmann,* 604 F.3d 72, 76 (2d Cir. 2010). Here, the forum state is

New York.

New York's long-arm statue is NY CPLR § 302, and states in relevant part:

A court may exercise personal jurisdiction over any non-domiciliary, or his
executor or administrator, who in person or through an agent:

> 3.  commits a tortious act without the state causing injury to person or
> property within the state . . . if he

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

*See* NY CPLR § 302(a)(3)(ii).

Regarding motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 548 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *SEC v. Sayid*, No. 17-cv-2630-JFK, 2018 U.S. Dist. LEXIS 4670, at *9 (S.D.N.Y. Jan. 10, 2018) (quoting *Twombly*, 550 U.S. at 570)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011)). "On a motion to dismiss, a court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor." *Id.* (citing *Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015)).

In alleging a claim of fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See* FED. R. CIV. P. 9(b).

## II. THIS COURT HAS PERSONAL JURISDICTION OVER THE SCOTT GROUP

### A. Personal Jurisdiction Over the Scott Group Satisfies New York's Long Arm Statute

5

In this Action, personal jurisdiction over the Scott Group arises out of specific jurisdiction, merited by New York's long-arm statute, NY CPLR § 302(a)(3)(ii). The elements to establish personal jurisdiction under NY CPLR § 302(a)(3)(ii) are neatly summarized as follows:

> (1) [T]he defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce."

*Miller Inv. Tr. v. Xiangchi Chen*, 967 F. Supp. 2d 686, 694 (S.D.N.Y. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 NY.3d 295, 302 (2011)). "To ensure that this test comports with due process, New York courts require "tangible manifestations of a defendant's intent to target New York, or ... concrete facts known to the non-domiciliary that should have alerted it to the possibility of being brought before a court in the Southern District of New York." *Int'l Diamond Imps., Inc. v. Med Art, Inc.*, No. 15-CV-4045 (KMW), 2017 U.S. Dist. LEXIS 102257, at *15 (S.D.N.Y. June 29, 2017). As outlined in the SAC and as discussed *infra*, the Scott Group meets each of these elements.

First, it is clear that the Scott Group, individually and together, committed: (1) a tortious act, at least some part of which took place outside of New York, and that (2) the cause of action against them arose from that act. The claims against the Scott Group -- aiding and abetting fraud, civil conspiracy, and unjust enrichment -- are all claims under New York law, and those claims all arise from the Scott Group's tortious behavior, which took place at least in part outside of New York. *See* SAC at ¶¶ 223-27, 254-58, 265-77.[2]  Regarding aiding and abetting fraud, the SAC

---

[2]     To the extent this Court concludes the tortious behavior of the Scott Group took place within New York (by virtue of the Scott Group substantially directing their money laundering activities through New York financial institutions such as BNY Mellon, for example), personal jurisdiction would easily be established under NY CPRL § 302(a)(1-2) based on the analysis discussed within this Opposition. *See* NY CPLR § 302(a)(1-2).

alleges that the "Scott Group Defendants provided affirmative assistance to the OneCoin Defendants enabling their fraudulent conduct to persist unimpeded -- proximately causing the Class financial injuries of hundreds of millions, if not billions, of dollars." *Id.* at ¶ 227. The SAC further alleges, "[the OneCoin Defendants were able to accomplish their fraud due, in large part, to Defendants Scott and his partners—Pike, Huesmann, and Armenta —laundering of OC's fraud proceeds obtained from selling the OC Investment Programs to Plaintiffs and the proposed Class." *Id.* at ¶ 224. Regarding civil conspiracy, the SAC alleges that the Scott Group knowingly participated in laundering fraudulently obtained funds and transported those funds outside of and throughout the United States. *Id.* at ¶¶ 275-77. Finally, the SAC alleges that the Scott Group unjustly enriched themselves by reaping "the benefits of laundering proceeds from OneCoin's fraud on Plaintiffs and the Class and personally benefited at the expend of the Class." *Id.* at ¶¶ 255-257.[3]

Accordingly, the first two factors of the § 302(a)(3)(ii) test are easily satisfied. *See Miller*, 967 F. Supp. 2d 686 at 695 (finding that the first two elements of the test under NY CPLR § 302(a)(3)(ii) are "easily satisfied" by plaintiffs' simple allegation of tortious conduct outside of New York and alleging the cause of action arises out of that tortious conduct); *Sole Resort, S.A.*

---

[3]        The specific tortious acts by individual Defendant are noted in the SAC as follows: Defendant Huesmann assisted in laundering the OneCoin fraud proceeds by "(i) participating in deals structured to launder funds between OC-controlled entities across borders; (ii) repatriating laundered proceeds and facilitating Scott's use of such to invest in real estate; and (iii) facilitating Scott's used of laundered OC fraud proceeds on luxury boats, cars, and jewelry. *See* SAC at ¶¶ 52-53, 172-79. Defendant Pike worked alongside Defendant Scott in facilitating the money laundering scheme, including with the establishment of MSSI for use in overseas laundering, the transfer of laundered OneCoin proceeds to an FDIC insured New York bank (and named criminal co-conspirator of Defendant Scott). *Id.* at ¶¶ 50-51, 164, 180-83. Finally, Defendant Scott fulfilled his tortious conduct by virtue of his primary status running the money laundering scheme with Defendant Pike and Huesmann. *Id.* at ¶¶ 44-48, 63, 71-72, 157-60, 161-72, 175-80, 184-85, 190-92, 195.

*de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006) ("To satisfy the first element, the plaintiff "need not actually prove that defendant committed a tort but rather need only state a colorable cause of action.") (citing *Bank Brussels Lambert*, 305 F.3d 120 at 125); *see also Int'l Diamond*, 2017 U.S. Dist. LEXIS 102257 at *24 (noting unjust enrichment as a claim under New York law); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, LLC, 592 F. Supp. 2d 608, 625 (S.D.N.Y. 2009) (noting aiding and abetting fraud as a claim under New York law); *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 442-43 (S.D.N.Y. 2008) (noting civil conspiracy as a claim under New York law).

As for the third § 302(a)(3)(ii) factor, the tortious acts by the Scott Group caused injury in New York. "In the case of fraud . . . committed in another state, the critical question is thus where the first effect of the tort was located that ultimately produced the final economic injury." *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 341 (S.D.N.Y. 2000). Here, the first effect of the tort and its final place of economic injury as a result of the Scott Group's tortious conduct was, *inter alia*, New York. Without the participation of each individual Defendant in the Scott Group, the OneCoin fraud could not have been as prolific as it was, if at all. *See* SAC at ¶ 6-8, 224-27, 255-57, 275-77. This is a class action comprised of ***all*** investors and entities who transferred investment money to the OneCoin Defendants. *Id*. at ¶ 1. The OneCoin fraud was international in scope, and harmed investors across the planet as well as across the United States, including investors in New York (by virtue of, in part, New York OneCoin promoters such as Simon Le). *See* SAC at ¶¶ 31-37, 41, 76, 127, 148-51, 159, 192.[4] This factor is thus satisfied. *Sumitomo,* 120

---

[4]     Indeed, the SAC clearly states that the OneCoin scheme specifically targeted New York investors. Simon Le, a powerful promoter nearly on-par with Defendant Greenwood's power in the OneCoin scheme (and who would report to Defendant Greenwood on at least a weekly basis), focused his promotion operation specifically on New York investors. *See* SAC at ¶¶ 41, 76-78, 127, 137, 148-49, 150-51.

F. Supp. 2d 328 at 341 (finding the third § 302(a)(3)(ii) factor satisfied when plaintiff alleged defendant committed fraud outside of New York, but which had the effect of manipulating prices of a commodity in New York).

With regard to the fourth § 302(a)(3)(ii) factor, "'[t]he test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one.'" *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999). In more specific detail,

> Foreseeability must be coupled with evidence of a purposeful New York affiliation for example, a discernible effort to directly or indirectly serve the New York market. A court must assess whether defendant ***purposefully availed himself of the benefits of the laws of New York***, to the extent that he would reasonably anticipate being haled into a New York court. New York courts will assess whether the facts demonstrate that defendant should have been aware that its product would enter the New York market.

*Lipson v. Birch*, 46 F. Supp. 3d 206, 219 (E.D.N.Y. 2014) (citing *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467-68 (S.D.N.Y. 2008)) (emphasis added); *see also Zanotti v. Invention Submission Corp.,* No. 18-cv-5893 (NSR), 2020 U.S. Dist. LEXIS 97040, at *47 (S.D.N.Y. June 2, 2020) (finding "a discernible effort to directly or indirectly serve the New York market" satisfies the fourth 302(a)(3)(ii) factor). "Even one instance of purposeful activity directed at New York is sufficient to create jurisdiction*." Corp. Campaign, Inc. v. Local 7837, United Paperworkers Int'l Union*, 265 A.D.2d 274, 274, 697 N.Y.S.2d 37, 39 (App. Div. 1999).

Here, as alleged in the SAC, purposeful availment of New York by the individual members of the Scott Group through their tortious actions is undeniable. Specifically, the Scott Group used BNY Mellon, a New York headquartered bank, to assist in laundering hundreds of millions of dollars of fraudulent OneCoin investment proceeds. *See* SAC at ¶¶ 9, 62-63, 158-60, 163, 183, 192. Additionally, as clearly stated by former-Defendant and alleged leader within the OneCoin operation, Konstantin Ignatov, everyone within the OneCoin operation knew exactly what they

were doing – including the individual Defendants in the Scott Group.  This includes knowledge of the overall focus of the OneCoin scheme and the locations they targeted, including New York. *Id.* at ¶¶ 190-91, 48-49, 152, 75-82, 127. *See Kernan*, 175 F.3d at 241 (holding that the sale of products within the United States and elsewhere, "was sufficient in and of itself to support a finding of "'foreseeability . . . coupled with a purposeful act'" for purposes of § 302(a)(3)(ii).").[5]

Finally, as to the fifth § 302(a)(3)(ii) factor, "[t]hough no bright-line rule exists regarding the amount at which revenue becomes 'substantial' for purposes of Section 302(a)(3)(ii), courts generally will assess either: (1) the percentage of a party's overall revenue derived from interstate commerce, or (2) the absolute revenue generated by a defendant's interstate commerce activities." *Deitrick v. Gypsy Guitar Corp.*, 2016 U.S. Dist. LEXIS 179481, at *18-19 (S.D.N.Y. Dec. 28, 2016); *see also Sumitomo*, 120 F. Supp. 2d 328 at 341 ("C.P.L.R. 302(a)(3)(ii) does not require

---

[5]      Defendant Scott's argument that he only directed one transaction to New York is thus untrue, and unavailing, particularly when Defendant Scott had actual knowledge that the OneCoin scheme was targeting investors across the planet, including in New York – and that his actions contributed to the propagation of the OneCoin fraud. *See* Scott MTD at 11; SAC at ¶¶ 9, 158-60, 175, 183-85, 190-92.

Defendant Pike's Motion to Dismiss suffers from the same issues – it unduly focuses on the establishment of general jurisdiction and fails to address personal jurisdiction properly under the factors outlined by § 302(a)(3)(ii). *See* Pike MTD at 2-9. Defendant Pike argues that the criminal action against him would be the only plausible basis for personal jurisdiction; but as described herein, the basis for personal jurisdiction against Defendant Pike mirrors Defendant Scott's as criminally-determined co-conspirators in the OneCoin money laundering scheme, with full knowledge of the OneCoin fraud that they were assisting in perpetuating. *See* SAC at ¶¶ 49-51, 157-60, 164-83.

Lastly, Defendant Huesmann's Motion to Dismiss also fails to fully address the jurisdictional issues raised by § 302(a)(3)(ii) and over-concerns itself with general jurisdiction. *See* Huesmann MTD at 7-14. Plaintiffs do not explicitly raise § 302(a)(1) specific jurisdiction, do not raise co-conspirator jurisdiction, and do not deduce personal jurisdiction by virtue of Defendant Huesmann's capacity as a lawyer. Rather, jurisdiction against Defendant Huesmann is asserted because of the actions she took in furtherance of the OneCoin fraud, separate and apart from her status as a lawyer (which cannot shield her from liability). *See* SAC at ¶¶ 53, 157-60, 164-83, 173-78.

Plaintiffs to allege that Defendants regularly engaged in business in New York."). "[T]he main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums." *Lewis v. Madej*, No. 15cv2676 (DLC), 2015 U.S. Dist. LEXIS 144384, at \*11 (S.D.N.Y. Oct. 23, 2015) (citing *Ikeda v. J. Sisters 57, Inc.*, No. 14cv3570 (ER), 2015 U.S. Dist. LEXIS 87783, 2015 WL 4096255, at \*5 (S.D.N.Y. July 6, 2015)).

Here, the extraordinary interstate and international revenue derived from the Scott Group's activities is undeniable. In a scheme stretching across the planet, and including New York, the OneCoin fraud raised over four billion dollars ($4,000,000,000.00). *See* SAC ¶ 1. This revenue was only possible due to the Scott Group's money laundering efforts, in which they laundered in excess of $400 million of OneCoin's criminal proceeds. *Id.* at ¶¶ 6-7, 45, 172, 179, 225, 275. As for profits made directly by the Scott Group, the SAC elaborates: "The Scott Group received in excess of $60 million in exchange for their enabling of, and assistance in, the OneCoin Defendants' fraudulent operations." *Id.* at ¶¶ 6; 171. These amounts certainly satisfy the threshold under the fifth § 302(a)(3)(ii) factor, and so this factor, like the previous factors, is undoubtedly satisfied. *See Sumitomo*, 120 F. Supp. 2d 328 at 341-42 (finding this factor satisfied where plaintiffs alleged defendants conducted business internationally, including in New York).

### B.   This Court's Exercise of Personal Jurisdiction Over the Scott Group Comports with Due Process

By virtue of Plaintiffs' successful showing of valid personal jurisdiction under § 302 against the Scott Group, Plaintiffs have shown that the exercise of personal jurisdiction over the Scott Group comports with Constitutional Due Process. *See Energy Brands*, 571 F. Supp. 2d 458 at 469 ("as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a . . . defendant meeting the standards of § 302 will satisfy the due process standard. *See id.* (exercise of personal jurisdiction under New

York's long-arm statute does not present constitutional issues because it is narrower than Due Process Clause") (citing *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir. 1966)); *Zanotti*, 2020 U.S. Dist. LEXIS 97040, at *44 ("The limitations on jurisdiction imposed by C.P.L.R. § 302(a)(3) are "more stringent than any constitutional requirement") (citing *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997)).

*     *     *

Accordingly, and for the reasons stated herein, this Court may properly exercise personal jurisdiction on each Defendant-member of the Scott Group, including Defendants Scott, Pike, and Huesmann.[6]

## III.  THE COMPLAINT SUFFICIENTLY STATES CLAIMS FOR CIVIL CONSPIRACY, AIDING AND ABETTING FRAUD, AND UNJUST ENRICHMENT

---

[6]      Should the Court find that Plaintiffs have not made a *prima facie* case for personal jurisdiction, Plaintiffs respectfully request that rather than dismiss the Scott Group, this Court permit limited discovery relating to personal jurisdiction. As shown within this Opposition, Plaintiffs have at the very least made a "sufficient start" towards establishing personal jurisdiction against the Defendants Scott, Pike, and Huesmann. *See Tex. Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 739 (2d Cir. 2002) (Not Reported) ("Although plaintiffs did not [make a *prima facie* case showing] that BASF is subject to the court's jurisdiction, *we believe they were entitled to jurisdictional discovery in order to develop the factual record requisite for such a showing* . . . We spoke of plaintiffs' "conclusory non-fact-specific jurisdictional allegations." In the instant case, plaintiffs' jurisdictional allegations are neither sparse nor insufficiently specific; they are simply insufficiently developed at this time to permit judgment as to whether personal jurisdiction is appropriate.") (emphasis added); *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*, 731 F. Supp. 587, 593 (S.D.N.Y.1990) ("[*P*]*laintiffs are entitled to discovery regarding the issue of personal jurisdiction if they have made a sufficient start, and shown their position not to be frivolous*") (emphasis added); *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194-96 (E.D.N.Y.2014) ("It is well settled under Second Circuit law that, even where a plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record."); *see also* ECF No. 116 (when Plaintiffs made their request for limited jurisdictional discovery prior to the filing of the SAC, this Court ordered: "Plaintiffs' request for jurisdictional discovery is denied without prejudice. Their request is premature. They may renew their request in their opposition to the motions to dismiss.").

To the extent Plaintiffs' claims for Aiding and Abetting Fraud and Civil Conspiracy sound in fraud, Plaintiffs' claims and the SAC satisfy the heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. The standard to do so in regard to civil conspiracy is as follows:

> It is enough to plead--with particularity--the underlying fraud, and to plead: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the agreement; (c) the parties' intentional participation in the furtherance of a plan or purpose; and (d) the resulting damage or injury. Although there appears to be some uncertainty on this issue, it is the law of the Second Circuit that while fraud must be alleged with particularity, the facts constituting a conspiracy need not.

*Maersk,* 554 F. Supp. 2d 424 at 429. "Great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of pleading." *Id.* at 458; *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("[P]leading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a).").

Second, to establish aiding and abetting fraud,

> a plaintiff must allege: (1) the existence of a fraud; (2) the defendant's actual knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission. *See Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 1993)). "A defendant provides substantial assistance only if [she] affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 256 (S.D.N.Y. 2005) (citation omitted).

*Convergen Energy LLC v. Brooks*, No. 20-cv-3746 (LJL), 2020 U.S. Dist. LEXIS 169256, at *26 (S.D.N.Y. Sep. 16, 2020); *Rosner v. Bank of China*, No. 06 CV 13562, 2008 U.S. Dist. LEXIS 105984, at *15 (S.D.N.Y. Dec. 18, 2008) ("the element of actual knowledge may be alleged generally").

To satisfy Rule 9(b), where applicable, a complaint must allege "acts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). "'The requisite 'strong inference' of fraud may be established either: (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290-91 (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Finally, to state a claim for unjust enrichment under New York law, "a plaintiff must show that: (1) defendant was enriched, (2) at plaintiff's expense, and (3) "equity and good conscience require defendant to make restitution." *Int'l Diamond,* 2017 U.S. Dist. LEXIS 102257 at *24.[7]

### A.    Plaintiffs Sufficiently State a Claim For Civil Conspiracy

Here, and contrary to Defendant Huesmann's assertions, each Defendant within the Scott Group's participation within the conspiracy and fraud is clearly and sufficiently alleged. *See* Huesmann MTD at 17-19. Plaintiffs have established a corrupt agreement existed within the Scott Group, and between the Scott Group and the OneCoin Defendants, including overt acts in furtherance of these agreements. Defendants Scott and Pike together were responsible for setting up shell companies to launder the ill-gotten OneCoin proceeds. *See* SAC at ¶¶ 162, 164-72, 180,

---

[7]    New York law applies to Plaintiffs claims because (i) as New York is the forum for this Action, New York's choice of law analysis applies; and (ii) the primary violation here – the Scott Groups' laundering of the fraudulent OneCoin proceeds – took place within New York by virtue of BNY Mellon facilitating the money laundering scheme. *See Globalnet Fin.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006). Regardless, this point is moot because each of the Scott Group Defendants admit that there are neither material nor substantive differences between New York and Florida law regarding any of the claims alleged against them. *See id*. (noting choice of law only presents actual concerns if the laws are "conflicting"). *See also* Huesmann MTD at 2; Scott MTD at 14. Defendant Pike does not raise any choice-of-law concerns. *See generally,* Pike MTD.

184. Defendant Huesmann fulfilled her end of the money laundering scheme by facilitating transactions to knowingly launder the OneCoin fraud proceeds. *Id*. at ¶¶ 173-78. Each Defendant in the Scott Group had actual knowledge of the OneCoin money laundering scheme as well, including that the scheme would target this District. *Id*. at ¶¶ 159-60, 162-63, 168, 175-76, 180-83, 185-190-91. Lastly, and as discussed *supra*, Plaintiffs have sufficiently alleged substantial damage or injury, in the form of hundreds of millions of dollars laundered, and tens of millions of dollars reaped in profit by the individual and collective actions within the Scott Group. *Supra* at 11-12.

In other words, and distilled from the above, the members of the Scott Group had clear motive and opportunity to participate in this scheme – and there is at the very least powerful circumstantial evidence supporting misbehavior or recklessness. Accordingly, Plaintiffs satisfy the federal pleading requirements and have sufficiently stated a claim for Civil Conspiracy against the individual Defendants within the Scott Group. *See Andre Emmerich Gallery, Inc. v. Segre*, 96 Civ. 889 (CSH), 1997 U.S. Dist. LEXIS 16899, at *25 (S.D.N.Y. Oct. 27, 1997) (finding that plaintiff satisfied federal pleading requirements for civil conspiracy on their claims by showing a strong inference of fraudulent intent on the part of defendant).[8]

### B.    Plaintiffs Sufficiently State a Claim for Aiding and Abetting

---

[8]      Defendant Pike claims that because New York does not recognize and independent tort of conspiracy, the claim must be dismissed. *See* Pike MTD at 13. Defendant Scott makes a similar argument. *See* Scott MTD at 22-24. But civil conspiracy is recognized as a tort when pled with an underlying fraud. *See Convergen*, 2020 U.S. Dist. LEXIS 169256, at *26. Thus, because Plaintiffs have plead an underlying fraud—the OneCoin fraud and the money laundering done by Defendant Pike and the Scott group in service of that fraud—this civil conspiracy claim may stand. The claim also is not duplicative of Plaintiffs' aiding and abetting claim because there are "independent acts" within the conspiracy separate from Plaintiffs' aiding and abetting claim. These include the coordinated endeavor to profit off of and purchase real assets using money derived from the fraud. *See Silverman v. United Talmudical Acad. Torah Vyirah, Inc*. (*In re Allou Distribs.*), 446 B.R. 32, 61 (Bankr. E.D.N.Y. 2011); SAC at ¶¶ 171, 176-78.

Like Plaintiffs' civil conspiracy claim, Plaintiffs' aiding and abetting fraud claim is well laid-out in the SAC. First, the existence of a fraud is clear and alleged throughout the SAC. The fraud in this case was the promotion of numerous OneCoin investment programs and OneCoin trader packages, alongside the promotion of the OneCoin cryptocurrency. SAC at ¶ 1. In reality, these investment opportunities were nothing more than a pyramid/Ponzi scheme, where victims would invest in the OneCoin investment programs following heavy promotion, and where the value to individual investors and OneCoin operators was based upon encouraging investors to recruit new investors. *Id*. at 2-4. An allegation of a Ponzi scheme is an allegation of fraud for aiding and abetting purposes. *See Vasquez v. H.K. & Shanghai Banking Corp.*, 2019 U.S. Dist. LEXIS 90716, at *50-51 (S.D.N.Y. May 29, 2019).

Second, each individual Defendant within the Scott Group had actual knowledge of the fraud. This knowledge was far more than just an assumption or a guess or mere negligence of their vetting duties. Rather, each individual Defendant within the Scott Group was acutely aware of the purpose of their activities and money laundering in service of the OneCoin fraud. *See* SAC at ¶¶ 159-60, 162-63, 168, 175-76, 180-83, 185-190-91; *Mazzaro de Abreu v. Bank of Am. Corp.*, 525 F. Supp. 2d 381, 388 (S.D.N.Y. 2007) (finding that plaintiff's allegations of actual knowledge could be elucidated through a "strong inference of fraudulent intent," and finding that alleged knowledge of the fraud itself was sufficient to satisfy the "actual knowledge" requirement).

Lastly, the Scott Group provided substantial assistance in furtherance of the fraud. Specifically, the OneCoin operation could not have been successful, or nearly as extensive as it became, without the money laundering operation perpetrated by the Scott Group. *Id*. at ¶¶ 6-8, 224-27, 255-57, 275-77. *See Rosner,* 2008 U.S. Dist. LEXIS 105984, at *13 (quoting *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) ("'substantial assistance" generally exists

where: (1) a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed"; and (2) "the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.")). By virtue of their money laundering activities alleged in the SAC, the Scott Group not only provided the incentive for the OneCoin fraud (by allowing the primary participants to personally profit from the proceeds thereof), it also concealed the fraud itself from the victims and law enforcement authorities. These activities not only made the OneCoin fraud possible and feasible, but also foreseeably caused the fraud to injure countless victims. *See* SAC at ¶ 7-8. Indeed, Defendant Scott was found criminally guilty in the Southern District of New York (and Defendant Pike was indicted as a co-conspirator) for conspiring to commit money laundering and conspiring to commit bank fraud for the activities described within the SAC. *Id*. at ¶¶ 47-51. The fraud itself was continuously emphasized by Defendants Ruja and Greenwood as a scam to obtain profits from manipulated investors, and the Defendant in the Scott Group were knowingly involved. *Id*. at ¶¶ 100, 103, 105, 109-110, 117-124, 152, 159-60, 162-63, 167-68, 171-72, 175-85, 190-92. It was a result of this tightly-woven fraud that foreseeable injury to investors resulted. *Id*. at ¶¶ 193-96.

For these reasons, Plaintiffs have sufficiently alleged aiding and abetting fraud against the individual Defendants comprising the Scott Group.

### C.   Plaintiffs Sufficiently State a Claim for Unjust Enrichment

Plaintiffs have also sufficiently alleged that the members of the Scott Group unjustly enriched themselves at the expense of Plaintiffs and the proposed Class. The Defendants of the Scott Group were certainly enriched. All told, the Scott Group Defendants received in excess of

$60 million in exchange for enabling and assisting the OneCoin fraud. *See* SAC at ¶ 8.[9]  Each Scott Group Defendant's receipt of such was at the direct expense of Plaintiffs and the Class and was plainly derived from funds invested by Plaintiffs and the Class. *Id.*

Finally, as noted in the SAC, "[i]t would be unconscionable and against the fundamental principles of justice, equity, and good conscience for the Scott Group Defendants to retain the substantial monetary benefits they have received as a result of their misconduct." *Id.* at ¶ 257. Accordingly, Plaintiffs have established a claim of unjust enrichment against the Scott Group. *See Sperry v. Crompton Corp.*, 2007 NY Slip Op 1425, ¶ 8, 8 N.Y.3d 204, 215 (February 22, 2007) (noting that a plaintiff need not be in privity with a defendant to state a claim for unjust enrichment); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 166 (S.D.N.Y. 1998) (noting that services performed by plaintiff for the defendant sufficiently established unjust enrichment).[10]

---

[9]  Specifically, and purely by way of example, with funds obtained from Plaintiffs and the Class, Defendant Scott purchased a $2,850,000 home located at 133 Sunset Lane, Barnstable, MA; a $3,765,000 residence located at 31 Dale Avenue, Hyannis Port, MA; an ownership interest in another residence located at 105 Sunset Lane, Barnstable, MA; a $245,269 Ferrari; a $218,898 2018 Porsche 911 GTRS2; a $119,529 2017 Porsche 911 Turbo; a $332,248 2016 Porsche 911R; a $1,310,000 Sunseeker yacht; over One Hundred Thousand Dollars ($100,000.00) in luxury watches; and over Two Hundred Thousand Dollars ($200,000.00) in jewelry and luxury bags. Defendant Scott also used OneCoin proceeds to pay off over $1,000,000 on a mortgage for a condo that he owned in Coral Gables, FL. SAC at ¶ 171.

[10]  Defendant Pike argues that Plaintiffs' unjust enrichment claim is "duplicative of numerous of their other claims against various individuals." Pike MTD at 11. Defendant Pike makes no efforts to explain how this claim is duplicative. Defendant Scott makes a similar argument, and simply claims that because Plaintiffs' unjust enrichment claim asks for similar relief to their other claims, the unjust enrichment claim is duplicative. *See* Scott MTD at 21-22. But disgorgement of profits is different from the relief sought by Plaintiffs' other causes of action, which may sound in recission, rather than remuneration, depending on the outcome of this litigation. *See* SAC at 65.

## **CONCLUSION**

For the reasons stated herein, Defendant Scott's, Defendant Pike's, and Defendant Huesmann's Motions to Dismiss the SAC should be denied in full, and grant such other and further relief as the Court may deem just and proper.

Dated: February 4, 2021                             Respectfully submitted,

                                                                */s/ Donald J. Enright*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (admitted *pro hac vice*)
Adam M. Apton
Zachary B. Ness (*pro hac vice* forthcoming)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 363-7171
E-mail: denright@zlk.com
Email: Aapton@zlk.com
Email: zness@zlk.com

John A. Carriel (*pro hac vice* forthcoming)
Email: jcarriel@zelle.com
**ZELLE LLP**
1775 Pennsylvania Ave, NW, Suite 375
Washington, DC 20006
Telephone: (202) 899-4111
Facsimile: (612) 336-9100

**SILVER MILLER**
David C. Silver (*pro hac vice* forthcoming)
Jason S. Miller (*pro hac vice* forthcoming)
11780 W. Sample Road
Coral Springs, FL 33065
Telephone: (954) 516-6000
E-mail: DSilver@SilverMillerLaw.com
E-Mail: JMiller@SilverMillerLaw.com

*Attorneys for Lead Plaintiff Donald
Berdeaux and Christine Grablis and Co-
Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court of this __4th__ day of February 2021 by using the CM/ECF system and that a true and correct copy will be served via electronic mail to: All Parties and Counsel of Record.

_/s/ Donald J. Enright_

DONALD J. ENRIGHT