**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

DONALD BERDEAUX and CHRISTINE
GRABLIS, Individually and on Behalf of All
Others Similarly Situated,

                    Plaintiffs,

      - against -

ONECOIN LTD.; RUJA IGNATOVA;
SEBASTIAN GREENWOOD; MARK
SCOTT; DAVID PIKE; NICOLE J.
HUESMANN; GILBERT ARMENTA; and
THE BANK OF NEW YORK MELLON
CORPORATION,

                    Defendants.

Case No.: 1:19-cv-04074-VEC

Hon. Valerie E. Caproni

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BNY MELLON'S
<u>MOTION TO DISMISS</u>**

Respectfully submitted,

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Adam M. Apton
Zachary B. Ness
1101 30th Street, N.W.
Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 363-7171
E-mail: denright@zlk.com
Email: zness@zlk.com

**SILVER MILLER**
David C. Silver
Jason S. Miller
11780 W. Sample Road
Coral Springs, FL 33065
Telephone: (954) 516-6000
E-mail:
DSilver@SilverMillerLaw.com
E-mail:
JMiller@SilverMillerLaw.com

**ZELLE LLP**
John A. Carriel
1775 Pennsylvania Ave, NW
Suite 375
Washington, DC 20006
Telephone: (202) 899-4111
Facsimile: (612) 336-9100
E-mail: jcarriel@zelle.com

*Attorneys for Plaintiffs Donald Berdeaux and Christine Grablis
and [Proposed] Co-Lead Counsel for the Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................1

ARGUMENT .............................................................................................4

**I.**   STANDARD OF REVIEW ...................................................................4

**II.**   BNY MELLON'S MOTION TO DISMISS SHOULD BE DENIED ...........................6

    A.  BNY Mellon Improperly Conflates Plaintiffs' Pleading Standard by Suggesting a Higher Standard Than is Required ...........................................6

    B.  The Second Amended Complaint Adequately Alleges Plaintiffs' Claim for Aiding and Abetting Common Law Fraud (Count IV) ................................7

        1.  BNY Mellon Knew of the OneCoin Fraud ...............................................7

        2.  BNY Mellon Provided Substantial Assistance to Advance the OneCoin Fraud ...............................................................................12

            a.  BNY Mellon Actively Assisted in the Fraud ...........................12

            b.  BNY Mellon Proximately Caused the Harm ...........................13

    C.  The Second Amended Complaint Adequately Alleges Plaintiffs' Claim for Commercial Bad Faith (Count XI) ..................................15

CONCLUSION ........................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Alpha Capital Anstalt v. New Generation Biofuels, Inc*.
　Case No. 13-cv-5586 (VEC), 2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014) ...................... 6, 7

*Am. State Bank of Williston v. State Banking Bd.*
　289 N.W.2d 222 (N.D. 1980) ................................................................................................. 15

*Ashcroft v. Iqbal*
　556 U.S. 662 (2009) ................................................................................................................. 4

*Bell Atl. Corp. v. Twombly*
　550 U.S. 544 (2007) ................................................................................................................. 4

*BLT Rest. Grp. LLC v. Tourondel*
　855 F.Supp.2d 4 (S.D.N.Y. 2012) ........................................................................................... 5

*Chambers v. Time Warner, Inc*.
　282 F.3d 147 (2d Cir. 2002) .................................................................................................... 5

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*
　752 F.3d 173 (2d Cir. 2014) .................................................................................................. 11

*Cromer Finance Ltd. v. Berger*
　Case No. 00-cv-2284 (DLC), 2003 WL 21436164 (S.D.N.Y. June 23, 2003) ...................... 13

*de Abreu v. Bank of America Corp.*
　812 F.Supp.2d 316 (S.D.N.Y. 2011) ....................................................................................... 7

*Gladitsch v. Neo@Ogilvy*
　Case No. 11-cv-919 (DAB), 2012 WL 1003513 (S.D.N.Y. Mar. 21, 2012) ........................... 11

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgt., LLC*
　479 F.Supp.2d 349 (S.D.N.Y. 2007) ........................................................................... 8, 10, 12

*Henschke v. New York Hospital-Cornell Medical Center*
　821 F. Supp. 166 (S.D.N.Y. 1993) .......................................................................................... 5

*In re Agape Litig*.
　773 F.Supp.2d 298 (E.D.N.Y. 2011) ....................................................................................... 8

*In re Palm Beach Finance Partners, L.P.*
　517 B.R. 310 (Bankr. S.D. Fla. 2013) ................................................................................... 15

*In re Ultrafem Inc. Sec. Litig.*
　91 F.Supp.2d 678 (S.D.N.Y. 2000) ................................................................................... 11-12

*JP Morgan Chase Bank v. Winnick*
   406 F.Supp.2d 247 (S.D.N.Y. 2005) ................................................................. 7

*Jordan v. Chase Manhattan Bank*
   91 F.Supp.3d 491 (S.D.N.Y. 2015) ................................................................. 5

*Liu Yao-Yi v. Wilmington Trust Co.*
   301 F.Supp.3d 403 (W.D.N.Y. 2017) .......................................................... 12-13

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*
   815 F.Supp.2d 679 (S.D.N.Y. 2011) ................................................................. 5

*Peck v. Chase Manhattan Bank, N.A.*
   593 N.Y.S.2d 509 (1993) ................................................................. 15

*Roth v. Jennings*
   489 F.3d 499 (2d Cir. 2007) ................................................................. 4

*Sheppard v. Beerman*
   18 F.3d 147 (2d Cir. 1994) ................................................................. 4, 5

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*
   843 F.3d 561 (2d Cir. 2016) ................................................................. 4

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*
   Case No. 18-cv-1876 (PAE), 2019 WL 2327810 (S.D.N.Y. May 30, 2019) ....................... 8, 9

*Wight v. BankAmerica Corp.*
   219 F.3d 79 (2d Cir. 2000) ................................................................. 6

*Wultz v. Bank of China Ltd.*
   56 F.Supp.3d 598 (S.D.N.Y. 2014) .......................................................... 14-15

## <u>Rules</u>

Fed.R.Civ.P. 9(b) ................................................................. 6, 7

Fed.R.Civ.P. 12(b)(6) ................................................................. 4

Plaintiffs DONALD BERDEAUX and CHRISTINE GRABLIS (together, "Plaintiffs") by and through their undersigned counsel, hereby submit this memorandum of law in opposition to the Motion to Dismiss filed by Defendant THE BANK OF NEW YORK MELLON CORPORATION ("Defendant" or "BNY MELLON") requesting dismissal of the Second Amended Complaint filed by Plaintiffs in this action.[1] As explained in greater detail below, the Motion to Dismiss fails as a matter of law and should be denied.  Defendant's attempt to avoid responsibility for its wrongful acts is misplaced and should not serve as an impediment to Plaintiffs' right to seek compensation for the harms inflicted upon them and the Class in connection with the massive $4 billion OneCoin Ponzi scheme in which Defendant was a vital participant.

## PRELIMINARY STATEMENT

This is a class action on behalf of a class of investors consisting of all individuals and entities who transferred to the OneCoin Defendants, directly or indirectly, any fiat currency or cryptocurrency to invest in a OneCoin trader/membership package ("OC Trader Package") and/or a purported digital cryptocurrency called "OneCoin" and who suffered financial injury as a result thereof (the "Class").[2]  Upon information and belief, the financial harm caused by the fraudulent OC Investment Programs[3] exceeds Four Billion Dollars ($4,000,000,000.00).[4]

The sprawling OneCoin fraud succeeded due to the many pillars of support that kept the scheme from collapsing -- including the support provided by Defendants MARK SCOTT and his partners -- DAVID PIKE; NICOLE J. HUESMANN; and GILBERT ARMENTA (collectively

---

[1] Docket Entry No. ("DE") 158 (the "Motion to Dismiss").

[2] DE 125 (Second Amended Complaint ["SAC"]) at ¶ 1.

[3] The term "OC Investment Program" refers to both the OC Trader Packages and the OneCoins offered and sold by the OneCoin Defendants.

[4] SAC at ¶ 1.

"the Scott Group Defendants") -- who knowingly laundered criminal proceeds obtained from Plaintiffs' and the proposed Class' investments in the fraudulent OC Investment Programs.[5]

From approximately May 2016 through April 2017, BNY MELLON enabled the Scott Group Defendants to launder in excess of $300 million worth of OneCoin's criminal proceeds through its organization by turning a blind eye to clear red flags and serving as a "correspondent bank" for hundreds of transactions involving funds fraudulently obtained from OneCoin investors.[6]  Specifically, BNY MELLON played a central role in laundering OneCoin's criminal proceeds by: (i) blindly processing transactions with clear hallmarks of money laundering without conducting cursory due diligence to determine the identities of the persons on behalf of whom such transfers were made; (ii) permitting the Scott Group to process more than $300 million worth of OneCoin's criminal proceeds through its organization over the course of more than 220 transactions and six months before bothering to conduct a minimal internal review into the nature of, and parties involved in, such transactions; (iii) after BNY MELLON's Compliance Team discovered in December 2016 that OneCoin "appears to be operating a pyramid/Ponzi scheme," declining to impose *any* restrictions on transactions involving funds originating from OneCoin or its related entities; and (iv) in March 2017, rather than create filters that would flag and prevent transactions involving funds originating from OneCoin or its related entities, opting to "prevent" such transactions by merely including a filter that would flag future transactions involving only one OneCoin shell company, International Marketing Services Pte Ltd. ("IMS").[7]

---

[5] SAC at ¶ 6.

[6] *Id*. at ¶ 63.

[7] *Id*. at ¶ 9.

From no later than May 2016 through at least April 2017, BNY MELLON enabled the Scott Group to launder in excess of $300 million worth of OC's criminal proceeds through its organization by turning a blind eye to clear red flags and serving as a "correspondent bank" for hundreds of transactions involving funds fraudulently obtained from OneCoin investors.[8] Accordingly, BNY MELLON knowingly participated in, or was complicit in, laundering OneCoin's criminal proceeds.[9]

To be clear, BNY MELLON's support of the OneCoin fraud did not merely take the form of unwittingly providing the Scott Group Defendants routine banking services; rather, BNY MELLON -- following an internal investigation in December 2016 -- concluded that OneCoin was indeed a Ponzi/pyramid scheme yet continued to process enormous transfers of funds to and from shell entities associated with OneCoin.[10]   By BNY MELLON's own calculations, the bank processed no less than Three Hundred Sixty Million Dollars ($360,000,000.00) in transfers of laundered money for entities affiliated with OneCoin.[11]  Despite being fully aware that transactions involving funds originating from OneCoin should have been halted, BNY MELLON failed to do so.  Instead, it prohibited only future transactions involving one entity tied to OneCoin (IMS) while placing no such restrictions on any other OneCoin sources of laundered funds.[12]

In its Motion to Dismiss, BNY MELLON portrays itself as an innocent victim of the OneCoin scheme on the same level as Plaintiffs and the putative class of investment victims.  In no way do BNY MELLON and the putative class sit in similar positions.  Plaintiffs and the putative

---

[8] *Id.* at ¶ 63.

[9] *Id.*

[10] *Id.* at ¶ 186.

[11] *Id.* at ¶ 186-187.

[12] *Id.* at ¶ 188.

class were duped out of billions of dollars by pyramid-structured marketers and a cabal of OneCoin

insiders who mocked investors[13] and worked with white collar professionals (*e.g.*, the Scott Group

Defendants) to launder the proceeds of that fraud.  BNY MELLON knowingly helped perpetrate

the OneCoin fraud and cannot, at this preliminary stage, be allowed to excuse itself from this

litigation under the pretense that it was an unwitting victim.

For the foregoing reasons, as well as those set forth in more detail below, Plaintiffs submit

that BNY MELLON's Motion to Dismiss should be denied; and Plaintiffs should be permitted to

proceed with their claims beyond this preliminary threshold.

## ARGUMENT

### I.   STANDARD OF REVIEW

When deciding a Rule 12(b)(6) motion, the Court accepts as true the factual allegations in

the Complaint and draws all reasonable inferences in the plaintiff's favor.[14]  From this review, the

Court determines if the Complaint contains "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"[15]  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."[16]

A Court should not dismiss a Complaint "unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of [his] claim which would entitle [him] to relief."[17]  In sum,

---

[13] *Id*. at ¶ 2.

[14] *See*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt*., 843 F.3d 561, 566 (2d Cir. 2016); *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[15] *Ashcroft*, supra at 663 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] *Id*. at 678.

[17] *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

"the Court's task is simply to determine whether the plaintiff has a legal right to seek relief based on the allegations in the complaint."[18]   The Court cannot dismiss the case unless it is satisfied that the Complaint cannot state any set of facts that would entitle the plaintiff to relief.[19]

Moreover, in a declaration in support of its Motion to Dismiss, BNY MELLON has proffered for the Court's consideration as evidence numerous documents that are neither explicitly referenced nor relied upon by Plaintiffs in the SAC.[20]   In instances where the moving party professes to offer extraneous "evidence" in support of a Motion to Dismiss -- such as the Motion to Dismiss at bar -- the Court properly discards and does not consider such external papers.[21]   If, after full pretrial discovery into BNY MELLON's role in materially assisting the OneCoin fraud, BNY MELLON still wishes to proffer those documents in support of a request for summary judgment or as part of its defense at trial, it will be free to do so.  However, this is not the stage of the litigation at which those documents -- which are not mentioned or cited anywhere in the SAC -- can rightfully be considered.[22]

---

[18] *Henschke v. New York Hospital-Cornell Medical Center*, 821 F. Supp. 166, 168 (S.D.N.Y. 1993).

[19] *See*, *Sheppard*, 18 F.3d at 150.

[20] "To be incorporated into the complaint by reference, 'the [c]omplaint must make a clear, definite and substantial reference to the documents.'"  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F.Supp.2d 679, 691 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).

[21] *See BLT Rest. Grp. LLC v. Tourondel*, 855 F.Supp.2d 4, 15 (S.D.N.Y. 2012); *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152-53 (2d Cir. 2002) ("**Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)**, which requires only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'") (emphasis added); *Jordan v. Chase Manhattan Bank*, 91 F.Supp.3d 491, 499 n. 4 (S.D.N.Y. 2015) ("The Court may not consider any factual allegations or substantive evidence submitted by defendants.").

[22] Contrary to BNY MELLON's misplaced assertion that the SAC cites or relies upon testimony provided in a criminal proceeding in this District before the Honorable Eduardo Ramos involving Defendant SCOTT [*United States v. Mark S. Scott*, 1:17-cr-630-ER (S.D.N.Y.)], the only testimony

## II.   **BNY MELLON'S MOTION TO DISMISS SHOULD BE DENIED**

### A.   **BNY Mellon Improperly Conflates Plaintiffs' Pleading Standard by Suggesting a Higher Standard Than is Required**

In its Motion to Dismiss, BNY MELLON argues that Plaintiffs' claims against BNY MELLON must be dismissed because the SAC does not meet the "heightened pleading standard for claims governed by Federal Rule of Civil Procedure 9(b)."[23]   BNY MELLON's argument is misguided because that heightened pleading requirement does not apply to all aspects of the claims asserted by Plaintiffs.   "Although Rule 9(b) requires that the circumstances constituting fraud be stated with particularity, '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'"[24]   To be sure, Plaintiffs have alleged facts demonstrating with absolute clarity that BNY MELLON actually knew that OneCoin was a Ponzi scheme and was transferring fraudulent proceeds through BNY MELLON using shell companies and the money laundering technique known as "layering."[25]   However, even if the SAC did not state with exacting specificity the knowledge with which BNY MELLON acted in helping fuel the OneCoin scheme, that alone would not provide a basis to justify dismissal of the SAC, because knowledge can be alleged

---

actually cited in the SAC comes from a criminal proceeding in this District before the Honorable Eduardo Ramos involving Defendant ARMENTA [*United States v. Gilbert Armenta*, 1:17-cr-00556-ER (S.D.N.Y.)]. *See* SAC at ¶ 159-160.  In his testimony, Defendant ARMENTA repeatedly admitted that he laundered the proceeds of the OneCoin scheme "through a corresponding bank in New York." *Id.*  Plaintiffs have alleged in the SAC that the corresponding bank is BNY MELLON. In evaluating the Motion to Dismiss, if the Court wishes to rely on the actual testimony explicitly cited by Plaintiffs in the SAC -- testimony that clearly supports, not negates, Plaintiffs' allegations -- the Court may properly do so.

[23] Motion to Dismiss at 11-12.

[24] *Alpha Capital Anstalt v. New Generation Biofuels, Inc*., Case No. 13-cv-5586 (VEC), 2014 WL 6466994, at *19 (S.D.N.Y. Nov. 18, 2014) (citing Fed.R.Civ.P. 9(b)) (sustaining claim for aiding and abetting fraud at the motion to dismiss stage).  *See also*, *Wight v. BankAmerica Corp*., 219 F.3d 79, 91 (2d Cir. 2000) (applying a general pleading standard to plaintiff's aiding and abetting claims).

[25] *See*, *e.g*., SAC at ¶ 186.

generally.[26]   With regard to the other aspects of the fraud perpetrated upon Plaintiffs and the putative class, those aspects are inarguably stated with great specificity that satisfies even the heightened requirements under Rule 9(b).

### B.   The Second Amended Complaint Adequately Alleges Plaintiffs' Claim for Aiding and Abetting Common Law Fraud (Count IV)

"To establish liability for aiding and abetting fraud, the plaintiffs must show '(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.'"[27]   Contrary to its sweeping argument that the SAC does not plead the claims against BNY MELLON with adequate specificity, the bank readily concedes in its Motion to Dismiss that the existence of the underlying OneCoin fraud has been adequately pled.[28]   With regard to BNY MELLON's knowledge of the fraud and the measure of assistance that BNY MELLON provided to advance the fraud, those facts are properly alleged as well.   Accordingly, the Motion to Dismiss should be denied as to Count IV as against BNY MELLON.

### 1.   BNY Mellon Knew of the OneCoin Fraud

As BNY MELLON stated in its Motion to Dismiss, the burden of ultimately proving BNY MELLON's knowledge will be "a heavy one."[29]   However, at this preliminary procedural juncture,

---

[26] *See, e.g.*, Fed.R.Civ.P. 9(b); *Alpha Capital Anstalt*, *supra* at *19; *Rosner v. Bank of China*, Case No. 06-cv-13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008) ("the element of actual knowledge may be alleged generally").

[27] *Alpha Capital Anstalt*, *supra* at *19, citing *JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 252 (S.D.N.Y. 2005).

[28] *See* Motion to Dismiss at 12-13 ("To establish liability for aiding and abetting fraud under New York law, a plaintiff must show "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud;  and  (3)  that  the  defendant  provided  substantial  assistance  to  advance  the fraud's commission." [citations omitted]. The latter two elements are not pleaded here.").

[29] *Id*., citing *de Abreu v. Bank of America Corp*., 812 F.Supp.2d 316, 323 (S.D.N.Y. 2011) (analyzing plaintiff's burden of proof at summary judgment stage, not at initial pleading stage).

that burden is clearly not insurmountable, and here that burden has been satisfied.  "Courts have generally held that allegations of conscious avoidance, where adequately pled, can satisfy the actual knowledge requirement in the context of an aiding and abetting claim."[30]  Specifically:

> Conscious avoidance . . . occurs when "it can almost be said that the defendant actually knew" because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge.  Conscious avoidance therefore involves a culpable state of mind . . . . * * * Accordingly, the Court sees no reason to spare a putative aider and abettor who consciously avoids confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor he or she substantially furthers.[31]

Here, Plaintiffs have indeed adequately pled such allegations of conscious avoidance.  In the SAC, Plaintiffs alleged that BNY MELLON conducted an internal investigation and concluded no later than December 2016 that OneCoin appeared to be a "Ponzi/pyramid scheme" and that the monetary transactions it was processing for entities related to OneCoin involved funds that were part of that Ponzi scheme.[32]  In a Suspicious Activity Report BNY MELLON filed later with the U.S. Department of the Treasury's Financial Crimes Enforcement Network (FinCEN), the bank wrote that [one of the OneCoin-related entities] "received wires from shell entities associated with OneCoin" and that the people and entities involved in the transfers (which BNY Mellon calculated as totaling approximately $137,600,000.00) appeared to be engaged in "layering" -- a technique used to disguise the source of illicit funds by routing it through multiple transactions.[33]

---

[30] *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, Case No. 18-cv-1876 (PAE), 2019 WL 2327810, at *15 (S.D.N.Y. May 30, 2019) ("*Vasquez*"), citing *In re Agape Litig.*, 773 F.Supp.2d 298, 309 (E.D.N.Y. 2011).

[31] *Fraternity Fund Ltd. v. Beacon Hill Asset Mgt., LLC*, 479 F.Supp.2d 349, 368 (S.D.N.Y. 2007).

[32] SAC at ¶ 186.

[33] *Id.*

Similarly, in a separate incident report citing evidence of money laundering, BNY MELLON identified 275 concerning wires -- totaling approximately $222,000,467.62 in transfers -- that were filtered through BNY MELLON by entities affiliated with OneCoin.[34] Notwithstanding that knowledge, BNY MELLON consciously avoided taking appropriate responsive measures, and instead "opted to merely include a filter that would flag future transactions involving only [one OneCoin-related entity]."[35]  As noted above, the OneCoin money laundering was channeled "through a corresponding bank in New York."[36]  This "corresponding bank" was alleged in the SAC to be BNY MELLON.[37]  The money laundering took place from at least 2015 through 2017[38], which went well beyond the date on which BNY MELLON actually knew of the fraud.

In *Vasquez*, this Court concluded that similar allegations against a bank that actively fueled a pyramid/Ponzi scheme were sufficient to satisfy the "conscious avoidance" threshold.  The plaintiff in *Vasquez* alleged that because the bank in question (HSBC USA) had done an internal investigation into a client for whom it was processing numerous large monetary transfers -- and because that internal investigation led the bank to conclude that the client reasonably appeared to be engaged in a pyramid/Ponzi scheme -- the bank thus had actual knowledge of the fraud.[39]  The *Vasquez* Court found the plaintiff's allegations of the bank's actual knowledge of the third party's

---

[34] *Id*. at ¶ 187.

[35] *Id*. at ¶ 188.

[36] *Id*. at ¶¶ 159, 185.

[37] *Id*. at ¶ 185.

[38] SAC at ¶ 160.

[39] *Vasquez, supra* at *16.

fraud to be more than "solely circumstantial" and held it was "satisfied, on these allegations, that the Amended Complaint adequately alleges the element of actual knowledge on HBSC USA's part."[40]

The same exact circumstances are present here and should inevitably lead to the same conclusion regarding BNY MELLON's knowledge.  By reference to clear admissions of its own knowledge, Plaintiffs have properly pled BNY MELLON's knowledge of the fraud perpetrated by OneCoin and the other defendants.  BNY MELLON had investigated the activities of the OneCoin-related entities that were laundering funds through the bank and concluded that it appeared those funds were the proceeds of a Ponzi scheme, yet BNY MELLON consciously avoided taking the necessary steps to remove itself from the pipeline of fraud that was redirecting money from Plaintiffs and the putative class to the OneCoin insiders, OneCoin-related entities, and Scott Group Defendants.  Moreover, while BNY MELLON wants to misleadingly focus the Court's attention solely on a time frame that precedes BNY MELLON's investigation into and actual knowledge of the OneCoin fraud, that fraud extends much further in time than BNY MELLON wishes to concede.[41]  Indeed, BNY MELLON had identified OneCoin as a Ponzi scheme by no later than December 2016 but had continued its money laundering facilitations at least through April 2017.[42]

BNY MELLON's knowledge of the OneCoin fraud is adequately alleged in the SAC and is widely evident in the Suspicious Activity Report (SAR) BNY MELLON so adamantly wants the Court to ignore.  While SARs are typically not available to the public -- even the existence of

---

[40] *Id*. at *17.  *See also*, *Fraternity Fund Ltd.*, *supra* at 370 (concluding bank's willful ignorance of the most likely explanation for suspicious conduct was enough for it to have actual knowledge of the underlying fraud).

[41] SAC at ¶ 160 (citing Defendant ARMENTA's sworn testimony that his role in the money laundering through, *inter alia*, the bank account "maintained at a bank in Manhattan (New York City)" extended from approximately 2015 through 2017).

[42] *Id.* at ¶¶ 63, 160.

a SAR is typically not known -- the February 2017 SAR filed by BNY MELLON which is referenced in the SAC is readily available online to anyone with internet access.  Though partially redacted, the SAR sets forth in detail BNY MELLON's knowledge that "*OneCoin, a cryptocurrency company that operates a Ponzi scheme, has opened bank accounts using shell companies*" and that "*OneCoin, founded by Ruja Ignatova, operates as a Ponzi/pyramid/cryptocurrency scam and [ ] has been subject to investigations and investor warnings in numerous jurisdictions, including the U.K., Belgium, Sweden, Austria, Latvia, and Singapore*."

To the extent BNY MELLON attempts to persuade the Court to disregard the SAR, the Court should reject these entreaties.[43]  For BNY MELLON to insist that the Court ignore that self-reported knowledge and deem BNY MELLON to have acted without knowledge would be an affront to the cause of justice and would unduly deny Plaintiffs and the putative class their ability to pursue their claims against BNY MELLON for the harms alleged in the SAC.  In short, these facts have been properly and credibly alleged in the SAC, and the Court is not free to disregard them simply because BNY MELLON resents the fact that those facts were not supposed to be publicly available to Plaintiffs.  The SAR was publicly available, the SAC relies on the SAR and incorporates it heavily in asserting its claims against BNY MELLON; and this Court must consider the allegations supported by the SAR.[44]

---

[43] *See*, Motion to Dismiss at n. 6 (BNY MELLON "reserves all rights to move to exclude any evidence concerning any SARs should the case survive a motion to dismiss").

[44] *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (In stating a claim, plaintiffs may rely upon, *inter alia*, "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit."); *Gladitsch v. Neo@Ogilvy*, Case No. 11-cv-919 (DAB), 2012 WL 1003513, at *5 (S.D.N.Y. Mar. 21, 2012) (considering publicly available information and documents integral to a Complaint when denying a motion to dismiss); *In re Ultrafem Inc. Sec. Litig.*, 91 F.Supp.2d 678, 685 n. 6 (S.D.N.Y. 2000)

### 2. **BNY Mellon Provided Substantial Assistance to Advance the OneCoin Fraud**

> "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [fraud or breach of fiduciary duty] to occur." In addition, substantial assistance is intimately related to the concept of proximate cause. "[W]hether the assistance is substantial or not is measured ... by whether the action of the aider and abettor proximately caused the harm on which the primary liability is predicated."[45]

Unlike the cases cited by BNY MELLON concerning inaction on the part of alleged aiders and abettors, the SAC alleges that BNY MELLON's liability is based on the fact that it knew about, and yet still actively participated in, OneCoin's fraudulent scheme by processing hundreds of millions of dollars in funds.  Indeed, the SAC plainly alleges that BNY MELLON was well aware that these funds were the proceeds of a fraudulent Ponzi scheme.[46]  That knowledge, combined with BNY MELLON's refusal to stop processing the transfers, demonstrates the substantial assistance the bank provided in furtherance of the fraud.

### a. **BNY Mellon Actively Assisted in the Fraud**

As explained in *Liu Yao-Yi v. Wilmington Trust Co*.[47] -- which paid deference to *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006), cited by BNY MELLON in its Motion to Dismiss:

> "[A] bank may be liable for participation in [such a] diversion, either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed."  If the bank maintaining

---

(noting that the court could consider publicly available documents filed with a federal regulatory body referenced within a Complaint); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (on a motion to dismiss, the court should consider "[s]tatements or documents incorporated in [a complaint] by reference").

[45] *Fraternity Fund Ltd.*, *supra* at 370 (citations omitted).

[46] *See* SAC at ¶¶ 9, 186.

[47] 301 F.Supp.3d 403 (W.D.N.Y. 2017).

> the fiduciary account acquires such knowledge, the bank is under an
> affirmative duty to take action by attempting to stop the diversion.[48]

Here, as in *Liu Yao-Yi*, Plaintiffs have alleged that the defendant bank was aware that fraudulently

obtained funds were being diverted and laundered through BNY MELLON to bank accounts

controlled by OneCoin-related entities at other financial institutions.  Because BNY MELLON

had the benefit of this knowledge but failed to make appropriate efforts to prevent the diversion of

hundreds of millions of dollars of ill-gotten gains, Plaintiffs have stated a viable claim against

BNY MELLON that should not be foreclosed at this nascent pleading stage.

### b.   BNY Mellon Proximately Caused the Harm

With regard to the issue of "whether the action of the aider and abettor proximately caused

the harm on which the primary liability is predicated," that too is adequately addressed in the SAC.

Such proximate causation hinges on the issue of foreseeability:

> Loss causation is akin to the concept of "proximate cause" in tort
> law, "meaning that in order for the plaintiff to recover it must prove
> the damages it suffered were a foreseeable consequence of the
> misrepresentation." **The Second Circuit has noted that "[a]
> foreseeability finding turns on fairness, policy, and ... 'a rough
> sense of justice.'"** Determining whether a loss was a foreseeable
> consequence of a particular defendant's actions is, ultimately, a
> public policy question, which asks how far back along the causal
> chain should liability for the plaintiffs' losses extend.[49]

In the instant matter, the harm here was clearly foreseeable, and one need not go very far back

along the causal chain to extend liability to BNY MELLON for Plaintiffs' and the putative class'

losses.

---

[48] *Liu Yao-Yi*, *supra* at 425 (quotations and citations omitted).

[49] *Cromer Finance Ltd. v. Berger*, Case No. 00-cv-2284 (DLC), 2003 WL 21436164, at *7
(S.D.N.Y. June 23, 2003) (internal citations omitted) (explaining that investors' claim of aiding
and abetting fraud survived Motion to Dismiss and that the defendant's argument against
proximate cause was unavailing).

Indeed, the SAC sets forth the following allegations, *inter alia*, explaining the pivotal role

BNY MELLON played in bringing harm to Plaintiffs and the class:

> Paragraph 9:   Similarly, Defendant BNY Mellon played a central role in enabling the Scott Group Defendants' laundering of in excess of $300 million worth of OC's criminal proceeds through its organization by: (i) blindly processing transactions with clear hallmarks of money laundering without conducting cursory due diligence to determine the identities of the persons on behalf of whom such transfers were made;  (ii) permitting the Scott Group to process more than $300 million worth of OC's criminal proceeds through its organization over the course of more than 220 transactions and six months before bothering to conduct a minimal internal review into the nature of, and parties involved in, such transactions; (iii) after BNY Mellon's compliance team's December 2016 "internet research" into the Scott Group's numerous transactions (i.e., visiting the website for one of the OneCoin shell companies used to move criminal proceeds through BNY Mellon (International Marketing Services Pte Ltd. ("IMS")) indicated the entity was involved with OneCoin and that OneCoin "appears to be operating a pyramid/Ponzi scheme", declining to impose *any* restrictions on transactions involving funds originating from OneCoin or its related entities; and (iv) in March 2017, rather than create filters that would flag and prevent transactions involving funds originating from OneCoin or its related entities, opting to "prevent" such transactions by merely including a filter that would flag future transactions involving only IMS.

It was clearly foreseeable that BNY MELLON's acts and omissions were not only wrongful but

also were likely to produce the very harm suffered by Plaintiffs and the class.  BNY MELLON

knew of the fraud and still played its role in assisting the Scott Group Defendants by laundering

approximately $360 million of Ponzi scheme proceeds.  The harm alleged by Plaintiffs – the

dissipation of the fraudulently-obtained funds – was not only foreseeable, but actually foreseen by

the applicable banking laws.[50]

---

[50] *See Wultz v. Bank of China Ltd.*, 56 F.Supp.3d 598, 601-02 (S.D.N.Y. 2014) (noting that banks would understandably investigate suspicious activity, in part, "to protect itself from fraud and to make sure it does not violate or abet the violation of other banking regulations and statutes, such

Moreover, BNY MELLON explicitly flagged OneCoin as a **Ponzi scheme**.  Anyone with even the most rudimentary knowledge of finance would know that the entire *raison d'etre* of a Ponzi scheme is to gather and then make off with the investments of unwitting victims.  It is obviously foreseeable to anyone that assisting in a Ponzi scheme will result in harm to that scheme's victims.[51]

* * *

As the litigation advances and BNY MELLON discloses its documentation, Plaintiffs' allegations will be further corroborated, and BNY MELLON will be brought to the "rough sense of justice" that the bank should have foreseen (and, in fairness, apparently did foresee) when it undertook to assist the OneCoin fraud.  At this juncture, however, Plaintiffs have more than adequately alleged BNY MELLON's knowledge of the fraud and substantial assistance therein.  Accordingly, the Court should deny the Motion to Dismiss as to Count IV.

### C. The Second Amended Complaint Adequately Alleges Plaintiffs' Claim for Commercial Bad Faith (Count XI)

A cause of action for commercial bad faith against a bank requires allegations of a scheme or acts of wrongdoing, together with allegations of the bank's actual knowledge of the scheme **_or_** wrongdoing that amounts to bad faith **_or_** allegations of complicity by bank principals in alleged confederation with the wrongdoers.

*Peck v. Chase Manhattan Bank, N.A.*, 593 N.Y.S.2d 509, 510-511 (1993) (emphasis added).

In essence, and noting the disjunctive language, to properly plead a claim for commercial bad faith by BNY MELLON, Plaintiffs need only plausibly allege: (1) a scheme or acts of

---

as money laundering statutes"); *Am. State Bank of Williston v. State Banking Bd.*, 289 N.W.2d 222, 227 (N.D. 1980) ("The general purpose for banking regulations is to protect the public.").

[51] *In re Palm Beach Finance Partners, L.P.*, 517 B.R. 310, 346 (Bankr. S.D. Fla. 2013) ("[W]hen properly pled, the existence of a Ponzi scheme can be the basis for a claim for common law fraud or aiding and abetting fraud.")

wrongdoing; and __*either*__ (2)(a) BNY MELLON's knowledge of the scheme, or wrongdoing by BNY MELLON that amounts to bad faith; __*or*__ (2)(b) complicity by BNY MELLON principals in alleged confederation with the OneCoin insiders and the Scott Group Defendants.  They have done so in the SAC.

Without repeating the points set forth in detail in Section III.B, *supra*, the SAC adequately sets forth allegations of a scheme or acts of wrongdoing -- the OneCoin Ponzi/pyramid scheme that even BNY MELLON admits has been adequately established[52] -- and BNY MELLON's knowledge of that scheme (having explicitly identified OneCoin as a Ponzi scheme by no later than December 2016.  Having satisfied those basic pleading thresholds, Count XI of the SAC should be permitted to advance forward in the litigation, and BNY MELLON's Motion to Dismiss this claim should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs DONALD BERDEAUX and CHRISTINE GRABLIS respectfully request that this Court: (i) deny Defendant THE BANK OF NEW YORK MELLON CORPORATION's Motion to Dismiss the Second Amended Complaint; and (ii) grant such other and further relief as the Court may deem just and proper.

---

[52] *See* Note 26, *supra*.

Respectfully submitted,

_/s/ Donald J. Enright_____
**LEVI & KORSINSKY, LLP**
Donald J. Enright (admitted *pro hac vice* - DE 101)
Adam M. Apton
Zachary B. Ness (*pro hac vice* forthcoming)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 363-7171
E-mail: denright@zlk.com
E-mail: Aapton@zlk.com

**SILVER MILLER**
David C. Silver (*pro hac vice* forthcoming)
Jason S. Miller (*pro hac vice* forthcoming)
11780 W. Sample Road
Coral Springs, FL 33065
Telephone: (954) 516-6000
E-mail: DSilver@SilverMillerLaw.com
E-mail: JMiller@SilverMillerLaw.com

**ZELLE LLP**
John A. Carriel (*pro hac vice* forthcoming)
1775 Pennsylvania Ave, NW, Suite 375
Washington, DC 20006
Telephone: (202) 899-4111
Facsimile: (612) 336-9100
E-mail: jcarriel@zelle.com

*Attorneys for Plaintiffs Donald Berdeaux and Christine Grablis and [Proposed] Co-Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court of this __4th__ day of February 2021 by using the CM/ECF system and that a true and correct copy will be served via electronic mail to: All Parties and Counsel of Record.

_/s/ Donald J. Enright_____
DONALD J. ENRIGHT