# EXHIBIT A

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| CHRISTINE GRABLIS, individually; and on behalf of All Others Similarly Situated | ) ) ) ) |
| _Plaintiff(s)_ | ) |
| v. | ) |
| ONECOIN LTD., a foreign corporation; RUJA IGNATOVA, an individual; KONSTANTIN IGNATOV, an individual; SEBASTIAN GREENWOOD, an individual; and MARK SCOTT, an individual | ) ) ) ) ) |
| _Defendant(s)_ | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  ONECOIN LTD.
12 Tsar Osvoboditel Blvd.
Sofia 1000, Bulgaria

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Michael L. Braunstein, Esq.      - and -      David C. Silver, Esq.
The Braunstein Law Firm, PLLC                  Silver Miller
3 Eberling Drive                               11780 W. Sample Road
New City, NY 10956                             Coral Springs, FL 33065
E-mail: MBraunstein@braunsteinlawfirm.com      E-mail: DSilver@SilverMillerLaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date:  5/8/2019                                    /s/ J. Gonzalez

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                        *Server's signature*

                                        _____
                                        *Printed name and title*


                                        _____
                                        *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | |
|---|---|
| CHRISTINE GRABLIS, individually; and on behalf of All Others Similarly Situated <br><br> *Plaintiff(s)* <br><br> v. <br><br> ONECOIN LTD., a foreign corporation; RUJA IGNATOVA, an individual; KONSTANTIN IGNATOV, an individual; SEBASTIAN GREENWOOD, an individual; and MARK SCOTT, an individual <br><br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br><br> Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  RUJA IGNATOVA
12 Tsar Osvoboditel Blvd.
Sofia 1000, Bulgaria

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

| | | |
|---|---|---|
| Michael L. Braunstein, Esq. | - and - | David C. Silver, Esq. |
| The Braunstein Law Firm, PLLC | | Silver Miller |
| 3 Eberling Drive | | 11780 W. Sample Road |
| New City, NY 10956 | | Coral Springs, FL 33065 |
| E-mail: MBraunstein@braunsteinlawfirm.com | | E-mail: DSilver@SilverMillerLaw.com |

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  5/8/2019

/s/ J. Gonzalez
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | |
|---|---|
| CHRISTINE GRABLIS, individually;<br>and on behalf of All Others Similarly Situated<br><br>*Plaintiff(s)*<br>v.<br>ONECOIN LTD., a foreign corporation; RUJA<br>IGNATOVA, an individual; KONSTANTIN IGNATOV,<br>an individual; SEBASTIAN GREENWOOD, an<br>individual; and MARK SCOTT, an individual<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  SEBASTIAN GREENWOOD
12 Tsar Osvoboditel Blvd.
Sofia 1000, Bulgaria

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

| Michael L. Braunstein, Esq. | - and - | David C. Silver, Esq. |
|---|---|---|
| The Braunstein Law Firm, PLLC | | Silver Miller |
| 3 Eberling Drive | | 11780 W. Sample Road |
| New City, NY 10956 | | Coral Springs, FL 33065 |
| E-mail: MBraunstein@braunsteinlawfirm.com | | E-mail: DSilver@SilverMillerLaw.com |

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



*CLERK OF COURT*

Date:  5/8/2019 _____  /s/ J. Gonzalez

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____              _____
                                                              *Server's signature*

                                                    _____
                                                              *Printed name and title*


                                                    _____
                                                              *Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DONALD BERDEAUX and CHRISTINE
GRABLIS, Individually and on Behalf of All
Others Similarly Situated,

                       Plaintiffs,

          -against-

ONECOIN LTD.; RUJA IGNATOVA,
KONSTANTIN IGNATOV; SEBASTIAN
GREENWOOD; MARK SCOTT; IRINA
ANDREEVA DILINSKA; DAVID PIKE;
and NICOLE J. HUESMANN,

                    Defendants.

Case No.: 1:19-cv-04074-VEC

Hon. Valerie E. Caproni

**PLAINTIFFS' RENEWED MOTION FOR LEAVE TO EFFECT ALTERNATIVE
SERVICE ON DEFENDANTS ONECOIN LTD., RUJA IGNATOVA,
SEBASTIAN GREENWOOD, AND IRINA ANDREEVA DILINSKA**

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR RESPECTIVE
ATTORNEYS OF RECORD:**

     **PLEASE TAKE NOTICE** that Plaintiffs, by and through their undersigned counsel and

pursuant to FED. R. CIV. P. 4(f)(3), FED. R. CIV. P. and N.Y. C.P.L.R. § 308(5), shall move before

this Honorable Court for entry of an Order granting Plaintiffs leave to effectuate alternative service

of the First Amended Complaint and Summons in this matter upon defendants OneCoin Ltd., Ruja

Ignatova, Sebastian Greenwood, and Irina Andreeva Dilinska via International Registered Mail,

e-mail, and additional electronic means.

*[Signature on Following Page]*

Dated: December 3, 2019

Respectfully Submitted

LEVI & KORSINSKY, LLP

By: _____ /s/ William J. Fields _____
William J. Fields (5054952)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
E-mail: wfields@zlk.com

**LEVI & KORSINSKY, LLP**
Donald J. Enright (*pro hac vice* forthcoming)
John A. Carriel (*pro hac vice* forthcoming)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
E-mail: denright@zlk.com
E-mail: jcarriel@zlk.com

**SILVER MILLER**
David C. Silver (*pro hac vice* forthcoming)
Jason S. Miller (*pro hac vice* forthcoming)
11780 W. Sample Road
Coral Springs, FL 33065
Tel: (954) 516-6000
E-mail: DSilver@SilverMillerLaw.com
E-Mail: JMiller@SilverMillerLaw.com

*Attorneys for Plaintiffs Donald Berdeaux and Co-Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court of this <u>3rd</u> day of December 2019 by using the CM/ECF system and that a true and correct copy will be served via electronic mail to: **WENDY SCHWARTZ, ESQ. and LINDSAY A. BUSH, ESQ.**, Binder & Schwartz LLP, *Counsel for Defendant Mark Scott*, 366 Madison Avenue - 6th Floor, New York, NY 10017; E-mail: WSchwartz@BinderSchwartz.com; LBush@BinderSchwartz.com; **JEFFREY HARRIS LICHTMAN, ESQ. and JEFFREY BENSON EINHORN, ESQ.**, Law Offices of Jeffrey Lichtman, *Counsel for Defendant Konstantin Ignatov*, 11 E. 44th Street, Ste. 501, New York, NY 10017; E-mail: Jl@jeffreylichtman.com; Einhorn@jeffreylichtman.com; **MARTIN R. RASKIN, ESQ.**, Raskin & Raskin, P.A., *Counsel for Defendant David Pike*, 201 Alhambra Circle, Suite 1050, Coral Gables, FL 33134; E-mail: Mraskin@raskinlaw.com; **BRADLEY A. SILVERMAN, ESQ.**, *Counsel for Defendant Nicole J. Huesmann*, Hamilton, Miller & Brithisel LLP, 150 Southeast Second Avenue, Suite 1200, Miami, FL 33134; E-mail:Bsilverman@hamiltonmillerlaw.com.

_____*/s/ William J. Fields*_____
William J. Fields

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DONALD BERDEAUX and CHRISTINE
GRABLIS, Individually and on Behalf of All
Others Similarly Situated,

                       Plaintiffs,

           -against-

ONECOIN LTD.; RUJA IGNATOVA,
KONSTANTIN IGNATOV; SEBASTIAN
GREENWOOD; MARK SCOTT; IRINA
ANDREEVA DILINSKA; DAVID PIKE;
and NICOLE J. HUESMANN,

                    Defendants.

Case No.: 1:19-cv-04074-VEC

Hon. Valerie E. Caproni

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR
LEAVE TO EFFECT ALTERNATIVE SERVICE ON DEFENDANTS ONECOIN LTD.,
RUJA IGNATOVA, SEBASTIAN GREENWOOD, AND IRINA ANDREEVA DILINSKA**

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT .......................................................................................1

RELEVANT PROCEDURAL HISTORY .....................................................................4

ARGUMENT ...................................................................................................................5

    I.      STANDARDS OF LAW .......................................................................................5

           A.      Alternative Service Pursuant to Rule 4(f)(3) ...............................................5

           B.      Alternative Service Pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5)..6

           C.      Alternative Service Must Comport With Constitutional Due Process........7

    II.      PLAINTIFFS HAVE MADE DILIGENT EFFORTS TO DETERMINE THE
           UNSERVED DEFENDANTS' CURRENT ADDRESSES ...................................7

           A.      Defendant OneCoin's Current Headquarters is Located at the UAE Address
                    ......................................................................................................................9

           B.      Until November 30, 2019, the OneCoin Website Was Fully Functional; and
                 the Websites for OneCoin's Related Entities Remain Accessible............10

           C.      Plaintiffs Are Unable to Determine The Locations of the Unserved
                 Individual Defendants ................................................................................12

    III.    ALTERNATIVE SERVICE IS APPROPRIATE UNDER THE
           CIRCUMSTANCES ...........................................................................................14

           A.      Plaintiffs' Proposed Methods of Alternative Service Are Not Prohibited By
                 International Agreement And Thus Are Appropriate Under Rule 4(f)(3) .15

                 1.      Service by International Registered Mail ......................................16

                  2.      Service by Electronic Mail and Social Media...............................16

            B.      Alternative Service Upon Defendant Greenwood Pursuant to Rule 4(e)(1)
                 and N.Y. C.P.L.R. 308(5) is Appropriate to Ensure Service is Properly
                 Accomplished Irrespective of Greenwood's Present Location.................18

           C.      Plaintiffs' Proposed Methods of Service Are Reasonably Calculated to
                 Provide the Unserved Defendants with Notice of this Action and Afford
                 them an Opportunity to Present their Objections to the Charges Against
                 Them ..........................................................................................................20

CONCLUSION...............................................................................................................24

## Table of Authorities

**Page(s)**

### Cases

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen,*
No. 14-CV-1112 (VSB), 2018 U.S. Dist. LEXIS 169603 (S.D.N.Y. Sep. 30, 2018) ................................................................................................ 8

*Advanced Aerofoil Techs., AG v. Todaro,* No. 11-cv-9505 (ALC), 2012 U.S. Dist. LEXIS 12383, at *3 (S.D.N.Y. Jan 31, 2012) ......................................... 5

*Contimortgage Corp. v. Isler,*
48 AD3d 732 (2d Dept 2005) ............................................................. 19

*D.R.I., Inc. v. Dennis,*
No. 03-cv-10026 (PKL), 2004 U.S. Dist. LEXIS 22541 (S.D.N.Y. June 2, 2004) ................................................................................. 6, 18, 19, 20

*Dama S.P.A. v. Does,*
No. 15-CV-4528 (VM), 2015 WL 10846737 (S.D.N.Y. June 15, 2015) ........................... 16

*DLJ Mortg. Capital, Inc. v. Molyaev,*
2015 NY Slip Op 31425(U), 2015 N.Y. Misc. LEXIS 2806 (Sup. Ct. July 20, 2015) .............................................................................. 7, 19

*Ferrarese v. Shaw,*
164 F. Supp. 3d 361 (E.D.N.Y. 2016) ................................................. 18

*In GLG Life Tech Corp. Sec. Litig.,*
287 F.R.D. 262 (S.D.N.Y. 2012) ......................................................... 5

*KPN B.V. v. Corcyra D.O.O.,*
2009 U.S. Dist. LEXIS 20906 (S.D.N.Y. Mar. 16, 2009) ..................................... 24

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,*
265 F.R.D. 106 (S.D.N.Y. 2010) ................................................... 3, 5, 17

*Markoff v. South Nassau Community Hosp.,*
91 A.D.2d 1064 (App. Div. 2d Dep't 1983) ............................................. 7

*McCluskey v. Belford High Sch.,*
No. 09-cv-14345 (LPZ), 2010 WL 2696599 (E.D. Mich. June 24, 2010) ....................... 22

*Microsoft Corp. v. Doe,*
No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122 (E.D.N.Y. Nov. 8, 2012) ........................................................................... 8

*Mullane v. Cent. Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ................................................................ 7, 20

*NYKCool A.B. v. Pac. Int'l Servs., Inc.,*
66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014) ............................................. 21

*Payne v. McGettigan's Mgmt. Servs. LLC*,
   No. 19cv1517 (DLC), 2019 U.S. Dist. LEXIS 200872 (S.D.N.Y. Nov. 19,
   2019) .................................................................................................................... 20

*Philip Morris USA Inc. v. Veles Ltd.*,
   No. 06 CV 2988(GBD), 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12,
   2007) ................................................................................................................. 8, 22

*Popular Enters., LLC v. Webcom Media Grp., Inc.*,
   225 F.R.D. 560 (E.D. Tenn. 2004) ...................................................................... 17

*Prediction Co. LLC v. Rajgarhia*,
   No. 09-cv-07459 (SAS), 2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) .............. 16

*Rio Properties, Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ............................................................................... 6

*RSM Prod. Corp. v. Fridman*,
   No. 06-cv-11512 (DLC), 2007 WL 1515068 (S.D.N.Y. May 24, 2007) .............. 17

*SEC v. HGI, Inc.*,
   No. 99-3866 (DLC), 1999 WL 1021087 (S.D.N.Y. Nov. 8, 1999) ...................... 19

*SEC v. Nnebe*,
   No. 01-cv-5247 (KMW), 2003 U.S. Dist. LEXIS 2443 (S.D.N.Y. Feb. 19,
   2003) ............................................................................................................. 6, 7, 18

*Snyder v. Energy Inc.*,
   857 N.Y.S.2d 442 (Civ. Ct. 2008) ....................................................................... 18

*St. Francis Assisi v. Kuwait Fin. House*,
   No. 3:16-cv-3240 (LB), 2016 U.S. Dist. LEXIS 136152 (N.D. Cal. Sep. 30,
   2016) ..................................................................................................................... 23

*Sulzer Mixpac AG v. Medenstar Indus. Co.*,
   312 F.R.D. 329 (S.D.N.Y. 2015) .................................................................... 21, 22

*UBS Fin. Servs. v. Berger*,
   No. 13-cv-03770 (LB), 2014 U.S. Dist. LEXIS 193761 (N.D. Cal. Apr. 24,
   2014) ..................................................................................................................... 22

*United States v. Lebanese Canadian Bank SAL*,
   285 F.R.D. 262 (S.D.N.Y. 2012) ................................................................... 3, 5, 17

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
   2018 U.S. Dist. LEXIS 163356 (S.D.N.Y. Sep. 21, 2018) ................................... 23

*Zhang v. Baidu.Com Inc.*,
   293 F.R.D. 508 (S.D.N.Y. 2013) ...................................................................... 5, 6

## Rules

FED. R. CIV. P. 4(e)(1) .................................................................................................... *passim*

Fed. R. Civ. P. 4(f)(3) ................................................................................................ *passim*

FED. R. CIV. P. 4(h)(2) ................................................................................................ 5

N.Y. C.P.L.R. § 308(1) ............................................................................................ 6, 19

N.Y. C.P.L.R. § 308(2) ............................................................................................ 6, 19

N.Y. C.P.L.R. § 308(4) ............................................................................................ 6, 19

N.Y. C.P.L.R. § 308(5) ............................................................................................. *passim*

**Other Authorities**

The Convention on the Service Abroad of Judicial and Extrajudicial Documents
    in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No.
    6638................................................................................................................... 16

Lead Plaintiff Donald Berdeaux ("Berdeaux") and Plaintiff Christine Grablis ("Grablis" and together with Berdeaux, "Plaintiffs") respectfully submit this memorandum of law in support of their renewed motion pursuant to FED. R. CIV. P. Rule 4(f)(3), for an order granting Plaintiffs leave to effectuate service of the First Amended Complaint [ECF No. 40] ("FAC") and Summons in this matter ("Service Documents") upon defendants OneCoin Ltd. (Dubai) ("OneCoin"), Ruja Ignatova ("Ignatova"), Sebastian Greenwood ("Greenwood"), and Irina Andreeva Dilinska ("Dilinska" and together with Ignatova and Greenwood, the "Unserved Individual Defendants") (collectively, the "Unserved Defendants") via International Registered Mail, e-mail, and electronic messages via, *inter alia*, OneCoin, Ignatova and Greenwood's respective social media accounts on LinkedIn and/or Facebook.[1]

## SUMMARY OF ARGUMENT

On October 1, 2019, Plaintiffs filed their initial motion for leave to effect alternative service on the Unserved Defendants [ECF No. 59] ("First Motion"). On November 1, 2019, the Court denied the First Motion without prejudice, finding that Plaintiffs had not: (i) shown that they have taken reasonable steps to attempt to serve the Unserved Defendants; (ii) submitted documentation establishing that the United Arab Emirates ("UAE") physical address at which Plaintiffs seek to effect service is OneCoin's principal office; (iii) established that the onecoin.eu e-mail domain is still functional given that the OneCoin website located at "www.onecoin.eu" (the "OneCoin Website") appears to be non-functional; and (iv) shown that alternative service as to Defendant Greenwood under Rule 4(f)(3) is appropriate as the service thereunder is reserved for defendants

---

[1] As detailed herein, because it is unknown whether Defendant Greenwood is currently located within the United States or in a foreign jurisdiction, Plaintiffs' request leave to effect alternative service as to Defendant Greenwood under both Rule 4(f)(3) as well as Rule 4(e)(1) [FED. R. CIV. P. 4(e)(1)] and N.Y. C.P.L.R. § 308(5).

located in a foreign jurisdiction and Plaintiffs have alleged that Greenwood was extradited to the United States in November 2018. [ECF No. 66] ("Alternative Service Order").

The Court's Alternative Service Order suggested that "Plaintiffs address these concerns in any renewed application for alternative service." *Id*. at 3. Per the Court's recommendation, each of these concerns are addressed herein. Specifically, Plaintiffs: (i) submit the Declaration of John A. Carriel in Support of Plaintiffs' Renewed Motion ("Carriel Declaration" or "Carriel Decl.") describing Plaintiffs' due diligence; (ii) support their assertion that OneCoin's current base of operations is located at Unit 3102, 31st Floor, Platinum Towers - Cluster I, Jumeirah Lakes Towers Dubai, United Arab Emirates (the "UAE Address") by reference to OneCoin's public representations including, *inter alia*, photographs of the OneCoin office located at the UAE Address published on the OneCoin Website; (iii) provide evidence that, until November 30, 2019, the OneCoin Website was still operational and only appeared to be non-functional due to OneCoin geoblocking internet protocol ("IP") addresses originating from within the United States;[2] and (iv) explain that Defendant Greenwood's current physical location is presently unknown and thus, to ensure that service is properly accomplished, propose alternative service as to Greenwood under Rule 4(f)(3) in the event he is not located within the United States as well as under Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5) in the event he is located within the United States.

---

[2] As discussed herein, given that the OneCoin Website went offline on November 30, 2019, and there is no guarantee that the website will be put online again, Plaintiffs also request leave to serve the Unserved Defendants via e-mail addresses hosted on the domains of OneCoin's related entities—which, as of December 1, 2019, are still live—including, https://www.onelife.eu (the "OneLife Website") and https://www.oneworldfoundation.eu (the "OneWorld Website"). Additionally, Plaintiffs request leave to accomplish service via electronic messages to multiple OneCoin social media accounts, the contact form located on the OneLife Website, and the contact form located on https://www.oneacademy.eu/en/about#contactForm (the "OneAcademy Website").

As discussed in Plaintiffs' First Motion, the UAE is not a signatory to an international agreement on service of process with the United States. Therefore, Plaintiffs' proposed methods of effectuating service of process upon the Unserved Defendants are not prohibited by an international agreement; and thus, leave to effectuate alternative service under Rule 4(f)(3) is "'committed to the sound discretion of the district court.'" *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)).

Accordingly, so as not to delay the prosecution of the instant action ("Action"), Plaintiffs respectfully request that the Court permit alternative service upon the Unserved Defendants by:

    (i)       mailing the Service Documents (via First Class International Registered Mail through the U.S. Postal Service) to OneCoin's UAE Address;

    (ii)      e-mailing the Service Documents to: (a) press@onecoin.eu, office@onecoin.eu, press@onelife.eu, info@onelife.eu, and office@oneworldfoundation.eu, (b) ruja@onecoin.eu, (c) sebgreenwood@gmail.com and sgreenwood@loopium.com, and (d) irina@onecoin.eu; and

    (iii)     sending electronic messages: (a) through the contact forms located on the OneLife Website and the OneAcademy Website, (b) to various OneCoin-related Facebook accounts, and (c) to Ignatova and Greenwood's respective social media accounts on LinkedIn and Facebook.

Additionally, given that Greenwood's location is presently unknown and there are indications that he may be currently located within the United States, Plaintiffs also seek leave, in an abundance of caution, to effect alternative service as to Greenwood under Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5). Specifically, in the event that Greenwood is in custody within the United States, Plaintiffs respectfully request that the Court, pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5), permit alternative service upon Defendant Greenwood by mailing the Service Documents to the prosecution team in the U.S. Attorney's Office for the Southern District of New York that is

prosecuting the parallel criminal proceedings against defendants Mark S. Scott ("Scott"), Konstantin Ignatov ("Ignatov"), Ignatova, and David Pike ("Pike") in the Criminal Actions.[3]

## RELEVANT PROCEDURAL HISTORY

The Action arises out of Defendants' participation in a Ponzi/Pyramid multi-level marketing fraudulent scheme. The primary goal of the scheme was to enrich Defendants at the direct expense of Plaintiffs and the proposed class. On May 7, 2019, Grablis commenced the instant Action, on behalf of herself and other similarly situated victims, against Defendants OneCoin, Ignatova, Ignatov, Greenwood, and Scott. On June 4, 2019, Defendant Scott was served with a summons and copy of the initial Complaint. [ECF No. 15]. On July 3, 2019, Defendant Ignatov was served with a summons and copy of the initial Complaint. [ECF No. 36].

On July 24, 2019, the Court appointed Berdeaux as Lead Plaintiff pursuant to the Private Litigation Securities Reform Act and ordered Berdeaux to file an Amended Complaint no later than August 2, 2019. [ECF No. 39]. On August 2, 2019, Plaintiffs filed the FAC. [ECF No. 40]. The FAC alleges claims against three newly-named defendants: Dilinska, Nicole J. Huesmann ("Huesmann"), and Pike.

On August 23, 2019, the Court issued an order staying all proceedings in this Action until all Defendants have been served. [ECF No. 46]. On September 9, 2019, Defendants Pike and Huesmann were each served with summonses and copies of the FAC. [ECF Nos. 56–57].

On October 1, 2019, Plaintiffs filed their First Motion requesting leave to effect alternative service upon the Unserved Defendants. [ECF No. 60]. On November 1, 2019, the Court denied the First Motion in its Alternative Service Order. [ECF No. 66].

---

[3] The term "Criminal Actions" refers to jointly to *United States v. Scott, et al.*, 1:17-cr-630 (ER) (S.D.N.Y.) ("Scott Criminal Action") and *United States v. Pike*, 1:19-mj-08240 (S.D.N.Y.) ("Pike Criminal Action").

## <u>ARGUMENT</u>

### I.  STANDARDS OF LAW

#### A.  Alternative Service Pursuant to Rule 4(f)(3)

Rule 4(f)(3) of the Federal Rules of Civil Procedure provides that "an individual . . . may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(3). Similarly, Rule 4(h)(2) permits service of a corporation "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." FED. R. CIV. P. 4(h)(2); *Madu*, 265 F.R.D. at 115.

"[N]othing in Rule 4(f) itself or controlling case law suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule 4(f)(3)." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (citation omitted). Service under Rule 4(f)(3) is "'neither a last resort nor extraordinary relief. It is merely one means among several which enable service of process on international defendant.'" *Lebanese Canadian Bank SAL*, 285 F.R.D. at 265–66 (quoting *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-cv-9505 (ALC), 2012 U.S. Dist. LEXIS 12383, at *3 (S.D.N.Y. Jan 31, 2012)). To the contrary, "[c]ourts have long held that there is 'no hierarchy among the subsections in Rule 4(f).'" *Zhang v. Baidu.Com Inc.*, 293 F.R.D. 508, 511 (S.D.N.Y. 2013) (citation omitted). Indeed, "'court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2) . . ..'" *Id.* at 511 (citation omitted)

In short, where a defendant is not located within the United States, alternative service under Rule 4(f)(3) is permissible so long as it is "'(1) directed by the court; and (2) not prohibited by

international agreement. No other limitations are evident from the text . . . .'" *Id.* at 511 (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–15 (9th Cir. 2002)).

**B.     Alternative Service Pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5)**

Rule 4(e)(1) "provides that service of process upon an individual located within a judicial district of the United States may be effected 'pursuant to the law of the state in which the district court is located, or in which service is effected.'" *SEC v. Nnebe*, No. 01-cv-5247 (KMW), 2003 U.S. Dist. LEXIS 2443, at *7 (S.D.N.Y. Feb. 19, 2003) (quoting FED. R. CIV. P. 4(e)(1)).  New York C.P.L.R. § 308(5) "permits a plaintiff to serve the summons and complaint 'in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.'" *D.R.I., Inc. v. Dennis*, No. 03-cv-10026 (PKL), 2004 U.S. Dist. LEXIS 22541, at *2 (S.D.N.Y. June 2, 2004) (quoting N.Y. C.P.L.R. § 308(5)).

Sections one, two, and four of N.Y. C.P.L.R. § 308 authorizes service of process upon a natural person by either: (i) personal service of the summons within the state [N.Y. C.P.L.R. § 308(1)]; (ii) delivering the summons "within the state to a person of a suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and by "either mailing the summons to the individual's "last known residence or by mailing the summons by first class mail" to the individual's "actual place of business" [N.Y. C.P.L.R. § 308(2)]; or (iii) affixing the summons to the individual's actual place of business, dwelling place, or usual place of abode within the state, and mailing the summons to the individual's last known resident or "actual place of business" [N.Y. C.P.L.R. § 308(4)].

"The meaning of 'impracticable' depends on the facts and circumstances of a particular case." *D.R.I., Inc.*, 2004 U.S. Dist. LEXIS 22541, at *2 (citation omitted).  "Although CPLR § 308(5) does not require a showing of due diligence or of actual prior attempts to serve a party

under the other provisions of the statute, [] a plaintiff seeking to effect alternative service must make some showing that the other prescribed methods of service could not be made." *Nnebe*, 2003 U.S. Dist. LEXIS 2443, at \*7 (internal citations and quotation marks omitted); *Markoff v. South Nassau Community Hosp.*, 91 A.D.2d 1064, 1065 (App. Div. 2d Dep't 1983) (same).

### C. Alternative Service Must Comport With Constitutional Due Process

Regardless of whether alternative service is authorized pursuant to Rule 4(f)(3) or Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5), the proposed methods of service must comport with the constitutional requirement of due process, and be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also DLJ Mortg. Capital, Inc. v. Molyaev*, 2015 NY Slip Op 31425(U), 2015 N.Y. Misc. LEXIS 2806, at \*2 (Sup. Ct. July 20, 2015) (same).

Plaintiffs' proposed methods of alternative service under Rule 4(f)(3) as well as Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5) meet all of these legal requirements.

## II.  PLAINTIFFS HAVE MADE DILIGENT EFFORTS TO DETERMINE THE UNSERVED DEFENDANTS' CURRENT ADDRESSES

The Court's Alternative Service Order found that "Plaintiffs have not established a factual basis for their assertion that they have taken reasonable steps to find and serve the Unserved Defendants." [ECF No. 66 at 2]. Plaintiffs submit the Carriel Declaration herewith to establish that Plaintiffs have made persistent, diligent and varied efforts to identify the Unserved Defendants' current addresses which Plaintiffs could use to effectuate service of process by traditional means under Rule 4. Specifically, as detailed in the Carriel Declaration, Plaintiffs' counsel has spent an extensive amount of time and resources in attempting to ascertain the Unserved Defendants' current locations by, *inter alia*: (1) reviewing all relevant materials in

Plaintiffs' possession; (2) reviewing court filings in the parallel Criminal Actions; (3) reviewing countless posts on internet forums, many of which required translation into English; (4) reviewing countless media reports concerning OneCoin, its founders, and the parallel Criminal Actions; (5) conducting hours of boolean searches, in English, Bulgarian, Russian, and Arabic, on multiple online search engines, including Google, Bing, DuckDuckGo, and Yandex, to obtain any and all publicly available information relating to OneCoin's current operations and the Unserved Individual Defendants' current locations; (6) utilizing virtual private networks to bypass OneCoin's geo-blocking of IP addresses originating within the United States; (7) combing through years of archived and cached internet forums and webpages; and (8) using online tools in an attempt to obtain general geolocation data from the Unserved Defendants and OneCoin's related entities' domain names, IP addresses, and e-mail addresses. Carriel Decl. ¶ 3.

The foregoing investigative efforts establish that Plaintiffs have exercised reasonable diligence in attempting to discovery current physical addresses to accomplish service upon the Unserved Defendants. *See, e.g.*, *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 U.S. Dist. LEXIS 169603, at *9 (S.D.N.Y. Sep. 30, 2018) ("Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so.") (citing *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988(GBD), 2007 U.S. Dist. LEXIS 19780, at *3–4 (S.D.N.Y. Mar. 12, 2007)); *Microsoft Corp. v. Doe*, No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122, at *3–4, 8 (E.D.N.Y. Nov. 8, 2012) (finding "email and internet-based service of process" appropriate where "after months of investigation," plaintiffs had "only been able to ascertain that Defendants most likely reside[d] in the Russian Federation, Ukraine and/or Romania").

While Plaintiffs have been unable to locate more exact information as to the Unserved Individual Defendants' current physical locations, the foregoing investigative efforts have yielded the following information.

### A. Defendant OneCoin's Current Headquarters is Located at the UAE Address

Until it was taken offline on November 30, 2019, the OneCoin Website contained several representations that OneCoin is currently based and operated out of Dubai and that its "Head Office" is located at the UAE Address. For example, the OneCoin Website's "terms and conditions," stated that "ONECOIN LIMITED is a company duly registered and existing under the laws of Dubai";[4] and the OneCoin Website contained several photographs of OneCoin's office located at the UAE Address under the heading "Head Office: Dubai."[5] Similarly, numerous affiliate marketers promoting OneCoin list its head office as being located in Dubai at the UAE Address.[6]

Furthermore, in connection with prosecuting the Criminal Actions, the government has also noted OneCoin's substantial presence in the UAE. For example, in arguing that Defendant Ignatov—Defendant Ignatova's brother—should be detained pending trial, the government argued that "OneCoin Ltd. also has significant ties to Dubai, United Arab Emirates ('UAE')—another country which will not extradite to the United States—including a physical office and accounts at

---

[4] *See* Carriel Decl. ¶ 4, Ex. 1 (copy of terms located at https://www.onecoin.eu/en/terms-and-conditions as of November 26, 2019).

[5] *Id*. ¶ 5, Ex. 2 (copy of webpage located at https://www.onecoin.eu/en/media-galleries as of November 26, 2019).

[6] *See, e.g.*, https://onecoinsign.com/about_onelife/requisites; https://newcryptoera.blogspot.com/p/one-onecoin-office-in-sofia-bulgaria.html.

financial institutions there, providing another location to which the defendant could easily flee prosecution." *See* Scott Criminal Action, ECF 90 at 7.

In addition to OneCoin's representations on the OneCoin Website demonstrating that the company's principal operations are located at the UAE Address, OneCoin also shares the UAE Address with Coins United DMCC ("Coins United").[7] Coins United is one of OneCoin's numerous related entities used to further the fraudulent OneCoin scheme. Specifically, Coins United is the entity created by Defendant Dilinska and Ignatova to issue so-called "aurum coins."[8] Stated otherwise, OneCoin and Coins United share the same UAE Address because they are both part of the same fraudulent scheme. Indeed, even the business card of Coins United's "Administrative Officer"—Velizara Ivanova—lists her e-mail address as "velizara@onecoin.eu." and address as the UAE Address. *See* Carriel Decl. ¶ 6, Ex. 3.

Based on the foregoing, Plaintiffs submit that there are adequate indications that OneCoin's current headquarters is located at the UAE Address and therefore, mail service upon OneCoin and its executives through the UAE Address is appropriate.

**B.  Until November 30, 2019, the OneCoin Website Was Fully Functional; and the Websites for OneCoin's Related Entities Remain Accessible**

The Court's Alternative Service Order found that Plaintiffs had not shown that the onecoin.eu e-mail addresses Plaintiffs propose to use for service are in fact functional, which the

---

[7] *See* https://www.yellowpages.ae/l-df-01-03-00053111-coins-united-dmcc.html.

[8] *See* https://www.facebook.com/1314119185315711/posts/coins-united-dmcc31st-floor-platinum-tower-cluster-1jumeirah-lakes-towersdubai-l/1347573528636943/; https://www.facebook.com/onecoin.hope/posts/contact-address-for-onelife-office-onecoinonecoin-physical-addressesonecoin-offi/362618360917845/; and https://behindmlm.com/companies/onecoin/onecoins-bungled-us-trademark-application/.

Court stated "is especially concerning because OneCoin's website, which matches the onecoin.eu email domains, appears to be non-functional." [ECF No. 66 at 3].

Prior to November 30, 2019, the OneCoin Website only appeared to be non-functional to users that attempted to access the website from an IP address originating within the United States.[9] Due to this geo-blocking, the OneCoin Website only **_appeared_** to be non-functional if accessing the site using an IP address originating within the United States. *Id.* However, until November 30, 2019, the website remained fully accessible through the use of VPN routing access to the OneCoin website through an IP address originating within, for example, Europe.[10] The most recent capture of the OneCoin Website archived through the Internet Archive Wayback Machine on web.archive.org is from January 17, 2019.[11]

While the OneCoin Website was taken offline on November 30, 2019, the website's DNS records indicate that OneCoin continues to own the domain name.[12] Given that OneCoin still owns the OneCoin Website's domain and the website may go live again, Plaintiffs continue to request leave to effect service via e-mail to various e-mail addresses hosted on the OneCoin

---

[9] *See* Carriel Decl. ¶ 7, Ex. 4 (capture of results from the tool available on https://www.uptrends.com/tools/uptime showing that, as of November 26, 2019, the domain "www.onecoin.eu" remained accessible from IP addresses originating from numerous countries, including France, Belgium, Germany, United Kingdom, South Korea, India, and Japan but the OneCoin Website remained inaccessible from IP addresses originating within the United States, including those from New York, Los Angeles, Tampa, Seattle, Honolulu, and San Diego).

[10] *Id.* ¶ 8, Ex. 5 (screenshot showing access to the onecoin.eu website on November 26, 2019, through the use of VPN routing access to the website through a server in Europe).

[11] *See* https://web.archive.org/web/20190117105418/https://www.onecoin.eu/en. The fact that the OneCoin Website was archived on that date indicates that the OneCoin Website's geo blocking of IP addresses originating in the United States was not adopted until after January 17, 2019.

[12] *See OneCoin Website Down, DNS Record Under Investigation*, BehindMLM (Dec. 1, 2019), *available at* https://behindmlm.com/companies/onecoin/onecoin-website-down-dns-record-under-investigation/.

Website's domain.  Because it is possible that the OneCoin Website will not go live again, Plaintiffs also request leave to effect service via: (i) e-mail to addresses hosted on the OneLife Website and the OneWorld Website—websites for two of OneCoin's related entities;[13] (ii) the contact forms located on the OneLife Website and the OneAcademy Website; and (iii) various OneCoin-related social media accounts.

### C.  Plaintiffs Are Unable to Determine The Locations of the Unserved Individual Defendants

With respect to Defendants Ignatova and Dilinska, it is Plaintiffs' understanding that both individuals are fugitives from justice.[14]  Indeed, there is even a British Broadcasting Corporation podcast entitled "The Missing Cryptoqueen" which recounts investigative efforts to locate Defendant Ignatova.[15]  Both Ignatova and Dilinska are, or until recently were, high-level executives employed by Defendant OneCoin and are believed to be located in Europe; however, their exact whereabouts remain unknown.

---

[13] As of the date of this Renewed Motion, both websites remain accessible.  *See* Carriel Decl., ¶9, Ex. 6 (capture of results from the tool available on https://www.uptrends.com/tools/uptime showing that, as of December 1, 2019, the domain "www.onelife.eu" remained accessible from IP addresses originating in all tested locations, including those from within the United States); *id.* ¶10, Ex. 7 (capture of results from the tool available on https://www.uptrends.com/tools/uptime showing that, as of December 1, 2019, the domain "www.oneworldfoundation.eu" remained accessible from IP addresses originating in numerous locations, including those from within the United States).

[14] *See., e.g.*, Rory Cellan-Jone, *Mystery of the Missing Cryptoqueen Ruja Ignatova*, BBC (Sept. 26, 2019), *available at* https://www.bbc.com/news/technology-49826161; *Konstantin's Testimony Drops One OneCoin Bombshell After Another*, BehindMLM (Nov. 8, 2019), *available at* https://behindmlm.com/companies/onecoin/konstantins-testimony-drops-one-onecoin-bombshell-after-another/; https://www.bbc.com/news/stories-50435014.

[15] The final episode of "The Missing Cryptoqueen" aired on November 5, 2019.  *See Cryptoqueen: How this Woman Scammed the World, then Vanished*, BBC (Nov. 24, 2019), *available at* https://www.bbc.com/news/stories-50435014.

While several media outlets have reported that Defendant Greenwood was arrested in Thailand and extradited to the United States in November 2018,[16] the Department of Justice ("DOJ") has not released any public information confirming that Greenwood has been taken into U.S. custody.[17]  Simply put, there has been no public information released concerning his location, purported extradition to the United States, or potential criminal charges against him since his initial arrest in Thailand was reported in November 2018.   In light of the DOJ's complete silence regarding Defendant Greenwood, Plaintiffs have been unable to determine whether Greenwood is located within the United States or a foreign jurisdiction.

If Defendant Greenwood is located within the United States, given his reported arrest and extradition, Greenwood would likely be within the government's custody.  On the other hand, if Greenwood is not located within the United States, because OneCoin is headquartered in the UAE and Greenwood is a citizen of Sweden, Plaintiffs submit he would be located in either Europe or the UAE.  In either event, despite Plaintiffs' reasonable efforts to locate Greenwood, his current physical location remains unknown to Plaintiffs.  Based on the foregoing, and to ensure service is properly accomplished regardless of whether Greenwood is located within the United States or a

---

[16] *Cops Take New Tack as Crime Goes Global*, Bangkok Post (Nov. 5, 2018), *available at* https://www.bangkokpost.com/thailand/general/1570022/cops-take-new-tack-as-crime-goes-global ("The CSD [Thailand's Crime Suppression Division] also worked with the US Federal Bureau of Investigation (FBI) to apprehend Sebastian Greenwood who was wanted on a US international arrest warrant and an Interpol red notice for operating a digital currency pyramid scheme."); *see also* s *See, e.g.*, Peter J. Brown, *OneCoin 'Ponzi' at Last Heading to US Courts*, Asia Times (Feb. 22, 2019), *available at* https://www.asiatimes.com/2019/02/article/onecoin-ponzi-at-last-heading-to-us-courts/).

[17] *See, e.g.*, *Mark Scott OneCoin Case in Limine Motions Reveal Desperation*, BehindMLM (Oct. 22, 2018), *available at* https://behindmlm.com/companies/onecoin/mark-scott-onecoin-case-in-limine-motions-reveal-desperation/ ("Greenwood is believed to have been extradited to the US. Since then he's disappeared into an information black hole" which could indicate that "he's cooperating with the DOJ.").

foreign jurisdiction, Plaintiffs' Renewed Motion requests leave to effect alternative service as to Greenwood under Rule 4(f)(3) as well as Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5).

## III. ALTERNATIVE SERVICE IS APPROPRIATE UNDER THE CIRCUMSTANCES

Plaintiffs seek an Order authorizing the following proposed methods of service pursuant to Rule 4(f)(3) and, with respect to Defendant Greenwood, under Rule 4(e)( 1) and N.Y. C.P.L.R. § 308(5), which are reasonably designed to afford the Unserved Defendants with notice of this Action and afford them an opportunity to present their answer and defenses to this Action:

1. Mailing the Service Documents via First Class International Registered Mail through the U.S. Postal Service to:

- OneCoin Ltd.
  Unit 3102, 31st Floor,
  Platinum Towers - Cluster I, Jumeirah Lakes Towers
  Dubai, UAE

- Ruja Ignatova
  c/o OneCoin Ltd.
  Unit 3102, 31st Floor,
  Platinum Towers - Cluster I, Jumeirah Lakes Towers
  Dubai, UAE

- Sebastian Greenwood
  c/o OneCoin Ltd.
  Unit 3102, 31st Floor,
  Platinum Towers - Cluster I, Jumeirah Lakes Towers
  Dubai, UAE

- Irina Dilinska
  c/o OneCoin Ltd.
  Unit 3102, 31st Floor,
  Platinum Towers - Cluster I, Jumeirah Lakes Towers
  Dubai, UAE

2. E-mailing the Service Documents, return receipt requested to:

- Each of the Unserved Defendants at:
  o press@onecoin.eu;
  o office@onecoin.eu;

- 14 -

- o press@onelife.eu;
- o info@onelife.eu; and
- o office@oneworldfoundation.eu;

- Ruja Ignatova at:
  - o ruja@onecoin.eu;

- Sebastian Greenwood at:
  - o sebgreenwood@gmail.com; and
  - o sgreenwood@loopium.com; and

- Irina Dilinska at:
  - o irina@onecoin.eu.

3.  Transmission of the Service Documents through the Internet to:

- OneCoin through:
  - o https://www.facebook.com/onecoincompany/;
  - o https://www.facebook.com/OneCoin-708913922526031/
  - o https://www.facebook.com/OneLifeOfficial/; and
  - o https://www.facebook.com/oneworldfoundation.eu; and
  - o the contact forms located on:
    - ▪ https://www.onelife.eu/en/contacts; and
    - ▪ https://www.oneacademy.eu/en/about#contactForm;

- Ruja Ignatova through:
  - o https://www.facebook.com/onecoincompany/;
  - o https://www.facebook.com/DrRujaIgnatova.onecoin/; and
  - o https://bg.linkedin.com/in/ruja-ignatova-83929a161; and

- Sebastian Greenwood through:
  - o https://www.linkedin.com/in/thesebastiangreenwood; and
  - o https://www.facebook.com/sebastiangreenwood.onecoin/.[18]

**A.  Plaintiffs' Proposed Methods of Alternative Service Are Not Prohibited By International Agreement And Thus Are Appropriate Under Rule 4(f)(3)**

---

[18] In addition to the foregoing, given that Defendant Greenwood may be in custody within the United States, Plaintiffs respectfully request that the Court, pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. § 308(5), permit alternative service upon Defendant Greenwood via mailing the Service Documents to the prosecution team in the parallel Criminal Actions and requesting that the Service Documents be forwarded to Greenwood.

Plaintiffs' proposed methods of alternative service are not prohibited by international agreement, are reasonably calculated to give the Unserved Defendants notice of the charges against them, and are thus permissible.

### 1. Service by International Registered Mail

Plaintiffs seek leave to mail the Service Documents to the Unserved Defendants by International Registered Mail to Defendant OneCoin's headquarters at the UAE Address. As discussed *supra*, Section II.A., there is sufficient documentation to conclude that OneCoin's current headquarters is located at the UAE Address. The UAE is not a party to the Hague Service Convention. As for the Individual Unserved Defendants, their present addresses are currently unknown, and the Hague Service Convention only applies in cases where the address of a defendant to be served is known. *See* Hague Service Convention, art. I, Nov. 15, 1965, 20 U.S.T. 361 ("This Convention shall not apply where the address of the person to be served with the document is not known"); *see also Prediction Co. LLC v. Rajgarhia*, No. 09-cv-07459 (SAS), 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of the Hague Convention … because [defendant's] address is not known to [plaintiff].").

Additionally, Plaintiffs are unaware of any other international agreement which would prohibit Plaintiffs' proposed methods of service by electronic means. Therefore, the Court here may approve the proposed alternative means of service by registered mail, as such is not prohibited by an international agreement and, as described *infra*, comports with due process.

### 2. Service by Electronic Mail and Social Media

Because e-mail appears to be the primary method of communication that the Unserved Defendants have utilized (and, thus, clearly prefer), e-mail is reasonably calculated to apprise these defendants of this Action. *See Dama S.P.A. v. Does*, No. 15-CV-4528 (VM), 2015 WL 10846737, at *2 (S.D.N.Y. June 15, 2015) ("several recent Southern District of New York cases have

- 16 -

authorized e-mail service where a defendant was, as here, alleged to be an online China-based counterfeiting network linked to a functioning e-mail address but which otherwise remained anonymous.") (citations omitted).

Here, there is direct evidence that Ignatova and Dilinska used the e-mail addresses Plaintiffs seek to use in effecting alternative service in carrying out OneCoin's operations.[19]  *See Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (holding that Rule 4(f)(3) clearly authorizes service by e-mail where defendant's address was unknown and e-mails sent using the addresses defendant provided to the domain name registrar did not bounce back).  Similarly, Greenwood has communicated with Ignatova via e-mail concerning the business operations of OneCoin.  *See, e.g.*, FAC ¶ 74 (containing quotations from e-mails Greenwood sent regarding OneCoin).  While the OneCoin Website was taken offline on November 30, 2019, the websites for various OneCoin related entities are still accessible.  *See supra*, Section II.B.  Accordingly, Plaintiffs seek leave to effect service via e-mail addresses hosted on the OneCoin Website, OneLife Website and the OneWorld Website, the contact forms available on the OneLife Website and OneAcademy Website, and through various OneCoin-related social media accounts.

Since Plaintiffs' requested method of service is not prohibited by any international agreement, "[t]he decision of whether to order service of process under Rule 4(f)(3) is 'committed to the sound discretion of the district court.'"  *Lebanese Canadian Bank SAL*, 285 F.R.D. at 266 (quoting *Madu*, 265 F.R.D. at 115); *see also RSM Prod. Corp. v. Fridman*, No. 06-cv-11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) (same).

---

[19] *See, e.g.*, Scott Criminal Action, ECF No. 91 (e-mail records from October 10, 2016 demonstrating Ignatova's use of the e-mail address ruja@onecoin.eu); *see also* FAC ¶ 129 (discussing Dilinska's use of the "irina@onecoin.eu" e-mail address).

**B.** **Alternative Service Upon Defendant Greenwood Pursuant to Rule 4(e)(1) and N.Y. C.P.L.R. 308(5) is Appropriate to Ensure Service is Properly Accomplished Irrespective of Greenwood's Present Location**

As previously discussed, Rule 4(e)(1) authorizes service of process upon an individual located within the United States "'pursuant to the law of the state in which the district court is located, or in which service is effected.'" *Nnebe*, 2003 U.S. Dist. LEXIS 2443, at *7 (quoting FED. R. CIV. P. 4(e)(1)). N.Y. C.P.L.R § 308(5) "permits a plaintiff to serve the summons and complaint 'in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.'" *D.R.I., Inc.*, 2004 U.S. Dist. LEXIS 22541, at *2 (quoting N.Y. C.P.L.R. § 308(5)).

"Courts have found a showing of impracticability, and have authorized alternative service, where the defendant could not be located by means of a diligent search." *Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 365 (E.D.N.Y. 2016) (citing *Nnebe*, 2003 U.S. Dist. LEXIS 2443, at *7). "In addition, courts have found service to be impracticable where the defendant could not be located by means of a diligent search." *Id.* (collecting cases and finding that the SEC had made a showing of impracticability where defendant could not be located by, *inter alia*, searching "relevant computer databases" and inquiring "with the United States Postal Service").

With respect to service pursuant to subsection one of N.Y. C.P.L.R. § 308, Plaintiffs have demonstrated such would be impracticable because, as discussed *supra*, Section II.C., Plaintiffs have taken reasonable and diligent efforts to investigate and determine Defendant Greenwood's location yet have been unable to determine that location. *See, e.g.*, *Snyder v. Energy Inc.*, 857 N.Y.S.2d 442, 446 (Civ. Ct. 2008) ("A plaintiff can demonstrate that service by conventional means is 'impracticable' by making diligent, albeit unsuccessful, efforts to obtain information regarding a defendant's current residence, business address or place of abode") (citation omitted).

In short, personal service pursuant to N.Y. C.P.L.R. § 308(1) is impracticable because Greenwood's location remains unknown despite Plaintiffs' reasonable efforts.

Similarly, Plaintiffs have demonstrated that attempting service of process upon Greenwood pursuant to subsection two or four of N.Y. C.P.L.R. § 308 would be impracticable because Greenwood does not have an "actual place of business, dwelling place or usual place of abode" within New York. *See, e.g.*, *D.R.I., Inc.*, 2004 U.S. Dist. LEXIS 22541, at *3–4 (finding that service of process under N.Y. C.P.L.R. sections 308(1), (2), and (3) was "impracticable" where plaintiff had "performed searches for defendant Dennis's address, including a search that revealed information about Dennis on file with the Department of Motor Vehicles" and such "diligent efforts ha[d] proved unsuccessful"); *SEC v. HGI, Inc.*, No. 99-3866 (DLC), 1999 WL 1021087, at *1 (S.D.N.Y. Nov. 8, 1999) (finding proof of impracticability where, despite efforts to locate the defendant by "inquiring with the U.S. Postal Service and by searching computer databases, his whereabouts remain[ed] unknown"). Stated otherwise, service of process under N.Y. C.P.L.R. §§ 308(2) or 308(4) is impracticable because there is no location where Plaintiffs could attempt to either deliver the summons to a "person of suitable age and discretion" or affix the summons to its door.

"Once the impracticability standard is satisfied, due process requires that the method [of service] be 'reasonably calculated, under all the circumstances, to apprise' the defendant of the action." *DLJ Mortg. Capital, Inc.*, 2015 N.Y. Misc. LEXIS 2806, at *2 (quoting *Contimortgage Corp. v. Isler*, 48 AD3d 732, 734 (2d Dept 2005)).

**C. Plaintiffs' Proposed Methods of Service Are Reasonably Calculated to Provide the Unserved Defendants with Notice of this Action and Afford them an Opportunity to Present their Objections to the Charges Against Them**

Finally, the Service Documents are likely to reach each of the Unserved Defendants under Plaintiffs' proposed methods of service. "An order for alternative service must comply with due process requirements, which call for notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'" *Payne v. McGettigan's Mgmt. Servs. LLC*, No. 19cv1517 (DLC), 2019 U.S. Dist. LEXIS 200872, at *2–3 (S.D.N.Y. Nov. 19, 2019) (authorizing service via "international certified mail" to defendant's "home and business addresses in Dubai, United Arab Emirate, as well as by email at dmcgettigan@bonningtontower.com") (quoting *Mullane*, 339 U.S. at 314 (1950)).

First, as detailed *supra*, Section II.A., several sources, including OneCoin's own representations on the OneCoin Website, confirm that OneCoin's current "Head Office" is located within Dubai, and more specifically, at the UAE Address.[20] Accordingly, Plaintiffs' proposed method of effecting service by mailing to OneCoin's headquarters located at the UAE Address appears to be the most likely means to provide the Unserved Defendants with actual hard copies of the relevant documents. *D.R.I., Inc.*, 2004 U.S. Dist. LEXIS 22541, at *3 ("Service by certified mail to a defendant's last known address and by publication have been permitted as alternate forms of service reasonably calculated to apprise a defendant of an action.").

---

[20] While OneCoin has historically claimed to operate out of Sofia, Bulgaria, it was widely reported in January 2018 that the company's Sofia offices were raided by Bulgarian law enforcement and its servers located in Bulgaria were shut down. *See, e.g.*, Lubomir Tassev, *OneCoin Offices Raided in Sofia Servers Shut Down*, Bitcoin.com, *available at* https://news.bitcoin.com/onecoin-offices-raided-in-sofia-servers-shut-down/; *Mark Scott Guilty, OneCoin's Bulgaria Office Cleared Out*, BehindMLM (Nov. 22, 2019), *available at* https://behindmlm.com/companies/onecoin/mark-scott-guilty-onecoins-bulgaria-office-cleared-out/.

Second, service to the e-mail address listed on a defendant's website is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) (declining to authorize service by postal mail in China, but allowing service by e-mail listed on defendant's homepage) (quoting *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014), adhered to on reconsideration, No. 12-CV-5754 LAK, 2015 WL 998455 (S.D.N.Y. Mar. 5, 2015)).

Here, until the OneCoin Website went down on November 30, 2019, it listed the press@onecoin.eu as the proposed method of contacting OneCoin.[21] Carriel Decl. ¶ 11, Ex. 8 (press release issued by the "OneCoin Press Department" on June 2, 2019 obtained from https://www.onecoin.eu/en/press-releases on November 26, 2019 listing the e-mail for contacting OneCoin as "press@onecoin.eu"). Furthermore, as of the date of this Renewed Motion: (i) the info@onecoin.eu e-mail address is listed as OneCoin's e-mail address on the Australian Securities & Investments Commission's May 28, 2019 advisory warning investors not to deal with OneCoin[22] and is listed as the "Contact Email" on OneCoin's profile on crunchbase.com;[23] (ii) the press@onelife.eu e-mail address is listed on the OneLife Website;[24] (iii) the info@onelife.eu

---

[21] Notably, on September 25, 2019, the Court in the Scott Criminal Action ordered that notice of an Order to Show Cause be effected upon numerous parties, including Defendant Ignatova, by: "(i) publication by the Government of the Order, and (ii) to the extent such would be consistent with international law, "by email, where the particular Affected Party has a known and operational email address." Scott Criminal Action, ECF No. 126.

[22] *See* https://www.moneysmart.gov.au/scams/companies-you-should-not-deal-with/unlicensed-companies-list/o/onecoin-limited.

[23] *See* https://www.crunchbase.com/organization/onecoin-2.

[24] *See* https://www.onelife.eu/en/contacts.

e-mail address is listed as the "Contact Email" on OneLife's profile on crunchbase.com;[25] and (iv) the office@oneworldfoundation.eu e-mail address is listed on the OneWorld Website.[26] Based on the foregoing, Plaintiffs' proposed method of e-mail service to these addresses is appropriate. *See, e.g.*, *Sulzer Mixpac AG*, 312 F.R.D. at 332 (service through e-mail is appropriate because "e-mail address in question is listed prominently on [defendant's] Internet homepage . . . [the defendant] presumably relies at least partially on contact through [its email] to conduct overseas business, and it is reasonable to expect [defendant] to learn of the suit against it through this e-mail address.").[27]

Third, transmission of the relevant documents to the Unserved Defendants through the contact forms on the OneLife Website[28] and the OneAcademy Website[29] and via social media messaging functions is likely to actually notify the Unserved Defendants of this litigation and Plaintiffs' claims, and thus satisfies due process requirements. *See UBS Fin. Servs. v. Berger*, No. 13-cv-03770 (LB), 2014 U.S. Dist. LEXIS 193761, at *5 (N.D. Cal. Apr. 24, 2014) (recounting

---

[25] *See* https://www.crunchbase.com/organization/one-life.

[26] *See* https://www.oneworldfoundation.eu/en/contact.

[27] *See also Philip Morris*, 2007 U.S. Dist. LECIS 19780, at *9 (authorizing service of process via e-mail on defendants who "conduct business extensively, if not exclusively, through their internet websites and correspond regularly with customers via e-mail"); *McCluskey v. Belford High Sch.*, No. 09-cv-14345 (LPZ), 2010 WL 2696599, at *3–4 (E.D. Mich. June 24, 2010) (concluding that service via e-mail was appropriate where the defendants conducted their business online and relied on an e-mail address to conduct their business).

[28] The OneLife Website contains a "direct email form" for use in contacting their "corporate team." *See* https://www.onelife.eu/en/contacts.

[29] The OneAcademy Website contains a contact form under the heading "We are Always Available." *See* https://www.oneacademy.eu/en/about#contactForm.

court's decision to authorize service via defendant's "gmail address and through LinkedIn's 'InMail' feature").[30]

Fourth, as noted, if Defendant Greenwood is located within the United States, given his reported arrest and extradition, Greenwood would undoubtedly be within the government's custody. Accordingly, in the event Greenwood is located within the United States, Plaintiffs' proposed additional method of service via mailing the Service Documents to the prosecution team in the parallel Criminal Actions and requesting that the Service Documents be forwarded to Greenwood is the method most reasonably calculated to notify him of this Action.

Finally, the Unserved Defendants likely already have notice of this Action because Defendant Ignatov, who has appeared in this Action [ECF Nos. 37–38], maintained the top leadership position in OneCoin from mid-2018 until his arrest on or about March 6, 2019 and is Ignatova's brother. *See* FAC ¶¶ 34–36. Furthermore, the instant Action has been heavily reported in the press.[31] This reality should be considered in determining whether due process has been satisfied. *Wash. State Inv. Bd. v. Odebrecht S.A.*, 2018 U.S. Dist. LEXIS 163356, at *10 (S.D.N.Y. Sep. 21, 2018) ("As to due process, 'the basic inquiry as to the range of alternative means of service the Court may order . . . is whether the method is reasonably calculated, under all the

---

[30] *See also St. Francis Assisi v. Kuwait Fin. House*, No. 3:16-cv-3240 (LB), 2016 U.S. Dist. LEXIS 136152, at *4 (N.D. Cal. Sep. 30, 2016) (discussing decision to grant "service by email, Facebook, and LinkedIn because notice through these accounts was reasonably calculated to notify the defendant of the pendency of the action and was not prohibited by international agreement").

[31] *See, e.g.*, Max Boddy, *Former Investor Sues OneCoin Scheme, Seeks Class Action*, CoinTelegraph (May 8, 2019), *available at* https://cointelegraph.com/news/former-investor-sues-onecoin-scheme-seeks-class-action; Yogita Khatri, *Alleged Multibillion-Dollar Pyramid Scheme OneCoin Sued by Former Investor*, CoinDesk (May 8, 2019), *available at* https://www.coindesk.com/alleged-multibillion-dollar-crypto-pyramid-scheme-onecoin-sued-by-former-investor; Mark Emem, *OneCoin Scam Victim Files New York Lawsuit After $760,000 Loss*, CCN (July 10, 2019), *available at* https://www.ccn.com/onecoin-scam-victim-files-new-york-lawsuit-after-760000-loss/.

circumstances, to give actual notice to the party whose interests are to be affected by the suit or proceeding, and to afford him an adequate opportunity to be heard.'") (*quoting KPN B.V. v. Corcyra D.O.O.*, 2009 U.S. Dist. LEXIS 20906, at *4 (S.D.N.Y. Mar. 16, 2009)).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully moves the Court to permit Plaintiffs to serve, in the manner described in the [Proposed] Order submitted herewith, the Unserved Defendants with the Service Documents via registered mail and electronic means.

Dated: December 3, 2019

Respectfully Submitted,

LEVI & KORSINSKY, LLP
By:  _/s/ William J. Fields_
William J. Fields (5054952)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
E-mail: wfields@zlk.com

LEVI & KORSINSKY, LLP
Donald J. Enright (*pro hac vice* forthcoming)
John A. Carriel (*pro hac vice* forthcoming)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
E-mail: denright@zlk.com
E-mail: jcarriel@zlk.com

SILVER MILLER
David C. Silver (*pro hac vice* forthcoming)
Jason S. Miller (*pro hac vice* forthcoming)
11780 W. Sample Road
Coral Springs, FL 33065
Tel: (954) 516-6000
E-mail: DSilver@SilverMillerLaw.com
E-Mail: JMiller@SilverMillerLaw.com
*Attorneys for Plaintiffs and Co-Lead Counsel for the Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD BERDEAUX and CHRISTINE GRABLIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>ONECOIN LTD.; RUJA IGNATOVA, KONSTANTIN IGNATOV; SEBASTIAN GREENWOOD; MARK SCOTT; IRINA ANDREEVA DILINSKA; DAVID PIKE; and NICOLE J. HUESMANN,<br><br>Defendants. | Case No.: 1:19-cv-04074-VEC<br><br>Hon. Valerie E. Caproni |

**DECLARATION OF JOHN A. CARRIEL IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR LEAVE TO EFFECT ALTERNATIVE SERVICE ON DEFENDANTS ONECOIN LTD., RUJA IGNATOVA, SEBASTIAN GREENWOOD, AND IRINA ANDREEVA DILINSKA**

I, John A. Carriel, hereby declare as follows:

1.      I am an associate with the law firm Levi & Korsinsky, LLP, counsel for Lead Plaintiff Donald Berdeaux and Plaintiff Christine Grablis  ("Plaintiffs").  I am a member of the Bar of the District of Columbia.  This declaration is based on my own personal knowledge and/or the firm's records of the matters stated herein. If called upon, I could and would competently testify thereto.

2.      I respectfully submit this declaration in support of Plaintiffs' renewed motion pursuant to Fed. R. Civ. P. Rule 4(f)(3), for an order granting Plaintiffs leave to effectuate service of the First Amended Complaint [ECF No. 40] and Summons in this matter upon defendants OneCoin Ltd. (Dubai) ("OneCoin"), Ruja Ignatova ("Ignatova"), Sebastian Greenwood

("Greenwood"), and Irina Andreeva Dilinska ("Dilinska" and together with Ignatova and Greenwood, the "Unserved Individual Defendants") (collectively, the "Unserved Defendants") via International Registered Mail, e-mail, and electronic messages via, *inter alia*, OneCoin, Ignatova and Greenwood's respective social media accounts on LinkedIn and/or Facebook (the "Motion").

3.   Counsel for Plaintiff – and, specifically, I personally -- have made persistent, diligent and varied efforts to effectuate process upon the Unserved Defendants by engaging in an extensive investigation to uncover more precise information about their current addresses which Plaintiffs could use to effectuate service of process by traditional means.  Counsel's investigation included: (1) reviewing all relevant materials in Plaintiffs' possession; (2) reviewing court filings in the parallel criminal actions against Ruja Ignatova, Konstantin Ignatov, Mark S. Scott and David Pike entitled *United States v. Scott, et al.*, 1:17-cr-630 (ER) (S.D.N.Y.) and *United States v. Pike*, 1:19-mj-08240 (S.D.N.Y.) (the "Criminal Actions"); (3) reviewing countless posts on internet forums, many of which required translation into English; (4) reviewing countless media reports concerning OneCoin, its founders, and the parallel Criminal Actions; (5) conducting hours of boolean searches, in English, Bulgarian, Russian, and Arabic, on multiple online search engines, including Google, Bing, DuckDuckGo, and Yandex, to obtain any and all publicly available information relating to OneCoin's current operations and the Unserved Individual Defendants' current locations; (6) utilizing virtual private networks ("VPN") to bypass OneCoin's geo-blocking of internet protocol ("IP") addresses originating within the United States; (7) combing through years of archived and cached internet forums and webpages; and (8) using online tools in an attempt to obtain general geolocation data from the Unserved Defendants and OneCoin's related entities' domain names, IP addresses, and e-mail addresses.  Despite the foregoing extensive

efforts to uncover more exact information about the Unserved Individual Defendants' current physical location, our investigation has not yielded definitive information.

4.      Attached hereto as Exhibit 1 is a true and correct copy of the webpage located at https://www.onecoin.eu/en/terms-and-conditions obtained on November 26, 2019 which contained the OneCoin "terms and conductions."

5.      Attached hereto as Exhibit 2 is a true and correct copy of the webpage located at https://www.onecoin.eu/en/media-galleries obtained on November 26, 2019 which contained photographs of OneCoin's office in the United Arab Emirates under the heading "Head Office: Dubai."

6.      Attached hereto as Exhibit 3 is a true and correct copy of an image of Velizara Ivanova's business card obtained from https://www.facebook.com/onelifeoneafrica/photos/a.9499 76725193029/949981238525911/?type=3&permPage=1 on November 26, 2019 which lists her title as "Administrative Officer" of "Coins United", e-mail address as "velizara@onecoin.eu", and address as "Unit 3102, Platinum Tower, Cluster I Jumeirah Lake Towers, Dubai, UAE."

7.      Attached hereto as Exhibit 4 is a true and correct copy of the webpage displaying the results from the tool available on https://www.uptrends.com/tools/uptime obtained on November 26, 2019 showing that, as of that date, the domain "www.onecoin.eu" remained accessible from IP addresses originating in numerous countries but remained inaccessible from IP addresses originating within the United States.

8.      Attached hereto as Exhibit 5 is a true and correct copy of a screenshot showing access to the www.onecoin.eu website through the use of a VPN routing access to the website through a server in Europe obtained on November 26, 2019.

- 3 -

9.      Attached hereto as Exhibit 6 is a true and correct copy of the webpage displaying the results from the tool available on https://www.uptrends.com/tools/uptime obtained on December 1, 2019 showing that, as of that date, the domain "www.onelife.eu" remained accessible from IP addresses originating in all tested locations, including those from within the United States.

10.     Attached hereto as Exhibit 7 is a true and correct copy of the webpage displaying the results from the tool available on https://www.uptrends.com/tools/uptime obtained on December 1, 2019 showing that, as of that date, the domain "www.oneworldfoundation.eu" remained accessible from IP addresses originating in numerous locations, including those from within the United States.

11.     Attached hereto as Exhibit 8 is a true and correct copy of the OneCoin press release entitled "ONECOIN INVESTIGATION IN SWEDEN IS CLOSED" published on June 2, 2019 on the webpage located at https://www.onecoin.eu/en/press-releases obtained on November 26, 2019.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed on December 3, 2019.

____/s/ John A. Carriel_____
John A. Carriel

# EXHIBIT 1

11/26/2019

Case 1:19-cv-04074-MEC Document 187-2 Filed 05/05/21 Page 46 of 150
Case 1:19-cv-04074-VEC Document 73-1 Filed 12/03/19 Page 2 of 9

# ONECOIN TERMS AND CONDITIONS

**ONECOIN LIMITED** is a company duly registered and existing under the laws of Dubai, represented by its Managing Director(s) (herein referred as to the "**Company**"). By visiting the present website and using the provided hereto facilities Users hereby confirm that have carefully read, understood and agreed, without any objections, to the following Terms and Conditions, governing both the access and use of this website, the rights and obligations of the Users and the purchases of products and services ("Products") through this website.

By accessing and/or using this website, using the provided facilities and/or purchasing products, Users are entering into a binding agreement with the Company and hereby agree to be bound by these Terms and Conditions and any additional Terms and Conditions, guidelines, restrictions, or rules posted on this website or any other related websites and applicable for any other products and or services.

The Company hereby reserves the right to make changes to this website and/or Terms and Conditions at any time without prior notice and in lines with what the management of the Company sees serves the interest of the Company and its User's best. By using this website and facilities provided the Users hereby confirm that they have the possibility and right to review these Terms and Conditions each time they access this website, and thereby also to bebound by them.

In case of non acceptance of the present Terms and Conditions the Company kindly asks visitors to not use this website and/or the facilities provided.

## VISION, MISSION, GOALS (BUSINESS/CORPORATE VALUES)

**STABILITY** – The Company is established as the fastest growing company in a modern industry by enhancing the usability of our product(s) as well as developing and delivering useful and innovative products, services and solutions;

**TRANSPARENCY** – The Company's activity is based and lead by the principles of transparency in conducting its business with clients and partners;

**FAIRNESS** – The Company aim is to always do and provide the best possible level of services for all our stakeholders, employees and business partners. The Company refuses to and does not take decisions that may favor one over the other;

11/26/2019
Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/21 Page 47 of 150
Case 1:19-cv-04074-VEC Document 9-1 Filed 12/03/19 Page 3 of 9

**COMPLIANCE** – The Company is doing business in a responsible manner by complying with all relevant to its business and applicable requirements, laws and regulations imposed by the Regulator;

**SUSTAINABILITY** – The Company adheres to the principles of sustainable development by creating a corporate culture of inclusion, openness and transparency.

## GENERAL DEFINITIONS

User – shall be considered any person, entering the present website and/or using the hereto provided facilities;

Facilities – shall be considered and include:

- Access to the provided informational resources/data of the website;

- Access to specific sections of the website, including comment options;

- Access and personalization facilities, allowing additional options for access to the informational resources of the present website;

- Access and utilization from Users of other additional/future features, services and/or products that may be added;

## GENERAL PROVISIONS

### Ways of Using

By using the present website, the facilities provided and/or products purchased through the present website, Users are entitled to use the services and facilities of the present website in accordance with the present Terms and Conditions and to comply with any additional Terms and Conditions, guidelines, restrictions, or rules posted on this website or any other related websites and applicable for any other products and or services.

When using the present website and entering opinions and or other comments Users agree and are obliged to not publish advertizing announcements, to not violate and abuse or in any other way to harm other Users dignity. The Company does not tolerate any abusive behavior. Without prejudice to the above the Company is not responsible and cannot be held liable for any opinions by Users in the relevant sections of the website. Furthermore and in compliance with the above restrictions, the Company is not responsible for the content of the comments of the Users.

### Copyrights. Trademarks

11/26/2019
Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/19 Page 48 of 50
Case 1:19-cv-04074-VEC Document 9-1 Filed 12/03/19 Page 4 of 9

All rights on all logotypes, images, trademarks, informational and other resources, or any other materials are reserved and therefore protected by the relevant legislation. Non authorized use of any of the described is considered and shall be treated as a violation of the stipulated legislation and liability shall be seek in compliance with the relevant and applicable legislation.

## ANTI-SPAM POLICY

The abuse and misuse of email by Users of the present website is a serious problem. The Company will not tolerate SPAM.

Definition of UCE (Unsolicited Commercial email), or SPAM:

• The bulk UCE, promotional material, or other forms of solicitation sent via email that advertise any IP address belonging to the Company or any URL (domain) that is linked to www.onecoin.eu and www.onecoin.com (http://www.onecoin.com/) or other web sites owned or operated by the Company.

• The use of web pages set up on ISPs (Internet Service Providers) that allow SPAM (also known as "ghost sites") that directly or indirectly reference customers to domains or IP addresses linked by www.onecoin.eu and www.onecoin.com (http://www.onecoin.com/) or other web sites owned or operated by the Company.

• Advertising, transmitting, or otherwise making available any software, program, product, or service that is designed to facilitate a means to SPAM.

• Forging or misrepresenting message headers, whether in whole or in part, to mask the true origin of the message.

•

The Company has a ZERO tolerance what comes to unprofessional behavior that can in any way shape or form the reputation about the COMPANY. If such unprofessional behavior is encountered please let us know immediately so that we can take appropriate action against the said.

Furthermore the use of false headers in emails or falsifying, forging or altering the origin of any email in connection with the present website, the Company and/or its products and services is strictly prohibited.

If a person or entity indicates that they do not want to receive email, clients agree not to send email to such person or entity. If a person initially agrees to receive email, but later asks to stop receiving email, you must abide by that request.

## Confidentility. Privacy Policy/DataProtection

11/26/2019

Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/19 Page 49 of 150
Case 1:19-cv-04074-VEC Document 187-2 Filed 12/03/19 Page 9 of 9

By using the present website and/or related to the present website facilities and websites of third parties, User's personal information including name, mailing address, email address may be requested and notifications may be send to those Users relating to, without limitation, the hereto provided facilities, services and/or products, special events, promotions, contests and special offers.

Additionally, User preferences and settings (time zone, language, privacy preferences, product preferences, etc.) may be collected to enhance the performance of the present website.

As is standard practice on many websites, the Company also logs non-personally-identifiable information including IP address, profile information, aggregate User data, and browser type, from Users and other visitors to the site or application. This data is used to improve the Services, to analyze trends, to administer the Services, to track Users' movements around the Service and to gather demographic information about our User base as a whole. The Company will not use the information collected to market directly to that person. This non-personally-identifiable information may be shared with third parties to provide more relevant services and special offers to Users. User IP addresses are recorded for security and monitoring purposes.

In addition, the Company and third parties may use pixel tags — tiny graphic images — to tell us what parts of our website Users have visited or to measure the effectiveness of searches Users perform on our site, among other data. Pixel tags also enable us to send email messages in formats Users can read. And they tell us whether emails have been opened to assure that we're only sending messages that are of interest to our Users. The Company stores the information gathered in a database stored on computer servers in a controlled, secure environment, protected from unauthorized access, use or disclosure. To the extent that third parties gather information, they store that information and are responsible for their use of the same. (As an example Google is responsible for storing the information its' Google Analytics gathers from our website or application).

User information including User images and User names may be displayed to people in order to facilitate User interaction.

The Company may also use a User's email address to send updates, a newsletter or news regarding the service. From time to time, the Company or an associated third party may sponsor a promotion, sweepstake or contest. Users may be asked to provide personal information including name, email address or home address or to answer questions in order to participate. The Company may transfer personal information to certain ad partners from whom you have explicitly requested to receive information. It will be clear at the point of collection who is collecting the personal information and whose privacy statement will apply. The Company may also collect information for market research purposes to gain a better understanding of our Users and thus provide more valuable service.

## Use of Cookies

The Company may use cookies to store visitors' preferences and to record session information for purposes including ensuring that visitors are not repeatedly offered the same promotions, to customize newsletter and Web page content based on browser type and User profile information, to help track usage to help us understand which parts of our website are the most popular, where our visitors are going, and how much time they spend there, to make usage of our website even more rewarding as well as to study the effectiveness of our User communications and to customize each visitor's experience and provide greater convenience.

## Changes in the Privacy Policy

From time to time the Company may make changes to its Privacy Policy. If changes are made, they will be timely announced to make Users aware of what the changes are so Users will always be aware of what information may be collected, how it is used, and when it may be disclosed. A User is bound by any changes to the Privacy Policy when she or he uses the site after those changes have been posted.

## Links

The present website may contain links to third party websites, where other additional terms and conditions, restrictions, policies and rules may be applicable. The Company is not responsible for the privacy policies and/or practices on other sites or applications. When connecting to or linking to another site, a User should read the privacy policy stated on that site. Our privacy policy only governs information collected on and in relation to the use of the present website.

## Public Forums. Blogs

Please be aware that whenever you voluntarily post public information to message boards or any other public forum sections available on this website, that information can be accessed by the public and can in turn be used by those people to send you unsolicited communications. The Company is not responsible for the personally identifiable information you choose to submit on the above mentioned sections. Please use your utmost discretion before you post any personal information online. Users should give special attention to the information they disclose publicly.

## Third Party Advertizing

Ads appearing on the present website may be delivered to Users by the Company or third party advertisers. These third parties may set cookies. These cookies allow the ad server to recognize your computer or mobile device each time they send you an online advertisement. In this way, ad servers may compile information about where you, or others who are using your computer or mobile device, saw their

advertisements and determine which ads are clicked on. This information allows an ad network to deliver targeted advertisements that they believe will be of most interest to you. This privacy statement covers only the use of cookies by the Company and does not cover the use of cookies by any third party advertisers.

## Services Requiring Registration

The Company reserves the right to provide access to certain services for compulsory registration. Those services may without limitation, to include:

• Ability to publish comments

• Ability to add an avatar and profile;

• Receive newsletter with new developments on the site.

Users can get free and full access to sections of the website requiring registration, if Users create an individual profile. In User's profile, he/she is obliged to provide complete, accurate, and truthful ID information. Without prejudice to the previous provision the Company reserves the right to decide whether to grant such access to the specific User to remove or restrict User profiles, which in its discretion, considers to be unacceptable, and if there is reasonable suspicion of a breach of these terms and conditions. The Company reserves the right to withdraw the above free services by posting a message on the website at any time and on its sole discretion.

## Limitation of Liability

The Company is struggling to its best efforts and in compliance with the good business practices to maintain the information of the present website accurate, actual and truthful, without excluding any accidental occasion where objective discrepancies may occur, due to circumstances beyond the Company control. The Company furthermore is not and cannot be held liable for any consequences, including possible damages related in any way with the access, use or the impossibility to use the present website. The information provided is to the extent of the Company efforts and knowledge in compliance with the relevant and applicable legislation, without guarantee as per any possible malicious behavior and/or activities on behalf of any third parties. In addition the Company is not responsible and cannot be held liable for any subjective perception and interpretation of the accuracy, completeness and usefulness of information resources on the present website.

The Company is not responsible and cannot be held liable for information (including its completeness and accuracy) contained on the web sites to which this site contains links.

The Company is entitled to compensation for all damages, costs and claims by third parties that are a consequence of a breach of these Terms and Conditions and / or unauthorized use of the services of the website.

## Final Provisions

The Company is entitled to change these Terms and Conditions at any time. Modifications will be announced with a reasonable period.

In case of invalidity or incompleteness of any clause of the present Terms and Conditions, the validity of the entire document shall not be affected. Instead of that, the invalid clause shall then be replaced by a valid one whose economic purpose comes as close as possible to that of the invalid clause. The same shall apply when covering a gap requiring regulation.

**Version of the Present Terms and Conditions: 11.06.2016**

**Contact Legal Department**: legal@onecoin.eu

Terms & Conditions (/en/terms-and-conditions)

Contact us (/en/contact-us)

FAQ (/en/faq)

Follow Us

𝐟 (https://www.facebook.com/OneCoinOfficialPage)

🐦 (https://twitter.com/OneCoinCrypto)

(https://www.youtube.com/channel/UCtqCwt6t48FjES3wBkDPp

社区

 (http://i.youku.com/i/UMzQ0MDY2MzQyNA==)

🅦 (http://weibo.com/OneCoinGlobal)

*OneCoin Ltd; IC 20140882*

*OneCoin Representative office: Slaveykov Sqr.*

*6A, Ground Floor, Sofia 1000, Republic of*

*Bulgaria*

# EXHIBIT 2

11/26/2019

Case 1:19-cv-04074-VEC Document 167-2 Filed 05/05/21 Page 56 of 150
Case 1:19-cv-04074-VEC Document 73-2 Filed 12/05/19 Page 3 of 11

Video



The Blockchain



What is OneCoin?



What is Cryptocurrency?

11/26/2019

Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/21 Page 57 of 150
Case 1:19-cv-04074-VEC Document 73-2 Filed 12/03/19 Page 57 of 15



OneCoin. OneWorld



Dr. Ruja Ignatova: The New Home of the Network



OneCoin: Join the Financial Revolution

Show More (/en/mgalleries_paginated)

# Head Office: Dubai

11/26/2019

Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/21 Page 58 of 150
Case 1:19-cv-04074-VEC Document 73-2 Filed 12/03/19 Page 5 of 11









Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/21 Page 59 of 150
Case 1:19-cv-04074-VEC Document 73-2 Filed 12/03/19 Page 5 of 11



⊕ Show More (/en/mgalleries paginated)

# Representative Office Sofia





11/26/2019

Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/21 Page 60 of 150
Case 1:19-cv-04074-VEC Document 73-2 Filed 12/03/19 Page 7 of 11





⊕ Show More (/en/mgalleries paginated)

# Cryptocurrency Information Center



11/26/2019

Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/21 Page 61 of 150
Case 1:19-cv-04074-VEC Document 73-2 Filed 12/05/19 Page 8 of 11









Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/21 Page 62 of 150
Case 1:19-cv-04074-VEC Document 73-2 Filed 12/05/19 Page 9 of 11





⊕ Show More (/en/mgalleries paginated)

# Dr. Ruja Ignatova, OneCoin Founder and Visionary





11/26/2019
Case 1:19-cv-04074-VEC Document 187-2 Filed 05/05/21 Page 63 of 150
Case 1:19-cv-04074-VEC Document 73-2 by Filed 12/05/19 Page 10 of 11







11/26/2019

Case 1:19-cv-04074-VEC Document 87-2 Filed 05/05/21 Page 64 of 150
Case 1:19-cv-04074-VEC Document 78-2 Filed 12/05/19 Page 11 of 11



⊕ Show More (/en/mgalleries paginated)

Terms & Conditions (/en/terms and conditions)

Contact us (/en/contact us)

FAQ (/en/faq)

Follow Us

**f** (https://www.facebook.com/OneCoinOfficialPage)

🐦 (https://twitter.com/OneCoinCrypto)

(https://www.youtube.com/channel/UCtqCwt6t48FjES3wBkDPp

社区

 (http://i.youku.com/i/UMzQ0MDY2MzQyNA==)

🔴 (http://weibo.com/OneCoinGlobal)

*OneCoin Ltd; IC 20140882*

*OneCoin Representative office: Slaveykov Sqr.*

*6A, Ground Floor, Sofia 1000, Republic of*

*Bulgaria*

# EXHIBIT 3

# VELIZARA IVANOVA

## COINS UNITED – ADMINISTRATIVE OFFICER

TEL.

**+971 44 307 012**

MOBILE

**+971 56 834 2317**

PO Box:

**336473**

E-MAIL

**VELIZARA@ONECOIN.EU**

ADDRESS

**UNIT 3102, PLATINUM TOWER, CLUSTER I**
**JUMEIRAH LAKE TOWERS, DUBAI, UAE**

# EXHIBIT 4







**Palermo**
Website is available

1.1s

**Guadalajara**
Website is available

1.2s

**Tokyo**
Website is available

1.4s

**Frankfurt**
Website is available

1.6s

**São Paulo**
Website is available

1.7s

**Buenos Aires**
Website is available

1.8s

**Beijing**
Website is available

4.5s

**New York**
Http Protocol Error

0.7s

**Los Angeles**
Http Protocol Error

0.4s

**Tampa**
Http Protocol Error

0.6s

**Seattle**
Http Protocol Error

0.5s

**Honolulu**
Http Protocol Error

1.8s

**San Diego**
Http Protocol Error

0.4s

# EXHIBIT 5



# EXHIBIT 6



# Free Website Uptime & Availability Test

Is your website available worldwide? Let's find out!























## Is it down, or is it just me?

With the Free Uptrends Uptime Check, you can ping your website and ensure that it is reachable. We set up a connection and if we get back an HTTP 200 status, we report OK.

/



## Worldwide checks

The Free Uptime Check utilizes select regional groupings from our network of 215 global checkpoints, which systematically pings and checks your website's uptime.

## Emulated load times

The load times you see reported are the time it takes to download the HTML content. Want to see complete load times? Use our Website Speed Test (/tools/website-speed-test) to load all website elements.

## Resolve, connect and download

Hover over the bar chart to see a breakdown of the emulated load time in resolve, connect and download time. This can give you an indication in which corner you can improve.

## Website errors

When a website is reported as down, it means our checkpoint server(s) couldn't reach your site at that particular time. You might want to verify that by running a second test.

## Be the first to know

With Uptrends Website Monitoring (/products/website-monitoring) you'll be the first to know about an issue, with alerts coming to you in all kinds

/

**UPTRENDS** (/)

of ways. Curious to see how that works? Try us free for 30 days (/signup/business)!

YOUR TRIAL GRANTS ACCESS TO THESE EXTRAS

# Power-up your website uptime tests





*(1)*

## Receive daily reports

Get your reports in PDF or Excel format sent via email.

## Root-cause analysis

Quickly determine the root cause of an issue at-a-glance.

## Receive alerts

Alerts can be sent via email, SMS, voice, push, webhooks, or tools like Slack.

## Monitor 24/7

Ad-hoc tests only get you so far. Continuous monitoring is key.

## Pick your locations

Mimic your user base by picking locations individually.

## View error screenshots

Know exactly what was going on in the browser with error screenshots.

**AND THERE'S MUCH MORE IN YOUR TRIAL ACCOUNT**

# Play around with the complete toolkit

/

  

## Website Uptime Monitoring

Monitor from 215 worldwide locations and get alerts via email, SMS and integrations like Slack when something breaks.



## Web Application Monitoring

With Web Application Monitoring (/products/web-application-monitoring), you can monitor website steps such as shopping carts, logins, search and forms.



## Web Performance Monitoring

Improve your website speed with detailed, rich waterfall reports, monitor in Chrome, Firefox and Internet Explorer.



## API Monitoring

APIs fuel all kinds of tools and applications. Build multi-step API calls and test your APIs for functionality, performance and uptime.



## Real User Monitoring

How do your actual users see your site? RUM gives you load times per browser, device and operating system. Displayed in shiny worldmaps.

/



(/)



## Server Monitoring

Make sure to check the backend too. Check your web, DNS and mail servers worldwide from outside your firewall.



"We couldn't find anything out there that could do what we needed until we found Uptrends."

— Kyle Moschetto, Director of DevOps at Bitly

## Get started — it's free (/signup/business)

Join us for a live product demo (/demos). No strings attached.

/

Follow us on Twitter (https://www.twitter.com/uptrendsmonitor), LinkedIn (https://linkedin.com/company/uptrends), Facebook (https://www.facebook.com/uptrends) and Instagram (https://www.instagram.com/uptrends).

**UPTRENDS**

# Solutions

## Plans and Pricing (/pricing)

Website Monitoring (/products/website-monitoring)

Synthetic Monitoring (/solutions/synthetic-monitoring)

Web Application Monitoring (/products/web-application-monitoring)

Web Performance Monitoring (/products/web-performance-monitoring)

API Monitoring (/solutions/api-monitoring)

Real User Monitoring (/solutions/real-user-monitoring)

Mobile Website Monitoring (/solutions/mobile-website-monitoring)

Advanced Availability Monitoring (/products/advanced-availability-monitoring)

Multi Browser Monitoring (/features/multi-browser-monitoring)

Internal Server Monitoring (/products/server-monitoring)

External Server Monitoring (/products/external-server-monitoring)

# Support

## Support overview (/support)

Uptrends Academy (/support/academy)

Knowledge Base (/support/kb)

Monitoring Wiki (/what-is)

Contact Us (/contact)



Case 1:19-cv-04074-VEC Document 173-6 Filed 05/05/20 Page 83 of 150

**(/)**

# Resources

Resources overview (/resources)

Use Cases (/use-case)

Checkpoints (/checkpoints)

Integrations (/integrations)

Mobile Apps (/mobile-apps)

API (/support/kb/api/documentation)

# Company

About (/about)

Customers (/customers)

Careers (https://www.uptrends.com/job)

# Free Tools

Free Website Monitoring (/free-website-monitoring)

Website Speed Test (/tools/website-speed-test)

Global Uptime (/tools/uptime)

Traceroute (/tools/traceroute)

DNS Report (/tools/dns)

CDN Performance Check (/tools/cdn-performance-check)

SLA & Uptime Calculator (/tools/free-sla-uptime-calculator)

What's my IP? (/tools/ip-address)

Copyright © 2007 - 2019 | Terms and Conditions (/terms-and-conditions) |
Privacy Policy (/privacy-policy) | Sitemap (/sitemap)

/



*(l)*.

Case 1:19-cv-04074-VEC Document 73-2 Filed 12/03/19 Page 5 of 11

# EXHIBIT 7



(1)

# Free Website Uptime & Availability Test

Is your website available worldwide? Let's find out!

/

  

**UPTRENDS**

_(1)_

## Please wait while we get the results...

| ✓ **Milan** Website is avai ab e | ✓ **Vancouver** Website is avai ab e |
|---|---|
| 1.0s | 4.4s |

| ✓ **Berlin** Website is avai ab e | ✓ **Edinburgh** Website is avai ab e |
|---|---|
| 5.2s | 5.2s |

| ✓ **Dublin** Website is avai ab e | ✓ **Lelystad** Website is avai ab e |
|---|---|
| 5.3s | 5.4s |

| ✓ **Sydney** Website is avai ab e | ✓ **Seoul** Website is avai ab e |
|---|---|
| 5.7s | 6.4s |

| ✓ **Seattle** Website is avai ab e | ✓ **Prague** Website is avai ab e |
|---|---|
| 6.5s | 6.8s |

| ✓ **Salzburg** Website is avai ab e | ✓ **Amsterdam** Website is avai ab e |
|---|---|
| 6.9s | 7.0s |

| ✓ **Göteborg** Website is avai ab e | ✓ **New York** Website is avai ab e |
|---|---|
| 7.1s | 7.2s |



## Is it down, or is it just me?

With the Free Uptrends Uptime Check, you can ping your website and ensure that it is reachable. We set up a connection and if we get back an HTTP 200 status, we report OK.

## Worldwide checks

The Free Uptime Check utilizes select regional groupings from our network of 215 global checkpoints, which systematically pings and checks your website's uptime.



# Emulated load times

The load times you see reported are the time it takes to download the HTML content. Want to see complete load times? Use our Website Speed Test (/tools/website-speed-test) to load all website elements.

# Resolve, connect and download

Hover over the bar chart to see a breakdown of the emulated load time in resolve, connect and download time. This can give you an indication in which corner you can improve.

# Website errors

When a website is reported as down, it means our checkpoint server(s) couldn't reach your site at that particular time. You might want to verify that by running a second test.

# Be the first to know

With Uptrends Website Monitoring (/products/website-monitoring) you'll be the first to know about an issue, with alerts coming to you in all kinds of ways. Curious to see how that works? Try us free for 30 days (/signup/business)!

/



YOUR TRIAL GRANTS ACCESS TO THESE EXTRAS

# Power-up your website uptime tests

## Receive daily reports

Get your reports in PDF or Excel format sent via email.

## Root-cause analysis



Quickly determine the root cause of an issue at-a-glance.

(/)

### Receive alerts

Alerts can be sent via email, SMS, voice, push, webhooks, or tools like Slack.

### Monitor 24/7

Ad-hoc tests only get you so far. Continuous monitoring is key.

### Pick your locations

Mimic your user base by picking locations individually.

### View error screenshots

Know exactly what was going on in the browser with error screenshots.

AND THERE'S MUCH MORE IN YOUR TRIAL ACCOUNT

# Play around with the complete toolkit



### Website Uptime Monitoring

Monitor from 215 worldwide locations and get alerts via email, SMS and integrations like Slack when something breaks.



/

 **UPTRENDS** ## Web Application Monitoring 

(/)
With [Web Application Monitoring (/products/web-application-monitoring)](/products/web-application-monitoring), you can monitor website steps such as shopping carts, logins, search and forms.



## Web Performance Monitoring

Improve your website speed with detailed, rich waterfall reports, monitor in Chrome, Firefox and Internet Explorer.



## API Monitoring

APIs fuel all kinds of tools and applications. Build multi-step API calls and test your APIs for functionality, performance and uptime.



## Real User Monitoring

How do your actual users see your site? RUM gives you load times per browser, device and operating system. Displayed in shiny worldmaps.



## Server Monitoring

Make sure to check the backend too. Check your web, DNS and mail servers worldwide from outside your firewall.

/

     

_(/)_

> "We couldn't find anything out there that could do what we needed until we found Uptrends."
>
> — Kyle Moschetto, Director of DevOps at Bitly

## **Get started — it's free (/signup/business)**

Join us for a live product demo (/demos). No strings attached.

Follow us on Twitter (https://www.twitter.com/uptrendsmonitor), LinkedIn (https://www.linkedin.com/company/uptrends), Facebook (https://www.facebook.com/uptrends) and Instagram (https://www.instagram.com/uptrends).

## Solutions

Plans and Pricing (/pricing)

**UPTRENDS** (/)

Website Monitoring (/products/website-monitoring)

Synthetic Monitoring (/solutions/synthetic-monitoring)

Web Application Monitoring (/products/web-application-monitoring)

Web Performance Monitoring (/products/web-performance-monitoring)

API Monitoring (/solutions/api-monitoring)

Real User Monitoring (/solutions/real-user-monitoring)

Mobile Website Monitoring (/solutions/mobile-website-monitoring)

Advanced Availability Monitoring (/products/advanced-availability-monitoring)

Multi Browser Monitoring (/features/multi-browser-monitoring)

Internal Server Monitoring (/products/server-monitoring)

External Server Monitoring (/products/external-server-monitoring)

## Support

Support overview (/support)

Uptrends Academy (/support/academy)

Knowledge Base (/support/kb)

Monitoring Wiki (/what-is)

Contact Us (/contact)

## Resources

Resources overview (/resources)

Use Cases (/use-case)

Checkpoints (/checkpoints)

Integrations (/integrations)

Mobile Apps (/mobile-apps)

API (/support/kb/api/documentation)

/

Case 1:19-cv-04074-VEC Document 173-2 Filed 05/05/19 Page 95 of 150


(/)

## Company

About (/about)

Customers (/customers)

Careers (https://www.uptrends.com/job)

# Free Tools

Free Website Monitoring (/free-website-monitoring)

Website Speed Test (/tools/website-speed-test)

Global Uptime (/tools/uptime)

Traceroute (/tools/traceroute)

DNS Report (/tools/dns)

CDN Performance Check (/tools/cdn-performance-check)

SLA & Uptime Calculator (/tools/free-sla-uptime-calculator)

What's my IP? (/tools/ip-address)

Copyright © 2007 - 2019 | Terms and Conditions (/terms-and-conditions) | Privacy Policy (/privacy-policy) | Sitemap (/sitemap)

/

# EXHIBIT 8

 **OneCoin**  **PRESS RELEASE**

## ONECOIN INVESTIGATION IN SWEDEN IS CLOSED

The Swedish police has finalized and closed all investigations against the OneCoin company. In addition, on May 2nd, 2019, the Swedish Gaming Authority (Spelinspektionen) has confirmed to the company's lawyers that there are no ongoing procedures, relating to the allegations against OneCoin. Neither of the two authorities have found evidence of any bad practices whatsoever.

Since the establishment of OneCoin, the company has constantly and viciously been attacked by unfair business competitors with the aim of damaging its reputation on a global scale by spreading rumors.

A couple of years ago, some groundless claims about OneCoin have come to the attention of Swedish authorities which they have found worthy of investigation. In addition to that OneCoin activities were reported to the police by the Swedish Gaming Authority with the argument that those activities were in breach of the Swedish Gaming law. Shortly after, this "story" has been reported on the news, and then referenced further in many outlets on- and offline, giving those claims media resonance for months – especially on the Old Continent.

These allegations have now been put to the test and have failed spectacularly. After the Swedish police conducted a thorough investigation following the allegations of the Gaming Authority, they came to the conclusion that no charges of wrong-doing could be proved, and, as a result, the investigation was closed - twice, on February 6th, 2017 and on January 16th, 2018.

"In a Scandinavian country that has ensured a high level of consumer protection and which serves as an example of how the government looks after its citizens, the OneCoin concept has been a subject to the most rigorous test of legality and has passed it. We sure hope the fact that all allegations against OneCoin in Sweden have dropped serves as an example to the public that there are many rumors, circulating online, and they should definitely be disregarded, so that people could avoid falling victims to the "Fake News Phenomenon", the OneCoin company shared.

The Gaming law of Sweden is of EU origin, so the conclusion in Sweden should hold for the rest of Europe and be applicable for other European countries.

Searching for the truth is usually a long and unpleasant process – it is hard, takes time, but it always prevails eventually. The OneCoin company is positive that this will happen in the United States of America as well, it is just a matter of time.

*OneCoin Press Department*

*press@onecoin.eu*

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

DONALD BERDEAUX and CHRISTINE
GRABLIS, Individually and on Behalf of All Others
Similarly Situated,

                                  Plaintiffs,

                -against-

ONECOIN LTD.; RUJA IGNATOVA,
KONSTANTIN IGNATOV; SEBASTIAN
GREENWOOD; MARK SCOTT; IRINA
ANDREEVA DILINSKA; DAVID PIKE; and
NICOLE J. HUESMANN,

                              Defendants.

-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___1/24/2020___

19-CV-4074 (VEC)

<u>MEMORANDUM OPINION
& ORDER</u>

VALERIE CAPRONI, United States District Judge:

       This Order addresses Plaintiffs' renewed motion for alternative means of service of

Defendant OneCoin Ltd. ("OneCoin") and three individual Defendants and officers of

OneCoin—Ruja Ignatova, Sebastian Greenwood, and Irina Andreeva Dilinska—whom Plaintiffs

have sued in a putative class action for allegedly defrauding investors in a cryptocurrency Ponzi

scheme. On August 23, 2019, this Court stayed proceedings until all Defendants have been

served. Order (Dkt. 46). Plaintiffs moved for alternative means of service on October 1, 2019,

pursuant to Federal Rule of Civil Procedure ("Rule") 4(f)(3). Not. of Mot. (Dkt. 59). On

November 1, 2019, the Court denied Plaintiffs' motion without prejudice. Order (Dkt. 66). The

Court found that Plaintiffs had not met the requirements for alternative means of service—in

particular, Plaintiffs had not (1) provided factual support that they had taken reasonable steps to

attempt to serve the unserved Defendants, or (2) shown that the proposed means of service would

meet the requirements of due process. *Id.* at 2–3. Plaintiffs have now renewed their motion under Rules 4(f)(3) and 4(e)(1). Not. of Mot. (Dkt. 71). The motion is GRANTED in part.

Under Rule 4(f)(3), service may be effected upon individuals in foreign countries by any means "not prohibited by international agreement, as the court orders," Fed. R. Civ. P. 4(f)(3), and "[t]he decision of whether to order service of process under Rule 4(f)(3) is committed to the sound discretion of the district court," *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) (quotation omitted).

Under Rule 4(e)(1), service may be effected upon an individual within a judicial district of the United States "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Plaintiffs rely upon the catchall provision of New York law, which authorizes service "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of [C.P.L.R. 308]." N.Y. C.P.L.R. 308(5).

Before authorizing alternative service, courts must also ensure that the means of service "comports with constitutional notions of due process." *Stream SICAV*, 989 F. Supp. 2d at 278 (quoting *SEC v. Anticevic*, No. 05-CV-6991, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009)). As such, those methods must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Plaintiffs have submitted adequate factual support showing that they have made a diligent search to find and serve the unserved Defendants, thus curing the first defect the Court identified in its previous order. *See* Carriel Decl. (Dkt. 73) ¶ 3. The Court also notes that Rule 4(f)(3) is applicable to OneCoin: OneCoin is located in the United Arab Emirates ("UAE"), and the UAE

is not a signatory to the Hague Convention. *See Payne v. McGettigan's Mgmt. Servs. LLC*, No. 19-CV-1517, 2019 WL 6647804, at *1 (S.D.N.Y. Nov. 19, 2019). Rule 4(f)(3) is also applicable to Ignatova, Dilinska, and Greenwood, whose addresses are unknown. *See Prediction Co. LLC v. Rajgarhia*, No. 09-CV-7459, 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010). The Court is only persuaded, however, that Plaintiffs' proposed service methods as to OneCoin and Ignatova meet the requirements of due process.

Plaintiffs have submitted adequate factual support that OneCoin has a registered office and headquarters in Dubai. *See* Pls.' Mem. of Law (Dkt. 72) at 9–10, 9 nn.4–6. Moreover, in spite of the fact that OneCoin's website is no longer operational as of November 30, 2019, *see id.* at 11, Plaintiffs have also shown that OneCoin has various "related entities" promoting its brand and product. OneLife, OneWorld, and OneAcademy have websites that are operational, reference OneCoin, and that show ties to the Dubai office, *see id.* at 10 n.8, 12. In general, "service of process on a subsidiary does not constitute valid service on the parent merely by virtue of the parent-subsidiary relationship." *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 322 F.R.D. 442, 444 (S.D.N.Y. 2017). But if "the subsidiary corporation is acting as an agent for the parent corporation's separate business [or] the two corporations are not really separate entities," then service would be proper. 4A Wright and Miller, Fed. Prac. & Proc. § 1104 (4th ed.). Emailing OneCoin's related entities alone would likely be deficient—Plaintiffs have provided just a thread of evidence of their connection to OneCoin—but combined with Plaintiffs' other proposed methods, the Court is satisfied that Plaintiffs' proposal is reasonably calculated to apprise interested parties of the pendency of the litigation and to afford them an opportunity to appear to contest the matter. The Court thus authorizes service of OneCoin by (a) United States International Registered First Class Mail to its Dubai office, (b) email to its

onecoin.eu addresses and the addresses of the three related entities, and (c) message to its and related entities' social media accounts.

The most recent evidence Plaintiffs have submitted shows that Ignatova used a onecoin.eu email account in October 2016. *See* Pls.' Mem. of Law at 17 & n.19. In addition to the fact that was over three years ago, because the onecoin.eu website is no longer operational, the Court is skeptical that the associated email address continues to be operational. The fact that OneCoin still owns the domain name, as Plaintiffs point out, does not persuade the Court otherwise. Many entities and individuals own domain names that have no operational servers behind them. Plaintiffs also propose messaging Ignatova's social media accounts, but they offer no proof that those accounts are real. The link Plaintiffs provide to Ignatova's LinkedIn profile yields a page that is "not available." Plaintiffs also represent that Ignatova is a fugitive from justice. *See id.* at 12. If true, that would suggest Ignatova is not active on social media; indeed, the public posts on her Facebook page appear to have been posted by the OneCoin marketing team. Nonetheless, the Court will authorize service of Ignatova by (a) United States International Registered First Class Mail to the Dubai headquarters with directions that the materials be forwarded to her, (b) message to her social media accounts, and (c) email to her onecoin.eu address, with the added requirement that Plaintiffs must notify the Court, in writing, whether the email bounced, *i.e.*, whether Plaintiffs received an automated return message that the email could not be delivered. *See, e.g.*, *Prediction*, 2010 WL 1050307, at *2 (authorizing service upon a foreign defendant by certified mail to the defendant's attorney to be forwarded to the defendant and to the defendant's previously used email address).

As for Dilinska, Plaintiffs attempt to prove that she has used a onecoin.eu email account, but cite only to their own allegations in the First Amended Complaint as evidence of that use.

*See* Pls.' Mem. of Law at 17.  The Court is not obligated, as on a motion to dismiss, to take

Plaintiffs allegations as true.  Plaintiffs need to present evidence.  Thus, the Court does not

authorize the same alternative means of service for Dilinska (whom Plaintiffs represent is also a

fugitive from justice, *see id.* at 12) as it does for Ignatova, unless Plaintiffs can provide evidence

that Dilinska has used the onecoin.eu account.

  Plaintiffs' evidence regarding Greenwood also falls short.  Plaintiffs offer no evidence

that the proposed email addresses for Greenwood belong to him, again relying solely on their

own complaint's allegations.  *See id.* at 17.  Nor do Plaintiffs offer any evidence that messaging

the proposed social media accounts is likely to reach Greenwood.  Plaintiffs believe that

Greenwood has been extradited to the United States and is in the custody of the U.S. Department

of Justice ("DOJ").[1]  *See id.* at 13.  The Facebook page Plaintiffs provide yields a "page isn't

available" error.  And even though the LinkedIn profile Plaintiffs provide is still accessible,

Greenwood is not likely to be checking his LinkedIn inbox if he is in custody.  Even if (wherever

he is) he can access his LinkedIn account, the last activity his profile page shows is from at least

three years ago, suggesting he has abandoned his account.  Plaintiffs' proposal to submit the

Summons and Amended Complaint to the prosecutor's office of the related criminal proceedings

in *United States v. Scott*, 17-CR-630 (S.D.N.Y.), and *United States v. Pike*, 19-MJ-8240

---

[1] Plaintiffs do not represent that they have sought or obtained confirmation from DOJ that it has custody of
Greenwood.  Plaintiffs speculate that Greenwood's disappearance after his reported arrest in Thailand suggests that
he is cooperating with the United States.  Pls.' Mem. of Law at 13 & n.17.  If Plaintiffs are correct, and if
Greenwood waived extradition as part of his cooperation, he *may* well be immune to service of process until after
the completion of his criminal case, which could further depend on whether he waived extradition or it was ordered
without his consent.  *See Estate of Ungar v. Palestinian Auth.*, 396 F. Supp. 2d 376, 380–82 (S.D.N.Y. 2005)
(discussing whether the "principle of specialty" immunizes extradited persons from service of process); *Cabiri v.
Assasie-Gyimah*, 921 F. Supp. 1189, 1193 (S.D.N.Y. 1996) ("It is well established that witnesses, parties and
attorneys coming from another jurisdiction are exempt from service of civil process while in attendance upon court,
and during a reasonable time in coming and going." (citing *Stewart v. Ramsay*, 242 U.S. 128, 129 (1916) and *Lamb
v. Schmitt*, 285 U.S. 222, 225 (1932)); *see also* Wright & Miller § 1076 ("The question of immunity from service of
process, although not expressly dealt with in the Federal Rules of Civil Procedure, is viewed as a procedural matter
that is controlled by federal precedents rather than by state law.").

(S.D.N.Y.), might be sufficient to effect constitutionally-sound service vis-à-vis Rule 4(e)(1) and

C.P.L.R. 308(5), but Plaintiffs must first confirm that DOJ is willing to assist.  *See, e.g.*, *In re*

*Terrorist Attack on Sept. 11, 2001*, 2004 WL 1348996, at \*1–2 (S.D.N.Y. June 14, 2004)

(authorizing service where "the Attorney General [agreed to] deliver copies of the Summons and

Complaint to those individuals" it was willing to disclose were in its custody).

For the foregoing reasons, Plaintiffs' motion for alternative service is GRANTED in part.

Plaintiffs may effect service upon Defendants OneCoin and Ignatova using the means proposed

in Plaintiffs' motion papers.  Plaintiffs must notify the Court in writing whether they received a

sender-return error for Ignatova.  Service of Ignatova will not be considered proper unless no

such error is received.  Similarly, if International Registered Mail allows tracking of the package,

Plaintiffs must post proof of delivery to ECF once it has been effected.

Plaintiffs' motion for leave to use alternative means of service against Dilinska and

Greenwood is DENIED without prejudice.

The Clerk is respectfully directed to terminate the open motion at Dkt. 71.

**SO ORDERED.**

Date:  **January 24, 2020**                                      **VALERIE CAPRONI**
          **New York, New York**                            **United States District Judge**

# EXHIBIT D



LEVI&KORSINSKY, LLP

55 Broadway, 10th Floor
New York, NY 10006
T: 212-363-7500
F: 212-363-7171
www.zlk.com

Adam Apton
aapton@zlk.com

February 3, 2020

**VIA ELECTRONIC CASE FILING**

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square, Courtroom 443
New York, NY 10007

Re:  ___Berdeaux v. OneCoin Ltd., et al.___, Case No. 1:19-cv-04074-VEC (S.D.N.Y.)

Dear Judge Caproni:

This firm, Levi & Korsinsky, LLP, represents Lead Plaintiff Donald Berdeaux and plaintiff Christine Grablis ("Plaintiffs") in the subject action ("Action"). We write in accordance with this Court's August 23, 2019 Memo Endorsement (ECF No. 49) ordering Plaintiffs to file a letter on the first business day of each month (beginning on September 3, 2019) updating the Court on Plaintiffs' efforts to effectuate service of process upon all Defendants who had not already been served.

On August 23, 2019, in response to defendant Mark S. Scott's ("Scott") letter motion to stay the instant Action during the pendency of the criminal trial against Mr. Scott, the Court issued the Court issued an Order staying all proceedings in this Action until Plaintiffs accomplished service upon the remaining Defendants (ECF No. 49). Defendant Scott's criminal trial has since concluded and, on November 21, 2019, a Manhattan federal jury found Defendant Scott guilty on Count One: Conspiracy to Commit Money Laundering and Count Two: Conspiracy to Commit Bank Fraud.[1]

On October 1, 2019, Plaintiffs filed a Motion for Leave to Effectuate Alternative Electronic Service upon Defendants OneCoin Ltd ("OneCoin"), Ruja Ignatova ("Ignatova"), Sebastian Greenwood ("Greenwood"), and Irina Andreeva Dilinska ("Dilinska") ("Plaintiffs' First Motion for Alternative Service"). On November 1, 2019, the Court denied Plaintiffs' First Motion for Alternative Service without prejudice and suggested that Plaintiffs address the concerns it raised in a renewed application.

On December 3, 2019, Plaintiffs filed their Renewed Motion for Leave to Effect Alternative Service on Defendants OneCoin, Ignatova, Greenwood, and Dilinska (the "Renewed Motion"). On January 24, 2020, the Court granted Plaintiffs' Renewed Motion as to Defendants OneCoin and Ignatova and denied the motion as to Defendants Greenwood and Dilinska (the "Alternative Service Order"). Concurrent with the filing of this letter, Plaintiffs are filing the Declaration of John

---

[1] Additionally, during Defendant Scott's criminal trial it was revealed that defendant Konstantin Ignatov has pleaded guilty to the criminal charges issued against him.

LEVI&KORSINSKY, LLP

Page 2 of 2
February 3, 2020

A. Carriel attesting that Plaintiffs have accomplished service as to Defendants OneCoin and Ignatova as directed by the Alternative Service Order.

      With respect to Defendant Greenwood, the Renewed Motion proposed submitting the Summons as to Greenwood and Amended Complaint to the prosecutor's office handling the related criminal proceedings and requesting that the documents be forwarded to Greenwood. The Alternative Service Order indicated that this proposed method of service may be sufficient "but Plaintiffs must first confirm that DOJ is willing to assist." Accordingly, on February 3, 2020, John A. Carriel, an associate with my firm, emailed two of the Assistant United States Attorneys prosecuting the related OneCoin criminal actions to inquire whether the DOJ would be willing to assist Plaintiffs in effecting service upon Defendant Greenwood by forwarding him the Summons and Amended Complaint. As of the date of this letter, we have not received a response from the DOJ.

      With respect to Defendant Dilinska, the Alternative Service Order held that Plaintiffs' proposed method of service would not be granted "unless Plaintiffs can provide evidence that Dilinska has used the onecoin.eu account." Plaintiffs' counsel are conducting further research and investigation to obtain such evidence. If Plaintiffs' counsel are able to obtain direct evidence that Dilinska has used a specific email address hosted on onecoin.eu, Plaintiffs will file a renewed motion for alternative service as to Defendant Dilinska.

      Plaintiffs are available at the Court's convenience to respond to any further questions as may arise.

Very truly yours,

LEVI & KORSINSKY, LLP

By:    */s/ Adam Apton*
       Adam Apton

cc:    all counsel of record (via ECF)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DONALD BERDEAUX and CHRISTINE
GRABLIS, Individually and on Behalf of All
Others Similarly Situated,

         Plaintiffs,

    -against-

ONECOIN LTD.; RUJA IGNATOVA,
KONSTANTIN IGNATOV; SEBASTIAN
GREENWOOD; MARK SCOTT; IRINA
ANDREEVA DILINSKA; DAVID PIKE;
and NICOLE J. HUESMANN,

         Defendants.

Case No.: 1:19-cv-04074-VEC

Hon. Valerie E. Caproni

---

### DECLARATION OF JOHN A. CARRIEL ATTESTING TO SERVICE AS TO DEFENDANTS ONECOIN LTD AND RUJA IGNATOVA

I, John A. Carriel, hereby declare as follows:

  1.  I am an associate with the law firm Levi & Korsinsky, LLP, counsel for Lead Plaintiff Donald Berdeaux and Plaintiff Christine Grablis ("Plaintiffs"). I am a member of the Bar of the District of Columbia. This declaration is based on my own personal knowledge and/or the firm's records of the matters stated herein. If called upon, I could and would competently testify thereto.

***Service as to Defendant OneCoin Ltd.***

  2.  On February 3, 2020, I caused the Summons as to Defendant OneCoin Ltd. ("OneCoin"), Plaintiffs' First Amended Complaint, and the Order Permitting Alternative Service as to Defendant OneCoin (the "Alternative Service Order") to be sent via United States International Registered Mail, with tracking, to:

OneCoin Ltd.
Unit 3102, 31st Floor,
Platinum Towers - Cluster I, Jumeirah Lakes Towers
Dubai, UAE

3.      On February 3, 2020, I emailed the Summons as to Defendant OneCoin, Plaintiffs'

First Amended Complaint, and the Alternative Service Order to the following email addresses:

- press@onecoin.eu;
- office@onecoin.eu;
- press@onelife.eu;
- info@onelife.eu; and
- office@oneworldfoundation.eu.

Attached hereto as **Exhibit 1** is a true and correct copy of this email.

4.      On February 3, 2020, I sent a message containing a hyperlink to a repository

containing the Summons as to Defendant OneCoin, Plaintiffs' First Amended Complaint, and the

Alternative Service Order to the following social media accounts:

- https://www.facebook.com/onecoincompany/;
- https://www.facebook.com/OneCoin-708913922526031/;
- https://www.facebook.com/OneLifeOfficial/; and
- https://www.facebook.com/oneworldfoundation.eu.

Attached hereto as **Exhibits 2–5** are true and correct copies of these messages.

*Service as to Defendant Ruja Ignatova*

5.      On February 3, 2020, I caused the Summons as to Defendant Ruja Ignatova

("Ignatova"), Plaintiffs' First Amended Complaint, and the Alternative Service Order to be sent

via United States International Registered Mail, with tracking, to:

Ruja Ignatova
c/o OneCoin Ltd.
Unit 3102, 31st Floor,
Platinum Towers - Cluster I, Jumeirah Lakes Towers
Dubai, UAE

6.  On February 3, 2020, I emailed the Summons as to Defendant Ignatova, Plaintiffs' First Amended Complaint, and the Alternative Service Order to the following email address:

- ruja@onecoin.eu.

Attached hereto as **Exhibit 6** is a true and correct copy of this email.  As of the date of this declaration, I have not received a sender-return error for this email.

7.  On February 3, 2020, I sent a message containing a hyperlink to a repository containing the Summons as to Defendant Ignatova, Plaintiffs' First Amended Complaint, and the Alternative Service Order to the following social media accounts:

- https://www.facebook.com/onecoincompany/; and

- https://bg.linkedin.com/in/dr-ruja-ignatova-74417161.

Attached hereto as **Exhibits 7–8** are true and correct copies of these messages.

8.  The Court's Alternative Service Order also authorized service upon Defendant Ignatova via message to her social media page available at: https://www.facebook.com/DrRujaIgnatova.onecoin/.  As of the date of this declaration, this Facebook page does not permit messages to be sent to its owner.  Attached hereto as **Exhibit 9** is a true and correct copy of this webpage obtained on February 3, 2020 showing that, as of the date of this declaration, this Facebook page does not contain an option to send a message to the owner of the page.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed on February 3, 2020.

John A. Carriel

- 3 -

# EXHIBIT 1

| From: | John A. Carriel |
|---|---|
| To: | press@onecoin.eu; office@onecoin.eu; press@onelife.eu; info@onelife.eu; office@oneworldfoundation.eu |
| Cc: | Donald J. Enright; Elizabeth K. Tripodi; Adam M. Apton; Zachary Ness; David Silver; Jason Miller |
| Subject: | SERVICE OF SUMMONS AND COMPLAINT (Onecoin LTD): Donald Berdeaux, et al, v. Onecoin LTD, et al, 19-cv-04074-VEC (SDNY) |
| Date: | Monday, February 3, 2020 2:51:00 PM |
| Attachments: | Berdeaux v. OneCoin_OneCoin Ltd Summons.pdf<br>Berdeaux v. OneCoin_Amended Complaint.pdf<br>Berdeaux v. OneCoin_Order Permitting Alternative Service.pdf |

**PLEASE TAKE NOTICE that Plaintiffs Donald Berdeaux and Christine Grablis have filed the attached First Amended Complaint in the United States District Court for the Southern District of New York and have named OneCoin Ltd as a Defendant (the "Complaint"). The Court has authorized electronic service of the attached Complaint and Summons.**

Attached hereto are the following documents:

- Summons as to defendant **OneCoin LTD**;

- Complaint; and

- January 24, 2020 Order of the Court permitting alternative service.

Sincerely,

John A. Carriel, Esq.
Associate
LEVI&KORSINSKY LLP
1101 30th Street, NW
Suite 115
Washington, DC 20007
202.524.4290 (office)
202.774.5793 (office direct)
202.333.2121 (facsimile)
jcarriel@zlk.com | www.zlk.com

Admitted in DC. Not admitted in NY, CT or CA. CONFIDENTIALITY NOTICE: This email message contains information belonging to the law firm of Levi & Korsinsky, LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think you have received this message in error, please email the sender. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. This email is not intended to create an attorney-client relationship between you and Levi & Korsinsky, LLP. If you communicate with us in connection with a matter for

which we do not already represent you, your communication may not be treated as privileged or confidential. In some jurisdictions this email may be considered advertising. Prior results do not guarantee similar outcomes.

# EXHIBIT 2



# EXHIBIT 3



# EXHIBIT 4



# EXHIBIT 5



# EXHIBIT 6

| From: | John A. Carriel |
|---|---|
| To: | ruja@onecoin.eu |
| Cc: | Donald J. Enright; Elizabeth K. Tripodi; Adam M. Apton; Zachary Ness; David Silver; Jason Miller |
| Subject: | SERVICE OF SUMMONS AND COMPLAINT (Ruja Ignatova): Donald Berdeaux, et al, v. Onecoin LTD, et al, 19-cv-04074-VEC (SDNY) |
| Date: | Monday, February 3, 2020 2:51:00 PM |
| Attachments: | Berdeaux v. OneCoin_Ruja Ignatova Summons.pdf |
| | Berdeaux v. OneCoin_Amended Complaint.pdf |
| | Berdeaux v. OneCoin_Order Permitting Alternative Service.pdf |

**PLEASE TAKE NOTICE that Plaintiffs Donald Berdeaux and Christine Grablis have filed the attached First Amended Complaint in the United States District Court for the Southern District of New York and have named Ruja Ignatova as a Defendant (the "Complaint"). The Court has authorized electronic service of the attached Complaint and Summons.**

Attached hereto are the following documents:

- Summons as to defendant **Ruja Ignatova**;

- Complaint; and

- January 24, 2020 Order of the Court permitting alternative service.

Sincerely,

John A. Carriel, Esq.
Associate
LEVI&KORSINSKY LLP
1101 30th Street, NW
Suite 115
Washington, DC 20007
202.524.4290 (office)
202.774.5793 (office direct)
202.333.2121 (facsimile)
jcarriel@zlk.com | www.zlk.com

Admitted in DC. Not admitted in NY, CT or CA. CONFIDENTIALITY NOTICE: This email message contains information belonging to the law firm of Levi & Korsinsky, LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think you have received this message in error, please email the sender. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. This email is not intended to create an attorney-client relationship between you and

Levi & Korsinsky, LLP. If you communicate with us in connection with a matter for which we do not already represent you, your communication may not be treated as privileged or confidential. In some jurisdictions this email may be considered advertising. Prior results do not guarantee similar outcomes.

# EXHIBIT 7



# EXHIBIT 8



Q  Dr. Ruja Ignatova

## Dr. Ruja Ignatova · 3rd

--

OneCoin Ltd · Oxford University
Bulgaria · 254 connections

**Connect**    **Message**    ...

## Experience



**Chief Operations Officer**
OneCoin Ltd
Jun 2014 - Present · 5 yrs 9 mos



**CEO**
Rilacap
Mar 2010 - May 2014 · 4 yrs 3 mos



**CEO/CFO**
CSIF
2009 - 2010 · 1 yr



**Associate Principal**
McKinsey & Company
2004 - 2009 · 5 yrs

< **Dr. Ruja Ignatova** •••

—— TODAY ——

 **John Carriel** · 4:28 pm

**SERVICE OF SUMMONS AND COMPLAINT: Donald Berdeaux, et al, v.Onecoin LTD, et al, 19-cv-04074-VEC (SDNY)**

PLEASE TAKE NOTICE that Plaintiffs Donald Berdeaux and Christine Grablis have filed the below hyperlinked First Amended Complaint in the United States District Court for the Southern District of New York and have named Ruja Ignatova as a Defendant (the "Complaint"). The Court has authorized electronic service of the hyperlinked Complaint and Summons.

The following documents are hosted on the Dropbox hyperlink identified below:

-Summons as to defendant Ruja Ignatova;

-Complaint; and

-January 24, 2020 Order of the Court permitting alternative service.

DROPBOX LINK:

You haven't received a response yet.

DROPBOX LINK:

https://www.dropbox.com/sh/
z5kjx8xmyou0gq2/
AAA7JxLM2g8s13lgBDZbg27ta?dl=0

Sincerely,

John A. Carriel, Esq.
Associate
LEVI&KORSINSKY LLP
1101 30th Street, NW
Suite 115
Washington, DC 20007
202.524.4290 (office)
202.774.5793 (office direct)
202.333.2121 (facsimile)
jcarriel@zlk.com | www.zlk.com

Admitted in DC. Not admitted in NY, CT or
CA.  CONFIDENTIALITY NOTICE:   This email
message contains information belonging to
the law firm of Levi & Korsinsky, LLP, which
may be privileged, confidential and/or
protected from disclosure. The information
is intended only for the use of the individual
or entity named above. If you think you have

You haven't received a response yet.

<　　Dr. Ruja Ignatova　　...

jcarriel@zlk.com | www.zlk.com

Admitted in DC. Not admitted in NY, CT or
CA.  CONFIDENTIALITY NOTICE:   This email
message contains information belonging to
the law firm of Levi & Korsinsky, LLP, which
may be privileged, confidential and/or
protected from disclosure. The information
is intended only for the use of the individual
or entity named above. If you think you have
received this message in error, please email
the sender. If you are not the intended
recipient, any dissemination, distribution or
copying is strictly prohibited. This email is
not intended to create an attorney-client
relationship between you and Levi &
Korsinsky, LLP. If you communicate with us
in connection with a matter for which we do
not already represent you, your
communication may not be treated as
privileged or confidential. In some
jurisdictions this email may be considered
advertising. Prior results do not guarantee
similar outcomes.

You haven't received a response yet.

# EXHIBIT 9



# EXHIBIT E

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Southern District of New York

| | |
|---|---|
| DONALD BERDEAUX and CHRISTINE GRABLIS, Individually and on Behalf of All Others Similarly Situated, <br><br> _____ <br> *Plaintiff(s)* <br><br> v. <br><br> ONECOIN LTD.; RUJA IGNATOVA; SEBASTIAN GREENWOOD; MARK SCOTT; DAVID PIKE; NICOLE J. HUESMANN; GILBERT ARMENTA; and THE BANK OF NEW YORK MELLON CORPORATION <br><br> _____ <br> *Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. **1:19-cv-04074-VEC** |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Sebastian Greenwood
Metropolitan Correctional Center New York,
150 Park Row,
New York, NY 10007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

| | | |
|---|---|---|
| Donald J. Enright  -and-<br>Adam M. Apton<br>Levi & Korsinsky, LLP<br>1101 30th Street, NW<br>Suite 115<br>Washington, D.C.<br>20007 | John A. Carriel      -and-<br>Zelle, LLP<br>1775 Pennsylvania Ave, NW<br>Suite 375<br>Washington, D.C.<br>20006 | David C. Silver<br>Jason S. Miller<br>Silver Miller<br>11780 W. Sample Road<br>Coral Springs, FL<br>33065 |

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  _____9/30/2020_____          _____
/s/ P. Canales
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 1:19-cv-04074-VEC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                         *Server's signature*

                                                         _____
                                                         *Printed name and title*


                                                         _____
                                                         *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Southern District of New York

| | |
|---|---|
| DONALD BERDEAUX and CHRISTINE GRABLIS, Individually and on Behalf of All Others Similarly Situated, <br><br> _Plaintiff(s)_ <br> v. <br> ONECOIN LTD.; RUJA IGNATOVA; SEBASTIAN GREENWOOD; MARK SCOTT; DAVID PIKE; NICOLE J. HUESMANN; GILBERT ARMENTA; and THE BANK OF NEW YORK MELLON CORPORATION <br><br> _Defendant(s)_ | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 1:19-cv-04074-VEC |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_ Gilbert Armenta
1460 S. Ocean Blvd.
#301
Lauderdale by the Sea, FL 33062

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

| Donald J. Enright   -and- <br> Adam M. Apton <br> Levi & Korsinsky, LLP <br> 1101 30th Street, NW <br> Suite 115 <br> Washington, D.C. <br> 20007 | John A. Carriel        -and- <br> Zelle, LLP <br> 1775 Pennsylvania Ave, NW <br> Suite 375 <br> Washington, D.C. <br> 20006 | David C. Silver <br> Jason S. Miller <br> Silver Miller <br> 11780 W. Sample Road <br> Coral Springs, FL <br> 33065 |

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date:  9/30/2020

/s/ P. Canales

_Signature of Clerk or Deputy Clerk_

Civil Action No. 1:19-cv-04074-VEC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD BERDEAUX and CHRISTINE GRABLIS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | C.A. No 1:19-cv-04074-VEC |
| v. | Hon. Valerie E. Caproni |
| ONECOIN LTD.; RUJA IGNATOVA; SEBASTIAN GREENWOOD; MARK SCOTT; DAVID PIKE; NICOLE J. HUESMANN; GILBERT ARMENTA; and THE BANK OF NEW YORK MELLON, | <u>CLASS ACTION</u> |
| Defendants. | |

**DECLARATION OF DONALD J. ENRIGHT ATTESTING TO SUCCESSFUL CIVIL
SERVICE OF PROCESSS ON DEFENDANT SEBASTIAN GREENWOOD**

I, Donald J. Enright, hereby declare as follows:

1.      I am a partner with the Law Firm of Levi & Korsinsky, LLP, Lead Counsel for Lead Plaintiff Donald Berdeaux and Plaintiff Christine Grablis (together, "Plaintiffs") in the above captioned Action (the "Action"). I am admitted *pro hac vice* in this matter. [ECF No. 101]. This declaration is based on my own personal knowledge, the facts contained in relevant documents as noted below, and Levi & Korsinsky's records of the matters stated herein. If called upon, I could and would competently testify thereto.

2.      I respectfully submit this declaration attesting to successful civil service of process on Defendant Sebastian Greenwood.

3.      Defendant Sebastian Greenwood was successfully personally served with civil service of process by U.S. Marshal on December 23, 2020. A true and correct copy of the service receipt from the U.S. Marshal (the USM-285) is attached hereto as **Exhibit A**.

I hereby affirm and attest, under penalty of perjury of the laws of the United States of America, that the foregoing is true and correct this 23rd day of December, 2020.

/s/ *Donald J. Enright*
Donald J. Enright

# EXHIBIT A

USM-285 is a 5-part form. Fill out the form and print 5 copies. Sign as needed and route as specified below.

**U.S. Department of Justice**
United States Marshals Service

# PROCESS RECEIPT AND RETURN
*See "Instructions for Service of Process by U.S. Marshal"*

| | |
|---|---|
| PLAINTIFF<br>Donald Berdeaux and Christine Grablis | COURT CASE NUMBER<br>1:19-cv-04074-VEC |
| DEFENDANT<br>OneCoin Ltd., et. al., | TYPE OF PROCESS<br>Civil Service of Process |

| | | |
|---|---|---|
| **SERVE AT** | NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN<br>'Karl' Sebastian Greenwood | |
| | ADDRESS (Street or RFD. Apartment No., City, State and ZIP Code)<br>Metropolitan Correctional Center New York, 150 Park Row, New York, NY 10007 | |

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW | |
|---|---|
| Donald J. Enright<br>1101 30th Street N.W., Suite 115<br>Washington, D.C. 20007<br>(202) 524-4290; denright@zlk.com | Number of process to be served with this Form 285 — 1 |
| | Number of parties to be served in this case — 1 |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (*Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available for Service*):

Fold

Inmate Sebastian Greenwood is being served in federal prison. His federal prison register number is believed to be: 76231-054.

| | |
|---|---|
| Signature of Attorney other Originator requesting service on behalf of: ☒ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER (202) 524-4290    DATE 12/7/20 |

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY-- DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. (*Sign only for USM 285 if more than one USM 285 is submitted*) | Total Process<br>P1 | District of Origin<br>No. 054 | District to Serve<br>No. 054 | Signature of Authorized USMS Deputy or Clerk | Date 12/15/20 |
|---|---|---|---|---|---|

I hereby certify and return that I ☑ have personally served , ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual , company, corporation, etc., at the address shown above on the on the individual , company, corporation, etc. shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc. named above (*See remarks below*)

| Name and title of individual served (if not shown above)<br>KARL SEBASTIAN GREENWOOD | ☐ A person of suitable age and discretion then residing in defendant's usual place of abode |
|---|---|
| Address (complete only different than shown above) | Date 12/23/2020   Time 8:26 ☑ am ☐ pm |
| | Signature of U.S. Marshal or Deputy #4506 |

| Service Fee<br>$65.00 | Total Mileage Charges including *endeavors* | Forwarding Fee | Total Charges<br>$65.00 | Advance Deposits | Amount owed to U.S. Marshal* or (Amount of Refund*)<br>$0.00 |
|---|---|---|---|---|---|

REMARKS:

19-4074-2

| PRINT 5 COPIES: | 1. CLERK OF THE COURT<br>2. USMS RECORD<br>3. NOTICE OF SERVICE<br>4. BILLING STATEMENT*: To be returned to the U.S. Marshal with payment, if any amount is owed. Please remit promptly payable to U.S. Marshal.<br>5. ACKNOWLEDGMENT OF RECEIPT | PRIOR EDITIONS MAY BE USED<br><br>Form USM-285<br>Rev. 12/15/80<br>Automated 01/00 |
|---|---|---|

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD BERDEAUX and CHRISTINE GRABLIS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | C.A. No 1:19-cv-04074-VEC |
| v. | Hon. Valerie E. Caproni |
| ONECOIN LTD.; RUJA IGNATOVA; SEBASTIAN GREENWOOD; MARK SCOTT; DAVID PIKE; NICOLE J. HUESMANN; GILBERT ARMENTA; and THE BANK OF NEW YORK MELLON, | <u>CLASS ACTION</u> |
| Defendants. | |

**AFFIDAVIT AND DECLARATION OF DONALD J. ENRIGHT ATTESTING TO**
**SUCCESSFUL SERVICE OF PROCESS ON DEFENDANT GILBERT ARMENTA**

-1-

I, Donald J. Enright, hereby declare as follows:

1.      I am a partner with the Law Firm of Levi & Korsinsky, LLP, Lead Counsel for Lead Plaintiff Donald Berdeaux and Plaintiff Christine Grablis (together, "Plaintiffs") in the above captioned Action (the "Action"). I am admitted *pro hac vice* in this matter. [ECF No. 101]. This declaration is based on my own personal knowledge, the facts contained in relevant documents as noted below, and Levi & Korsinsky's records of the matters stated herein. If called upon, I could and would competently testify thereto.

2.      I respectfully submit this declaration to note completed service of process on Defendant Gilbert Armenta of his Summons (the "Summons," ECF No. 130) and the Second Amended Complaint (ECF No. 125) (the "SAC," and together with the Summons, the "Service Documents") on November 2, 2020.

3.      On October 26, 2020, Plaintiffs filed a letter apprising the Court of their efforts to serve Defendants Sebastian Greenwood and Gilbert Armenta (the "Letter"). [ECF No. 141]. Plaintiffs served the Letter on the Defendants Greenwood and Armenta by mail, and on counsel for Defendants Greenwood and Armenta by mail and email. The counsel for Defendants Greenwood and Armenta served are their counsel in their respective related criminal actions, *USA v. Scott*, Case No. 1:17-cr-630 and *USA v. Armenta*, Case No. 1:17-cr-556.

4.      On Saturday, October 31, 2020, Counsel for Defendant Gilbert Armenta in his related criminal action, Marc Weinstein of Hughes Hubbard & Reed LLP, emailed Plaintiffs advising that Defendant Gilbert Armenta had authorized Mr. Weinstein to accept service of process by email on his behalf. On Monday, November 2, 2020, Plaintiffs emailed the Service Documents to Mr. Weinstein as requested, thereby effectuating service of process on Defendant

Gilbert Armenta. On November 3, 2020, Mr. Weinstein acknowledged receipt of the Service Documents. A true and accurate copy of these emails is attached hereto as **Exhibit A**.

I hereby affirm and attest, under penalty of perjury of the laws of the United States of America, that the foregoing is true and correct this sixteenth day of November, 2020.

/s/ *Donald J. Enright*
Donald J. Enright

# EXHIBIT A

**Subject:** [External]RE: [External]Gilbert Armenta
**Date:** Tuesday, November 3, 2020 at 4:36:10 PM Eastern Standard Time
**From:** Weinstein, Marc A.
**To:** Zack Ness
**CC:** Donald J. Enright, Adam M Apton, John Carriel, Jason Miller, David Silver

Thanks Zack.


**Marc A. Weinstein** | Partner

Chair, White Collar Defense

**Hughes Hubbard & Reed LLP**
One Battery Park Plaza, 17th floor | New York | NY 10004–1482
Office +1 (212) 837-6460 | Cell +1 (646) 537-5750 | Fax +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you
should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by
mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information
could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept
liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is
required please request a hard-copy version.

---

**From:** Zack Ness <zness@zlk.com>
**Sent:** Monday, November 2, 2020 9:20 AM
**To:** Weinstein, Marc A. <marc.weinstein@hugheshubbard.com>
**Cc:** Donald J. Enright <denright@zlk.com>; Adam M Apton <aapton@zlk.com>; John Carriel
<JCarriel@zelle.com>; Jason Miller <jmiller@silvermillerlaw.com>; David Silver <dsilver@silvermillerlaw.com>
**Subject:** Re: [External]Gilbert Armenta

> **CAUTION: This email was sent by someone outside of the Firm.**

Marc,

Thank you for your response. Please see the attached Summons as to Mr. Armenta as well as the Second
Amended Complaint for service of process.

Best,

Zack Ness

--
Zachary B. Ness
Associate

## LEVI&KORSINSKY LLP

1101 30th Street, NW
Washington, DC 20007
Tel.: (202) 524-4290
Dir.: (973) 842-1194
Fax: (212) 363-7171
zness@zlk.com | www.zlk.com

Admitted in DC. This email message contains information belonging to the law firm of Levi & Korsinsky LLP, which may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think you have received this message in error, please email the sender. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited.  This email is not intended to create an attorney-client relationship between you and Levi & Korsinsky LLP.  If you communicate with us in connection with a matter for which we do not already represent you, your communication may not be treated as privileged or confidential.  In some jurisdictions this email may be considered advertising.  Prior results do not guarantee similar outcomes.

**From:** "Weinstein, Marc A." <marc.weinstein@hugheshubbard.com>
**Date:** Saturday, October 31, 2020 at 10:23 AM
**To:** Zack Ness <zness@zlk.com>
**Subject:** [External]Gilbert Armenta

Zach:

Although my firm does not represent Mr. Armenta in connection with your class action suit, he has authorized me to accept service of the complaint by email on his behalf.

Regards,
Marc

**Marc A. Weinstein** | Partner

Chair, White Collar Defense

**Hughes Hubbard & Reed LLP**
One Battery Park Plaza, 17th floor |  New York | NY 10004-1482
Office +1 (212) 837-6460 | Cell +1 (646) 537-5750 | Fax +1 (212) 299-6460
marc.weinstein@hugheshubbard.com

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.